# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CYNTHIA A. DeCAIRE,

Plaintiff

vs.

JOHN D. ASHCROFT, in his official position as
Attorney General of the United States.

Defendant

RECEIPT # _____ 54857

AMOUNT $ _____ 150.00

SUMMONS ISSUED _____

LOCAL RULE 4.1 _____

WAIVER FORM _____

MCF ISSUED _____

BY DPTY. CLK. _____

DATE _____ 3-26-04

C.A. No.

# 04 - 10593 WGY

MAGISTRATE JUDGE Alexander

## COMPLAINT and DEMAND FOR JURY TRIAL

## INTRODUCTION

1.      This is an action for discrimination and retaliation in violation of § 717 of the

1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e-16, by the United States Marshals Service

and Anthony Dichio, the United States Marshal for the District of Massachusetts. Plaintiff

Cynthia A. DeCaire, a female Deputy United States Marshal with thirteen years tenure in the

District of Massachusetts, had a successful career with the Marshal Service prior to the events at

issue here, progressing to the position of senior investigator and Team Leader in the

Investigations unit in Boston, Massachusetts, while receiving numerous commendations and

awards. In August, 2002, Anthony Dichio was appointed United States Marshal for the District

of Massachusetts. Following his appointment, Defendant Dichio began a course of

discriminating against Deputy U.S. Marshal DeCaire on the basis of her gender, including

removing her from her position in the Investigations unit. After Deputy U.S. Marshal DeCaire

protested the discrimination and Marshal Dichio learned that she had filed an Equal Employment

Opportunity charge naming him, Marshal Dichio informed another law enforcement officer that Ms. DeCaire "would get what is coming to her, that he would get her, and that as long as he was here she was going nowhere." Consistent with this threat, Marshal Dichio has refused to return her to the Investigations unit even when a new position there became available and has denied her all promotional opportunities despite her qualifications for such positions.

While Ms. DeCaire has attempted to resolve this matter internally within the Marshals Service, the retaliation has continued. During the time that Ms. DeCaire has sought to exhaust her administrative remedies, she has been transferred six times and most recently, upon informing the Marshals Service that she is pregnant and was requesting light duty, has been assigned to work, without bathroom breaks or breaks from the heat, in the overly heated, small and isolated "control room" in the Federal Courthouse in Boston. Plaintiff seeks injunctive relief, lost salary, emotional distress damages, attorneys' fees and costs and other just and proper relief

## PARTIES

2.      Plaintiff CYNTHIA A. DECAIRE is a Deputy United States Marshal, assigned to the District of Massachusetts, One Courthouse Way, Suite 1-500, Boston, MA. At all times relevant, Cynthia DeCaire was single and had one child. She is a resident of Westborough, Massachusetts.

3.      Defendant JOHN D. ASHCROFT is the Attorney General of the United States, and the head of the United States Department of Justice. The United States Marshals Service is a component of the United States Department of Justice and was Cynthia DeCaire's employer at all times relevant.

2

## JURISDICTION AND VENUE

4.     Jurisdiction and venue are proper in the District of Massachusetts under 42 U.S.C. § 2000e-5 and § 2000e-16.

## PLAINTIFF'S EXHAUSTION OF HER ADMINISTRATIVE REMEDIES

5.     On January 23, 2003, Plaintiff spoke with an Equal Employment Opportunity counselor for the United States Marshals Service, and on February 27, 2003, Plaintiff filed with the Equal Employment Opportunity office a discrimination complaint against the United States Marshals Service. On May 16, 2003, Plaintiff amended her complaint to include acts of discrimination in retaliation for her filing the original EEO complaint. On November 1, 2003, Plaintiff requested a final agency decision on her original and amended complaint. Although an agency decision was due in ninety days, none has issued. More than 180 days have now passed since Plaintiff amended her complaint, and Plaintiff has thus exhausted her administrative remedies as to those matters set forth in the original and amended complaints.

6.     Defendant's further acts of discrimination since May16, 2003, discussed briefly in the introductory paragraph above, are the subject of a second Equal Employment Opportunity charge filed by Plaintiff, and are currently under administrative review. Accordingly, such further acts of discrimination are not detailed in this Complaint. Plaintiff anticipates seeking leave to amend the Complaint to add the additional allegations after exhausting her administrative remedies as to those additional allegations.

## FACTS

### Background Facts

7.     Plaintiff Cynthia A. DeCaire was hired by the United States Marshal Service in June of 1991.

8.     Plaintiff's position at the time of her hire was Criminal Investigator Deputy United States Marshal, assigned to the District of Massachusetts.

9.     At all times relevant to this claim, Plaintiff has been assigned to the District of Massachusetts. From June 1991 through September 2002 her duty station within the District of Massachusetts was the Boston office, with the exception of one assignment as an acting supervisor in the sub-office in Worcester.

10.    In 1996, Plaintiff became a senior investigator and was assigned to the FBI violent fugitive task force.

11.    In 1999, Plaintiff was assigned to Permanent Warrant Investigations.

12.    In June 2001, Plaintiff accepted the assignment as Acting Supervisor in the Worcester sub-office, for which she received a Superior Accomplishment Award. In September 2001, when that assignment ended, she returned to the Boston office.

13.    Following her return to the Warrants Investigation unit in Boston, she became one of two Team Leaders in that unit. Ms. DeCaire remained in this position, received numerous commendations and awards, and was moving forward in her career with the U.S. Marshals Service prior to Marshal Dichio's arrival.

14.    Anthony Dichio was appointed United States Marshal for the District of Massachusetts in or around August 2002.

15.    Shortly after his appointment, Marshal Dichio scheduled a one-on-one interview with Ms. DeCaire. In the interview, Marshal Dichio asked questions about Plaintiff DeCaire's personal life, and in particular, about her marital and parental status. After learning that Ms. DeCaire was divorced and had one child, Marshal Dichio asked Ms. DeCaire a series of personal questions, including whether she received assistance from her ex-husband, where her ex-husband

4

lived, who took care of her daughter when she was working, and why she did not want to work in Worcester and be closer to her daughter. DeCaire explained to Marshal Dichio that she had worked hard to attain her position in Investigations, and did not wish to work in Court Operations. Marshal Dichio questioned her interests, and asked again why DeCaire would not want to be closer to her daughter. Marshal Dichio advised DeCaire that her first priority should be being close to home in case her daughter needed her. Throughout the interview, Marshal Dichio asked DeCaire no questions about her professional experience and accomplishments.

16.    An Investigative position opened up in Worcester soon after the one-on-one interview took place.

17.    Ms. DeCaire e-mailed her qualifications for the Investigative position to Marshal Dichio. Ms. DeCaire is informed and believes that Supervisory Deputy Marshal Visalli recommended DeCaire for the investigative position in Worcester.

18.    Another female Deputy Marshal, Deputy Marshal Susan Williams, also requested to be considered for the investigative position in Worcester.

19.    Marshal Dichio assigned a male Deputy Marshal, Deputy Marshal Mark Lewis, to the investigative position in Worcester for which Deputy Marshals DeCaire and Williams had applied. Plaintiff is informed and believes that this assignment was made against the recommendation of Marshal Dichio's senior management staff.

20.    Both Deputy Marshal DeCaire and Deputy Marshal William were senior investigators and were more experienced than Deputy Marshal Lewis who was not a senior investigator. Prior to the assignment, Deputy Marshal DeCaire was Deputy Marshal Lewis' Team Leader.

21.    At that time, Massachusetts State Police Trooper Darlene DeCaire worked with the Investigations unit.  Trooper Darlene DeCaire is divorced from Deputy Marshal DeCaire's uncle.  Marshal Dichio told Deputy Marshal Decaire that he did not want "two women Decaires" (emphasis added) in the unit.

22.    On September 3, 2003, Ms. DeCaire sent an e-mail to her then-Supervisor, Former Chief Deputy U.S. Marshal Timothy Bane, with a copy to Marshal Dichio, in which she asserted that the office was taking a "sexist" view in refusing to permit her to take the investigative position in Worcester.

23.    After transferring Deputy Marshal Lewis to the investigative position in Worcester, Marshal Dichio called Ms. DeCaire into his office.  In that meeting, Marshal Dichio expressed anger that others in the office were questioning his decision to transfer Deputy Marshal Lewis to the Investigative position and blamed Ms. DeCaire for this opposition in the office.

24.    Marshal Dichio then stated that he was going to transfer Plaintiff to the non-investigative position in Worcester held by Deputy Marshal McKearney.

25.    From September 30, 2002, through January 25, 2003, Plaintiff DeCaire was assigned full-time to a non-investigative position in Worcester.

### Marshal Dichio's Discriminatory Assignment of Deputy U.S. Marshal DeCaire and the Other Female Deputy in the Worcester Sub-Office to Weekly Rotations in Worcester and Boston

26.    In January, 2003, there apparently was a "shortage of manpower" requiring additional coverage of the Boston Court Operations.  At the time, the deputies assigned to the Worcester sub-office were Cynthia DeCaire, a female employee and single parent, Susan Williams, a female employee and Kevin Wahl, a male employee and married parent.  The duty

6

station of single parent, Mark Lewis, a male employee with no children who had been temporarily assigned to Worcester, was Boston.

27.    Before Marshal Dichio took office, all deputies assigned to the Worcester office would rotate to the Boston office if assistance were needed.

28.    Rather than rotating the four deputies to Boston Court Operations, or rotating deputies assigned to the Investigative Unit in Boston to Court Operations, or returning Deputy Marshal Lewis to his Boston duty station, Marshal Dichio assigned only Deputy U.S. Marshal DeCaire and Deputy U.S. Marshal Williams—the two female deputies and the two single parents—to rotate to the Boston Court operations.

### Deputy U.S. Marshal DeCaire's Discrimination Complaint, and Marshal Dichio's Further Discrimination and Retaliation

29.    On January 23, 2003, Deputy U.S. Marshals DeCaire and Williams filed a complaint with the Marshal Services' Labor Relations office.  In that complaint, Deputy U.S. Marshal DeCaire objected to Marshal Dichio's questioning her about her parental status and personal life during their one-on-one meeting, to his decision to transfer a junior male employee to the investigative position in Worcester, to his decision to transfer her from her Team Leader position in the Warrants unit in Boston to the non-leadership, non-investigative position in Worcester, and to the decision to assign her to the rotational assignment in Court Operations in Boston.  Deputy Marshal Williams objected to a one-on-one meeting Marshal Dichio had with her, to the denial of permission to attend a conference of the International Association of Women Police, and to the rotational assignment.

30.    On January 23, 2003, Plaintiff also spoke with an Equal Employment Opportunity counselor regarding Marshal Dichio's initial interview, the transfer of Deputy Marshal Lewis rather than Plaintiff to the Worcester investigative position, the transfer of Plaintiff out of her

7

team leader investigative position and to the non-investigative position in Boston, and the rotation to court operation in Boston.

31.    On January 24, 2003, Deputy U.S. Marshal Williams' first scheduled day in rotation in Boston, she informed Assistant Chief Deputy U.S. Marshal Durette that she and Plaintiff DeCaire were filing a grievance and an EEO complaint regarding the treatment from Marshal Dichio and Supervisory U.S. Marshal Bezanson.  Plaintiff is informed and believes that Assistant Chief Deputy U.S. Marshal Durette spoke to Marshal Dichio about the EEO complaints that same day.

32.    Although both Deputy U.S. Marshal DeCaire and Deputy U.S. Marshal Williams had filed the initial complaints, Ms. DeCaire had raised numerous issues including removal of her leadership position (Team Leader), the assignment of Mark Lewis to the Worcester investigative position, and her own removal from the Boston warrants position.  Ms. Williams had raised just the issue of the objectionable one-on-one interview, the denial of the training opportunity, and the rotation to Boston.  Plaintiff is informed and believes that when Assistant Chief Deputy U.S. Marshal Durette warned Marshal Dichio about the EEO Complaint, Marshal Dichio told him to approve Deputy Marshal William's request to attend the conference, stating that "that will take care of one of them."

33.    Plaintiff is informed and believes that on Tuesday, January 28, 2003, while she was taking an annual leave, Marshal Dichio and Deputy U.S. Marshal David Taylor traveled to the Worcester sub-office and had a meeting with Supervisory Deputy U.S. Marshal Bezanson.  Supervisory Deputy U.S. Marshal Bezanson was told at this meeting to no longer rotate the two women to Boston, and that instead, Plaintiff Decaire would be transferred to Boston Court Operations.

34.    Deputy U.S. Marshal Williams dropped her complaint after receiving approval for the training and being relieved of the Boston rotation duties.

35.    On or around February 3, 2003, Ms. DeCaire was informed that she was being transferred to Court Operations in Boston. This information was provided through an e-mail, which was sent district wide, which stated that she would be filling the position vacated by a series 0082 Deputy in Boston. Normal positions for filling the vacancy, however, were not followed. The series 0082 position is below the series 1811 Criminal Investigator position held by Ms. DeCaire, and thus the district wide publicity of the assignment was designed to embarrass Ms. DeCaire. In addition, when she contacted her new Boston supervisory regarding the transfer, he was unaware of it. Ms. DeCaire was also directed to leave the government vehicle she had been assigned in the sallyport in Worcester and make her own way home on February 3 and her own way to Boston on February 4.

36.    At the time of the transfer, Ms. DeCaire was neither the most junior deputy nor the deputy living in closest proximity to Boston in the Boston Warrants unit. Nor was she the most junior deputy in the Worcester unit.

37.    Despite purportedly basing the assignment on Ms. DeCaire's lack of seniority, her assignment did not change when more junior employees were added to the unit.

38.    When an opening did occur in the Boston Warrants unit, an employee junior to Ms. DeCaire was permitted to move there while Ms. DeCaire, the more senior employee, remained in Court Operations. Thus, on March 17, 2003, Deputy U.S. Marshal Scott Kimball (who had less Marshals Service seniority than Ms. DeCaire) was reassigned from Court Operations to Warrants. At the time, Marshal Dichio was aware from her original complaint of discrimination that Ms. DeCaire was seeking a return to the Warrants unit.

39.    On April 21, 2003, Plaintiff DeCaire learned that Supervisory Deputy Marshal Doherty was leaving his position as Court Operations Supervisor. In the past, when a supervisory position opened up, notice was given that the position would be filled with an acting supervisor. In this case, however, no such notice was given. Deputy U.S. Marshal DeCaire nonetheless expressed interest in the Court Operations Supervisor position on April 21st via e-mail to Marshal Dichio and Chief Deputy Marshal Dimmitt. Neither Marshal Dichio nor Chief Deputy Marshal Dimmitt responded to her e-mail, and no one in management discussed the soon to be vacant position with her.

40.    On April 23, 2003, Deputy U. S. Marshal DeCaire asked Marshal Dichio and Chief Dimmitt by e-mail to be considered for the position of Warrant Coordinator if the position became available. Again she received no response to her inquiry.

41.    The position subsequently became available, and, on April 28, 2003, Deputy Marshal Sugrue was assigned to the Warrant Coordinator position. Deputy Marshal Sugrue had not sought and did not want the assignment, but nonetheless was assigned to the position.

42.    No one in management provided Deputy U.S. Marshal DeCaire with any information regarding why she was not chosen for the position.

43.    During the week of February 24, 2003, Marshal Dichio told Brockton Police Detective Joseph Cummings about Deputy U.S. Marshal Cynthia DeCaire and her complaint filed with the EEOC. In the course of that conversation, Marshal Dichio told Detective Cummings that "Cynthia is vicious," that she would get what is coming to her, that he would get her, and that as long as he was here "she was going nowhere."

44.    On March 17, 2003, at a meeting that Chief Deputy U.S. Marshal Dimmitt held

with the Court Operation Unit, including new 082's, Chief Deputy Marshal advised the Deputy

United States Marshals not to take on the U.S. Marshals Service.

45.    Plaintiff is informed and believes that after former Assistant Chief Durette spoke

with Plaintiff DeCaire about her EEO Complaint, on or around January 2003, Marshal Dichio

questioned former Assistant Chief Durette regarding his loyalty to Marshal Dichio. Marshal

Dichio also told former Assistant Chief Durette that Marshal Dichio needed him to "back"

Marshal Dichio regarding the EEO situation.   Assistant Chief Durette stated that he would tell

the truth if questioned by investigators. Shortly thereafter, Assistant Chief Durette was removed

from the chain of command. Plaintiff is informed and believes that Marshal Dichio stated to

Assistant Chief Durette that he was being removed because Marshal Dichio "could not trust

him."

## COUNT I – DISCRIMINATION BASED ON SEX
## IN VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT,
## AS AMENDED, 42 U.S.C. § 2000e-16

46.    The allegations of paragraphs of 1-45 are incorporated herein by reference.

47.    Defendants discriminated against Plaintiff, in violation of 42 U.S.C. § 2000e-

2(a)(1), when, on account of her gender, Defendants assigned her to weekly rotations in

Worcester and Boston in or around January 2003, transferred her to Court Operations in Boston

in or around February, 2003, kept her in Court Operations in Boston after additional employees

were added to the unit, failed to move her to the Boston Warrants unit when an opening did

occur there in or around March, 2003, and refused to assign her to the Warrant Coordinator

position in or around April, 2003.

## COUNT II – RETALIATION IN VIOLATION OF
## TITLE VII OF THE 1964 CIVIL RIGHTS ACT,
## AS AMENDED, 42 U.S.C. § 2000e-16 and 42 U.S.C. § 2000e-3

48.     The allegations of paragraphs of 1-47 are incorporated herein by reference.

49.     Defendants retaliated against Plaintiff, in violation of 42 U.S.C. §§ 2000e-3(a)

and 2000e-16 when, after learning that Plaintiff opposed certain unlawful employment practices

of the Defendants and was filing a complaint of discrimination against the United States

Marshals Service, Defendants transferred her to Court Operations in Boston in or around

February, 2003, kept her in Court Operations in Boston after additional employees were added to

the unit, failed to move her to the Boston Warrants unit when an opening did occur there in or

around March, 2003, denied her a promotion to the Court Operations Supervisor position in or

around April, 2003, and refused to assign her to the Warrant Coordinator position in or around

April, 2003.

### REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the court grant the following relief:

(1) Interim and permanent injunctive relief directing Defendants:

    a.   to cease and desist from discriminatory or retaliatory actions against Plaintiff;

    b.   to assign Plaintiff to a full time investigations position;

    c.   to promote Plaintiff to the Court Operations Supervisor position and to pay

        Plaintiff the difference in the compensation between that position and the position

        she held from April 2003 until Plaintiff is promoted and;

    d.   to assign Plaintiff to the Warrant Coordinator position;

(2) back pay for the difference in the compensation between the Court Operations

Supervisor position and the position Plaintiff held from April 2003 until Plaintiff is promoted;

(3) compensatory damages;

(4) front pay;

(5) interest;

(6) attorneys fees and costs;

(7) and such other relief as is just and proper.

## **JURY TRIAL DEMAND**

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO

TRIABLE.

Respectfully submitted,
**CYNTHIA A. DeCAIRE**,

By her attorney,

Indira Talwani
**SEGAL, ROITMAN & COLEMAN**
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

Dated:  March 26, 2004

IT/decaire/Complaint2.doc

13