UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CYNTHIA A. DECAIRE,<br><br>            Plaintiff<br><br>            vs.<br><br>JOHN D. ASHCROFT, in his official position as Attorney General of the United States.<br><br>            Defendant | C.A. No. 04-10593WGY |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF EEO COMPLAINTS AND GRIEVANCES OF OTHER EMPLOYEES AND INVESTIGATIVE FILES**

**I.     INTRODUCTION AND NATURE OF THE CASE**

This action brought by Plaintiff Cynthia A. DeCaire, a Deputy United States Marshal, alleges that Anthony Dichio, the United States Marshal for the District of Massachusetts, engaged in discrimination and retaliation, in violation of § 717 of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e-16.  Deputy U.S. Marshal DeCaire alleges that Marshal Dichio discriminated against her on the basis of her gender, including removing her from her position in the Investigations unit.  After Deputy U.S. Marshal DeCaire protested the discrimination and Marshal Dichio learned that she had filed an Equal Employment Opportunity charge naming him, Marshal Dichio refused to return her to the Investigations unit, denied her promotional opportunities despite her qualifications for such positions, repeatedly transferred her between Worcester and Boston and, after she informed the Marshals Service that she was pregnant and was requesting light duty, assigned her to work, with limited bathroom breaks, in the excessively

hot "control room" in the Federal Courthouse in Boston.  Deputy U.S. Marshal DeCaire has returned to full duty following the birth of her child, but continues to be denied a position in the Investigations Unit.

## II.     PROCEDURAL HISTORY

At the initial Scheduling Conference on September 14, 2004, Defendant's counsel stated that the Defendant would not mediate this matter.  On September 20, 2004, the Court entered an order allowing the Parties' Joint Statement as the Joint Case Management Scheduling Order with discovery due by April 1, 2005.

On October 14, 2004, Plaintiff served by mail her First Set of Requests for Documents seeking documents thirty days later.  A copy of this First Set of Requests for Documents is attached hereto as Exhibit A.  Request No. 4 of this First Set of Requests for Documents seeks:

> All grievances or EEO Complaints alleging that Marshal Dichio has engaged in discriminatory, retaliatory or threatening conduct, and the investigative files relating to such grievances or complaints, including but not limited to the complaints of Deputy U.S. Marshal Susan Williams, the complaint or complaints of Supervisory Deputy U.S. Marshal Alison Hodgkins, the complaint or complaints of former Assistant Chief United States Marshal Paul Durette, and the complaint or complaints of Supervisory Deputy United States Marshal Jeffrey Bohn.

On November 22, 2004, after receiving no discovery responses, Plaintiff's counsel contacted Defendant's counsel.  Defendant's counsel stated that other documents would be produced, but that Defendant objected to producing any documents in response to Plaintiff's Request No. 4.

Plaintiff's counsel Indira Talwani held a discovery conference by telephone with Defendant's counsel Barbara Cottrell on Monday afternoon, November 22, 2004.  Defendant's counsel explained that Defendant's objection to producing the documents requested under Request No. 4 was made on the grounds of relevance and the Privacy Act.  Neither issue was

2

resolved during the discovery conference. Plaintiff's counsel informed Defendant's counsel that she would be bringing a motion to compel, and she postponed a deposition scheduled for the next day in order to have the motion to compel resolved first.

On November 23, 2004, Plaintiff's counsel received some documents from Defendant's counsel but, as Defendant's counsel had stated, this production included no documents in response to Request No. 4.

On November 24, 2004, Plaintiff's counsel e-mailed Defendant's counsel to inquire if the matter could be resolved by the entry of a protective order concerning the documents that are response to Request No. 4. On November 30, 2004, Defendant's counsel responded by e-mail that a protective order would not resolve the matter.

### III.   FACTS RELEVANT TO THE DISCOVERY DISPUTE

Plaintiff's allegations concern the decisions by Marshal Dichio to move her repeatedly between different work locations, removing her from, and preventing her return to, the Marshal Service's Investigative Unit in Boston, and to deny her appointments to various positions. At issue are the Marshal's intent and motive.

There is no dispute that when Marshal Dichio was appointed as United States Marshal he took no steps to familiarize himself with the work records and experience of the Deputy United States Marshals reporting to him. Marshal Dichio testified as follows at his recent deposition:

> Q. When you began your employment in August 2002, what steps did you take to get to know the work records of the new group of people you were supervising?
> A. When I arrived in Boston in August of '02 – August 6th of '02, I didn't ask for any of their work records. . . . I wasn't concerned what this person was doing. I wasn't taking Chief [Deputy U.S. Marshal Timothy] Bane's recommendation that this one's a good worker, this one's a bad worker. I told the chief that I want to start with a clean slate, everybody here is on the same page, I don't want to know about their background, I don't want to know who was bad, who was good. I have to see it for myself, so I have to make those decisions. . . . I have to start moving people around

3

>   and how I'm going to make my decision, not based on if this was the best investigatory and this was the worse investigatory because I had to come in there and I had to make decisions on my own, I had to see for myself. Everybody was on the same page . . .
> Q.   So, you took no information from Chief Bane or Assistant Chief Durette about the work histories of your subordinates?
> A.   They made recommendations when it was time to change things and they'd recommend this one, they would recommend not to transfer this one. And I told them, you know, certain things and I'm going to do this because I need to see for myself. Whether you agree with me or disagree with me, I had to see for myself if it works or if it doesn't work. . . .
> Q.   And you didn't read through any personnel files to find out what commendations people had received or what their prior experience was?
> A.   Did I read through the whole personnel file on each individual deputy? No, I didn't.
> Q.   Did you read through any part of any personnel file as part of your initial getting to know people?
> A.   The only thing that I had on their evaluations is like a pass or fail, that everybody passed. You know, that's what I saw when they get evaluated and that's what I looked at. . . .

Transcript of the Deposition of Anthony Dichio ("Dichio Deposition Transcript"), at pages 41 – 44. (A copy of this transcript will be filed with the Court at its request).

Marshal Dichio's supervision of the Marshals Service has been challenged not only by Deputy U.S. Marshal DeCaire but by other employees as well. Marshal Dichio testified to EEO complaints by Deputy U.S. Marshal Susan Williams and Supervisory Deputy U.S. Marshal Jeffrey Bohn. Dichio Deposition Transcript at 19. The investigator appointed by the Marshal Services' Equal Employment Opportunity office noted in the course of his investigation of Plaintiff's complaint that Deputy U.S. Marshal Hodgkins filed an EEO complaint "wherein she alleged that U.S. Marshal Dichio was one of the alleged discriminating officials . . . ." Report of Investigation, Cynthia A. DeCaire v. United States Marshals Service, Docket No. M-03-0025 ("First Report of Investigation"), Exhibit 28 (Memo to File from Investigator Eugene Clark) (A copy of this Report of Investigation will be filed with the Court at its request). In addition, Plaintiff is informed that former Assistant Chief Deputy U.S. Marshal Paul Durette has filed a

4

grievance with the Marshals Services' Labor Relations office to grieve "punitive, retaliatory actions, and unfair labor practices directed towards [former Assistant Chief Deputy U.S. Marshal Paul Durette] and other District of Massachusetts employees by United States Marshal Anthony Dichio."  (An unauthenticated copy of this grievance will be filed with the Court at its request).

Not only do these other grievances and EEO complaints challenge Marshal Dichio's discriminatory or retaliatory actions, but many, if not all, relate directly to Deputy U.S. Marshal DeCaire's complaint.  Deputy U.S. Marshal Williams filed her initial internal complaint jointly with Deputy U.S. Marshal DeCaire.  The EEO investigator reviewing Deputy U.S. Marshal DeCaire's second EEO complaint noted that Deputy U.S. Marshal William "filed her own EEO complaint, under the same basis, and a few of the same issues."  Report of Investigation, Cynthia A. DeCaire v. United States Marshals Service, Docket No. M-04-0012 ("Second Report of Investigation"), Exhibit 29 (Memo to file from Investigator Eugene Clark) (A copy of the Second Report of Investigation will be filed with the Court at its request).   Moreover, when former Assistant Chief Durette first discussed this joint complaint with Marshal Dichio, Marshal Dichio approved a training request sought by Deputy U.S. Marshal Williams and stated that "this will take care of one of them."  First Report of Investigation, Exhibit 10 (Affidavit of Cynthia DeCaire, June 2003), ¶¶ 15 – 16.

Plaintiff is informed that in his grievance, Assistant Chief Deputy U.S. Marshal Durette has stated that Marshal Dichio was retaliating against him because he "attempted to uphold standard operating procedures, EEO laws, USMS polices, and sound management principles." She is informed further that Assistant Chief Deputy U.S. Marshal Durette claims in the grievance that Marshal Dichio directed him to send an e-mail transferring Deputy U.S. Marshal DeCaire (who holds a grade 1811 position) to fill a position previously held by a Deputy in a lower grade (082) position (an action at issue in Plaintiff's complaint (see Amended Complaint, ¶ 36)), that

5

the Marshal did not confer with Assistant Chief Durette on that decision, that the Marshal subsequently told stated to him that if he was interviewed in connection with her EEO complaint "I expect that you'll support the Marshal," and that Assistant Chief Durette responded that if questioned under oath, he would answer truthfully, including that the Marshal did not confer with him about the decision. See Plaintiff's Amended Complaint, ¶¶ 31-32.

Supervisory Deputy U.S. Marshal Bohn, to whom Plaintiff is married, has alleged in his complaint that the Marshal has retaliated against him because of Plaintiff's EEO complaint. Supervisory Deputy U.S. Marshal Bohn was removed from the HIDTA Task Force after Plaintiff filed her EEO complaint. Another member of the HIDTA Task Force, Brockton Detective Joseph Cummings, has stated in an affidavit that after Deputy U.S. Marshal DeCaire filed her EEO complaint, Marshal Dichio asked him how Supervisory Deputy U.S. Marshal Bohn was doing on the Task Force, and that Cyndy "would get what is coming to her, that he would get her, and that as long as he was here she was going nowhere." First Report of Investigation, Exhibit 27 (Affidavit of Joseph Cummings).

Finally, the investigator of Deputy U.S. Marshal DeCaire's complaint noted that one of the issues in Deputy U.S. Marshal Hodgkins' complaint was "non-selection," and that after her EEO complaint was investigated, "DUSM Hodgkins was selected to be Warrant Coordinator in January 2003, and a few months later (April 2003), she was selected to serve as Acting Supervisor for Court Operations." First Report of Investigation, Exhibit 28 (Memo to File from Investigator Eugene Clark). The denial of Plaintiff's request for appointment to the same Acting Supervisor position is a subject of her complaint. See Amended Complaint, ¶ 42.

IV.     **PRODUCTION OF OTHER EEO COMPLAINTS, GRIEVANCES AND INVESTIGATIVE FILES SHOULD BE COMPELLED**

    A.     <u>The Request For All EEO Complaints and Grievances against Marshal Dichio and the Investigative Files Seeks Relevant Information</u>

Federal Rule of Civil Procedure 26(b)(1) provides that, unless otherwise limited by order of the Court, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

In <u>Cummings v. Standard Register Co.</u>, 265 F.3d 56 (1st Cir. 2001), the First Circuit upheld the district court's admission of allegations of discrimination by the employer against other employees over an objection that the allegations were irrelevant.  The Court explained:

> The sole issue at trial was whether age was a motivating factor in [the employer's] decision to terminate [the plaintiff].  We have recognized that since discrimination is often subtle and pervasive, plaintiffs must be able to rely on circumstantial evidence to prove discriminatory intent.  [<u>Conway v. Electroswitch Corp.</u>, 825 F.2d 593, 597 (1st Cir. 1987)]   To this end, evidence of a discriminatory "atmosphere" may sometimes be relevant to showing the corporate state-of-mind at the time of the termination.  *See id.*   While such evidence does not in itself prove a claim of discrimination, *see* <u>Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 249-50 (1st Cir. 1997)</u>, "[it] does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff." [ ]  <u>Conway</u>, 825 F.2d at 597 (citing <u>Sweeney v. Bd. of Trs. of Keene State Coll.</u>, 604 F.2d 106, 113 (1st Cir. 1979)); *see* <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 56 (1st Cir. 2000).

<u>Id.</u> at 63 (footnote omitted).  The <u>Conway</u> court, in turn, explained that "[e]vidence of institutional state-of-mind may be presented for the consideration of the trier-of-fact because an employer's willingness to consider impermissible factors such as race, age, sex, national origin, or religion while engaging in one set of presumably neutral employment decisions . . . might tend to support an inference that such impermissible considerations may have entered into another

7

area of ostensibly neutral employment decision." 825 F.2d at 597-98 (upholding against relevancy challenge trial court's admission of statements by employees who allegedly played no role in plaintiff's termination, and where, in one case, the statement refers to a different subject matter with respect to a different employee who worked in a separate department).

The <u>Cummings</u> and <u>Conway</u> decisions address the more difficult question of when relevant information should be admissible in trial if it is also prejudicial. No such concerns about admissibility apply here at the discovery stage, as discovery is appropriate so long as it is reasonably calculated to lead to admissible evidence.

Notably, courts have found that the refusal to grant a motion to compel such evidence may be an abuse of discretion. In <u>Hollander v. American Cyanamid Co.</u>, 895 F.2d 80, 84 (2d Cir. 1990), for example, the court found that the denial of a motion to compel discovery concerning the terminations of other management employees over forty on grounds that the discovery was burdensome and irrelevant was an abuse of discretion that unduly limited the plaintiff's ability to establish his argument that the employer's discharge of him was pretextual.

While discovery of other complaints and grievances is sometimes prohibited on grounds that the other allegations are too far afield from the discrimination claim at issue, no such argument can be made here. The discovery sought is for all complaints, grievances and investigative files relating to the same decisionmaker, Marshal Dichio. Moreover, they relate to the same time period as that of the complaint since Deputy U.S. Marshal DeCaire has alleged that the discrimination began shortly after Marshal Dichio took office in August 2002 and that the retaliation continues to the present.

For all of these reasons, Defendant's relevancy objection to producing the other EEO complaints and grievances directed at Marshal Dichio, as well as the investigative files of those complaints and grievances, should be overruled.

8

B.      The Privacy Act Does Not Bar Production of Documents Pursuant to a Court Order

Although the Privacy Act, 5 U.S.C. § 552a, does place certain limits on a government agency's release of information about individuals, release is permitted "pursuant to the order of a court of competent jurisdiction."  5 U.S.C. § 552a(b)(11).  Thus, the Privacy Act "creates neither a qualified discovery privilege nor any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery."  Pleasants v. Allbaugh, 208 F.R.D. 7, 12 (D.C.D.C. 2002).  As set forth above, the information sought is relevant, and should be ordered produced.

To the extent that there are legitimate privacy issues involved, Plaintiff does not oppose the entry of an appropriate protective order.

**V.     THE COURT SHOULD AWARD PLAINTIFF'S ATTORNEYS FEES**

Federal Rule of Civil Procedure 37(a)(4)(A) provides that if a motion to compel is granted,

> The court shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objections was substantially justified, or that other circumstances make an award of expenses unjust.

Here, as detailed above, Plaintiff's counsel made a good faith effort to obtain the discovery without court action, including offering to enter into a protective order.  Moreover, although the Privacy Act concern may require a court order prior to discovery, it creates no separate privilege or bar that would offer a basis for the Defendant's objection to such an order.  Finally, Defendant's contention that the files sought are not relevant is not only not supported by the case law, as detailed above, but with regard to the files of the specific individuals identified, is

9

particularly disingenuous, given the overlapping and intertwined allegations in these complaints. As noted above, the files sought include those of (1) Plaintiff's husband (Deputy U.S. Marshal Bohn) who alleges retaliation in connection with Deputy U.S. Marshal DeCaire's complaint; (2) an employee with whom Deputy U.S. Marshal DeCaire jointly filed a complaint (Deputy U.S. Marshal Williams); (3) a former employee who contends that his loyalty was challenged by the Marshal in connection with Deputy DeCaire's complaint (former Assistant Chief U.S. Marshal Durette); and (4) an employee who was given a position sought by Deputy DeCaire (Deputy U.S. Marshal Hodgkins).   For these additional reasons, Defendant can make no showing that its objection to producing all such information was substantially justified.

## VI.    CONCLUSION

For the foregoing reasons, the motion to compel should be granted and Plaintiff should be awarded her fees incurred in connection with this motion.

    Respectfully submitted,

    **CYNTHIA A. DeCAIRE**,

    By her attorney,


    _____/s/_____
    Indira Talwani
    **SEGAL, ROITMAN & COLEMAN**
    11 Beacon Street
    Suite #500
    Boston, MA  02108
    (617) 742-0208

Dated:  November 30, 2004

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF EEO COMPLAINTS AND GRIEVANCES OF OTHER EMPLOYEES** has been served upon Defendant John D. Ashcroft, in his official position as Attorney General of the United States, by service upon the attorney of record for the Defendant, Barbara Cottrell, Assistant United States Attorney, Northern District of New York, 218 James T. Foley United States Courthouse, 445 Broadway, Albany, New York, by mail, postage prepaid, this 30th day of November, 2004.

                                                            _____/s/_____
                                                               ndira Talwani