1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
_____

CYNTHIA A. DeCAIRE,
                              Plaintiff,

        v.                                                  Civ. Action No. 04-10593WGY

JOHN D. ASHCROFT, in his official
position as Attorney General of the
United States,
                              Defendant.


------------------------------------------------------

        **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

I.        <u>**INTRODUCTION**</u>

        This matter involves an amended complaint filed by Cynthia DeCaire, a Deputy United

States Marshal (DUSM) with the United States Marshals Service (USMS), District of

Massachusetts, alleging employment discrimination under Title VII of the Civil Rights Act of

1964 based on her gender (female), and retaliation.  Plaintiff alleges that she was discriminated

against when USMS management assigned her to weekly rotations in Worcester and Boston in or

around January 2003 (Count I), and was further discriminated against (Count I) and retaliated

against after she pursued EEO action (Count II), in that USMS management transferred her to

Court Operations in Boston in or around February 2003, kept her in Court Operations in Boston

after additional employees were added to the unit, failed to move her to the Boston Warrants unit

when an opening occurred there in or around March, 2003, refused to assign her to the Warrant

Coordinator position in or around April 2003, denied her an appointment to the Acting Court

Operations Supervisor position in or around September 2003, refused to assign her to the

2

Warrant Coordinator position in or around September 2003, transferred her to Worcester in

October 2003, assigned her multiple duty stations in November 2003, and assigned her to the

control room in the Federal Courthouse in Boston in November 2003, requiring her to work with

limited or no breaks.

Plaintiff seeks injunctive relief, back pay, front pay, compensatory damages[1], interest,

attorney's fees and costs, and any other relief deemed appropriate by the Court.

## II.    FORECLOSED ISSUES

Plaintiff filed a grievance with the Human Resources Division, U.S. Marshals Service, on

January 23, 2003, alleging that USMS management in the District of Massachusetts engaged in

retaliatory actions with respect to her assigned duties, relocation to the Worcester office, and

relocation back to the Boston office in a position that did not involve criminal investigation.

SMF ¶ 2.  That same day, Plaintiff contacted the USMS EEO office, to initiate an informal EEO

complaint.  SMF ¶3.  Following Plaintiff's interview with an EEO counselor, she was issued a

Notice of Right to File an EEO Complaint by letter dated February 14, 2003.  Plaintiff filed a

formal administrative EEO Complaint on February 27, 2003.  The USMS EEO Office

acknowledged Plaintiff's formal complaint by letter dated March 6, 2003, informing her of her

rights in accordance with Equal Employment Opportunity Commission (EEOC) federal sector

complaint regulations.  By letter dated April 11, 2003, the USMS accepted the following two

allegations for investigation:

---

[1]  The maximum amount of compensatory damages that can be awarded for discrimination in the instant lawsuit is $300,000.00.  *See* 42 U.S.C. § 1981a(b)(3)(D). This cap applies to the action as a whole, and not to each individual claim alleged by Plaintiff.  *Hudson v. Reno*, 130 F.3d 1193, 1201 (6th Cir. 1997).

3

1) whether DUSM DeCaire was discriminated against on the basis of her gender and parental status when on January 21, 2003, she was told that she had to rotate from the Worcester sub-office to the Boston office on a weekly basis due to a lack of manpower.  However, the two male deputies assigned to the Worcester sub-office did not have to rotate to Boston.

2) Whether DUSM DeCaire was discriminated against on the basis of her sex and parental status when on February 3, 2003, she was notified that she was being permanently transferred to the Boston Office.  By letter dated May 16, 2003, DUSM DeCaire requested that her complaint be amended.  By letter dated May 30, 2003, the USMS accepted the following issues in amendment of DUSM DeCaire']s EEO complaint: Whether DUSM DeCaire was discriminated against in reprisal for participation in prior EEO activity when: 1) on April 21, 2003, she requested to be considered for the position of court operations supervisor, However she received no response to her inquiry, and on April 28, 2003, the position was filled by another female deputy; 2) on April 23, 2003, she requested to be considered for the position of warrant coordinator.  However, she received no response to her inquiry, and on April 28, 2003, the position was filled by a male deputy.

Statement of Material Facts (SMF) ¶ 3.

Under the Civil Service Reform Act of 1978, "[a]n aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both."  5 U.S.C. § 7121(d)(1994); *see Johnson v. Peterson*, 996 F.2d 397, 399 (D.C.Cir. 1993); *Nunnally v. MacCausland*, 996 F.2d 1, 3, n. 4 (1st Cir. 1993); *Sierra Perez v. United States*, 779 F.Supp. 637, 643-44 (D. PR. 1991).  Thus, if the grievance and the complaint raise the same "matter," an employee who has elected to pursue a grievance would be prohibited from filing an EEO complaint on the same "matter."  The Civil Service Reform Act provides that an employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or

4

timely files a grievance in writing, in accordance with the provisions of the parties' negotiated

procedure, whichever event occurs first.  *See Johnson, supra,* at 399.

Plaintiff's grievance and two of the issues in her EEO complaint involve the same

"matter" thereby precluding a lawsuit based upon those issues in the EEO complaint.  In both the

grievance and the EEO complaint the underlying employment issues involved her rotation to

Court Operations in the Boston office and her permanent transfer back to the Boston Office from

the Worcester Office.  Plaintiff alleged in both the grievance and the EEO complaint that she was

discriminated against on the basis of gender and retaliation.  *See Guerra v. Cuomo*, 176 F.3d 547

(D.C. Cir. 1999)(holding that grievance and Rehabilitation Act action raised the same "matter,"

such that action was barred by election-of-remedies provision of Civil Service Reform Act).

Although Plaintiff also raised an issue in her grievance relating to an email message she sent to

her immediate supervisor regarding an allegedly slanderous conversation about her, which she

was told about by another DUSM, her underlying complaint was based on the same matter as her

January 23, 2003, EEO complaint.  Plaintiff's grievance was denied by final agency action of the

USMS on April 1, 2003.  SMF ¶ 4.  Since Plaintiff contested these transfers in both proceedings,

the issues are barred in this case by the election provisions of the Civil Service Reform Act.

Additionally, under Title VII, a litigant must exhaust available administrative remedies in

a timely fashion.  *Brown v. General Services Administration*, 425 U.S. 820 (1976); *Roman-*

*Martinez v. Runyon*, 100 F.3d 213, 220 (1st Cir. 1996).  In order for a claimant's administrative

discrimination claim to have been timely filed, a claimant is required to bring the matter to the

attention of an EEO counselor within 45 days of the date of the matter alleged to be

discriminatory.  29 C.F.R. § 1614.105(a)(2).  The timeliness of a discrimination claim is

5

measured from the date the claimant knew or should have known of the alleged discriminatory

action. *See Ross v. Runyon*, 858 F.Supp. 630, 638 (S.D.Tex. 1994).

Plaintiff alleged by letter dated May 13, 2003, that on March 17, 2003, DUSM Scott

Kimball, who had less seniority than she, was reassigned from Court Operations to Warrants.

This issue, set forth in paragraph 40 of Plaintiff's First Amended Complaint and alleged as a

basis for Plaintiff's gender discrimination and retaliation claims in paragraphs 52 and 54 of

Plaintiff's First Amended Complaint, occurred more than 45 days prior to Plaintiff's contact with

an EEO Counselor.  Accordingly, the allegation was deemed untimely.  SMF ¶ 5.  As Plaintiff

failed to exhaust her administrative remedies with regard to this claim, the claim fails to state a

basis for which relief may be granted and cannot be considered by the Court as a basis for the

relief sought by Plaintiff.

## III.    ARGUMENT

### A.  Standard of Review

Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof

in order to determine the need for trial." *Rios v. Rumsfeld*, 323 F.Supp. 2d 267, 271 (D.PR.

2004) *quoting Euromodas, Inc. v. Zanella,* 368 F.3d 11, 2004 WL 1088739, at *4 (1st Cir.2004)

(*citing Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)).  Summary

Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c);  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986).  Once the moving party has asserted that no genuine issue of material fact exists, the

6

burden is on the opposing party to point to specific facts demonstrating that there is, indeed, a

trialworthy issue.  Fed.R.Civ.P. 56(e); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st

Cir. 2004); *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995).

When deciding a motion for summary judgment, the court must view the record in the

light most favorable to the party opposing summary judgment, including all reasonable

inferences in the nonmoving party's favor.  "If, after canvassing the material presented, the

district court finds *some* genuine factual issue remains in the case, whose resolution one way or

the other *could* affect its outcome, the court must deny the motion."  *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added).  A "genuine"

issue is one that could be resolved in favor of either party, and a "material fact" is one that has

the potential of affecting the outcome of the case.  *Rios*, *supra*, at 271 *citing Calero-Cerezo*, 355

F.3d at 6; s*ee Anderson, supra,* at 477 U.S. 248-50.  "The movant's burden is particularly

rigorous when the disputed issue involves questions of motive or intent, since in these cases jury

judgments about credibility are typically thought to be of special importance."  *Lipsett v. Univ. of*

*P.R.,* 864 F.2d 881, 895 (1st Cir.1988). In a discriminatory employment action case, a plaintiff,

"will rarely, if ever, be able to produce a 'smoking gun' that provides direct, subjective evidence

of an employer's animus."  *Stepanischen v. Merchs. Despatch Transp. Corp.,* 722 F.2d 922, 928

(1st Cir.1983).  "Rather, a plaintiff must try to convince the fact-finder to draw an inference from

a broad array of circumstantial and often conflicting evidence ...."  *Id.* Even in these cases,

however, the Court will not refuse to grant summary judgment in favor of the defendant if the

plaintiff's claim rests merely upon "conclusory allegations, improbable inferences, and

unsupported speculation."  *Suarez v. Pueblo Int'l Inc.,* 229 F.3d 49, 53 (1st Cir.2000) (*citing*

7

*Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).  Not every genuine

factual conflict, of course, necessitates a trial.  "It is only when a disputed fact has the potential

to change the outcome of the suit under the governing law if found favorably to the nonmovant

that the materiality hurdle is cleared."  *Calero-Cerezo*, *supra*, 355 F.3d at 19, *quoting  Parrilla-*

*Burgos v. Hernandez-Rivera,* 108 F.3d 445, 448 (1st Cir.1997) (citation omitted).

     B.  McDonnell Douglas Burden-Shifting

Title VII of the Civil Rights Act of 1964 provides that it shall be illegal to discriminate

against any individual based on "his race, color, religion, sex, or national origin."  42 U.S.C. §

2000e-2(a).  In situations where there is no direct evidence of discrimination, as is the case here,

Title VII cases are analyzed under the burden-shifting framework established in *McDonnell*

*Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).  *Rios*, *supra*, 323 F.Supp.2d at 273;

*Fennell v. First Step Designs,* 83 F.3d 526, 534 (1st Cir.1996).

The *McDonnell Douglas* framework requires that plaintiff adduce evidence to support a

*prima facie* case of discrimination based on, in this case, either gender or retaliation.  *Rios*, at

273;  *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817;  *see Ayala-Gerena v. Bristol Myers-*

*Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

In a gender discrimination case, a *prima facie* case is demonstrated by showing that 1)

plaintiff is a member of a protected class; 2) an adverse employment decision was made against

her; 3) she was otherwise qualified; and 4) a similarly situated male was treated differently.

*Jacklyn v. Schering-Plough Healthcare Products*, 176 F.3d 921, 928 (6th Cir. 1999).

Once plaintiff establishes a prima facie case, the presumption arises that the employer

unlawfully discriminated against the plaintiff.  *Rios*, *supra*, at 274; *Che v. Mass. Bay Transp.*

8

*Auth.,* 342 F.3d 31, 39 (1st Cir.2003);  *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 478 (1st

Cir.1993).  The burden of production, not persuasion, then shifts to the defendant who must rebut

the inference of discrimination by articulating some legitimate, non-discriminatory reason for the

adverse employment action. *Id.; McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817;  *Feliciano*

*de la Cruz v. El Conquistador Resort,* 218 F.3d 1, 5 (1st Cir.2000).

> If the employer meets this burden, the inference of unlawful discrimination is
> waived, and the burden shifts back to the plaintiff to show that the employer's
> alleged justification is a mere pretext for discrimination. *McDonnell Douglas,*
> 411 U.S. at 805, 93 S.Ct. 1817;  *see Che,* 342 F.3d at 39;  *Feliciano de la Cruz,*
> 218 F.3d at 6. That is, within this circuit, in order to defeat a defendant's summary
> judgment motion, a plaintiff must produce evidence to show that:  (1) the
> employer's given reason for the employment decision is a pretext;  and (2) the true
> reason is discriminatory animus.  *Feliciano de la Cruz,* 218 F.3d at 6. At this
> point, "the presumption of discrimination drops out of the picture, the *McDonnell*
> *Douglas* framework with its presumptions and burdens disappears, and the sole
> remaining issue is of discrimination vel non." *Zapata-Matos v. Reckitt &*
> *Colman, Inc.,* 277 F.3d 40, 45 (1st Cir.2002)(internal citations omitted); *Mesnick*
> *v. Gen. Elec. Co.,* 950 F.2d 816, 827 (1st Cir.1991) (stating that after the
> employer rebuts the presumption the courts must "focus on the ultimate question,
> scrapping the burden-shifting framework in favor of considering the evidence as a
> whole.  Thus, the critical inquiry becomes whether the aggregate evidence of
> pretext and retaliatory animus suffices to make out a jury question.");  *see Garcia*
> *v. V. Suarez & Co.,* 288 F.Supp.2d 148, 154 (holding that at this final stage, the
> need for the orderly, strict burden-shifting framework is largely obviated and the
> focus instead becomes whether the evidence, as a whole, creates a triable question
> as to pretext and discriminatory animus).  In determining whether to grant
> Defendant's summary judgement motion, "we must weigh all the circumstantial
> evidence of discrimination, including the strength of plaintiff's prima facie case
> and the employer's proffered reasons for its action, mindful that 'everything
> depends on individual facts.' " *Feliciano de la Cruz,* 218 F.3d at 7 (quoting
> *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 57 (1st Cir.1999)).

*Rios*, *supra*, 323 F.Supp.2d 267, 274.

> C.  Adverse Action

Whether an employment action is "adverse" in order to be actionable under Title VII is

determined by an objective standard.  *Marrero v. Goya of Puerto Rico, Inc.* 304 F.3d 7, 24 (1st

9

Cir.2002).  In defining what constitutes an adverse action the First Circuit Court of Appeals has

held that:

> [t]ypically, the employer must either 1) take something of consequence from the employee,
> say, by discharging or demoting her, reducing her salary, or divesting her of significant
> responsibilities, or 2) withhold from the employee an accoutrement of the employment
> responsibility, say, by failing to follow a customary practice of considering her for a
> promotion after a particular period of service.

*Blackie v. Maine,* 75 F.3d 716, 725 (1st Cir.1996) (internal citations omitted)*; see Gu v. Boston*

*Police Dep't.,* 312 F.3d 6, 14 (1st Cir.2002).

**1.  Rotation from Worcester to Boston**

Assuming *arguendo*, that the Court considers Plaintiff's allegations with respect to this

issue (see pp. 3-4, *infra*), Plaintiff fails to establish a *prima facie* case with regard to this issue

because, although she was assigned to rotate from Worcester to Boston on a weekly basis, she

never participated in the rotation.  Plaintiff was on sick and annual leave during the period from

January 21, 2003, until she reported to the Boston office on February 4, 2003, having been

transferred to the Boston Court Operations Unit.  SMF ¶ 12.  Additionally, Plaintiff did not

suffer an adverse employment action.  *See Paquin v. MBNA Marketing Sys., Inc.*, 233 F.Supp.2d

58, 67 (D. Me. 2002).  Plaintiff must show that she was deprived in some way of a benefit or

privilege that was "part and parcel" of the employment relationship.  *Id*.  The First Circuit has

specifically mentioned the following as adverse employment actions: demotions,

disadvantageous transfers or assignments, refusals to promote, unwarranted negative job

evaluations, and toleration of harassment by other employees.  *Id.*; *see also Nelson v. University*

*of Maine Sys.*, 923 F.Supp. 275, 281 (D. Me. 1996).  Due to a lack of manpower in the Boston

Office, Plaintiff and DUSM Williams were scheduled to rotate temporarily from the Worcester

10

Office to Boston (Exhibit B). While this rotation may have been inconvenient, it did not

significantly alter Plaintiff's job responsibilities, particularly as Plaintiff's official duty station

remained the Boston Office while she was assigned to Worcester.

**2. Transfer to Boston Court Operations**[2]

Plaintiff's transfer back to the Boston Office to fill the vacant position in Court

Operations did not constitute an adverse employment action. Plaintiff was returning to the duty

station to which she had been assigned prior to USM Dicho's becoming the Marshal. A transfer

that involves no significant changes in an employee's conditions of employment, even though

the employee views the transfers either positively or negatively does not of itself render the

denial or receipt of the transfer an adverse employment action. Title VII discrimination claims

should be limited to a materially adverse change in the terms and conditions of employment

[which] must be more disruptive than a mere inconvenience or an alteration of job

responsibilities. A materially adverse change might be indicated by a termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices that

might be unique to a particular situation. *See*, *Craven v. Texas Department of Criminal Justice*

*Division, et. al.*, 151 F.Supp.2d 757, 767-68 (N.D. Tex. 2001); *Sanchez v. Denver Public*

*Schools*, 164 F.3d 527, 532 n.6 (10th Cir. 1998)(longer commute and insignificant alteration in

job responsibilities); *see also Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th Cir.

1998)(Americans with Disabilities Act case); *Kindred v. Northome/Indus. Sch. Dist. No. 363*,

---

[2] Again, it is Defendant's position that this claim has been procedurally
foreclosed. *See* pp. 3-4, *infra*.

11

154 F.3d 801, 802-04 (8th Cir. 1998)(assigning bus driver to longer school bus route without

increase in pay), *cert. denied*, 525 U.S. 1109 (1999); *Harlston v. McDonnell Douglas Corp.*, 37

F.3d 379, 382 (8th Cir. 1994)(different duties and more stressful job, but no reduction in title,

salary, or benefits; "[c]hanges in duties or working conditions that cause no materially significant

disadvantage, such as Harlston's reassignment, are insufficient to establish the adverse conduct

required to make a *prima facie* case;" *Smith v. Schering-Plough Health Care Products, Inc.*, 6

F.Supp. 2d 631, 734 (W.D. Tenn. 1997)(plaintiff conceded that transfer was not a demotion, and

that he suffered no emotional injuries, serious stress, or ruined reputation); *Joiner v. Ohio Dep't

of Transp.*, 949 F.Supp. 562, 567 (S.D. Ohio 1996)(no "loss of prestige or an objectively

demeaning change of working conditions"; new title and "the loss of opportunity for overtime

and the loss of supervisory responsibility" insufficient to constitute adverse employment action).

After the brief rotational assignment, USM Dichio reconsidered the staffing of the

vacancy being filled by rotational assignment in Court Operations.  He then decided to reassign

Plaintiff back to Boston, to fill the Court Operations position on a permanent basis.  SMF ¶ 12.

The decision to place Plaintiff in that position was based on the work to be performed, seniority

(Plaintiff was the junior deputy in Court Operations in the Worcester Office), and the proximity

of their residences to the Boston Office (Exhibits, B, H, Q).

**3.  April 2003 Court Operations and Warrant Coordinator positions**

On April 21, 2003, Plaintiff expressed her interest in being considered for the position of

Acting Supervisor of Boston Court Operations to Acting Chief Dimmitt.  SMF ¶ 21.  On April

23, 2003, Plaintiff expressed interest in being considered for a position as Boston Warrant

12

Coordinator. SMF ¶ 22. On April 28, 2003, DUSM Alison Hodgkins was selected to fill the position as Acting Supervisor for Court Operations. DUSM Paul Sugrue was assigned to the Warrant Coordinator position. SMF ¶ 23.

Acting Assistant Chief Deputy David Taylor testified that he was involved in discussion regarding the filling of both positions (Exhibit S, pp. 47-52; Exhibit J, pp. 40-41). Assistant Chief Taylor did not recommend Plaintiff, but instead nominated DUSMs Annette Lawlor and Alison Hodgkins (Exhibit S, p. 48). Assistant Chief Taylor offered his opinion to USM Dichio and Chief Dimmitt that Plaintiff "had already had an acting supervisory job, so in fairness to other senior deputies, my opinion would be to give somebody else a piece of the pie." (Exhibit S, p. 50). Assistant Chief Taylor similarly recommended DUSM Paul Sugrue for the warrant coordinator position over Plaintiff for the same reason - "to give him an opportunity that he hadn't had before...." (Exhibit S, p. 51).

Chief Dimmitt also testified that Plaintiff was considered for the warrant coordinator position, but that he did not recommend her to USM Dichio, instead recommending Paul Sugrue, who had expressed to him an interest in being a supervisor (Exhibit J, pp. 103-104). Chief Dimmitt further testified that when he received Plaintiff's email expressing interest in the Acting Supervisory Court Operations position, "it was either very close to or after we had reached a decision on Alison and/or anyone else", and that he unsuccessfully attempted to discuss the matter with Plaintiff (Exhibit J, pp. 116, 117).

USM Dichio testified that Plaintiff was considered for the Acting Supervisory Court Operations position, and that it was Chief Dimmitt's recommendation to him that DUSM Hodgkins be selected to fill the position (Exhibit Q, pp. 97, 100). Plaintiff had already been an

13

acting supervisor, "so now you have to try to be fair and give it to somebody else that didn't have

that opportunity. So, it came down and Alison got it to be fair." (Exhibit Q, p. 98). USM Dichio

further testified that he did not consider Plaintiff for the warrant coordinator position because she

was not part of the warrant squad at the time. "The warrant coordinator was a new position and

it was going to come from within." (Exhibit Q, p.103). The Marshal endorsed Chief Dimmitt's

recommendation to fill that position with DUSM Sugrue (Exhibit Q, p. 104).

Plaintiff admits that she does not know who was involved in the selection of individuals

to fill the acting supervisory assignments she applied for, or what the selecting individuals would

consider during the selection process (Exhibit T, p. 59). It is clear that with regard to the

selection of DUSMs Hodgkins and Sugrue to fill the supervisory positions vacant in April 2003,

USM Dichio acted on the recommendations of his Chief Deputy and Assistant Chief Deputy to

allow other deputies assigned within the Boston office an opportunity that Plaintiff had already

had. Nothing in the record indicates that the decision involved Plaintiff's protected status as a

female, nor is there any indication that the recommendations of Chief Dimmitt and Assistant

Chief Taylor were based upon any retaliatory animus. Indeed, Plaintiff admits that in her

estimation, no one other than USM Dichio has behaved towards her in a discriminatory manner

(Exhibit T, p. 41), and that she did not discuss her concerns that she was being discriminated

against with Chief Dimmitt (Exhibit T, pp. 54-55, 56-57).

Plaintiff appears to suggest that in order to avoid an allegation that he was acting in a

retaliatory manner towards Plaintiff after he learned in February 2003 that she had filed an EEO

action, USM Dichio was obliged to disregard the recommendations of his Chief and Assistant

Chief and their underlying basis, and instead promote Plaintiff to a second acting supervisory

position to the detriment of other senior deputies.  The Marshal's determination to accept the

recommendations of his management staff had a legitimate operational basis; accordingly, the

April 2003 promotions should not be accepted by this Court as an indicator of gender or

retaliatory bias.

**4.  September 2003 Court Operations and October 2003 Warrant Coordinator Positions**

At some point after DUSM Alison Hodgkins assumed her duties as Acting Supervisor of

Court Operations in Boston, the District learned that the position, which had been a paid

supervisory position prior to Hodgkins' assignment, was not being replaced (Exhibit Q, p. 108-

109; Exhibit L, p. 50).  Hodgkins agreed to stay in the position for the experience, without

additional pay (Exhibit Q, p. 109).  DUSM Alison Hodgkins' rotation as an unpaid Acting

Supervisor of Court Operations was extended at the end of her first 120 day assignment (Exhibit

S, pp. 53, 54, Exhibit Q,  pp. 109-11, 116).   On July 15, 2003, William Fallon became Chief

Deputy U.S. Marshal for the District of Massachusetts.  SMF ¶ 18.  On August 21, 2003,

Plaintiff asked to be considered for the position of Supervisor in Court Operations.  Assistant

Chief Taylor forwarded the request to Chief Fallon.  SMF ¶19.  On October 3, 2003, a number of

duty reassignments were made.  DUSMs Paul Dunne and Jeff Bohn were assigned as Court

Operations Supervisors.  DUSM Kevin Donahue assumed the Warrant Coordinator position.

SMF ¶ 21.  DUSM Bohn's new assignment raised concerns within management as he was

involved in a relationship with Plaintiff, who was still assigned to Court Operations, and was in a

position to be under his supervision (Exhibit L, pp. 27-30; Exhibit Q, pp. 117-19; Exhibit S, pp.

44-47).  After consultation with the USMS General Counsel's Office, Plaintiff was transferred to

Worcester in order to resolve the situation (Exhibit L, p. 30).

15

On October 28, 2003, Plaintiff's Worcester supervisor, SDUSM Thomas Bezanson advised Chief Fallon that Plaintiff had advised him that she was 4 months pregnant and was requesting light duty status (Exhibit N).  Having determined that there was insufficient light duty work to keep her occupied in Worcester, Management undertook efforts to find sufficient work for Plaintiff to perform under light duty restrictions to keep her on duty (*Id*., Exhibit Q, pp. 125-127).

On November 13, 2003, Plaintiff was presented with a limited duty letter, assigning her to the Worcester Office on Mondays and Fridays, Boston on Tuesdays and Thursdays, and Springfield on Wednesdays.  On November 24, 2003, the limited duty letter was modified to exclude work in the Springfield Office.  Plaintiff was assigned to Boston on Tuesdays, Wednesdays and Thursdays.  It was contemplated that while in Boston, Plaintiff would be assigned to the Control Room, which would provide a significant cost savings to the District, in that they would not be required to hire as many guards (Exhibit N; Exhibit S, p. 46; Exhibit Q, p. 134; Exhibit L, p. 57).  Plaintiff would also be responsible to train Court Security Officers (CSOs) for assignment to the Control Room (Exhibit S, pp. 50-52).  Chief Fallon testified that the idea to place Plaintiff in the Control Room during her limited duty status was probably his (Exhibit L, p. 41).  SDUSM Bohn's responsibilities were changed so as not to include supervision of the Control Room (Exhibit S. p. 48).  Plaintiff raised the issue of "possible side effects the electronic equipment may have on a developing baby".  Upon inquiry, the District was advised that no health hazard would be presented (Exhibit N).  Plaintiff was covered for breaks during her control room duties in the same manner as anyone else assigned to the control room (Exhibit S, pp. 59-62).

16

On January 21, 2004, SDUMS Bezanson advised Plaintiff that due to the workload situation, she would work in the Boston office until further notice, rather than rotate between Boston and Worcester pursuant to her limited duty schedule (Exhibit O). On January 27, 2004, Plaintiff submitted for consideration a request for participation in the Department of Justice Worklife program, requesting to telecommute from the Worcester Office during the remainder of her pregnancy. After being staffed through management, the request was denied on February 24, 2004, due to a lack of light duty assignments in the Worcester Office (Exhibit P).

Here again, although Plaintiff has alleged that the actions taken by USMS management, and USM Dichio in particular, were gender based and retaliatory, it is clear that a legitimate, non-discriminatory reason existed for each action taken by management to address or accommodate Plaintiff's then-existing situation while executing its primary responsibility to performance of the agency mission. Plaintiff's transfer from Boston to Worcester was necessitated by her husband's promotion to supervisory status, and was a reasonable measure, taken by other districts, to ensure that SDUSM Bohn would not be placed in the position of supervising his spouse. In signing the limited duty letter, Plaintiff recognized that she would be required to travel to the location where limited duty assignments were available. The assignment was modified over time, diminishing from a three city rotation to the Boston-Worcester rotation, and ultimately restricted to Boston, as that was where the limited duty assignments were. Plaintiff's assignment to the Boston Control Room was intended to provide Plaintiff a limited duty assignment while providing the District an operational cost savings, and was a reasonable, non-discriminatory management determination.

**CONCLUSION**

17

Plaintiff has alleged gender and retaliatory based discrimination by the United States

Marshal.  The record reflects nothing to suggest any gender based action by the USM, and amply

demonstrates that those actions attributed by Plaintiff to the USM as retaliatory were in actuality

determinations based upon the Marshal's assessment of recommendations made to him by his

management staff.  Plaintiff has not suffered any adverse action during USM Dichio's tenure.

The fact that the USM has adopted a philosophy of fairness in assignments and wants to ensure

that all deputies have an opportunity to gain supervisory experience may result in Plaintiff

having to wait her turn in the rotation for supervisory assignment; it does not, however, form the

basis for a conclusion that Plaintiff has suffered the discrimination alleged in this matter.  For the

foregoing reasons, summary judgment should be granted as to Counts I and II of the amended

complaint herein and judgment entered for the Defendant.

Respectfully submitted

GLENN T. SUDDABY
UNITED STATES ATTORNEY
NORTHERN DISTRICT OF NEW YORK

BY:  _____ /s/

BARBARA D. COTTRELL
Assistant U.S. Attorney
Bar Roll No. 101411

218 James T. Foley U.S Courthouse
 445 Broadway
 Albany, New York 12207
 (518)431-0247

## CERTIFICATION

   I hereby certify that a true copy of the above document was served upon Plaintiff's attorney of
record, Indira Talwani, Esq., Segal, Roitman & Coleman, 11 Beacon Street, Suite 500, Boston,
Massachusetts 02108, by mail, on April 5, 2005.

18

_____ /s/

BARBARA D. COTTRELL
Assistant U.S. Attorney
Bar Roll # 101411 (NDNY)