# EXHIBIT K

From:        Cindy Decaire
To:          ddimmitt
Date:        4/21/03 1:10pm
Subject:     Operation's Supervisor

Chief

If it is your inclination to replace Walter with an acting Supervisor, I would
like to express my interest in being considered for the position.

CC:          adichio

148

From:      Cindy Decaire
To:        ddimmitt
Date:      4/23/03 12:48pm
Subject:   Warrant Coordinater

Chief
In the event the Warrant Coordinator position opens up, I would also be
interested in that investigative position.

CC:        adichio

*155*

**From:** David Dimmitt
**To:** 038allhands
**Date:** 4/28/03 5:31pm
**Subject:** In-District Temporary Acting Assignments and Reassignments

The following personnel assignments within the District will take effect immediately:

Senior Inspector David Taylor is designated Acting Assistant Chief Deputy U.S. Marshal.

Criminal Investigator/Deputy U.S. Marshal Alison Hodgkins is designated Acting Supervisor Deputy U.S. Marshal for Court Operations.

Criminal Investigator/Deputy U.S. Marshal Leo Rosette is designated the Court Security Program Coordinator assigned to assist Acting/ACDUSM Taylor and USM Dichio with judicial security programs. Acting/ACDUSM Taylor will continue as the COTR.

Criminal Investigator/Deputy U.S. Marshal Paul Sugrue is designated the Investigative Services Program Coordinator assigned to assist SDUSM Tony Visalli with HIDTA/Warrant programs.

Criminal Investigator/Deputy U.S. Marshal Jeff Christo is assigned to Investigative Services/Warrants.

**The position of "Court Operations Desk Officer" has been eliminated as a full time operational position.** However, personnel assigned to court operations will be called upon by A/SDUSM Hodgkins to cover the desk as needed and for professional developmental purposes.

dmd

66

# EXHIBIT M

**From:**     Cindy Decaire
**To:**         dtaylor
**Date:**      8/21/03 3:36pm
**Subject:**   Acting Supervisor

Dave

As you may be aware, 120 days ago I asked to be considered for the position of Acting Supervisor in Court Operations.  I would  request again to be considered for this position.

235

**From:**      David Taylor
**To:**        cdecaire
**Date:**      8/21/03 5:09pm
**Subject:**   Acting Supervisor -Reply

Cyndy,
I will forward your request.

Thanks

**CC:**        wfallon

245

```
From:      William Fallon
To:        38All
Date:      9/12/03 12:05pm
Subject:   In District Policy
```

Over the next few months, we will be developing and implementing "In-District Policies" which will address some of the issues which some personnel are having difficulty in understanding. The purpose of these policies is to establish clear expectations in certain areas for everyone and to ensure fairness across the board. Some of the policies will be:

Cell Phone/Pagers - All personnel assigned a cellphone and/or pager are expected to answer calls. There has been several incidents where personnel have gone long periods of time without responding to their supervisor's attempts to reach them. 1811s are mandatory based on their LEAP responsibility.

Professionalism - There appears to be a problem with comments made outside of the office to non - USMS personnel regarding USMS issues. There will be absolutely no "airing of dirty laundry" to outsiders, which include task force personnel. Every time someone complains about a personnel issue or other perceived problem to someone other than one of our district employees, it is an embarrassment to all of us. The respect we deserve from other agencies and the courts starts with our ability to keep our problems in-house, and unless we remain professional in our conversations, we will never earn that respect.

Warrant/Task Force assignments - we will be developing a rotation schedule for all of our assignments. Part of the rotation decision will be based on performance and attitude. The policy will include all of the expectations we have in making decisions.

The policies will not be limited to those above. I was not a strong proponent of policies until I saw how well they work in making everything fair for everyone.

258

U.S. Department of Justice

# United States Marshals Service District of Massachusetts



## District Policy Notice

NUMBER: 04-01

DATE: January 20, 2004

SUBJECT: Investigative Assignments

EFFECTIVE DATE: 02-01-04

SCOPE: This Policy applies to all D/MA personnel

PROPONENT: CDUSM William Fallon
　　　　　　Telephone Number 617-748-2504

DISTRIBUTION: District of Massachusetts - All offices

POSTING INSTRUCTIONS: This policy will be posted in the squad rooms and on the District Web page.

_____
United States Marshal

This policy pertains to the District of Massachusetts only. If this policy conflicts with U.S. Marshals Service policy, Marshals Service policy will control.

248

# United States Marshals Service
# District of Massachusetts

**NUMBER:** 04-01                        **DATE:** January 20, 2004

**SUBJECT:** Investigative Assignments

**PURPOSE:** Establish Warrant Squad and HIDTA Fugitive Task Force Assignments.

**Policy:** This policy establishes the D/Mass's warrant squad rotation and HIDTA Fugitive Task Force assignments. This policy takes into account our current workload and caseload, the current participating agencies on the HIDTA FTF, and the overall performance of all of our criminal investigators and their effort to work fugitive investigations. This reorganization should assist our district in accomplishing our mission in a more efficient manner and was designed to reduce the amount of time our investigators assigned to the enforcement section have to spend in court.

The assignments listed below will be evaluated in 6 months with the possibility of a rotation at that time.

Boston Warrant Squad/HIDTA FTF Supervisor: Paul Dunne

Boston Warrant Squad:
Warrant Coordinator - Paul Sugrue
Warrant Squad - Jeff Christo, Scott Kimball, Don Freeman, Kevin Donahue

HIDTA Fugitive Task Force:
HIDTA Coordinator/Boston PD area - Chris McEnaney
Lawrence/Lowell area - Steve McKearney
Worcester area - Mark Lewis (Supervised by SDUSM Tom Bezanson)

All future rotations will be evaluated every six months, with no guarantees of rotation. As stated in our last office meeting, DUSMs who demonstrate a high level of investigative performance on a consistent basis, while assigned to warrants or operations, will have a better chance of selection into one of the warrant squad or TF positions. The enforcement SDUSM will attempt to assign as many cases as possible to DUSMs in the operations section, without jeopardizing our district's ability to clear our class 1 warrants. Operations DUSMs are reminded to use their spare and LEAP time to conduct their investigations and to also work with their SDUSM to find time to work their warrants. All SDUSMs must work together in an attempt to free up DUSMs as needed for their investigations.

The operations SDUSMs will develop a weekly rotation list for our 082 DUSMs for potential participation in the warrants section. The Ops SUSMs will assign the 082, at the top of the list for that particular week, to assist the warrant squad when the opportunity exists. All 1811 DUSMs are reminded to assign various investigative duties to 082 DUSMs and assist them in learning the fugitive investigative process.

249

**From:**       William Fallon
**To:**         38All
**Date:**       10/3/03 4:45pm
**Subject:**    New Assignments

We have several changes we were forced to make, based on promotions and vacancies. This fiscal year, the USMS will not have the special assignments and guard funding we were fortunate to have in years past. All of our requests for guard hires and overtime, in-district, will be scrutinized and potentially denied. These changes will effect the entire USMS. In an effort to maintain our efficiency and effectiveness, we will be shuffling some personnel around.

Effective Tuesday, October 14, 2003  Boston will have the following assignment changes:

Dave Taylor has been selected Acting Assistant CDUSM, NTE 1 year.

Paul Dunne and Jeff Bohn will be assigned Operations Supervisors. In this capacity, they will be in charge of the day to day court & prisoner operations for the Boston Office.

Leo Rosette will become Acting Senior Court Security Inspector, for 120 days. Allison Hodgkins will move into the JSD section to work with Leo. Steve Donaher will return to Operations, but will keep his ADT collateral duty, where his expertise is essential in keeping any technical security issues from effecting our operations.

Other assignments will become effective once we have a date for Tony Visalli's departure to ESU. Until that time, SDUSM Visalli will be working with the following positions to ensure a smooth transition once he departs:

Paul Sugrue will become acting SDUSM for Investigations, for 120 days.

Kevin Donahue will be moved into warrants and will assume the Warrant Coordinator position.

Chris McEnaney will become our HIDTA Fugitive Task Force Coordinator.
This position was designed to help coordinate all HIDTA cases, issues and reports.

The USM & I would like to take time to recognize the excellent work done by Allison Hodgkins while assigned Ops SDUSM. Allison's contributions and supervision were essential to our office being able to complete our mission with fewer resources.

We would like to also recognize everyone here, in the D/MA, for their hard work and dedication to the district. We have many changes and challenges ahead, but I am confident the quality personnel we have will enable our district to overcome those challenges.

89

# EXHIBIT N

```
From:        Tom Bezanson
To:          Chief
Date:        10/28/03 10:44am
Subject:     DUSM DeCaire
```

Be advised that DUSM Cyndy DeCaire has advised me that she is 4 months pregnant and is requesting to be put on a light duty status.  Her due date is April 15, 2004.

I will immediately keep her from any contact with prisoners while in this office.   I can keep her busy with process and some warrant office work as well as admin work when Ruth May is out (which is every Friday for the rest of the year).

But, I will need some direction on the light duty issue.  Please do not send the DUSM that she replaced out here for a fill in.  I have some other ideas and would like to discuss them with you when you return next week.

Thanks,

Tom

CC:          Dave,Dan,Bill

186

From:        David Taylor
To:          wfallon
Date:        10/28/03 11:23am
Subject:     DUSM DeCaire -Forwarded

Chief,
Just because someone requests light/limited duty, do you have to grant it?
There is no need in a sub office for light duty and we can't bring her back to Boston
on light duty because of the supervisory issue. If you did let her stay in the
sub-office on light duty, is LEAP justifiable?
As far as reassigning anyone else to Worcester, with the staffing mandates greater in
Boston, we could supply Worcester on an as needed daily basis.

DBT

187

From:        Tom Bezanson
To:          wfallon
Date:        10/28/03 5:03pm
Subject:     DUSM DeCaire -Reply -Reply

I will put together some ideas for her duties along with the USMS Deputy list of required duties, I think it's a USM-321??

Let's discuss this when you return next week if that's OK?

Hope your having fun and tell Chief Dimmitt I said Hi..

Thank you.

>>> William Fallon 10/28/03 04:55pm >>>
We need to come up with a limited duty letter to give her listing any duties she may have.  Pls take a minute an list any duties you feel she can perform in all of our offices.  It may turn into one day in Wor, one in Spfld and a few in Boston.  Thanks

>>> Tom Bezanson 10/28/03 10:44am >>>
Be advised that DUSM Cyndy DeCaire has advised me that she is 4 months pregnant and is requesting to be put on a light duty status.  Her due date is April 15, 2004.

I will immediately keep her from any contact with prisoners while in this office.  I can keep her busy with process and some warrant office work as well as admin work when Ruth May is out (which is every Friday for the rest of the year).

But, I will need some direction on the light duty issue.  Please do not send the DUSM that she replaced out here for a fill in.  I have some other ideas and would like to discuss them with you when you return next week.

Thanks,

Tom

CC:          Dave

41S

From:        William Fallon
To:          dtaylor
Date:        10/29/03 5:04pm
Subject:     DUSM DeCaire -Forwarded -Reply

No, but we have to be careful in regards to being fare to everyone.  We
probably can work something out in Boston, if we need to.  Have Tom keep her
on light duty in Wor until we make a decision.  If Dan or Bill R needs
administrative assistance, don't hesitate in sending her to either office.
We will discuss more next week.  Thanks

>>> David Taylor 10/28/03 11:23am >>>
Chief,
Just because someone requests light/limited duty, do you have to grant it?
There is no need in a sub-office for light duty and we can't bring her back to
Boston on light duty because of the supervisory issue. If you did let her stay
in the sub-office on light duty, is LEAP justifiable?
As far as reassigning anyone else to Worcester, with the staffing mandates
greater in Boston, we could supply Worcester on an as needed daily basis.

DBT

44S

```
From:        William Ryan
To:          wfallon
Date:        10/30/03 11:51am
Subject:     DUSM DeCaire -Reply -Reply
```

Chief,

    We need to have her physician complete the USM522A so we know her limitations. Also, she is entitled to LEAP as long as she maintains her full time schedule.

    Let me know if you want me to give one to Tom when he is here today.

    Also, I am taking AL tomorrow - Fri. 10/30.

455

```
From:        Tom Bezanson
To:          wfallon
Date:        11/3/03 1:32pm
Subject:     DUSM DeCaire -Reply -Reply -Forwarded -Reply
```

Chief,

I gave DeCaire the USM522A form provided by Bill Ryan and told her to have her doctor fill it out and return it by the end of the week.

Also, she advised that her doctor thought it was best that she did not participate in any firearms qualification while she was pregnant.

I will keep you updated.

Tom

>>> William Fallon 11/03/03 09:10am >>>
Tom, pls start with this.  We will keep her administrative type light duty until this is completed.  Give her until the end of the week, at the latest to complete.  Thanks

CC:          Dave,Bill

108

From:           William Fallon
To:             Tom,Paul,Dan
Date:           11/13/03 3:08pm
Subject:        DUSM DeCaire Limited Duty Letter

Attached is a limited duty letter for DUSM DeCaire.  In order to accomodate her light
duty request she will be assigned as listed in the letter:

Mondays & Fridays       Worcester/SDUSM Bezanson
Tuesdays and Thursdays - Boston/SDUSM Dunne
Wednesdays - Springfield/SDUSM Spellacy

Listed are some of the approved limited duties, per USMS policy.

In Boston - Paul - pls assign DUSM DeCaire to the control room, thus eliminating the
need to hire a guard to sit in their on those 2 days.

The restrictions, as listed by her physician, include no:

heavy lifting or carrying, 45 lbs and over
firearms
standing or sitting for prolonged periods of time
ability to function normally with irregularly scheduled intake of food
excessive heat
excessive humidity
unusual fatigue factors
aggressive law enforcement activities

As with al. cases of limited duty, do your best to assign DUSM DeCaire sufficient
work.

Tom - pls print the attached letter, have DUSM DeCaire sign, proveide her a copy and
return to Bill Ryan to file.

Thanks

CC:
                USM,Dave, AO

116

November 13, 2003

TO:     Cynthia DeCaire
        DUSM/CI, D/MA

FROM:   William Fallon
        CDUSM, D/MA

SUBJECT:  Limited Duty

I received the medical evaluation information (USM 522A) from Aaron Mendel, MD, dated November 03, 2003. Based on the diagnosis, you are temporarily unable to perform all the essential functions of your position. The narrative of your Doctor's report does not indicate a date when you are expected to return to full duty status. You are required to provide an additional 522A completed and signed by your physician, indicating you are able to return to full duty, once your current condition is over and you are able to resume the essential functions of your position.

Accordingly, you are temporarily assigned to Limited Duty status effective on October 28, 2003 (the day you informed SDUSM Bezanson). Your temporary condition allows you to perform any administrative tasks as assigned by district management. You are excluded from participating in any operational assignments. Although there are no guarantees limited duty assignments will be available throughout the entire term of your restricted requirements, you are being assigned the following duties which will allow you to presently avoid having to use sick leave.

Should you feel that any assignment is in danger of violating the restrictions set out by your physician, please notify your SDUSM immediately.

Your assignment while on light duty will consist of the following:

1. Mondays and Fridays - Worcester office. Report to SDUSM Bezanson for various duties as listed below.
2. Tuesdays and Thursdays - Boston office. Report to SDUSM Dunne for USMS control room assignment and various duties as listed below.
3. Wednesdays - Springfield office. Report to SDUSM Spellacy for various duties as listed below.

118

Some of the duties you are able to perform are:

1. Control room operator.
2. Investigative research and analysis.
3. Conduct Misdemeanor and traffic investigations.
4. Assist in asset forfeiture.
5. Service of civil court orders to government officials and other civil litigants who are of equally low risk.
6. Assist in accountable property inventory.
7. Develop AED course and conduct instruction.
8. Assist district management in completing surveys, studies or other projects as requested.
9. Provide administrative support as directed by district management.
10. Other duties as assigned.

As stated in your Doctor's evaluation, your condition may change which might increase the amount of restrictions in your duties. You are required to have your physician complete an additional 522A listing any further restrictions as they arise.

At the current time you are still receiving Law Enforcement Availability Pay, therefore you are still required to honor your LEAP obligation.

The above list of duties and assignments have been made based on current district workload and are subject to change. We will make every attempt to accommodate your current limited duty status and afford you opportunity to work in the district.

If you have any questions, please address them through your SDUSM.


_Cynthia De Caur_                                    _11/20/03_
I have read and received a copy of this memo.          Date

119

U.S. Department of Justice

United States Marshals Service

District of Massachusetts

Worcester MA 01605

November 24, 2003

TO:     Cynthia DeCaire
        DUSM/CI, D/MA

FROM:   William Fallon
        CDUSM, D/MA

SUBJECT:   Limited Duty

This is a follow up to my original memo to you on limited duty, dated November 13, 2003. In order to accommodate your needs and to also provide an efficient solution to your complaint of "being bounced around", you will now be assigned to work in just the Boston and Worcester offices. As we discussed during our conference call, this schedule was developed in an effort to allow you to work in the Worcester office, your permanent duty station, as much as possible. As I explained to you, there is not enough work for you or any other DUSM to do in the Worcester sub-office on a full time limited duty basis. We can at the current time, however, accommodate your current status with work in Boston. You will not be required to travel to Springfield on Wednesday's, as listed in the November 13, 2003 memo. Your limited duty schedule will be as follows:

Mondays and Fridays - Worcester sub-office. Duties as listed in 11/13/03 memo, as assigned by SDUSM Bezanson.

Tuesdays, Wednesdays, and Thursdays - Boston office. Assigned to control room by SDUSM Dunne.

As stated in the previous memo, this schedule is contingent on workload. There might be days when there is not enough work in Worcester to justify limited duty. In those instances you will be assigned, by SDUSM Bezanson, to the Boston office.

If you have any questions, please discuss them with SDUSM Bezanson.

_Cynthia DeCaire_                                        _11/24/03_
I have read and received a copy of this memo.                /Date

123

```
From:        William Fallon
To:          Tom
Date:        11/24/03 1:00pm
Subject:     DUSM DeCaire
```

Tom,

Attached is a follow up limited duty letter, eliminating Springfield on Wednesdays, maiking her duty in Boston & Worcester only.

Also - She can attend to her collateral or other duties while working in Worcester.  While in Boston, we can keep her assigned, just as we would with anyone else on limited duty, to the control room.

Pls print on letter head and give to her.  pls fax signed copy back to 748-2599.

Thanks

CC:          USM,Dave,Paul,Dan,AO

125

```
From:       Cindy Decaire
To:         pdunne
Date:       11/24/03 2:11pm
```

Paul

As you are probabely aware my schedule has changed again.

As per our conversation on 11/20, I have not recieved any answers regarding my concerns over being assigned to the control room.  You mentioned talking to AACDUSM Taylor about other assignments.

I am now assigned to the control room three days a week, and I am extemely concerned about the possilble side effects the electronical equipment may have on a developing baby.

 Can you guarentee the control room is safe for a pregnant woman?

```
CC:         dtaylor
```

*127*

```
From:        David Taylor
To:          wfallon
Date:        11/24/03 2:22pm
Subject:     C DeCaire Control room assignment

Chief,
FYI
```

528

From:        Mike Brumbaugh
To:          bpalk
Date:        12/1/03 12:01pm
Subject:     Effects of control room assignment on pregnancy -Reply -Reply

Bill,
Please let the district know that, to our knowledge, a typical CSO USMS
Judicial Security System equipped Control Room should present no health
hazards to the personnel assigned to it.
I do recall some issues with a control room in California which shared (or at
least was somehow connected to) the ventilation system with the cell block and
may have posed a TB health hazard.  The district will have to check with CCMG
on the particular ventilation configuration at this particular site.  But, I
believe the ventilation issues have been addressed and resolved across the
country.
Mike


>>> Dave Hubbuch 11/28/03 09:02am >>>
I have never heard of any such problem.

Good detective work on the NB

>>> William Palk 11/28/03 07:13am >>>
One of my districts has inquired about the advisability of assigning a
pregnant CSO to control room duties and whether or not such assignment could
have any adverse effct on such pregnancy.  Do we have any such info?

BP

NB:  There was no indication that the pregnancy occurred in the control room.

CC:          JSS contractors, jss specialists, Mark Strickland ...

130

# EXHIBIT O

**From:**      William Fallon
**To:**        38All
**Date:**      1/12/04 3:49pm
**Subject:**   Promotions

Congratulations to Dave Taylor for being selected as D/MA's ACDUSM and to Alison Hodgkins as SDUSM.

In lieu of these promotions, Paul Dunne will now assume the Warrants SDUSM position, while Alison will work w/ SDUSM Jeff Bohn as Boston Ops SDUSMs.

242

```
From:        William Fallon
To:          HQMAILC.DIR.sgibson
Date:        1/22/04 1:32pm
Subject:     DUSM DeCaire - D/MA
```

Sue.

This is a copy of an E-mail DUSM DeCaire sent to our ACDUSM this afternoon.  I spoke with SDUSM Bezanson (her supervisor of record) and her description of her conversation does not match his.  DUSM DeCaire's limited duty assignment has not changed, she is still assigned to Worcester on Mondays and Fridays, and Boston on Tuesday through Thursday.  SDUSM Bezanson has the authority to send her to Boston Mondays and Fridays, if there isn't light duty work in the Worcester suboffice.  Having DUSM DeCaire work in our Boston control room saves the district by not having to assign an 082 or DEO on those days, which results in the district having to hire one less guard.  Nothing DUSM DeCaire does would be different from any other DUSM on limited duty while assigned to Worcester or Springfield.

I have instructed the ACDUSM to call DUSM DeCaire along with SDUSM Alison Hodgkins into his office tomorrow (Friday) to discuss this situation and to write up a written report of the meeting.  I have also instructed SDUSM Bezanson to provide a memo to the ACDUSM describing his interpretation of the phone call with DUSM DeCaire.

The original issue is involving DUSM DeCaire working on our district's CPR/AED program, which is stalled pending DUSM DeCaire and another DUSM's certification as an instructor.  They are simply waiting for the organization they went to, to arrange a class for them to teach in front of a certified instructor.

The underlying factor I believe is that DUSM DeCaire feels her assignment in the control room is beneath her and that she should be free to perform other duties.  Again, limited duty is not an entitlement and the D/MA can best benefit from any limited duty positions by assigning them to the Boston control room (both of which have been explained to her numerous times).

Pls take a look and advise me on any other steps I need to take on this situation:

To:  ACDUSM Taylor, From DUSM DeCaire

I received a phone call yesterday in the CBC at approximately 1430 hours, from SDUSM Bezanson.  SDUSM Bezanson called demanding a reason why I e-mailed the Chief and did not cc him a copy.  SDUSM Bezanson's tone from the onset of the conversation was very antagonistic, and he interrupted me several times as I tried to explain my reasoning.  After finally explaining to SDUSM Bezanson that the Chief called me directly in Boston and asked me to send him an E-mail, this was not exceptable to him and he accused me of several violation's.  SDUSM Bezanson then told me that I will now be assigned to the Boston office until further notice.  I asked SDUSM Bezanson ˙ is this because of the e-mail".  SDUSM Bezanson's tone remained antagonistic and he told me he was addressing the issues of my e-mail, and that if I need anything out of the Worcester office I should get it before or after hours.

In my 12 years with the US Marshal Service, I have never been addressed in such an unprofessional manner, and consider SDUSM Bezansons's phone call to be threatening and unwarranted.  I also feel his punishment of banishing me to the Boston office and not allowing me in the Worcester office during working hours to be an irrational order.

I am finding it very difficult to be productive in such a hostile and retaliatory environment.

From:       Tom Bezanson
To:         Dave
Date:       1/22/04 2:47pm
Subject:    DUSM DeCaire

Dave,

On 1/21/04, I called DUSM DeCaire at the CBC in Boston. I asked her if she sent an e-mail to the Chief and forgot to CC me. She stated the Chief told her to e-mail him and she thought it did not include me. I reminded her about the Duties and Responsibilities memo she was given with all the DUSMs in this office. This included for all DUSMs to CC the supervisor with any info or messages to the ACDUSM, CDUSM or USM.

I advised her that she would be working in the Boston office until further notice from me, because of the workload in Worcester at this time. I further advised her that when she is assigned to Boston that she will report to SDUSM Hodgkins and turn in all leave slips to SDUSM Hodgkins. Additionally, I advised her that Worcester is still her duty station and I am still her Supervisor. Her USM-7 should be faxed to this office when needed.

I asked her about her equipment needs and why she didn't bring this to my attension? She stated that all her "stuff" is in the Worcester office and she has been unable to get it because she has been working in Boston. I advised that she has never been prevented from coming into this office and gathering any equipment or (again) has brought this matter to my attension. I advised her that she should use her LEAP hours if necessary, to not interfere with her Boston duty hours to retrive any equipment.

Tom


CC:        Chief

256

From:        David Taylor
To:          wfallon
Date:        1/23/04 2:55pm
Subject:     01-23-04 C. DeCaire/A. Hodgkin meeting.

Chief,
On 01-23-04 from approx. 11:45-12:35, I met with CIDUSM C. DeCaire and SDUSM A.
Hodgkins to discuss CIDUSM DeCaire's 01-22-04 Reassignment #7 e-mail that was sent to
me.
I asked DeCaire if she wanted me to respond to it, she said yes.
I informed her that I had talked to SDUSM Bezanson and had an e-mail from him
regarding the same topic as her e-mail. I told her that it was different from hers.
She said she wasn't surprised. She then explained her interpretation of their
conversation.
I assured her that she wasn't "banished" from the Worcester office. I reiterated to
her that Worcester was her assigned office and that she had not been reassigned, she
was merely reporting to Boston because that is where the Light Duty work was
available. I also stated that I realized it wasn't glamorous duty, but that she was
really helping out the district with her assignment in the CBC.
I told her that I couldn't know how she interpreted her conversation with SDUSM
Bezanson, but that I saw a need for good communication between SDUSMs Bezanson and
Hodgkins as well as herself to eliminate any future misunderstandings. She had a
concern as to how she was going to schedule medical appointments, if she didn't know
where she would be working. I asked her how many appointments she had scheduled at the
present time? She said two. We then discussed the LD arrangement. T.W,Th in Boston and
M&F in Worcester if needed. I mentioned that Ruth was done taking Fridays off and I
wasn't sure about Mondays, but this is where good communication between SDUSMs was
needed. We agreed that SDUSM Bezanson would notify SDUSM Hodgkins, approx. a week
ahead of time, as to DUSM DeCaire's Worcester schedule (what days LD was available in
Worcester). CIDUSM DeCaire would try to schedule future appointments either at the
beginning or end of the day and then would give dates to SDUSM Hodgkins. This type of
communication would afford SDUSM Hodgkins the opportunity to try an assist CIDUSM
DeCaire in giving her a schedule where she wouldn't have to use as much SL. This
would help CIDUSM DeCaire use less sick time to keep these appointments. Again, I
emphasized that good communication was needed between all parties. The days CIDUSM
DeCaire was scheduled to work in Boston she would answer to SDUSM Hodgkins. What her
assignments would be will be issued by SDUSM Hodgkins.
We all agreed that this was acceptable.
We then addressed the CPR/Defib.Training and what equipment CIDUSM DeCaire needed from
Worcester. It was agreed that she would go to Worcester Monday (01-26-04) to pick up
equipment and then come to Boston. She wouldn't need a whole day in Worcester, just a
couple of hours. I assured her that SDUSM Bezanson wasn't banning her from the
Worcester office during regular work hours, but was merely saying the days she was
assigned to Boston, if she needed any equipment from Worcester, she should be picking
it up before or after regular hours (LEAP) so as not to be unavailable for her duty
hours in Boston and cause any scheduling difficulties for SDUSM Hodgkins.
I mentioned to notify me if there was any problems with communications between any of
the parties.

DBT


CC:          adichio

259

# EXHIBIT P

U.S. Department of Justice

United States Marshals Service

*District of Massachusetts*

_____

Boston, MA 02210

To:       Alison Hodgkins
          SDUSM
From:     Cynthia DeCaire
          CIDUSM
Date:     January 27, 2004
Subject:  Worklife

The Department of Justice promotes a Worklife philosophy. This philosophy says that the department will "strive to support employees by making available practical and workable solutions to balancing the demands of work and personal lives." The United States Marshals Service has supported this philosophy and the Worklife program on many occasions.

I would like to request participation in the Worklife program. In particular, I would request participation in the telecommuting work option which would allow me to work in the Worcester office during my last two months of pregnancy. Participation in this program would provide me flexibility in balancing professional and personal priorities, decreased stress, and decreased annual and sick leave usage. These are all goals of the Worklife program.

I recommend that this program be allowed for at least the minimum 90 day participation period. I have attached the U.S. Department of Justice Flexible Work Options Request Form. You must complete section II and provide myself and the Worklife coordinator with a signed copy within 3 weeks. If request is denied, please explain in full the reasons for denial. In order to assist you, I have attached examples of previously submitted Worklife requests and testimonials from other Deputy United States Marshals and Department of Justice employees.

142

U.S. Department of Justice
Flexible Work Options Request Form

(To be completed for new/formal flexible work option only)

| 1.    Employee completes this section | |
|---|---|
| Name<br><br>Decaire, Cynthia | Date of Request<br><br>01/27/04 |
| Job Title/Grade<br><br>Criminal Investigator | Component |

**Specify the flexible work option requested (including a description of the work option, proposed schedule, total weekly hours, and proposed duration of the work option). Your component Worklife Program Coordinator can provide guidance on available work options in your component.**

Work Option: Telecommuting -90 day trial period beginning on 03/08/04. Work in Worcester office Monday-Friday 8:30 am to 5:00 pm.

**How will your proposed schedule sustain or enhance your and your organization's ability to get the job done?**

My proposed schedule will permit me to keep important doctors appointments previously scheduled in connection with my pregnancy. These appointments were scheduled while working in the Worcester office, which consequently is my official duty station. Working in Worcester office would allow me to save a great deal of sick leave and annual leave. My current commute time while assigned to Boston is between 60-75 minutes on average. My commute time to the Worcester office is approximately 18-22 minutes. This shorter commute would result in reduced stress which will be particularly important during my last 8 weeks of pregnancy. The reduced stress would result in improved effectiveness and greater productivity. The shorter commute time would also provide me with flexibility in balancing not only professional priorities but personal priorities as well. For example, while assigned to the Worcester office I arranged my child care responsibilities accordingly. Now, while assigned to the Boston office, I must take annual leave or sick leave every day to fulfill these same child care responsibilities. The telecommuting work option would allow me to fulfill these responsibilities as originally planned while assigned to Worcester and would also allow me to save a great deal of leave. The telecommuting option would also allow me to carry through with my volunteer work in the community as well. While assigned to the Worcester office I volunteered to become the troop leader for Girl Scout troop 407. I am still the troop leader, however, the unexpected assignment to Boston, full time, has jeopardized my ability to fulfill this obligation as well. The telecommuting work option would allow me more time to develop an AED training program which is a priority for the district.

**Discuss the potential problems that your changed schedule could create and how you suggest overcoming them with each of the following groups? a) customers; b) co-workers; c) your supervisor; and d) others?**

143

The proposed telecommuting schedule would allow me to assist my co-workers with such things as performing investigative research and analysis for the busy Worcester fugitive unit. I am also capable of conducting misdemeanor and traffic investigations, serving civil process, and assisting with asset forfeiture. The schedule change would not produce any problems with supervision. In fact, since my supervisor works in the Worcester office, this would mean he could better evaluate my performance since he would see me five days a week instead of 0 days a week.

**If applicable, describe any additional equipment/expense that your arrangement might require.**

None

**Detail any short (less than 4 mos.) or long-term (4 mos. or more) cost savings that might result from your schedule.**

The reduced commute would save on wear and tear of my assigned Government owned vehicle which has over 111,000 miles of usage

**What reasonable work products and evaluation criteria would you propose for you and your supervisor or manager to assess how your performance is meeting or exceeding expectations? (Think about whether your Performance Work Plan is sufficient, or if it needs to be revised.)**

Present evaluation criteria would suffice to assess performance

**How frequently do you propose progress be monitored?**

I anticipate that progress would be monitored constantly. Since I will be in the Worcester office 5 days per week, there will be sufficient opportunities to meet face-to-face with my duty station supervisor.

**II.     Manager completes this section. Upon completion of this section, one signed copy should be given to the employee, one copy forwarded to your component Worklife Program Coordinator, and the original retained in your files. Contact your component Worklife Program Coordinator if you would like guidance on how to respond to the request.**

Request for a Flexible Work Option is:

[ ] approved as requested     [ ] modified and approved       [ ] declined

If modified or declined this request, please explain why:

2

144

| Manager's Signature | Date |
|---|---|
| Employee's Signature | Date |
| Beginning Date of Work Option | Ending Date of Work Option |

145

**From:**    Alison Hodgkins
**To:**    dtaylor
**Date:**    1/28/04 8:49am
**Subject:**    Worklife Program -Reply -Reply

No problem.

>>> David Taylor 01/28/04 08:47am >>>
Al,
Have DUSM DeCaire submit her request for the Worklife Program to SDUSM Bezanson, her immediate SDUSM.
I'm not familiar with this program and I do not know if it pertains to DUSMs on Limited Duty or if it is only for administrative personnel. I'm sure Tom will research this and get guidance from HQ before forwarding his response to me.
Thanks,
    Dave

>>> Alison Hodgkins 01/27/04 07:28pm >>>
DUSM DeCAIRE has submitted a letter to me requesting to participate in the Worklife Program.  I will be happy to address the issue, but believe that it should be directed to her immediate supervisor, Thomas Bezanson, in the Worcester office.

Please let me know which you prefer, as there is a response deadline of three weeks.

Thanks, Alison

267

From:          David Taylor
To:            adichio,wfallon
Date:          1/29/04 9:31am
Subject:       Worklife Program -Forwarded

Marshal and Chief,

As you know, I told SDUSM Hodgkins to have CIDUSM DeCaire direct her request to SDUSM Bezanson.

I have read the request and documentation CIDUSM DeCaire provided to SDUSM Hodgkins and am putting a copy of it to both of you.

After I reviewed it I have these thoughts:

1) CIDUSM DeCaire's request is neither practical nor workable in meeting the demands of this district. We are presently promoting the Worklife philosophy having created Light Duty for her to work, (that truly helps the district utilize a DUSM or guard to work other than in the CBC). CIDUSM DeCaire has been told numerous times that her working the CBC is helping the district. CIDUSM DeCaire is not concerned about the districts goals and mission, just her agenda.

2) During my meeting with CIDUSM DeCaire and SDUSM Hodgkins on 01-23-04, we discussed CIDUSM DeCaire's scheduling of medical appointments and how it would be most advantageous for her to schedule appointments and still meet the needs of the district. We agreed that good communication between CIDUSM DeCaire, SDUSM Hodgkins and SDUSM Bezanson was needed.
CIDUSM DeCaire stated she presently had two appointments scheduled. I told her to let SDUSM Hodgkins know when they were. I also recommended that she should schedule future appointments either first thing in the morning or late in the afternoon, this would benefit her in using less leave time, no matter which office she was working in on those days. She agreed. As of this date, CIDUSM DeCaire has only provided SDUSM Hodgkins with 02-13-04, 12:00-13:30 appointment.

3) CIDUSM DeCaire has proposed beginning her 90 day trial period on 03-08-04 and to work in the Worcester office. Worcester does not have a need for a CIDUSM/DUSM who is only in a light duty status. In fact, at some point in the near future we should discuss the possibility of just keeping the Worcester office staffed with one SDUSM, three operational (CIDUSMs/082s), and one Admin. person. Keeping in mind that the ACDUSM is available also in that office.

4) In CIDUSM DeCaire's response to enhancing the organizations goals, she hasn't put forth any tangible arguments. I have addressed the scheduling issues above in # 2.

The AED program should be completely developed before March and the DUSM that is developing this with her is assigned to the Boston office. In fact, most of the training should be completed before she takes maternity leave. Which brings me to the question, if she will be able to participate in the training at this stage of her pregnancy. I'm sure DUSM Neal would be able to handle all the training in her absence.

As far as CIDUSM DeCaire conducting misdemeanor and traffic investigations and assisting with asset forfeiture, there is not enough of that type of work to be done in the Worcester office to justify another CIDUSM/DUSM. As far as serving civil process, CIDUSM DeCaire did not qualify with her issued firearm do to her pregnancy and note from her doctor stated she was not to use firearms ( loud noises?). We will not put her in a situation that could put her in harms way. The staffing level at the Worcester office can handle all the fugitive research and investigations. See # 3 above.

268



# UNITED STATES MARSHALS SERVICE
## --District of Massachusetts--

### ANTHONY DICHIO
### UNITED STATES MARSHAL

John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 500
Boston, MA  02210

## (617) 748-2551
## (617) 748-2559 *(fax)*

TO: _____ Tom _____

FROM: _____ AL _____

DATE: _02 - 24 - 04_

NUMBER OF PAGES: _3_ (EXCLUDING COVER SHEET)

COMMENTS: _Handed Ltr Both Pages And copy of original request to Dusm Declare (Just Now). 1:30am_

WARNING: MANY FACSIMILE MACHINES PRODUCE COPIES ON THERMAL PAPER. THE IMAGE PRODUCED IS HIGHLY UNSTABLE AND WILL DETERIORATE SIGNIFICANTLY IN A FEW YEARS. IT SHOULD BE COPIED ON A PLAIN PAPER COPIER PRIOR TO FILING AS A RECORD.

307



U.S. Department of Justice

United States Marshals Service

*District of Massachusetts*

Boston, MA 02210

February 24, 2004

MEMORANDUM To:   Cyndy DeCaire
CIDUSM, D/MA

From:   Tom Bezanson
SDUSM, D/MA

Subject:   Flexible Work Option Request


Your request for a Flexible Work Option, in particular Telecommuting is denied. According to the USMS, Worklife Coordinator, there are no USMS, GS-1811 employees that telecommute. However, the United States Marshals Service and the District of Massachusetts support a Worklife philosophy. This is evident by the fact that this district has allowed you to work on a light duty status due to your pregnancy. This work status is not a right of the employee but up to the district where you are assigned and contingent upon the workload.

Unfortunately, the Worcester sub-office does not have light duty available at this time. As you pointed out in your request, the Worcester fugitive unit is very busy, but already has someone assigned full time to conduct investigative research and analysis. In addition, your own doctor submitted a USM-522A that restricted your duties which include use of firearms. Therefore, the district can not put you on the street and possibly in danger serving any type of criminal or civil process.

We all have to balance the demands of work and our personal lives accordingly. You may continue to submit leave requests as needed for your medical appointments and other personal needs which the district has supported. This should be a happy time for you and your family and the district appreciates your interest in Worklife.

## ##


CC:   Mary Jo Britt, Worklife Program Coordinator
File



308