UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. DECAIRE,<br><br>Plaintiff<br><br>vs.<br><br>JOHN D. ASHCROFT, in his official position as Attorney General of the United States.<br><br>Defendant | C.A. No. 04-10593WGY |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.      INTRODUCTION**

This action for discrimination and retaliation has been brought by a federal employee, Plaintiff Cynthia A. DeCaire, a Deputy United States Marshal, against a federal agency, the United States Marshals Service, a division of the Department of Justice.  Federal employees are protected from unlawful discrimination and retaliation by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16.  Unlike private sector employees, however, they must undertake a number of internal steps before may seek recourse to a neutral adjudicatory body (the Equal Employment Opportunity Commission or the federal courts).  The internal steps imposed on the employee have extremely stringent time periods (45 days for counseling with their agency's EEO internal officer, and 15 days thereafter for filing an internal complaint (see 29 C.F.R. §§ 1614.105(a), 1614.106(a),(b)) and are coupled with the requirement that the employee not proceed to the EEOC or the courts for a more extended period of time (180 days,

which may be extended by 180 for each amendment to the original internal complaint, up to a total of 360 days (42 U.S.C. § 2000e-16(c)). In this action, Plaintiff DeCaire has complied with all of the pre-litigation requirements imposed upon her, and now, over two years later, is finally on the eve of trial.

The pre-litigation requirements provide quick notice to a federal agency while allegations are fresh and allow for prompt conciliation of those matters that can be resolved. The Defendant's Motion for Summary Judgment, which argues that Plaintiff's alleged failure to exhaust administrative remedies forecloses certain issues raised in her original and amended EEO complaint, suggests that the United States Marshals Service United States Marshals Service is attempting to manipulate these requirements instead as a means to avoid the neutral adjudication of claims of discrimination and retaliation. Defendant's arguments are frivolous, and the Court should reject this deeply cynical maneuver.

First, and perhaps somewhat ironically, while Defendant is attempting to limit Plaintiff's access to the Court through procedural maneuvers, it is Defendant's defense that is subject to waiver. Quite simply, Defendant has failed to plead this affirmative defense, and indeed, has admitted that Plaintiff has exhausted her administrative remedies as to both the original and the amended complaint.

Even if Defendant had not waived its affirmative defense, however, Defendant's arguments are wholly without merit. Defendant's first contention, concerning the election of remedies under 5 U.S.C. §7121(d), is flatly misleading, as Defendant implies, contrary to any facts in this record, that there is a negotiated grievance procedure under a collective bargaining agreement covering Deputy United States Marshal criminal

investigators such as Deputy DeCaire. Defendant's second argument, that Plaintiff's claim regarding the transfer of Deputy Marshal Scott Kimball is somehow barred, is also without merit under every conceivable legal standard, as the claim was within the scope of investigation that would reasonably have been expected for Plaintiff's original claim, is a retaliation claim growing out of the original complaint, and was in fact investigated by the Agency's EEO office during the administrative process.

## II. STATEMENT OF FACTS REGARDING PLAINTIFF'S INTERNAL REMEDIES

On January 23, 2003, Deputy Marshal DeCaire protested, inter alia, United States Marshal Anthony Dichio's directive that the two women (Deputy DeCaire and Deputy Susan Williams) rotate on a weekly basis between the Worcester and Boston offices of the Marshals Service. Plaintiff's Exhibit 6, Affidavit of Cynthia A. DeCaire, April 16, 2005, ¶ 3. She submitted a memorandum to Ronnie Boyd of the Marshals Services' human relations office concerning this issue, but was advised to submit her complaint to the Marshal Services' EEO office. Id. Accordingly, that same day, Deputy DeCaire submitted a request for counseling with the Marshals Service's EEO office. Statement of Material Facts as to Which Plaintiff Contends That There Is No Genuine Issue of Trial in Support of Plaintiff's Cross-Motion for Partial Summary Judgment ("Plaintiff's Statement of Undisputed Facts"), ¶ 4.

On January 24, 2003, the EEO office notified Plaintiff of certain rights under the Federal Sector EEO Complaint Procedures. Plaintiff's Statement of Undisputed Facts, ¶ 5. The notice stated that "[i]f you are covered by a collective bargaining agreement that permits you to raise allegations of discrimination under a negotiated grievance procedure, you have the RIGHT to elect the way you want your allegation handled, [including]

fil[ing] a grievance under the negotiated grievance procedure." Id. The notice provided further that "[i]f you file an EEO complaint after you file a grievance on the same matter, your EEO complaint will be dismissed, and you will be told to raise the matter of discrimination in your grievance. You will then have the right to appeal the final decision on the grievance to the EEOC." Id.

Deputy United States Marshals assigned to the Operations Division are excluded from coverage under collective bargaining agreements between the Department of Justice and any labor organizations. Plaintiff's Statement of Undisputed Facts, ¶ 3. Deputy Marshal DeCaire is assigned to the Operations Division. Id., ¶ 2. Accordingly, Plaintiff did not have the option to pursue a grievance under the collective bargaining agreement.

After Deputy Marshal DeCaire, who had formerly served as the Team Leader in the Warrants Investigations unit, received notice on February 3, 2003, that she was now assigned to replace a junior "082" Deputy Marshal in the Court Operations unit in Boston, Deputy DeCaire brought this new assignment to the attention of the Marshals Service's EEO counselor as well. Plaintiff's Statement of Undisputed Facts, ¶ 6.

On February 14, 2003, the Marshals Services' EEO office issued a Notice of Right to File a Discrimination Complaint, and on February 27, 2003, Plaintiff filed her formal written discrimination complaint with that office. Plaintiff's Statement of Undisputed Facts, ¶ 7. In her complaint, Deputy DeCaire protested, inter alia, the initial rotational assignment as well as the assignment replacing an 082 deputy in the Court Operations unit. Id., ¶ 8.

Plaintiff's EEO complaint was not dismissed under the selection of remedies procedure described above. Plaintiff's Statement of Undisputed Facts, ¶ 5. Instead, in a

letter of April 11, 2003, the Marshals Services' EEO officer identified certain issues that it would investigate and other issues that it would use as background information. Plaintiff's Statement of Undisputed Facts, ¶ 9.

On May 16 2003, Plaintiff sought, through a letter from her attorney, to amend her original complaint to add additional allegations concerning reprisal discrimination. Plaintiff's Statement of Undisputed Facts, ¶¶ 10- 11; see also Plaintiff's Exhibit 2, Letter to Lisa M. Dickinson, May 16, 2003.   The letter alleged that: (1) on March 12, 2003, the Marshals Serviced had received three new 082's non-criminal investigators while Deputy DeCaire remained in the 082 assignment; (2) that after the new 082's were assigned to Boston, Deputy Marshal Scott Kimball, who had less seniority with the Marshals Service, was permitted to move from Court Operations to the Warrants Investigation unit while Deputy Marshal DeCaire remained in the 082 assignment; (3) that Deputy DeCaire was not considered for an Acting Supervisor position (which on April 28, 2003) was given to Deputy Marshal Alison Hodgkins; and (4) that Deputy DeCaire was not considered for the Warrant Coordinator position (which on April 28, 2003) was given to Deputy Marshal Paul Sugrue.  Id.  The letter also alleged that a task force agent from outside of the Marshals Service had informed Deputy DeCaire that he had had a conversation with Marshal Dichio during the week of February 24, 2003, during which Marshal Dichio discussed Deputy DeCaire's complaint and stated, among other things, that as long as Marschal Dichio was there, Deputy DeCaire was "going nowhere." Id.

On May 30, 2003, Plaintiff's counsel's letter was treated as an amendment to the original complaint.  Plaintiff's Statement of Undisputed Facts, ¶ 12.   After more than

- 5 -

180 days had passed since she had filed her amended complaint with the agency's EEO office, Plaintiff filed her Complaint and Demand for Jury Trial in this court.  Id.

Meanwhile, on November 3, 2003, Plaintiff again sought EEO counseling, alleging gender discrimination and reprisal.  Plaintiff's Statement of Undisputed Facts, ¶ 15.  On December 15, 2003, a Notice of Right to File a Discrimination Complaint was issued and on January 5, 2004, Plaintiff filed a second formal EEO complaint.  Id., ¶ 7.  After more than 180 days had passed since she had filed her second complaint with the agency's EEO office, Plaintiff filed her First Amended Complaint and Demand for Jury Trial in this court.  Plaintiff's Statement of Undisputed Facts, ¶ 17.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate in the absence of a genuine issue of material fact, when the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).  Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*.  Wrightman v. Springfield Terminal Railway Co., 100 F.3d 228, 230 (1st Cir. 1996); Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) ("[t]he happenstance that all parties seek summary judgment neither alters the yardstick nor empowers the trial court to resolved authentic disputes anent material facts.")  Instead, such motions "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Wrightman, 100 F.3d at 230.

IV. **PLAINTIFF HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES AS TO THOSE ISSUES RAISE IN HER ORIGINAL AND AMENDED COMPLAINT**

A. Defendant Has Waived This Affirmative Defense

Defendant argues in its Motion for Summary Judgment that Plaintiff should be foreclosed from raising certain issues raised in Plaintiff's original and amended based on an alleged failure to exhaust her administrative remedies. First, Defendant argues that, with regard to the January 2003 rotation to Court Operations in Boston, and the February 2003 reassignment to Court Operations in Boston, Deputy Marshal DeCaire elected to use a negotiated grievance procedure rather than the statutory procedure. See Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Defendant's Memorandum") at 3-4.[1] Defendant also argues that Deputy Marshal DeCaire failed to exhaust her administrative remedies with regard to the reassignment of Deputy Marshal Scott Kimball, rather than Deputy Marshal DeCaire, from Court Operations to the Investigative unit on March 17, 2003. Defendant's Memorandum at 4-5. Defendant, however, has waived both of these arguments.

The failure to exhaust administrative remedies in a Title VII case is nonjurisdictional, and thus is subject to waiver. Irwin v. Veteran's Admin. Regional Office, 498 U.S. 89, 93 – 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (requirement that federal employee file suit under 42 U.S.C. §2000e-16(c) within the statutory period is nonjurisdictional); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392, 102 S.Ct. 1127,

---

[1] Although Defendant does not explicitly label this portion of its argument as a failure to exhaust administrative remedies, the court in Johnson v. Peterson, 996 F.2d 397 (D.C. Cir. 1993), on which Defendant relies, granted a motion for summary judgment based on the plaintiff's failure in that case to exhaust those administrative remedies required by the employee's election to pursue the complaint under the negotiated grievance procedure. Id. at 401.

- 7 -

1131, 71 L.Ed.2d 234 (1982) (timely filing of an EEOC charge by a private-sector employee is non-jurisdictional and subject to waiver); <u>McKinnon v. Kwong Wah Restaurant</u>, 83 F.3d 498, 505 (1st Cir. 1996) (the requirement in 42 U.S.C. §2000e-5(f)(1) that plaintiff name the defendant in the EEOC charge is non-jurisdictional and subject to waiver); <u>Nunnally v. MacCausland</u>, 996 F.2d 1, 2 (1st Cir. 1993) (statutory time period for federal employee to file suit under 5 U.S.C. § 7703(b)(2) is nonjurisdictional);  <u>Rice v. New England College</u>, 676 F.2d 9, 10 (1st Cir. 1982) (requirement that plaintiff file suit within 90 days of receipt of right to sue letter is nonjurisdictional); <u>Briones v. Runyon</u>, 101 F.3d 287, 290 (2d Cir. 1996) (requirement that federal employee bring matter to attention of agency's EEO counselor within statutory time period is subject to waiver); <u>Owen v. West</u>, 182 F.Supp.2d 180, 191 (D.Mass. 2001) (same).

To avoid waiver, a defendant must assert all affirmative defenses in the answer. <u>McKinnon v. Kwong Wah Restaurant</u>, 83 F.3d 498, 505 (1st Cir. 1996); <u>Knapp Shoes v. Sylvania She Mfg. Corp.</u>, 15 F.3d 1222, 1226 (1st Cir. 1994) ("affirmative defenses not so pleaded are waived."); <u>see</u> <u>also</u> Fed. R. Civ. Proc. 8(c) (in an answer to a complaint, the defendant "shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense").

Here, Defendant has not plead affirmatively the purported failure to exhaust administrative remedies in its Answer or Amended Answer.  <u>See</u> <u>generally</u>, Answer, filed July 7, 2004, Affirmative Defenses (asserting only that Plaintiff's Complaint fails to state a claim upon which relief can be granted and that Defendant did not discriminate or retaliate against Plaintiff); First Amended Answer, filed April 5, 2005, Affirmative Defenses (same).   Moreover, in response to Plaintiff's discovery regarding the material

facts upon which Defendant's Affirmative Defenses were based, Defendant responded only that it neither discriminated nor retaliated against Plaintiff and made no mention whatsoever of any other affirmative defense. Plaintiff's Exhibit 62, Defendant's Response to Plaintiff's First Set of Interrogatories, February 4, 2005, p. 3, Response to Interrogatory 2.

In addition to not raising exhaustion of administrative remedies as a defense, Defendant has also admitted that, as to all issues raised in the original and amended complaints, Plaintiff has exhausted her administrative remedies. First Amended Complaint, ¶ 5; First Amended Answer, ¶ 5 (admitting that "Plaintiff has exhausted her administrative remedies as to those matters set forth in the original and amended complaints").[2]

Accordingly, Defendant has waived its exhaustion of administrative remedies argument.

    B.    <u>Defendant's Argument Are Also Substantively Without Merit</u>

Even if the failure to exhaust administrative remedies defense had been preserved in Defendant's Answer, both prongs of Defendant's arguments would still have to be rejected on the merits.

---

[2] Defendant attempts to rectify the inconsistencies between its pleadings and its motion for summary judgment by asserting in an amended discovery response concerning the <u>second EEO complaint</u> that Plaintiff had not exhausted administrative remedies for the reasons set forth in summary judgment motion. See Plaintiff's Exhibit 61, Amended Response to Plaintiff's First Request for Admissions, Response to Request 2. Not only was this amended discovery response served <u>after discovery had closed and after Defendant filed its motion for summary judgment</u>, but it concerns the <u>second EEO Complaint</u>, which is not at issue in Defendant's motion, rather than the original and amended EEO complaints at issue here.

1.  Defendant Has Offered No Evidence of the Existence of a
    Negotiated Grievance Procedure Available to Employees Assigned
    to the Operations Division of the United States Marshals Service

Defendant contends first that Deputy Marshal DeCaire elected to pursue a "grievance," and is thereby precluded from litigating in this Court matters raised in the alleged "grievance." Defendant relies on a provision of the Civil Service Reform Act, 5 U.S.C. 7701, et seq., which provides that "'[a]n aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both.'" Defendant's Memorandum, at 3, quoting 5 U.S.C. §7121(d) (emphasis added). 5 U.S.C. section 7121 also explains, however, that the "grievance procedure" at issue in subsection (d) refers to a grievance procedure under a collective bargaining agreement between a federal agency and a labor organization, and moreover, that the negotiated grievance procedure must include binding arbitration for unresolved grievance. 5 U.S.C. §§ 7121(a), (b).[3]

Defendant has made no showing that the wrongful actions at issue here "fall under the coverage of a negotiated grievance procedure." The Statement of Material Facts as to Which Defendant Contends There is No Genuine Issue for Trial ("Defendant's Statement of Undisputed Facts") makes no mention at all of any negotiated grievance procedure or of any collective bargaining agreement or of any right to binding arbitration. See generally Defendant's Statement of Undisputed Facts.

---

[3] Following the binding arbitration, an employee with a discrimination claim who has elected the negotiated grievance procedure may still appeal the arbitrator's decision to the EEOC, and may bring suit in district court after the EEOC either renders its decision or fails to take action within 180 days. Johnson v. Peterson, 996 F.2d 397, 400 (D.C. Cir. 1993) (citing 29 U.S.C. § 7121(d) and 42 U.S.C. § 2000e-16(c)).

The law permitting collective bargaining for federal employees allows certain employees to be exempted from collective bargaining by executive order. 5 U.S.C. § 7103(b)(1) (the President may issue an order excluding any agency or subdivision thereof from coverage under this chapter if the President makes certain determinations regarding the intelligence, counterintelligence, investigative, or national security work performed by such agency or subdivision). In 1988, President Ronald Reagan exempted "the Enforcement Division in Offices of the United States Marshals in the United States Marshals Service" from the collective bargaining law. Executive Order 12632, 53 FR 9852, 1988 WL 1099334 (Pres.), amending Executive Order 12171, 44 FR 66565, 1979 211464 (Pres.).[4]

Defendant did produce in discovery several articles (though no grievance procedure) that appear to be from a collective bargaining agreement. See Plaintiff's Exhibit temp-28, 1996 Master Agreement Between the United States Marshals Service and the American Federation of Government Employees, AFL-CIO, International Council of U.S. Marshals Service Locals, C-210, Articles 30 – 38. William Ryan, the Marshals Services' Administrative Officer for the District of Massachusetts, testified, however, that he had never seen the document before and was not aware of any contract relating to the terms and conditions of employment at the Marshals Service. Plaintiff's Exhibit 29, Excerpts from the Transcript of Deposition of William Ryan, March 22, 2005, at 67.

---

[4] Copies of Executive Order 12171 and 12632 Exclusions from the Federal Labor-Management Relations Program are attached to Plaintiff's Request for Judicial Notice. See Exec. Order 44 FR 66565 (1979); Exec. Order 53 FR 9852 (1988).

Plaintiff has located what appears to be the recognition section of the same collective bargaining agreement. Plaintiff's Exhibit 6, Affidavit of Cynthia A. DeCaire, ¶ 2; Plaintiff's Exhibit 30, 1996 Master Agreement Between the United States Marshals Service and the American Federation of Government Employees, AFL-CIO, International Council of U.S. Marshals Service Locals, C-210, Article 1. Consistent with the Executive Order, that agreement excludes from coverage "employees assigned to the Operations Divisions in the offices of the United States Marshal (USM)." Id., §3. Deputy Marshal DeCaire is assigned to the Operations Division of the offices of the United States Marshal. See Defendants' Statement of Undisputed Facts, Exhibit A.

Since Defendant has made no showing that any negotiated grievance procedure was available to DUSM DeCaire and DUSM DeCaire is not covered by the terms of the the one document made produced in discovery, Defendant's argument must be rejected.[5]

C.   Plaintiff Has Exhausted Her Administrative Remedies as to the Issue of Deputy DeCaire's Continued Assignment to Court Operations Despite Manpower Changes and the Availability of Other Positions

Defendant also argues that Plaintiff failed to exhaust her administrative remedies regarding her claim regarding the transfer of Deputy Marshal Scott Kimball, rather than Deputy Marshal DeCaire, from Court Operations to the Warrants Investigation unit because that transfer occurred on March 17, 2003, but was not specifically identified by Plaintiff until she submitted her amended complaint to the agency's EEO office on May

---

[5] If Defendant can somehow now show that a negotiated grievance procedure was available to Plaintiff, Defendant should still be equitably estopped from raising this defense. Had Defendant dismissed Plaintiff's EEO complaint two years ago and informed her then that the discrimination complaint could be raised through a negotiated procedure, and that any denial of the grievance could proceed to binding arbitration (see Plaintiff's Affidavit, Exhibit 5, Notice from EEO Division, January 24, 2003, at 6), Plaintiff could have exhausted her administrative remedies in that manner. Defendant, however, did not do so, preferring instead to attempt this ambush two years later.

16, 2003. Defendant's Memorandum at 5; see also id. at 10, n 2. The problem with Defendant's argument is that the claim is one of retaliation growing out of the original complaint, and for such a complaint, Plaintiff had no obligation to exhaust administrative remedies. Moreover, the scope of investigation that would reasonably have been expected for Plaintiff's original claim should have uncovered this issue, and indeed, the issue in fact was investigated by the Agency's EEO office during the administrative process.

In Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1, 4 (1st Cir. 2001), the court rejected a failure to exhaust administrative remedies defense, holding that "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency – *e.g.*, the retaliation is for filing the agency complaint itself." Id. at 6 (overruling for retaliation claims the standard set forth in Johnson v. General Electric, 840 F.2d 132, 139 (1st Cir. 1988)). In Clockedile, the defendant had attempted to exclude from consideration certain employer actions including ones that had occurred almost immediately after the EEOC charge was filed. 245 F.3d at 2 (charge was filed in December, 1995, and retaliatory actions occurred between January 1996 and February 1997). Similarly here, Defendant seeks to exclude a retaliation claim based on a transfer from the Court Operations unit to the Warrants Investigation unit which occurred on March 17, 2003, just weeks after Plaintiff filed her original charge. Under Clockedile, Plaintiff had no further obligation to exhaust her administrative remedies as to this retaliation claim.

Moreover, even if Plaintiff's claim on the March 17, 2003, transfer was not a retaliation claim, she has exhausted her administrative remedies as to the claim because

the issue is one that could reasonably be expected to have grown out of the charge filed by Plaintiff.  In Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990), the defendant raised an argument similar to that raised here, arguing that the litigation had to be confined to four specific positions mentioned in the administrative complaint which the plaintiff contended should have been given to him, and should not include nine other positions that were not given to the plaintiff.  The court explained that "[a]n administrative charge is not a blueprint for the litigation to follow," and the critical question instead was "whether the claims set forth in the civil complaint come within the 'scope of the [agency] investigation whch can reasonably be expected to grow out of the charge of discrimination.'"  Id. at 39 (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)).  The court went on to conclude that the defendant's decision to discharge the employee, rather than to employ him elsewhere in the company, was "at the very heart of the administrative complaint," and that all evidence relevant to the charge, including the nine other openings reasonably could be expected to come under administrative investigation.  915 F.2d at 39.

Here, the heart of Deputy DeCaire's original complaint was that she had been reassigned to a position in Court Operations held by a junior deputy, rather than being assigned elsewhere, such as in the Warrants Investigation unit.  All evidence relevant to that charge, including the assignments that occurred when new junior 082 deputies were received by the District and the assignment relating to the Warrants Investigation unit reasonably would be expected to come under administrative investigation.

The Powers court noted that in that case, it was not clear whether the agency had conducted an investigation, and that it was not the scope of the actual investigation that

determined what complaint could be filed, but rather what investigation "could reasonably be expected to grow from the original complaint." Id., at 39, n.4 (quoting Schnelbaecher v. Baskin Clothing Co., 887 F.2d 124, 128 (7th Cir. 1989)). Although the absence of an issue from the actual investigation thus would not be conclusive, it is notable that here, the issue in fact was investigated. See Plaintiff's Exhibit 18, Affidavit of Anthony Dichio, June 5, 2003, Answer to Question 15 (asserting that Acting Chief Dimmitt recommended that Deputy Marshal Scott Kimball be reassigned to the warrant investigations unit, and that "[s]eniority is one part of the decision making"); Plaintiff's Exhibit 64, E-Mail from Joann Grady to Chief Deputy Marshal Fallon, September 16, 2003 (noting that "[i]t was indicated in the complaint file that some assignments were made based on seniority," and requesting a list of "1811" Deputy Marshals and their entry on duty dates); Plaintiff's Exhibit 65, E-Mail from Administrative Officer William Ryan to Joann Grady, September 17, 2003 (providing purported seniority dates, including for Deputy Marshal Scott Kimball and Deputy Marshal DeCaire).

**V.     PLAINTIFF HAS ALSO EXHAUSTED HER ADMINISTRATIVE REMEDIES AS TO THOSE ISSUES RAISE IN HER SECOND EEO COMPLAINT**

On November 3, 2003, Plaintiff contacted the Equal Employment Opportunity Division of the United States Marshals Service regarding the ongoing discrimination and retaliation for her pursuing the original EEO complaint, and on January 5, 2004, Plaintiff filed with the Equal Employment Opportunity office a second discrimination complaint against the United States Marshals Service. More than 180 days passed before Plaintiff filed the First Amended Complaint raising these allegations in this court, and

accordingly, Plaintiff has also exhausted her administrative remedies as to those matters set forth in the second EEO complaint.

## VI.     CONCLUSION

For all of the foregoing reasons, and as demonstrated by the pleadings, depositions, answers to interrogatories, admissions and affidavits submitted herewith, Plaintiff is entitled to a judgment in her favor on the issue of whether Plaintiff has exhausted her administration remedies.

                                                Respectfully submitted,

                                                **CYNTHIA A. DECAIRE**,

                                                By her attorney,

                                                _____/s/  Indira Talwani_____
                                                Indira Talwani
                                                **SEGAL, ROITMAN & COLEMAN**
                                                11 Beacon Street
                                                Suite #500
                                                Boston, MA  02108
                                                (617) 742-0208

Dated: April 16, 2005