January 23, 2003

**MEMORANDUM**

To: Ronnie Boyd, Labor Relations

From: Susan J. Williams, CIDUSM (GS 12-6), D/MA ~ Worcester Division
Cynthia A. Decaire, CIDUSM (GS 12-5), D/MA ~ Worcester Division

Subject: Unfair Labor Practices

We are submitting this unfair labor practices complaint on our behalf due to the retaliatory action being placed against us from the management (specifically United States Marshal Anthony DICHIO) of the District of Massachusetts.

**Statement from WILLIAMS:**

The unfair and unjust relationship began with the first meeting between US Marshal DICHIO and DUSM WILLIAMS after his appointment to the D/MA. The initial interview ("one-on-one") occurred in the Worcester Office. The interview lasted approximately fifteen to twenty minutes in comparison with the males in the office which lasted approximately one to two hours. My interview consisted of USM DICHIO telling me about himself for approximately fifteen minutes, the he directed me to tell him about myself. I started to speak about my twelve year career with the Marshals Service, but he interrupted me and asked me a very personal question, that made me very uncomfortable. He specifically asked me if I received any child support for my children. I stated no, and did not continue the conversation about myself. The interview concluded moments later.

After that interview, I have not had any personal dealings with the US Marshal until my email dated 1/21/03. (Attached) I had originally submitted a requested to my supervisor SDUSM BEZANSON requesting permission to attend a federal women's conference (International Association of Women Police) in September 2003. BEZANSON stated he had no problem with my attending the conference and would forward my request to the US Marshal. The following week (on or about 1/7/03), BEZANSON stated the US Marshal had denied my request due to manpower shortages. I specifically asked BEZANSON if the US Marshal knew the importance of the conference, the approvals of male DUSMs from this district attending other conferences and there was no court occurring in this office during that specific time frame.

He stated he didn't know what the US Marshal was aware of and did not know who was advising him on those issues. I spoke with ACDUSM DURETTE on 1/17/03 and asked him if there were any other underlying issues surrounding the disapproval. He suggested that I email the US Marshal directly, carbon copy him and request review of the submission. On 1/21/03, I submitted my request via email to USM DICHIO and ACDUSM DURETTE. On 1/22/03, I informed BEZANSON of the email and asked if he had heard back or received a response from the US Marshal.

At approximately 4:00 p.m., on 1/21/03, SDUSM BEZANSON informed the office (DUSMs WILLIAMS, DECAIRE & WAHL, Kevin ~GS12-5) that starting immediately, myself and DECAIRE will be rotating to the Boston office for a week at a time due to lack of manpower. DUSM WAHL was excluded from this rotation and would travel to the Springfield office, if they ever needed assistance.

Immediately following this impromptu meeting, WAHL and DECAIRE had a court assignment. BEZANSON, seeing I was visibly upset called me back into his office to speak with me. He told me not do anything "rash" or act on anything immediately, but to just go to Boston, sit at a desk and go to court. He stated while he was working in the D/FL, he had also sent an email that had angered his management and he was temporarily displaced from his office to another for punishment.

He stated he did not know how long our assignment to Boston was, but stated that if we went there with bad attitudes they could make it a permanent assignment and transfer two other DUSM to the office to replace us. Again, I specifically asked why WAHL was excluded from this rotation and he stated that it was a management decision. He further stated he did not know what personality problems were involved between DECAIRE, Task Force Agent Trooper DECAIRE, Darlene and myself and how much of an outside influence from the Massachusetts State Police that came into US Marshal DICHIO's decision making.

As a single mother, I asked him how did he and the other management expect me to be able to care for my children by adding a minimum of three extra hours of commuting time to my day coupled with the fact that my mother who assisted with child care had just passed away three months ago. He stated he did not know.

**Statement from DECAIRE:**

Beginning at our initial "one-on-one" interview US Marshal DICHIO questioned me about my personal situation, where I was from, and why I was not interested in the Worcester sub-office. I explained the history of the Worcester office to the Marshal, and that for the past couple of years any moves made to the office originated for punishment reasons. I further explained to him DUSM MCKEARNEY, Steven was assigned there for disciplinary reasons and there were presently no openings. I informed USM DICHIO, that I had a good position in Boston as a team leader in the Investigations Unit. Marshal DICHIO explained the importance of a single mother being closer to her family and based on that reason I should be transferred to the Worcester Office. Marshal DICHIO's interview was focused mainly on my personal

situation, and inquired if I received any assistance from my ex-husband and where other family members resided. It was obvious to me that USM DICHIO was not the least bit interested in my professional accomplishments over the past twelve years.

A week following the interview, I was directed to report to the Worcester Office. Later that evening, my supervisor informed me that USM DICHIO had changed his mind and for me to continue to report to Boston. The next day USM DICHIO told me he still intended to send me to Worcester, but he could not swap MCKEARNEY and myself. A week later an investigations position opened in Worcester. I e-mailed the Marshal my interest in this position and my qualifications. My supervisor (VISALLI) stated I was his recommendation for the job, since he would be the supervisor for the Worcester warrant position. USM DICHIO responded via email and stated that I had great leadership qualifications, and would talk with me personally regarding the position. During this conversation, he stated that he did not want two women "DECAIREs getting hurt on the street". He also mentioned family can't work together. I explained to him that the task force agent Trooper DECAIRE, D. was married to my uncle, but they have been divorced for 7 - 8 years, and that she and I are not family. This information and his personal biased either towards two women working investigations or his personal MA State Police relationship with TFA DECAIRE, D. affected his decision.

Several days later, a junior deputy whom I supervised (a GS-11), was selected for the position. To everyone's, including management's dismay, the US Marshal would not discuss his criteria for the position. It was shortly thereafter learned that nepotism was the main factor involved in this selection process. The majority of the office was upset by this selection and verbalized their complaints to management. It was specifically stated that there were more highly qualified people for the position, and personnel were very upset that this decision was made solely due to this individuals affiliation and influence with the State Police.

USM DICHIO called me into his office stating that he was upset that I along with others from the district did not support his decision. He went on and informed me that he still intended to transfer me to the Worcester Office, and had planned on swapping DUSM MCKEARNY and myself. I told the Marshal I was not interested in going to the Worcester Office under the current circumstances, and would like to maintain my current position in Boston. The Marshal was upset and stated that I was going to make him look like a fool if I did not go to Worcester willingly. He further stated if I did not go, he did not know how much longer I would be keeping my Investigations team leader position in Boston.

I was transferred to Worcester within a two week period, and DUSM MCKEARNEY was transferred back to Boston. Personality issues arose surrounding this selection of the Worcester Investigations selection (DUSM LEWIS, Mark) and his work habits. This was apparent when TFA DECAIRE, D. confronted DUSM WILLIAMS in the FIT room and asked why she along with others were not being friendly to DUSM LEWIS. This stemmed from an arrest that LEWIS had made earlier in the day, and did not know how to process his prisoner. Further discussion between WILLIAMS and DECAIRE, D. also involved myself. DECARIE, D. stated that our (mine and hers) relationship was not reconcilable and that I was only concerned with myself. DUSM WILLIAMS informed me about this conversation, and I wrote a complaint (see attached

e-mail) about the situation to my supervisor (BEZANSON) requesting resolution of the problem (A member from an outside agency slandering me personally.) Myself, and DUSM WILLIAMS also verbally approached SDUSM BEZANSON and he stated he would address the issue after the holiday. To date, this has not happened.

I believe these retaliatory actions being taken against me, stem from the personality conflicts with TFA DECAIRE, D. It should also be noted at how much the Massachusetts State Police has influential ties to the US Marshal, by way of TFA DECAIRE's relationship with her boyfriend, a Captain in the MA State Police and his personal relationship with both the MA State Police Commander and USM DICHIO.

Clearly, as the two single mothers in the district and the only two females in the Worcester office there are two sets of rules that are being applied. We are not being treated the same way as every other employee. Taking all this information into consideration, we are requesting immediate relief against these duty transfer assignments to the Boston office until this matter is investigated and resolved. It is placing a burden on us and our families, and creating undue stress and a personal hardship. We are also requesting protection against any future actions being taken against us.