UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CYNTHIA A. DECAIRE,

        Plaintiff

        vs.                              C.A. No. 04-10593WGY

JOHN D. ASHCROFT, in his official position as
Attorney General of the United States.

        Defendant

**AFFIDAVIT OF SUSAN J. WILLIAMS IN
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

I, Susan Williams, declare:

1.     I am employed by the Department of Justice, United States Marshals Service, as a Deputy United States Marshal assigned to the District of Massachusetts. This affidavit supplements my Affidavit of June 23, 2003, provided during the investigation of Deputy DeCaire's EEO complaint, and my Affidavit of June 17, 2004, provided during the investigation of my EEO complaint initiated in October 2003.

2.     In March 1996, I requested a transfer from Boston to the Worcester office, and was granted that transfer based on my seniority. When Anthony Dichio began his tenure as United States Marshal for the District of Massachusetts in August of 2002, I was still assigned to the Worcester sub-station.

3.     A short period of time after Marshal Dichio commenced employment with the Marshals Service, he came out to Worcester for one-on-one interviews with deputy marshals. My interview with Marshal Dichio lasted approximately fifteen to twenty

minutes. Marshal Dichio spoke about himself for approximately fifteen minutes. When I attempted to describe my career with the Marshals Service, he interrupted me. He did not ask me about my career, but instead asked whether I received any child support for my children. My interview ended shortly after I responded to that question. I observed that male deputy marshals in the Worcester office had much longer interviews with the Marshal.

4. On January 21, 2003, Supervisory Deputy Marshal Bezanson advised Deputy Marshal DeCaire, Deputy Marshal Kevin Wahl and myself about a new rotation. I have described this meeting in my earlier affidavit. At the time of this rotation, I lived closer to Boston than Deputy Marshal Wahl.

5. On January 23, 2003, Deputy DeCaire and I initiated an EEO complaint concerning this rotation and other matters. Within days, although I did not discuss the EEO complaint with these individuals, it was common knowledge amongst Deputy Marshals and Court Security Officers and the Springfield office (Deputy Marshal Wahl, Court Security Officer Landry, Retired Supervisory Deputy Marshal Paul Desmond), that Deputy Marshal DeCaire and I had filed an EEO complaint.

6. In February 2003, shortly after we initiated the EEO complaint, the rotation was stopped and I received an e-mail informing staff that Deputy DeCaire was assigned to replace Jaime Viator, an 082 Deputy Marshal in Court Operations in Boston.

7. In approximately March 2003, the Worcester office received a new 082, Deputy Marshal Sean Weddecke.

8. Between March 2003 and October 2003, I observed that Deputy Marshal Weddecke was provided opportunities to work on warrant investigations from the Worcester sub-office.

9. On or about October 3, 2003, Supervisory Deputy Marshal Bezanson question me about leaving early that previous Wednesday. Supervisory Deputy Marshal Bezanson told me that I should not have left early and that he had told Chief Deputy Marshal Fallon. He then threatened me that if I did anything wrong again, he would transfer me to Boston, effective immediately.

10. On October 14, 2003, at approximately 9:10 a.m., Supervisory Deputy Tom Bezanson called me into his office and asked me if Deputy Marshal DeCaire and Supervisory Deputy Marshal Jeff Bohn had married over the weekend and if I had attended the wedding. Supervisory Deputy Bezanson then stated that Chief Deputy Marshal William Fallon knew of the wedding, that Deputy DeCaire was being reassigned to Worcester and that I was being transferred to Boston to replace her. I was directed to pack all my belongings and report to Boston by 12:00 that same day.

11. I asked why Deputy Wahl or Deputy Weddecke were not being transferred. Supervisory Deputy Bezanson stated that an "1811 was replacing another 1811" but made no comment as to why Deputy Marshal Wahl was not being reassigned. At the time of this assignment, it was common knowledge amongst management (including Assistant Chief Deputy Marshal Dave Taylor and Supervisory Deputy Tom Bezanson with whom I had spoken) that I was building a house in Charlton, Massachusetts. I now reside in that house, and thus live about as far from Boston (give

or take 5 miles) as Deputy Marshal Wahl. I have been assigned to the Boston office since October 14, 2003.

12. In November 2003, while I was out on medical leave, I learned that Deputy DeCaire was on light duty and that she was working three days a week in Boston. Through my counsel I requested to return to work and fill in for Deputy DeCaire in Worcester during the days that she was assigned to Boston. That request was denied.

13. In December 2003, I learned that Deputy Wahl would be taking a medical leave. Through my counsel I requested to return to work and fill in for Deputy Wahl in Worcester during the days that he was on leave. That request was denied.

Signed under the penalties of perjury this __ day of April, 2005, in Boston, Massachusetts.

_____
Susan J. Williams