# AFFIDAVIT

STATE: MASSACHUSETTS                              DATE: June 5, 2003
PLACE: BOSTON

## PRIVACY ACT INFORMATION

The Privacy Act of 1974 (PL 93-579) requires Federal Agencies to give individuals who are asked to furnish personal information about themselves, the following facts.
**AUTHORITY**: The Equal Employment Opportunity Commissions' Federal Sector Equal Employment Opportunity Rules and Regulations authorizes Investigators to administer oaths, and take written statements under the penalty of perjury: 29 CFR 1614.108.
**PRINCIPAL PURPOSES**: Affidavits are used to provide necessary information for the resolution and/or adjudication of discrimination complaints by federal employees or applicants for employment.
**ROUTINE USES**: This affidavit will be used by the Justice Department and possibly other federal agencies and/or the Federal Judiciary. It may also be used to execute statutory requirements of the Freedom of Information Act.
**VOLUNTARY DISCLOSURE**: The personal information you provide is entirely voluntary, therefore you may decline without penalty to provide the information being requested.

### NO CONFIDENTIALITY

I understand that the statement I am giving is not to be confidential and that it may be shown to the interested parties.

My name is Anthony Dichio. I am employed by the U.S. Department of Justice, United States Marshals Service, and I am assigned to the District of Massachusetts, One Courthouse Way, Suite 500, Boston, MA. My job title and position grade is United States Marshal (USM), Presidential Appointee and my immediate supervisor's name is Donald A. Gambatesa, Deputy Director USMS. My race, national origin, and sex is Caucasian American male.

Note: The issues accepted for investigation are: **(1)** Whether the Complainant (Cynthia A. DeCaire) was subjected to sex (Female), and parental status (single parent) discrimination when on January 21, 2003, she was told that she had to rotate from the Worcester sub-office to the Boston office on a weekly basis due to the lack of manpower. However, the two male deputies assigned to the Worcester sub-office did not have to rotate to Boston. **(2)** Whether the Complainant (Cynthia A. DeCaire) was subjected to sex (Female),

Page 1 of 7 Pages                                                Affiant's Initials: A.D



# AFFIDAVIT

parental status (single parent) and reprisal discrimination (prior EEO activity) when on February 3, 2003, she was notified that she was being permanently transferred to the Boston office.

Whether the Complainant (Cynthia A. DeCaire) was subjected to reprisal discrimination (participation in prior EEO activity) when:

**(3)** On April 21, 2003, Complainant requested to be considered for the position of Court Operations Supervisor; however, she received no response to her inquiry. On April 28, 2003, the position was filled by another female Deputy United States Marshal (DUSM).

**(4)** On April 23, 2003, Complainant requested to be considered for the position of Warrant Coordinator; however, she received no response to her inquiry. On April 28, 2003, the position was filled by a male DUSM.

NOTE: The questions herein are being posed by the Investigator. The affiant has not been privy to anyone's statement in these proceedings.

Question-1: Ms. Decaire alleges that on January 21, 2003, she was told that she had to rotate from the Worcester sub-office to the Boston office on a weekly basis due to the lack of manpower. Explain the reason that Ms. DeCaire was selected for rotation as opposed to other deputies assigned to the Worcester office? Was her sex, or parental status (single parent) a factor in her selection, explain?

Answer: On January 22, 2003, DUSM DeCaire and DUSM Willliams were both assigned Boston Court Operations due to their locality, however on Thursday, January 23, 2003, DUSM DeCaire's first day to report to Boston, she called in sick that morning. On Friday, January 24, 2003 DUSM DeCaire began her annual leave and did not return to work until Monday, February 3, 2003, she never filled in on any rotation. DUSM Sue Williams (single parent) covered the Boston Office the entire time. DUSM Kevin Wahl was assigned to cover Springfield Court in the event that Springfield was shorthanded (of the

Page _2_ of _7_ Pages                                                                 Affiant's Initials: AD

# AFFIDAVIT

deputies in Worcester, DUSM Wahl lives in closet proximity to the Springfield Office).

No, DUSM Decaire's sex or parental status was not a factor.

In my judgement, after much deliberation, this solution was the most equitable way to address the shortage of manpower.

Question-2: Was Ms. DeCaire permanently assigned to the Worcester office as of January 21, 2003? If so, when was she assigned? Why was she initially transferred in 2002 from Boston to Worcester? Who requested and approved her transfer?

Answer: No, she was not permanently assigned to the Worcester Office. According to my contemporaneous notes, during the Monday, August 26, 2002 meeting, DUSM DeCaire stated that she "has been trying to get back to the Worcester Office for a long time to be closer to her daughter, but CDUSM Bane would not send her." She also stated that "CDUSM Bane and ACDUSM Durette have never been fair." She also stated that "DUSM Sue Williams transferred from Rhode Island to the Boston Office and later was reassigned to the Worcester Office instead of [her]." I indicated that the purpose of these meetings was to establish an open dialogue with all DUSMs. Ultimately, I hope to ensure a fair and rewarding work environment. At that meeting, I responded that I would do what I could to accommodate her request to be reassigned to the Worcester Office. On September 30, 2002, DUSM DeCaire was reassigned to the Worcester Office, Court Operations.

Question-3: Prior to Ms. DeCaire's assignment or transfer to Worcester, was the Boston

Page 3 of 7 Pages                                              Affiant's Initials: AD

## AFFIDAVIT

office her duty station? If so, how long was she assigned to the Boston office?

Answer:   Yes, since she arrived here from the academy (EOD date 6/10/91)

Question-4:   Name the all of deputies assigned to the Worcester office on January 21, 2003. Give their name, sex, and parental status, and assigned duties in Worcester? State why each was or was not selected for the rotational assignment to Boston?

Answer:   Supervisor DUSM Tom Bezanson, supervisors three deputies: (1). DUSM Kevin Wahl assigned to Court Operations, (2). DUSM Sue Wlliams assigned to Court Operations and (3). DUSM Cindy DeCaire assigned to Court Operations. DUSM Mark Lewis is assigned to the Worcester HIDTA Task Force, a unit separate from the Court Operations, which at that time, he reported to HIDTA Task Force Supervisor DUSM Jeff Bohn out of Boston, who is "romantically involved" with DUSM Cindy DeCaire.

Question-5:   Is there a USMS policy that mandates the consideration of gender and parental status when assigning deputies to duties or duty stations? If so, identify it and append a copy of the same to this affidavit.

Answer:   Not that I am aware of

Question-6:   Ms. DeCaire alleges that on February 3, 2003, she was notified that she was being permanently transferred to the Boston office. Did you permanently transfer Ms. DeCaire from the Worcester office to the Boston office? If so, why? What did you tell Ms. DeCaire with regards to why she was being transferred? What was her response?

Page 4 of 7 Pages                                                                 Affiant's Initials: A D

## AFFIDAVIT

Answer: No, as of February 4, 2003 I reassigned DUSM DeCaire, most junior deputy of Court Operations Worcester, who lives in closest proximity to the Boston Office which is her office of record. DUSM DeCaire filled a vacancy in the Court Operations Boston, created by DUSM Jaime Viator who returned to California.

Question-7: Ms. DeCaire alleges that her sex, parental status, and reprisal were factors in the decision to permanently transfer her to Boston? Was either of these factors a consideration in the matter? Explain.

Answer: No

Question-8: Between January 21, 2003 and February 3, 2003, did Ms. DeCaire work the Boston rotational assignment? If so, what days did she work in Boston? If not, why not?

Answer: No, she never did. DUSM DeCaire was scheduled to work in Boston on January 23, 2003 but, she called in sick that morning. DUSM DeCaire was on annual leave from January 24, 2003 to January 31, 2003. On February 03, 2003, DUSM DeCaire returned to work, at the Worcester Office.

Question-9: Ms. DeCaire alleges that on April 23, 2003, she requested to be considered for the position of Court Operations Supervisor. She indicates that the position was filled by another female DSM. Explain the nature of the assignment for which Ms. DeCaire was by-passed? Who was the assigning official? Who was given the assignment? Explain the reason that Ms. DeCaire was not selected for this assignment as opposed to the deputy

Page 5 of 7 Pages                                     Affiant's Initials: AD

## AFFIDAVIT

selected? Was reprisal a factor in her non-selection, explain?

Answer:   CDUSM Dimmitt recommended assigning DUSM Alison Hodgkins to Acting Supervisor DUSM Court Operations to replace SDUSM Doherty. DUSM Hodgkins has the experience, seniority and has topped the last three promotional lists. DUSM DeCaire has already been an Acting Supervisor DUSM back on 06/03/01 to 09/23/01 at the Worcester Office.   No, reprisal was not a factor

Question-10:   Did Ms. DeCaire ask or otherwise indicated her interest in being given the Court Operations Supervisor assignment? What did you or other management tell her with regards to why she was not given the assignment, and whom in management shared this information with her?

Answer:   It's possible, but I cannot speak for CDUSM Dimmitt.

Question-11:   Ms. DeCaire alleges that on April 23, 2003, she requested to be considered for the position of Warrant Coordinator. Explain what her assignment was prior to April 23, 2003, and whether she was working warrants? Explain the nature of the assignment for which Ms. DeCaire was by-passed? Also, clarify whether this assignment involve being assigned to the Warrant Squad? Who was the assigning official? Who was given the assignment? Explain the reason that Ms. DeCaire was not selected for this assignment as opposed to the deputy selected? Was reprisal a factor in her non-selection, explain?

Page _6_ of _7_ Pages                                                                 Affiant's Initials: _A.D_

## AFFIDAVIT

Answer: DUSM DeCaire is assigned to the Court Operations, a separate unit from Investigations (warrant squad). Warrant Coordinator is a DUSM currently assigned to Investigations to assist SDUSM Visalli when needed. CDUSM Dimmitt recommended that DUSM Paul Sugrue, who is currently assigned to Investigations, replace DUSM Hodgkins. No, reprisal was not a factor.

Question-12: Had Ms. DeCaire served as Warrant Coordinator before April 28, 2003? If so, when and under what circumstances?

Answer: No.

Question-13: In a related matter, Ms. DeCaire alleges that you discussed her EEO complaint with others. Have you discussed Ms. DeCaire's complaint with anyone in the District other than management and administrative personnel with a need to know? If you have discussed it with others, please advise with whom, when, and under what circumstances?

Answer: I don't believe so

Question-14: Are you aware of a comment allegedly made by the CDUSM that advised individuals not to "take on" the Marshals Service and that he was looking for a few individuals "to change their attitude?" If so, when did you become aware of these comments, and the circumstances under which they were spoken?

Answer: No

Page 7 of 7 Pages                                      Affiant's Initials: A.D

## AFFIDAVIT

Question-15:   Ms. DeCaire also alleges that a deputy with less senior was reassigned to Warrants on March 17, 2003, while she was not given that option. Who was reassigned to Warrants on March 17th. What role does seniority play in making assignments within the District?

Answer:   CDUSM Dimmitt recommended DUSM Kimball be reassigned to Investigations.   Seniority is one part of the decision making.

Question-16:   When were you hired by the U.S. Marshals Service? How long have you been assigned to the District of Massachusetts?

Answer:   August 06, 2002, ten months

Question-17:   Do you have any witnesses that you recommend be interviewed? If so, please give me their names, work location, and a brief overview of what germane facts they can be expected to attest.

Answer:   Chief DUSM Dave Dimmitt, Boston Office,   Acting ACDUSM Dave Taylor, Boston Office,   SDUSM Paul Dunne, Boston Office,   Acting SDUSM Alison Hodgkins, Boston Office,   Acting SIDUSM Leo Rosette, Boston Office,   Admin. Officer William Ryan, Boston Office.

SDUSM Tom Bezanson, Worcester Office,   DUSM Kevin Wahl, Worcester Office,   DUSM Mark Lewis, Worcester HIDTA Task Force,   Sergeant Darlene DeCaire, Mass. State Police, Worcester HIDTA Task Force,   Admin. Clerk Ruth May, Worcester Office.

Page 8 of 9 Pages                                                                                              Affiant's Initials: A.D

## AFFIDAVIT

SDUSM Dan Spellacy, Springfield Office

( They will attest to DUSDM Cindy DeCaire's overall work, attitude, hours and to the history of DUSM DeCaire's assignment in Worcester as an Acting Supervisor DUSM, on what her duties were and exactly what she did.)

Question-18:    Is there anything else that you would like to add to this statement?

Answer:    As the U.S. Marshal of the District of Massachusetts, it is my responsibility to use all resources to the best of my ability to accomplish the mission in an equitable manner. To that end, all my decisions are based on seniority, job performance and locality. As always, deputies in this district will be treated with professionalism and equity.

I have read the above statement, consisting of _9_ pages, and swear or affirm that it is true and complete to the best of my knowledge, information and belief.

_____
Anthony Dichio, Affiant

Sworn to or affirmed before me
on this _5th_ day of June, 2003

_____
Eugene Clark, EEO Contract Investigator

Page _9_ of _9_ Pages                               Affiant's Initials: _A.D_

Supplemental Affidavit in the Complaint of Cynthia A. DeCaire
M03-0025

Question 1:   When did you become aware that Ms. DeCaire was involved in the EEO complaint process? Was it before or after the decision was made to reassign her to Boston?

Response:   I received a phone call (unknown date) from Bob Wesley that I would be receiving an e-mail from him regarding an EEO complaint #03-0023 filed by DUSM Cindy DeCaire. I receive the e-mail on 02/03/03 at 0855 hrs.

Ms. DeCaire states in her affidavit that shortly after you were appointed as U.S. Marshal, you called her into your office for a "one on one" interview and throughout this interview, you focused on and questioned her about her marital status and parental status. She also states after you learned that she was divorced, you advised her that her first priority should be being close to home in case her daughter needed her and that it should not matter if she went to court or worked warrants.

Question 2:   Did you have this conversation with Ms. DeCaire? Please explain the substance of your "one on one" interview with her.

Response:   Refer to EEO complaint #03-0023, questions 2 & 3 for my response.

Question 3:   Did you ask Ms. DeCaire about her marital or parental status? If what was your reason(s) for having this discussion?

Response:   Refer to EEO complaint #03-0023, question #2 for my response.

SEP 17 '03 14:35 FR

Affiant's Inititals __A.D__

2

Question 4: Did you have "one on one" discussions with all of the deputies in the district? If not, who did you interview and why? Did you have any discussions regarding personal situations?

Response: Yes, Yes

Please provide any other information that you may have regarding these questions.

Response: As the U.S. Marshal in this district, it is my responsibility to use all resources to the best of my ability to accomplish the mission in an equitable manner. To that end, all my decisions are based on seniority, job performance and locality. As always, deputies in this district will be treated with professionalism and equity.

I have read the above statement, and swear or affirm that it is true and complete to be best of my knowledge, information and belief.

_Anthony Dichio_
Anthony Dichio, Affiant

_9-17-03_
Date

A.D

(Contemporaneous Notes)
Copied

\*\*\*WORK\*\*  Mon 2-26 · 11ᵃᵐ    1811
              Cindy         (4½ length)

  Evaluation

Anthony Dichio
9-17-03