# AFFIDAVIT

STATE: MASSACHUSETTS                                         DATE:     June 2003
PLACE: BOSTON

### PRIVACY ACT INFORMATION

The Privacy Act of 1974 (PL 93-579) requires Federal Agencies to give individuals who are asked to furnish personal information about themselves, the following facts.
<u>AUTHORITY</u>: The Equal Employment Opportunity Commissions' Federal Sector Equal Employment Opportunity Rules and Regulations authorizes Investigators to administer oaths, and take written statements under the penalty of perjury: 29 CFR 1614.108.
<u>PRINCIPAL PURPOSES</u>: Affidavits are used to provide necessary information for the resolution and/or adjudication of discrimination complaints by federal employees or applicants for employment.
<u>ROUTINE USES</u>: This affidavit will be used by the Justice Department and possibly other federal agencies and/or the Federal Judiciary. It may also be used to execute statutory requirements of the Freedom of Information Act.
<u>VOLUNTARY DISCLOSURE</u>: The personal information you provide is entirely voluntary, therefore you may decline without penalty to provide the information being requested.

### NO CONFIDENTIALITY

I understand that the statement I am giving is not to be confidential and that it may be shown to the interested parties.

My name is David Dimmitt. I am employed by the U.S. Department of Justice, United States Marshals Service, and I am assigned, on temporary duty, to the District of Massachusetts, One Courthouse Way, Suite 500, Boston, MA. My job title and position grade is Interim Chief Deputy United States Marshal (CDUSM), GS-1811-15, and my immediate supervisor's name in Boston is Anthony Dichio. My race, national origin, and sex is Caucasian American male.
Note: The issues accepted for investigation are: **(1)** Whether the Complainant (Cynthia

Page __1__ of _12_ Pages Affiant's Initials: 



## AFFIDAVIT

A. DeCaire) was subjected to sex (Female), and parental status (single parent) discrimination when on January 21, 2003, she was told that she had to rotate from the Worcester sub-office to the Boston office on a weekly basis due to the lack of manpower. However, the two male deputies assigned to the Worcester sub-office did not have to rotate to Boston.

(2) Whether the Complainant (Cynthia A. DeCaire) was subjected to sex (Female), parental status (single parent) and reprisal discrimination (prior EEO activity) when on February 3, 2003, she was notified that she was being permanently transferred to the Boston office.

Whether the Complainant (Cynthia A. DeCaire) was subjected to reprisal discrimination (participation in prior EEO activity) when:

(3) On April 21, 2003, Complainant requested to be considered for the position of Court Operations Supervisor; however, she received no response to her inquiry. On April 28, 2003, the position was filled by another female Deputy United States Marshal (DUSM).

(4) On April 23, 2003, Complainant requested to be considered for the position of Warrant Coordinator; however, she received no response to her inquiry. On April 28, 2003, the position was filled by a male DUSM.

NOTE: The questions herein are being posed by the Investigator. The affiant has not been privy to anyone's statement in these proceedings.

Question-1: Ms. Decaire alleges that on January 21, 2003, she was told that she had to rotate from the Worcester sub-office to the Boston office on a weekly basis due to the lack of manpower. Explain the reason that Ms. DeCaire was selected for rotation as opposed to other deputies assigned to the Worcester office? Was her sex, or parental status (single parent) a factor in her selection, explain?

Answer: SEE ATTACHED RESPONSE.

Question-2: Was Ms. DeCaire permanently assigned to the Worcester office as of January 21, 2003? If so, when was she assigned? Why was she initially transferred in 2002 from Boston to Worcester? Who requested and approved her transfer?

# AFFIDAVIT

Answer: SEE ATTACHED RESPONSE

Question-3: Prior to Ms. DeCaire's assignment or transfer to Worcester, was the Boston office her duty station? If so, how long was she assigned to the Boston office?

Answer: SEE ATTACHED RESPONSE

Question-4: Ms. DeCaire alleges that on February 3, 2003, she was notified that she was being permanently transferred to the Boston office. Did you permanently transfer Ms. DeCaire from the Worcester office to the Boston office? If so, why? What did you tell Ms. DeCaire with regards to why she was being transferred? What was her response?

Answer: SEE ATTACHED RESPONSE

Question-5: Ms. DeCaire alleges that her sex, parental status, and reprisal were factors in the decision to permanently transfer her to Boston? Was either of these factors a consideration in the matter? Explain.

Answer: SEE ATTACHED RESPONSE

Question-6: Ms. DeCaire alleges that on April 23, 2003, she requested to be considered for the position of Court Operations Supervisor. She indicates that the position was filled by another female DUSM. Explain the nature of the assignment for which Ms. DeCaire was by-passed? Who was the assigning official? Who was given the assignment? Explain the reason that Ms. DeCaire was not selected for this assignment as opposed to the deputy selected? Was reprisal a factor in her non-selection, explain?

Page 3 of 12 Pages   Affiant's Initials: [initials]

# AFFIDAVIT

Answer: *SEE ATTACHED RESPONSE*

Question-7: Did Ms. DeCaire ask or otherwise indicated her interest in being given the Court Operations Supervisor assignment? What did you or other management tell her with regards to why she was not given the assignment, and whom in management shared this information with her?

Answer: *SEE ATTACHED RESPONSE*

Question-8: Ms. DeCaire alleges that on April 23, 2003, she requested to be considered for the position of Warrant Coordinator. Explain what her assignment was prior to April 23, 2003, and whether she was working warrants? Explain the nature of the assignment for which Ms. DeCaire was by-passed? Also, clarify whether this assignment involve being assigned to the Warrant Squad? Who was the assigning official? Who was given the assignment? Explain the reason that Ms. DeCaire was not selected for this assignment as opposed to the deputy selected? Was reprisal a factor in her non-selection, explain?

Answer: *SEE ATTACHED RESPONSE*

Question-9: Had Ms. DeCaire served as Warrant Coordinator before April 28, 2003? If so, when and under what circumstances?

Answer:

Question-10: In a related matter, Ms. DeCaire alleges that USM Dichio discussed her EEO complaint with others. Did either you or USM Dichio discuss Ms. DeCaire's complaint with anyone in the District other than management and administrative

Page 4 of 12 PagesAffiant's Initials: ___

# AFFIDAVIT

personnel with a need to know? If you have discussed it with others, please advise with whom, when, and under what circumstances?

Answer: SEE ATTACHED RESPONSE

Question-12: Ms. DeCaire alleges that you made comments to the effect that individuals should not to "take on" the Marshals Service and that you were looking for a few individuals "to change their attitude?" Did you make these or similar comments? If so, when, and describe context in which they were spoken?

Answer: SEE ATTACHED RESPONSE

Question-13: Ms. DeCaire also alleges that a deputy with less senior was reassigned to Warrants on March 17, 2003, while she was not given that option. Who was reassigned to Warrants on March 17th. Had Ms. DeCaire expressed her interest to you about wanting to be assigned to Warrants? What role does seniority play in making such assignments?

Answer: SEE ATTACHED RESPONSE

Question-14: Ms. DeCaire alleges that during your meeting with the Brockington Police Chief, USM Dichio told the Chief thta th reason that he made a change inHIDTA leadership was becaue Jeff Bohn had a girlfriend who had filed an EEO complaint against him. Do you recall such a conversation? What is your recollection of what was said at that meeting? Was an EEO complaint mentioned?

Answer: SEE ATTACHED RESPONSE

Question-15: Why was Jeff Bohn removed as the head of the HIDTA Task Force?

# AFFIDAVIT

When was he removed? Did his removal have anything to do with Ms. DeCaire's EEO complaint?

Answer: SEE ATTACHED RESPONSE

Question-16: Why was Kevin Donahue removed from the HIDTA Task Force?

Answer: SEE ATTACHED RESPONSE

Question-17: Do you know Joe Cummings? Explain his relationship to the HIDTA Task Force. What reason did Mr. Cummings give you or other management for quitting the Task Force. When did he quit?

Answer: SEE ATTACHED RESPONSE

Question-18: When were you hired by the U.S. Marshals Service? When were you assigned to the District of Massachusetts?

Answer: SEE ATTACHED RESPONSE

Question-19: Do you have any witnesses that you recommend be interviewed? If so, please give me their names, work location, and a brief overview of what germane facts they can be expected to attest.

Answer: SEE ATTACHED RESPONSE

Question-20: Is there anything else that you would like to add to this statement?

Answer: SEE ATTACHED RESPONSE

    I have read the above statement, consisting of \_\_\_\_ pages, and swear or affirm that it is true and complete to the best of my knowledge, information and belief.

SEE ATTACHED FOR SIGNATURE

Page __6__ of __12__ Pages    Affiant's Initials: __N__

# AFFIDAVIT

David Dimmitt, Affiant

Sworn to or affirmed before me
on this____ day of June, 2003

*SEE ATTACHED FOR NOTARY SIGNATURE AND DATE*

_____
NOTARY

Page _7_ of _12_ Pages   Affiant's Initials: __

Question #1:
Not assigned to D/MA during referenced time frame.

Question #2:
Not assigned to D/MA during referenced time frame.

Question #3:
Not assigned to D/MA during referenced time frame.

Question #4:
Not assigned to D/MA during referenced time frame.

Question #5:
Not assigned to D/MA during referenced time frame.

Question #6:
The nature of the assignment is to provide supervision of court programs and personnel within the Boston office. CDUSM David Dimmitt was the assigning official. Allison Hodgkins was given the assignment. Ms. Decaire had served as the "Acting SDUSM" in Worcester office. Ms. Hodgkins had never been offered an opportunity to serve in an "acting" capacity, therefore it was decided to select Ms. Hodgkins to serve in this temporary position. Reprisal was not a factor in this non-selection. The primary factor in the "non- selection" of Ms. Decaire and "selection" of Ms. Hodgkins was the desire to provide an equal opportunity to all.

Question #7:
Ms. Decaire did indicate her interest in a brief one sentence e-mail. Ms. Decaire never asked why she wasn't given the assignment. Attempts by CDUSM Dimmitt to engage in a dialogue with Ms. Decaire that would allow for healthy discussion regarding any matter continues to meet with negative results.

Question #8:
Ms. Decaire did indicate her interest in a brief one sentence e-mail. Since my arrival on February 17, 2003, Ms. Decaire has been assigned to court operations and carries an investigative caseload. The nature of the assignment is to coordinate the warrant program and personnel under the supervision of a SDUSM for the entire district. This assignment does involve being assigned to the warrant squad. CDUSM Dimmitt was the assigning official. Mr. Paul Sugrue was given the assignment. Mr. Sugrue has been employed by the U.S. Marshals Service for approximately 17 years and was open to establishing a dialogue regarding his developmental desires and goals. One of Mr. Sugrue's goals was to be a SDUSM in the U.S. Marshals Service and as a result it was decided that the warrant coordinator position would give Mr. Sugrue a "taste" of what a supervisory position within the U.S. Marshals Service requires. Reprisal was not a factor in Ms. Decaire's non-selection. The primary factor in the "non-selection" of Ms. Decaire and "selection" of Mr. Sugrue was the desire to provide an equal opportunity to all.

(Continued)

Question #9:
Since my arrival on February 17, 2003, Ms. Decaire had not served as the warrant coordinator.

Question #10:
No

Question #12: (there was no question #11 in affidavit that was e-mailed)
I never made the comment that "individuals should not take on the Marshals service". I perceive this as a fraudulent allegation and slanderous. In two separate meetings with the operational personnel assigned to court operations and investigative operations, I did stress the importance of attitude, teamwork and the development of good leadership traits.

Question #13:
Mr. Scott Kimball was reassigned from the operations desk to warrants on or about March 17, 2003. Ms. Decaire had not expressed an interest to me regarding this assignment. Prior to his reassignment, Mr. Kimball had spent approximately 3 months assigned to the operations desk. This is a leadership assignment within general operations and to be effective, the assignee must demonstrate above average skill levels in perception, interpersonal relations, judgement, decision making, leadership, organizing and planning as well as oral communication. As a result of Mr. Kimball's demonstrated effectiveness he was reassigned to a vacant position within investigations.

Question #14:
USM Dichio never told the Brockton Chief of Police that "the reason for a change in HIDTA leadership was because Jeff Bohn has a girlfriend who had filed an EEO complaint against him". I perceive this as a fraudulent allegation and slanderous. USM Dichio told the Chief of Brockton Police Department that Jeff Bohn had been removed due to an incident at a HIDTA Tack Force meeting that raised questions as to Jeff Bohn's decision making and judgment skills as a probationary supervisor..

Question #15:
Jeff Bohn was removed from the head of the HIDTA Task Force in late February or early March because of an incident at a HIDTA Task Force meeting in mid to late February. Mr. Bohn was removed because of a perceived deficiency in his judgement and decision making skills as a probationary supervisor. Mr. Bohn was counseled by CDUSM Dimmitt and was reassigned to a supervisory position overseeing prisoner operations. Prior to the incident at the HIDTA meeting, I had recognized a need to assign a supervisor from the investigative division to prisoner operations. Mr. Bohn's reassignment had nothing to do with Ms. Decaire's EEO complaint.

Question #16:
Mr. Donahue asked to be removed from the HIDTA Task Force and reassigned to court operations.

(Continued)

Question #17:
I was introduced to Joe Cummings on one occasion. Mr. Cummings was an employee of the Brockton Police Department assigned to the HIDTA Task Force. Mr. Cummings withdrew his agency's participation from the HIDTA Task Force when I refused to reassign DUSM Mark Lewis and State Police Officer Darlene Decaire, who were assigned to cover the Worcester, MA area for HIDTA. Mr. Cummings quit in late February or early March.

Question #18:
I was hired by the U.S. Marshals Service in 1983. I was assigned to the District of Massachusetts on February 17, 2003, for 120 days.

Question #19:
No

Question #20:
No

I have read the above statement consisting of __10__ pages, and swear or affirm that it is true and complete to the best of my knowledge, information and belief.

_____

Sworn to or affirmed before me on this____day of June, 2003.


_____
NOTARY

```
From:     Cindy Decaire
To:       ddimmitt
Date:     4/21/03 1:10pm
Subject:  Operation's Supervisor
```

Chief
If it is your inclination to replace Walter with an acting Supervisor, I would like to express my interest in being considered for the position.

CC:       adichio

*e-mail from Ms. Decaire re Operations Supervisor.*

11 of 12

From:    Cindy Decaire
To:      ddimmitt
Date:    4/23/03 12:48pm
Subject: Warrant Coordinater

Chief
In the event the Warrant Coordinator position opens up, I would also be interested in that investigative position.

CC:      adichio

e-mail from Ms. Decaire re warrant coordinator position.

12 of 12