# Commonwealth of Massachusetts

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. DECAIRE,<br>    Plaintiff<br><br>VS<br><br>JOHN D. ASHCROFT, in his office position as Attorney General of the United States,<br>    Defendant | CIVIL ACTION NO.<br>10593WGY |

DEPOSITION of **THOMAS W. BEZANSON**, a Witness called by Counsel on behalf of the **Plaintiff**, taken pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Joanne Whalen, a Professional Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Law Office of Segal, Roitman & Coleman, 11 Beacon Street, Suite 500, Boston, Massachusetts, on Tuesday, February 15, 2005, commencing at 10:08 a.m.

*Accurate Reporting Services*
36 West Street
Whitman, MA 02382
(781) 447-9520

Page 9

1  conversations we may have had that was -- that
2  I recalled.
3 Q Are you in the habit of erasing e-mails on your
4  system or do you normally just read them and
5  leave them?
6 A I erase them. You have to because our system
7  was built so you have to delete or archive --
8  You know, your e-mails build up so much, you
9  have to either erase them or you can archive
10  some. But I usually erase most of them.
11 Q Do you archive some?
12 A Not many, mainly policy e-mails.
13 Q How about your sent e-mails, are those retained
14  on your computer?
15 A I believe so, yes.
16 Q Do you delete those as a matter of course or
17  are those just there?
18 A No, I usually delete them, too.
19          (Whereupon, the below-described
20          E-mail was marked Plaintiff's Exhibit
21          No. 2.)
22 Q I'm showing you a document that the court
23  reporter has marked as Exhibit Two. Do you
24  recognize this document?

Page 10

| | | |
|---|---|---|
| 1 | A | Yes, I do. |
| 2 | Q | Am I correct it's from you? |
| 3 | A | Yes. |
| 4 | Q | Am I correct that you received something that |
| 5 | | you then forwarded, is that correct? |
| 6 | A | Yes, that's correct. |
| 7 | Q | Do you recall who you received information from |
| 8 | | that you then forwarded? |
| 9 | A | Who I received -- |
| 10 | Q | The material that you forwarded with this e- |
| 11 | | mail, you received from someone else, correct? |
| 12 | A | Right, right. I'm trying to think who I |
| 13 | | received it from. It must have been --  It |
| 14 | | might have been Dave Taylor. I'm not really |
| 15 | | sure. |
| 16 | Q | Can you tell me what the attachment is? |
| 17 | A | The attachment appears to be a letter addressed |
| 18 | | to Dave Taylor, Assistant Chief Deputy, from |
| 19 | | Jeffrey Bohn, Supervisor, in regards to the |
| 20 | | subject of worklife. |
| 21 | Q | Now, are you in Jeffrey Bohn's chain of |
| 22 | | command? |
| 23 | A | No, I'm not. I'm a part of -- |
| 24 | Q | You're at the same level as Jeffrey Bohn? |

1   A   Yes, that's correct.
2   Q   Is there any procedural reason, any role that
3       you play at the U.S. Marshal, that would
4       explain why the worklife request would be
5       forwarded to you?
6   A   No.
7   Q   You've forwarded to, it looks like, four
8       people, correct?
9   A   Yes.
10  Q   Can you tell me who those four people are?
11  A   One would be Brian Murphy, one would be Tony
12      Visalli, one would be Bill Ryan and I believe
13      the last one is -- I think that's Dan, Dan
14      Spellacy.
15  Q   What's Brian Murphy's title?
16  A   He's the senior inspector with the electronics
17      surveillance unit with the U.S. Marshal
18      Service.
19  Q   Tony Visalli?
20  A   He's also a senior inspector with the
21      electronics surveillance unit with the U.S.
22      Marshal Service.
23  Q   Bill Ryan?
24  A   Bill Ryan is the administrative officer for the

Page 12

1     U.S. Marshal Service assigned to Boston.
2   Q   And Dan Spellacy?
3   A   Dan is a Supervisory Deputy U.S. Marshal,
4     stationed in Springfield, Massachusetts.
5   Q   Are any of those four in any position, to your
6     knowledge, where they would need a copy of the
7     worklife request from Jeff Bohn for any
8     purposes?
9   A   No.
10  Q   Why did you forward it to them?
11  A   Just as an informational point.
12  Q   What was the information you were conveying?
13  A   Conveying my personal opinion of the worklife
14    request by Supervisory Deputy Jeff Bohn.
15  Q   What was your personal opinion?
16  A   As it reads there, please read, this is
17    ridiculous.  It never ends.  Why is this guy
18    still here?
19  Q   What never ends?
20  A   Could you be more specific?
21  Q   Well, you wrote here, it never ends.  To what
22    were you referring?
23  A   Well, apparently Supervisory Bohn made this
24    worklife request and according -- I'm trying

Page 13

```
 1            to see the best way to put it.  I just thought
 2            the request as a whole is ridiculous because an
 3            1811 criminal investigator can't work part-time
 4            for the Marshal Service and telecommute, that I
 5            know of.  And that's why I thought the request
 6            was ridiculous.
 7      Q     How long have you worked for the Marshal
 8            Service?
 9      A     For approximately twenty years.
10      Q     Can you give me your years of employment with
11            the Marshal Service?
12      A     Sure.  I began with the U.S. Marshal Service in
13            January of 1985.  I left the agency in October
14            of 1991 to work for the United States
15            Department of Transportation, Office of
16            Inspector General.  I returned in February of
17            1996 to the U.S. Marshal Service.  I was
18            promoted to Supervisory Deputy U.S. Marshal in
19            March of 2002.  March 25th of 2002 I was
20            assigned to the Worcester office as a
21            supervisor where I am currently stationed.
22      Q     When you were employed by the Marshal Service
23            from 1985 through '91, what was your duty
24            station?
```