# AFFIDAVIT

**STATE: MASSACHUSETTS**
**PLACE: BOSTON**

**DATE: June 2003**

## PRIVACY ACT INFORMATION

The Privacy Act of 1974 (PL 93-579) requires Federal Agencies to give individuals who are asked to furnish personal information about themselves, the following facts.

**AUTHORITY:** The Equal Employment Opportunity Commissions' Federal Sector Equal Employment Opportunity Rules and Regulations authorizes Investigators to administer oaths, and take written statements under the penalty of perjury: 29 CFR 1614.108.

**PRINCIPAL PURPOSES:** Affidavits are used to provide necessary information for the resolution and/or adjudication of discrimination complaints by federal employees or applicants for employment.

**ROUTINE USES:** This affidavit will be used by the Justice Department and possibly other federal agencies and/or the Federal Judiciary.  It may also be used to execute statutory requirements of the Freedom of Information Act.

**VOLUNTARY DISCOSURE:** The personal information you provide is entirely voluntary, therefore you may decline without penalty to provide the information being requested.

## NO CONFIDENTIALITY

I understand that the statement I am giving is not to be confidential and that it may be shown to the interested parties.

My name is Cynthia A. DeCaire.  I am employed by the U.S. Department of Justice, United States Marshals Service, and I am assigned to the District of Massachusetts, One Courthouse Way, Suite 500, Boston, MA.   My job title and position grade is Criminal Investigator Deputy United States Marshal, GS-1811-12, and my immediate supervisor's name is Allison Hodgkins, Acting Supervisory Deputy United States Marshal.   My race, national origin, and sex are Caucasian American female.   I have one child.

Note: The issues accepted for investigation are: Whether the Complainant (Cynthia

Page  1  of 34 Pages

Affiant's Initials:

# AFFIDAVIT

A. DeCaire) was subjected to sex (Female), and parental status (single parent) discrimination when on January 21, 2003, she was told that she had to rotate from the Worcester sub-office to the Boston office on a weekly basis due to the lack of manpower. However, the two male deputies assigned to the Worcester sub-office did not have to rotate to Boston.

(2) Whether the Complainant (Cynthia A. DeCaire) was subjected to sex (Female), parental status (single parent) and reprisal discrimination (prior EEO activity) when on February 3, 2003, she was notified that she was being permanently transferred to the Boston office.

Whether the Complainant (Cynthia A. DeCaire) was subjected to reprisal discrimination (participation in prior EEO activity) when:

(3) On April 21, 2003, Complainant requested to be considered for the position of Court Operations Supervisor; however, she received no response to her inquiry. On April 28, 2003, the position was filled by another female Deputy United States Marshal (DUSM).

(4) On April 23, 2003, Complainant requested to be considered for the position of Warrant Coordinator; however, she received no response to her inquiry. On April 28, 2003, the position was filled by a male DUSM.

Note: I have not been privy to anyone's affidavit. I am responding to the questions posed by the EEO Investigator.

Background information:  The April 11, 2003, letter from Lisa M. Dickinson, EEO Officer stated that "[t]he initial meeting [I] had with the U.S. Marshal in September 2002, regarding [my] personal life and the matter concerning [my] not being selected for the investigations position . . . may be used . . . as background information."

The May 30, 2003, letter from Lisa M. Dickinson, EEO Officer, stated further that "[t]he issue regarding a deputy with less seniority than [me] being permitted to reassign to Warrants on March 17, 2003 . . . may be used as background information" and that [t]he claims regarding the United States Marshal allegedly discussing [my] EEO complaint with others and the Chief Deputy United States Marshal allegedly advising individuals not to 'take on' the Marshals Service and that

Page  2   of 34 Pages                                    Affiant's Initials: $a9$

## AFFIDAVIT

he was looking for a few individuals to 'change their attitude' will be considered as evidence to support [my] retaliation claim." In order to fully explain the matters accepted for investigation, as well as the other background information and supporting evidence noted by the EEO Officer, I am providing information in this affidavit in chronological order. I have thus rearranged the questions asked by the EEO investigator.

### Facts Underlying My Complaint

1. [Question-19: When were you hired by the U.S. Marshals Service, and what was your position at the time of your hire, and where was your duty station?] [Question-4:    Prior to your assignment or transfer to Worcester, was the Boston office your duty station? If so, how long were you assigned to the Boston office?] I was hired by the U.S. Marshal Service in June of 1991. My position at the time of my hire was Criminal Investigator Deputy United States Marshal. My assignment was to the District of Massachusetts and, except for one acting position in Worcester, my duty station prior to the September 2002 transfer to Worcester was Boston, Massachusetts.

2. My initial assignment was a criminal investigator, and I had numerous assignments as I developed into a senior investigator. In 1995, I became a senior investigator and was assigned to the FBI violent fugitive task force. In 1999, I was assigned to Permanent Warrant Investigations. In June 2001, I accepted an

Affiant's Initials:  a J

## AFFIDAVIT

assignment as Acting Supervisor in Worcester. In September 2001, when that assignment ended and I returned to Boston, I became a Team Leader in the Warrant Investigations unit. I remained in that position until my transfer to Worcester in September 2002.

3. Shortly after Anthony Dichio was appointed United States Marshal, he called me into his office for a "one on one" interview. Throughout this interview Marshal Dichio remained focused on and questioned me about my marital and parental status. After learning I was divorced and had one child, Marshal Dichio questioned further whether I received assistance from my ex-husband, where he lived, who took care of my daughter when I was working, and why I did not want to work in Worcester, to be closer to my daughter. I explained to Marshal Dichio, that I had worked hard to ascertain my current position in investigations. Marshal Dichio questioned my interests, and asked why, if the money was the same, I would not want to be closer to my daughter. Marshal Dichio advised me that my first priority should be being close to home in case my daughter needed me, and that it should not matter to me if I go to court or work warrants. I had trouble changing the subject or attempting to focus Marshal Dichio on my accomplishments and responsibilities as a team leader. Marshal Dichio appeared only to be interested in the fact that I was a single mother and that I should be close to my child. Throughout the interview, he asked me no questions about my professional

Affiant's Initials:  C.J

# AFFIDAVIT

experience and accomplishments. At no time during this conversation did I ask Marshal Dichio for assistance or express any difficulty in performing my duties due to the fact I was a single parent. Nonetheless, Marshal Dichio continued to insist that I should be in Worcester close to my daughter.

4. At the one-on-one meeting, Marshal Dichio suggested that Deputy United States Marshal Steve McKearney would be transferred from Worcester to Boston, and that I would be given Deputy Marshal McKearney's position in Worcester. It is my understanding that Deputy Marshal McKearney had been transferred to Worcester in the first place as punishment for some offense. The position held by Deputy Marshal McKearney was not equivalent to the team leader position in Investigations that I held. I repeatedly stated to Marshal Dichio that I did not want to exchange positions with Deputy Marshal McKearney.

5. I have learned from Deputy United States Marshal Susan Williams that she had a similar one on one interview with Marshal Dichio in that he asked her no questions about her professional experience, but asked personal questions, including whether she received child support payments.

6. Less than two weeks after the one on meeting, an investigative position opened up in Worcester. I e-mailed my qualifications to Marshal Dichio. I have learned from Deputy Marshal Williams that she also requested to be considered for the position.

Page _5_ of _34_ Pages

Affiant's Initials:

## AFFIDAVIT

7.  I subsequently heard a rumor that a junior deputy who I supervised, Deputy United States Marshal Mark Lewis, was going to be getting the job. My supervisor, Supervisory Deputy United States Marshal Tony Visalli stated to me that Deputy Marshal Lewis would not get the job, and that Supervisory Deputy Marshal Visalli was recommending me. Then-Assistant Chief Deputy United States Marshal Paul Durette also confirmed to me his view that Deputy Marshal Lewis was not qualified.    Team Leader Deputy United States Marshal Paul Sugrue also confirmed to me that he did not think Deputy Marshal Lewis was qualified for the position.  I understand that Team Leader Deputy Marshal Sugrue also e-mailed Marshal Dichio this view.  Nonetheless, Marshal Dichio chose Deputy Marshal Lewis, a junior male employee, over both me and Deputy Marshal Williams for the position.

8.  [Question-3:  Were you permanently assigned to the Worcester office as of January 21, 2003?  If so, when were you assigned?  Why were you initially transferred in 2002 from Boston to Worcester?  Who transferred you?]    After transferring Deputy Marshal Lewis to the investigative position in Worcester, Marshal Dichio called me into his office.  In this meeting, Marshal Dichio expressed anger that others in the office were questioning his decision to transfer Deputy Marshal Lewis. Marshal Dichio blamed me for this opposition in the office. He then stated that he was going to go ahead with his original decision and transfer me to

Affiant's Initials:

## AFFIDAVIT

the non-investigative position in Worcester held by Deputy Marshal McKearney. I stated that I wished to remain where I was in Warrants. Marshal Dichio insisted it was in my best interest due to the fact I was a single parent and should be close to my daughter and family, and stated that I would be moved to Courts whether I went or stayed. He also stated that I would make him look like a fool if I did not go. On September 30, 2002, Marshal Dichio permanently assigned me to the non-investigative position in Worcester and I remained there until the events in January.

9. From September 30, 2002, through January 25, 2002, I was assigned full-time to the non-investigative position in Worcester. During that time, I observed and heard from others that Deputy Marshal Lewis was having problems performing basic skills in his position. I also learned from Deputy Marshal Williams that Deputy Marshal Lewis had looked to her for assistance, and that she was not happy that he did not have the basic skills for the position despite being awarded the job over her and me. Deputy Marshal Williams also informed me that she had been approached by State Police Trooper Darlene DeCaire (who is divorced from my uncle) about Deputy Marshal Lewis, that Deputy Marshal Williams had explained her dismay over Deputy Marshal Lewis' selection for the position, and that Trooper DeCaire had then blamed me for Deputy Marshal William's attitude.

10. In December I e-mailed my supervisor, Supervisory Deputy United States Marshal Tom Bezanson about Trooper DeCaire's conversation. Deputy Marshal

Affiant's Initials:  _C. J._

# AFFIDAVIT

Williams and I also spoke to Supervisory Deputy Marshal Bezanson about the situation. In January, I learned from Supervisory Deputy United States Marshal Jeff Bohn that he (Bohn) has spoken to Marshal Dichio, and that Marshal Dichio was aware of the ongoing issues regarding Deputy Marshal Lewis's assignment to the position and Trooper DeCaire's blaming other's discontent with that assignment on me.

11. [Question-2: You have alleged that on January 21, 2003, you were told that you had to rotate from the Worcester sub-office to the Boston office on a weekly basis due to the lack of manpower. Who told you that you had to rotate? Explain why you should not have been instructed to rotate to Boston? What did your supervisor tell you with regards to why you were selected to rotate? Had you rotated to Boston before? If so, when and under what circumstances?] Supervisory Deputy Marshal Bezanson informed Deputy United States Marshal Kevin Wahl, Deputy Marshal Williams and me on January 22, 2003, that Deputy Marshal Williams and I would be rotating to Boston. The only reason he gave was that it "was management's decision." I had never rotated to Boston before, and to my knowledge, this practice had never been done before. Moreover, when I had been assigned to Boston, I was always assigned to Warrants, not Court Operations where the rotational assignment was to be served. I believe that I should not have been instructed to rotate to Boston because the directive was discriminatory as

Affiant's Initials:

## AFFIDAVIT

explained in the paragraphs 36-39 below.

12. I learned from Deputy Marshal Williams that after our meeting with Supervisory Deputy Marshal Bezanson, she spoke to him privately. According to Williams, during that conversation, she expressed her dismay to Supervisory Deputy Marshal Bezanson about the rotation of the two women (and not the men). Supervisory Deputy Marshal Bezanson told her about how he had once "pissed off management" and was transferred, that she should just keep quiet and hopefully it would be "over soon."

13. [Question-6 a, b:  What deputies were not selected for the weekly rotational assignment to Boston?  Give their name, sex, and parental status?] Deputy Marshal Wahl is male, and a married parent of one child. Deputy Marshal Lewis is male, is married and has no children.  Deputy Marshal Wahl, Deputy Marshal Lewis, Deputy Marshal Williams and I all live in Worcester County.

14. [Question-10: Between January 21, 2003 and February 3, 2003, did you work the Boston rotational assignment? If so, what days did you work in Boston? If not, why not?]  On Tuesday, January 21, I was out of the office with my child who had an operation on that day.  On Wednesday, January 22, I brought my daughter to my mother's house in Worcester and reported as usual to work in Worcester.  I was notified at 4:00 pm on that date to report to Boston the following day.  On Thursday, because of my child's continuing convalescence, I was unable to work,

Affiant's Initials:  cJ

## AFFIDAVIT

and called in to Boston where I was due to report, and notified that office that I was taking sick leave, due to the situation with my child.   (When I called I spoke to Deputy United States Marshal Annette Lawlor who said Supervisory Deputy Marshal Doherty, the Boston supervisor, had just stepped out, and that Deputy Marshal Lawler would inform him).  I was off on Friday for a week for previously scheduled annual leave.  On February 3, 2003, I reported to Worcester as directed by Supervisory Deputy Marshal Bezanson.

15.  Meanwhile, on January 23, 2003, Deputy Marshal Williams and I filed a complaint with Ronnie Boyd in Labor Relations.   In that complaint, I objected to Marshal Dichio's questioning of me during the one on one meeting regarding my parental status and personal life, his decision to transfer a junior employee to the investigative position in Worcester, his decision to transfer me from my Team Leader position in the Warrants unit in Boston to the non-leadership, non-investigative position in Worcester, and the decision to assign me to the rotational assignment in Court Operations in Boston.  Deputy Marshal Williams objected to the one on one meeting, to the denial of permission to attend a conference of the International Association of Women Police, and to the rotational assignment.

16.   I have learned from Deputy Marshal Williams that on January 24, 2003, Deputy Marshal Williams discussed our complaint with then Assistant Chief Durette.   I learned from Assistant Chief Durette that he spoke to Marshal Dichio

Page __10__ of 34 Pages

Affiant's Initials: ω℮

## AFFIDAVIT

that same day about our complaint, and after being warned of the complaint, Marshal Dichio told him to approve Deputy Marshal William's request to attend the conference, and that "that will take care of one of them."

17.   It is my understanding from Supervisory Deputy Marshal Bezanson that on Tuesday, January 28, 2003, while I was on leave, Marshal Dichio and Deputy United States Marshal David Taylor traveled to the Worcester sub-office and had a meeting with Supervisory Deputy Marshal Bezanson. Supervisory Deputy Marshal Bezanson subsequently informed me (on February 3) that he was told at this meeting that I would be transferred back to Boston and that Deputy Marshal Williams would stay in Worcester. (Deputy Marshal Williams subsequently dropped her EEO complaint).

18.   [Question-16: You have alleged that Marshal Dichio discussed your EEO complaint with others. With whom did he have the discussion(s), when, and what was the context of the discussion?  How were you made aware of these discussions?]  On January 28, 2003, after Marshal Dichio and Deputy Marshal Taylor traveled to Worcester and decided on my transfer, it was common knowledge amongst Deputy Marshals and Court Security Officers and the Springfield office (Deputy Marshal Wahl, Court Security Officer Landry, Retired Supervisory Deputy Marshal Paul Desmond) that I had filed an EEO complaint. I received this information from Deputy Marshal Williams. This all occurred while I

Page __11__ of 34 Pages                                    Affiant's Initials:  _CW_

## AFFIDAVIT

was on leave.  (See also Paragraphs 22 and 26)

19. [Question-8:  You have alleged that on February 3, 2003, you were notified that you were being permanently transferred to the Boston office.  Who told you that you were being permanently transferred?  Explain why you should not have been transferred to Boston?  What did your supervisor tell you with regards to why you were being transferred?]  Upon my return to the Worcester office on February 3, 2003, Supervisory Deputy Marshal Bezanson informed me that I was being transferred to the Court Operations unit in Boston, beginning the following day.  He told me that it was a management decision and that I was to report to Boston the following day.  I do not believe that I should have been transferred to the Court Operations unit because: (1) based on my extensive experience in criminal investigations, I was more qualified than many others in those units, and therefore if a transfer was necessary, I should have been permitted to move to the Warrants unit (in Worcester or Boston) and someone else should have been transferred to Court Operations in Boston; (2) numerous factors suggest that the action was taken in reprisal for my EEO activity.  (See paragraph 41).

20.  On February 4, 2003, then Assistant Chief Durette sent out an e-mail stating that I would be transferring to Boston and replacing an 082 Deputy United States Marshal.  The fact that I, as a Criminal Investigator was to replace an 082 caused me humiliation, undue questioning, and sympathy amongst my peers.

Page  12  of 34 Pages                                      Affiant's Initials:  _C. L._

## AFFIDAVIT

After questioning Assistant Chief Durette about the e-mail, I learned from him that he had informed Marshal Dichio of my complaint (which he learned of from meeting with Deputy Marshal Williams) on January 24, 2004.

21. After my conversation with Assistant Chief Durette, Marshal Dichio questioned him regarding his loyalty to Marshal Dichio and directed him that he needed to back Marshal Dichio on this EEO situation. I learned of this conversation from Assistant Chief Durette, who also informed me that he told Marshal Dichio that he would tell the truth in any investigation, and who informed me further that he believes he is a victim of Marshal Dichio's retaliation for not engaging in and endorsing Marshal Dichio's actions regarding my EEO complaint.

22. During the week of February 24, 2003, Marshal Dichio had a conversation with Detective Joe Cummings of the Brockton Police Department in the basement of the courthouse. During this conversation Marshal Dichio brought up my EEO complaint and made derogatory statements regarding my character. Marshal Dichio made further statement's that he had me exactly where he wanted me and that he will get me, and I will get exactly what I deserve. Marshal Dichio further stated that as long as he is here I am going nowhere. I received this information from Detective Cummings.

23. [Question 18 - intro] You also allege that a deputy with less senior was reassigned to Warrants on March 17, 2003, while you were not given that option.]

Affiant's Initials: _C_

# AFFIDAVIT

On March 12, 2003, the Marshals Service received thee new 082's non-criminal investigators from the Academy, and on March 17, 2003, Deputy United States Marshal Scott Kimball (who has less seniority than me with the Marshals Service) was reassigned from Court Operations to Warrants.   Although Marshal Dichio apparently claimed in response to my grievance that my assignment was based in part on my lack of seniority, no change was made in my assignment when the new hires joined the unit, and the transfer to Warrants was given to Deputy Marshal Kimball rather than to me.

24. Meanwhile, on March 11, 2003, Supervisory Deputy Marshal Bohn was removed from his position as Head of the HIDTA Task Force.  Supervisory Deputy Marshal Bohn and I have a personal relationship.  Marshal Dichio was aware of that relationship both through conversations with me and with Supervisory Deputy Marshal Bohn.

25.  [Question-17: You have alleged that the CDUSM advised individuals not to "take on" the Marshals Service and that he was looking for a few individuals "to change their attitude."  With whom did the Chief Deputy have these discussions, when, and what was the context of the discussions?  How were you made aware of these comments and discussions?]  On March 17, 2003, Chief Deputy United States Marshal Dave Dimmitt held a meeting with the Court Operation Unit, as well as new 082's and detention officers.  I was present at this meeting as well as Deputy United

Affiant's Initials:

## AFFIDAVIT

States Marshals Kevin Donahue, Jeff Christo and Lawlor. During this meeting, the Chief Deputy Marshal discussed his history with the U.S. Marshals Service. Chief Deputy Marshal Dimmitt advised us that the U.S. Marshals Service was here long before us and it will be here long after we are gone. He advised us not to take on the U.S. Marshals Service. He discussed Boston's bad reputation, and stated that he was looking for a few individuals in our group to change their attitudes. During this meeting Chief Deputy Marshal Dimmit asked if anyone had any questions. I told Chief Deputy Marshal Dimmitt I was transferred due to manpower, and I was wondering if he intended to send me back. Chief Deputy Marshal Dimmitt appeared upset and turned red in the face. He answered that this was not the time to discuss this matter and that he would talk to the Marshal about his intent.  (Chief Deputy Marshal Dimmit never got back to me regarding the Mashal's intent). Chief Deputy Marshal Dimmit further stated he was loyal to the chair (U.S. Marshal), no matter who sat in it, and he (Marshal Dichio) was appointed by the President and the President is the only one that can change it. I felt this meeting was an indirect attempt to warn me not to take on the U.S. Marshal Service or the U.S. Marshal, and that if I attempt to my reputation will be destroyed.

26. On Tuesday, March 25, 2003, Detective Cummings advised me of a meeting Marshal Dichio had attended at the Brockton Police Department. According to Cummings, Marshal Dichio, Chief Deputy Marshal Dimmitt, the Chief

Affiant's Initials:  _CJ_

## AFFIDAVIT

of Brockton Police and a Captain were also present at this meeting.  During this meeting, Marshal Dichio attempted to explain to the Chief why he had made changes in our office, and specifically, why he had removed Supervisory Deputy Marshal Bohn from the HIDTA task force.  Marshal Dichio brought up the fact that Supervisory Deputy Marshal Bohn's "girlfriend Cyndy" had filed an EEO complaint against him.

27.  [Question-11: You have alleged that on April 23, 2003, you requested to be considered for the position of Court Operations Supervisor.  You indicated that the position was filled by another female DUSM.  Explain the nature of the assignment for which you were by-passed?  Who was the assigning official?  Who was given the assignment?]  On April 21, 2003, I learned that Supervisory Deputy Marshal Doherty was leaving his position as Court Operations Supervisor.  In the past, when a supervisory position opened up, notice was given that the position would be filled with an acting supervisor.  In this case, no such notice was given, but I nonetheless expressed interest via e-mail on April 21 to Marshal Dichio and Chief Deputy Marshal Dimmitt regarding this position.  To my knowledge, Marshal Dichio normally approves such assignments.  No one responded to my e-mail, but I have confirmation that it was opened and received.   The position was given to Deputy Marshal Hodgkins on April 28, 2003.

28.  [Question-12 b.: What did management tell you with regards to why you

Affiant's Initials: _____

## AFFIDAVIT

were not given the [Court Operations Supervisor assignment, and whom in management shared this information with you?]  No one responded to my interest in the Court Operations Supervisor position, nor did anyone in management discuss it with me.

29. [Question-13: You have alleged that on April 23, 2003, you requested to be considered for the position of Warrant Coordinator.  Explain what your assignment was prior to April 23, 2003, and whether you were working warrants?  Why do you believe you should have been assigned as Warrant Coordinator on April 28, 2003?  What did management tell you with regards to why you were not assigned, and who shared this information with you?  Also, clarify whether you are referring to being assigned to the Warrant Squad?]  As noted above (see Paragraph 2), I had served in the Warrant unit for several years prior to Marshal Dichio's arrival.  During this time I received numerous awards and acknowledgments for my duties and responsibilities, and in 2001, became a Team Leader in the unit.  I was also in charge of training new Deputy United States Marshals and re-certifying all Deputy United States Marshals in warrant related databases (NCIC&CJIS). In addition, while serving as the Acting Supervisor in the Worcester office, I received a superior accomplishment award for rejuvenating the fugitive program.  I only left the Warrants unit in September, 2002, when Marshal Dichio transferred me to Worcester despite my stated desire to remain in that unit.

Affiant's Initials:  _CJ_

## AFFIDAVIT

On April 23, 2003, I asked by e-mail to Marshal Dichio and Chief Dimmitt to be considered for the position if it opened up. Again I received no response to my inquiry, but I have documentation that my e-mail was opened. No one in management provided me with any information regarding why I was not chosen for the position.

30. [Question-15(b):    Had you served as Warrant Coordinator before April 28, 2003? If so, when and under what circumstances? ]   I had not served as Warrant Coordinator before; that position had not existed prior to my transfer to Worcester. Prior to my transfer, however, I was a Team Leader in Warrants.

31. [Question-14a:    Who was assigned to work warrants on April 28, 2003?] Deputy Marshal Sugrue was assigned to the Warrant Coordinator position on April 28, 2003. I have learned from Deputy Marshal Sugrue that he did not seek the assignment, Chief Dimmit informed him that he was being assigned to the position, and that Deputy Marshal Sugrue informed Chief Dimmitt he did not want the position.

32. On May 9, 2003, at a lunch attended by Supervisory Deputy Marshal Visalli, Deputy Marshal Brian Murphy, Deputy Marshal Frank Dawson and Boston Police Detectives Steven Ridge and Brian Albert, Supervisory Deputy Marshal Visalli brought up the topic of my EEO complaint. Supervisory Deputy Marshal

Affiant's Initials:  *cw*

## AFFIDAVIT

Visalli and Deputy Marshal Murphy commented that Supervisory Deputy Marshal Bohn had been removed from the HIDTA Task Force because of my complaint. Deputy Marshal Jeff Christo was also present at this lunch, but left before this conversation began. I learned of this conversation on May 10, 2003, from Boston Police Detective Steven Ridge.

Information regarding allegations of discrimination

33.    [Question-1: What is the name of each U.S. Marshals Service official or officials that you believe discriminated against you?  On what basis, e.g., sex, parental status, reprisal?] I believe that United States Marshal Anthony Dichio has discriminated against me on the basis of my sex, my parental status and in reprisal for my EEO activity.  Others in management (unknown to me) may also have engaged in reprisal activity at Marshal Dichio's direction.

34.    Discrimination in the one-on-one interview. I believe that my one on one interview was discriminatory because Marshal Dichio focused on my personal life, and in particular, on my parental status (single parent) rather than my professional experience during that interview.  Although this is not a direct issue for investigation, it is relevant to my other claims both as pure background information

Affiant's Initials:  CS

## AFFIDAVIT

and to explain the reprisal claim, since the EEO claim for which I was retaliated against included this issue.

35. <u>Discrimination in refusing to transfer me to the Investigative Position in Worcester</u>  Although this also is not a direct issue for investigation, it is relevant to my other claims both as pure background information and to explain the reprisal claim, since the EEO claim for which I was retaliated against included this issue. It is my view that Marshal Dichio's assignment of Deputy Marshal Lewis, rather than either me or Deputy Marshal Williams, to the Worcester Investigative Position was based at least in part on our gender.  I reach this conclusion because: (1) both Deputy Marshal Williams and I were more experienced, and were a higher grade level than Deputy Marshal Lewis, and various supervisors described above had recommended me for the position over Deputy Marshal Lewis; (2) Marshal Dichio stated to me that he did not want "two <u>women</u> Decaires" (emphasis added) in the unit; (3) although Marshal Dichio claimed at the time that he did not want me in the position because he did not want me to be supervised by Supervisory Deputy Marshal Bohn (with whom I have a personal relationship), the position is now supervised by Supervisory Deputy Marshal Bezanson, and Marshal Dichio has not made any reassignment of that investigative position.  Moreover, in my current position, Supervisory Deputy Marshal Bohn supervises and interacts with many of my duties in general operations (court).

Page __20__ of __34__ Pages                              Affiant's Initials:  C_9

## AFFIDAVIT

36. <u>Discrimination in transferring me from my Team Leader position in Warrants unit in Boston to the Non-leadership, Non-investigatory position in Worcester</u>  Although this also is not a direct issue for investigation, it is relevant to my other claims both as pure background information and to explain the reprisal claim, since the EEO claim for which I was retaliated against included this issue.  It is my view that Marshal Dichio's decision to assign me to the non-investigative position in Worcester is based at least in part on my parental status and gender.  I reach this conclusion because of the repeated comments made to me by Marshal Dichio regarding his view that I should be assigned to Worcester because of my parenting responsibilities, without regard to my professional development, and because of his comments blaming me for the discontent regarding his selection of Deputy Marshal Lewis for the Worcester position, and his concern that if I refused the Worcester transfer he would "look like a fool."

37. <u>Discrimination in the Weekly Rotational Assignment to Boston</u> [Question-6 c-d :   Why should [other deputies] they have been selected for the [weekly rotational] assignment [to Boston] instead of you?]  I do not contend that Deputy Marshal Wahl and Deputy Marshal Lewis should have been selected for the rotational assignment instead of me, but rather, that if a rotational assignment to Boston was needed, both male and female Deputy Marshals should have been assigned to the rotation, and not just the female Deputy Marshals.  I understand

Affiant's Initials:  ⌣꒱

## AFFIDAVIT

that Marshal Dichio has claimed that the assignment was based on our residence, but all four of us live in Worcester County.

38. [Question-7:   What USMS policy mandates the consideration of gender and parental status when deputies are assigned duties or duty stations?]  No U.S. Marshal Service policy, to my knowledge, mandates the affirmative consideration of gender and parental status when deputies are assigned duties or duty stations, but it is my understanding that the Equal Opportunity laws and policies of the United States Marshals Service mandate that gender and parental status not be used in a discriminatory manner in assigning duties and duty stations.  I am not contending that gender and parental status of deputies should have been considered in assigning duties or duty stations and I have never requested preferential treatment based on my gender or parental status.  My claim is that the Marshal discriminated against me (treated me worse) because of my gender and parental status and in reprisal for my EEO activity.

39.   [Question-5: Why was your sex, and parental status a factor in being given this rotational assignment to Boston? ]  I believe that Marshal Dichio assigned this rotational assignment to me at least in part on the basis of my sex. [For discussion of parental status discrimination, see the following paragaraph]. First, if a rotation was necessary, male employees Deputy Marshal Wahl and Deputy Marshal Lewis should also have been included in the rotation.  They were

Affiant's Initials:

## AFFIDAVIT

not.  Moreover, the rationale given for why Deputy Marshal Wahl did not have to rotate to Boston (that he would rotate to Springfield) is pretextual.  Springfield was not  down manpower and so no rotation was needed there at all.  (It is my understanding from Deputy Marshal Williams that Deputy Marshal Wahl was only required to go one day out of several months.  Also, Springfield has a fraction of the prisoners and work load that Worcester has).  Second, Marshal Dichio had apparently concluded that because we were the two women candidates who had sought the position given to Deputy Marshal Lewis, Deputy Marshal Williams and I must therefore be responsible for the ongoing discontent regarding the transfer of Deputy Marshal Lewis to the investigative position in Worcester.  (I reach this conclusion based on his initial statements to me at the time of the transfer (see paragraph 8 above) , and the statement made by Supervisory Deputy Marshal Bezanson to Deputy Marshal Williams described in the paragraph 12 above).  Third, Marshal Dichio's questions and focus at my initial meeting, and at the initial meeting with Deputy Marshal Williams suggest that he viewed women employees differently then men, questioning us on details about our personal lives and taking no interests in our professional experience and development.

40. My parental status may also have been a factor in Marshal Dichio's decision to give me the rotational assignment.  Marshal Dichio's remarks at our first one on one meeting established to me his view that working closer to my child

Affiant's Initials:

## AFFIDAVIT

should be my primary concern.   When I somehow "pissed off management," he punished me by taking the action he viewed as most burdensome to me – having to travel further from my child.

41. <u>Discrimination in transfer to Court Operations unit in Boston</u> [Question-9:

Why was your sex, parental status, and reprisal a factor in being permanently transferred to Boston?]    I believe I was transferred to the Court Operations unit in Boston in reprisal for my filing the complaint alleging parental status and sex discrimination.  Specifically, (a) the decision to transfer me was made immediately after Marshal Dichio learned of my complaint (<u>see</u> paragraph 16 regarding Assistant Chief Durette's reporting of the grievance to Marshal Dichio on Friday, January 24, and paragraph 17 regarding Supervisory Deputy Marshal Bezanson's learning of the decision to transfer me on Tuesday, January 28, 2003); (b) when I contacted Supervisory Deputy Marshal Doherty, my Boston supervisor, on February 3, 2003, he was unaware of the transfer; (c) I was required to leave my GOV in the sallyport in Worcester and make my own way home on February 3 and my own way to Boston on February 4; (d) although Marshal Dichio apparently claimed that I was assigned to Court Operations in part because I had "the least seniority" (as reported by Designated Grievance Officer Lydia K. Blakey), he failed to reassign me when three new Deputy Marshals non-criminal investigators were assigned to the unit. (<u>see</u> paragraph 23); Marshal Dichio has not considered me for

Affiant's Initials:  ew

## AFFIDAVIT

any transfers since assigning me to Court Operations (see paragraphs 27-31); and

Marshal Dichio has stated to Detective Cummings that he had me exactly where he

wanted me, that he would get me, and that as long as he is here, I am going

nowhere. (see paragraph 22).

42. <u>Discrimination in transferring less senior Deputy Marshals.</u>    Although

this is not a direct issue for investigation, it is relevant to my other claims both as

background information and to rebut the Marshal's claim that he transferred me to

the Court Operations unit in the first place based on seniority. [Question 18 b, c:

You also allege that a deputy with less senior was reassigned to Warrants on

March 17, 2003, while you were not given that option.   Which deputy was

reassigned on March 17, 2003? What role has/does seniority play in management's

decision making process when making assignments within the District?  Please

cite or append appropriate rule or guidance.]  Although I am aware of no formal

policy regarding seniority, it is my understanding (from the Memorandum by

Designated Grievance Officer Lydia K. Blakey), that the Marshal Service defended

against my grievance regarding the transfer from Worcester to the Court Operation

unit in Boston by contending that I was assigned to Court Operations in part

because I had "the least seniority."   Marshal Dichio also explained to Supervisory

Deputy Marshal Bohn and Assistant Chief Durette his reassignments of Deputy

Marshal Dawson and Deputy Marshal Hodgkins in January of 2003, to Warrants on

Affiant's Initials:

## AFFIDAVIT

the ground that they were senior DUSM's.

43. <u>Discrimination regarding Failure to Appoint to Court Operations Supervisor</u> [Question-12 a, c-d]:  Explain why you should have been given that Court Operations Supervisor assignment as opposed to the DUSM who was assigned?]  Why was reprisal a factor in this matter?]  I believe I was qualified for the position because I have been an acting Supervisor in the past, and received a superior accomplishment award for doing so.  I have also been a Team Leader in warrants.  Deputy Marshal Hodgkins had only been appointed when the warrant coordinator position was created in January 2003 after I had been removed from the Team Leader position for the discriminatory reasons set forth above.  She also lacked street experience, according to Supervisory Deputy Marshal Visalli.  The only reason I know of for not appointing me is retaliation, and Marshal Dichio's statement "I'm going nowhere as long as he is here" suggests that retaliation was indeed the reason for not appointing me.

44. <u>Discrimination Regarding Failure to Appoint to Warrant Position</u> [Question 14 b-d: Are you alleging that the employee assigned to work warrants should not have been assigned?  If so, why not?  Why was reprisal a factor in this matter?] [Question-15a:  Explain why you should have been given the Warrant Coordinator position as opposed to the DUSM who was assigned?]  I am alleging that I should have been assigned to the position instead of Deputy Marshal Sugrue

Affiant's Initials:  CW

## AFFIDAVIT

because: (1) he was not interested in the position and I was; (2) the fact that I received no response to my e-mail suggests that I was not even considered for the position; and (3) although Deputy Marshal Sugrue and I were both Team Leaders in the Warrant unit at the same time, I had more equal or more time on the warrant squad than Deputy Marshal Sugrue and would have continued to be a Team Leader in warrants up to the time of the opening but for my discriminatory transfer in September 2002. There is no reason other than retaliation, to explain why I did not receive a response, explanation or appointment to that position.


### Remedies sought

45.    [Question 20: What remedies are you seeking in order to resolve this complaint?]  I wish my future with the U.S. Marshals Service to be taken out of Marshal Dichio's hands.  I am requesting what I believe to be the only remedy in this matter, specifically that I be transferred to a position (at the same grade level or higher) within the District of Massachusetts that reports to Head Quarters and not to the Marshal.    I also request payment of my attorneys' fees in connection with this EEO complaint.

Affiant's Initials:

# AFFIDAVIT

## Witnesses

46. [Question-21:     Do you have any witnesses that you recommend be interviewed? If so, please give me their names, work location, and a brief overview of what germane facts they can be expected to attest.]

a) Susan Williams/ CIDUSM Worcester, Ma.  617-594-7009  Deputy Marshal Williams can attest to and corroborate numerous facts contained in this affidavit and the complaint. Deputy Marshal Williams also filed a complaint but opted out of the process. Deputy Marshal Williams was also inappropriately questioned by Marshal Dichio in her one on one interview. Deputy Marshal Williams also expressed interest in the Worcester Warrant position. Deputy Marshal Williams' request went unnoticed and she was overlooked for the position, which was filled by a junior male GS-11 DUSM. Deputy Marshal Williams was also chosen along with myself to rotate to Boston Court, and expressed dismay over the fact the two males were left out. Deputy Marshal Williams also had a conversation with Supervisory Deputy Marshal Bezanson, in which Bezanson informed Williams he too pissed off management in the past and was reassigned (while in

Page __28__ of __34__ Pages                    Affiant's Initials:  C~

## AFFIDAVIT

Florida).  Bezanson advised Williams to keep quiet and hopefully it would be over soon.  Deputy Marshal Williams can further attest to the fact that after Marshal Dichio and Taylor's trip to Worcester, it was a known fact in the Worcester office (DUSM's and CSO's), that we had filed a complaint and that I was being transferred.  (This all occurred while I was on leave, and before I learned about the transfer).

b) Paul Durette/ former Assistant Chief / TSA Washington D.C.  202-501-4404  Paul Durette was the Assistant Chief prior to Marshal Dichio's appointment as the United States Marshal,  and during a majority of the events brought forward in my EEO complaint.  Former Assistant Chief Durette can attest to the fact that I was the acting Supervisor in Worcester from June - September of 2001, and returned to Boston by choice.  After returning from Worcester I was made one of two Team leaders in the warrant unit.   I remained in this position, received numerous commendations and awards, and was moving forward in my career with the U.S. Marshals Service until Marshal Dichio's arrival. Former Assistant Chief Durette can also attest to the fact that Marshal Dichio was adamant about transferring me immediately after my one on one interview.  Former Assistant Chief Durette was directed by Marshal Dichio to put out an e-mail that I would be

Affiant's Initials: ᘓ

# AFFIDAVIT

transferring to Boston and replacing an 082 DUSM. Former Assistant Chief Durette learned of my complaint from counseling Deputy Marshal Williams, and he informed Marshal Dichio about the complaint that same day. Former Assistant Chief Durette can attest to the fact that after Marshal Dichio learned of my complaint, I was transferred. After my conversation with former Assistant Chief Durette, he was questioned by Marshal Dichio regarding his loyalty to Marshal Dichio. Marshal Dichio also told him that Marshal Dichio needed him to back Marshal Dichio on this EEO situation. Former Assistant Chief Durette expressed his intent on telling the truth to any who may investigate/inquire. Former Assistant Chief Durette also believes that he is a victim of Marshal Dichio's retaliation for not engaging in and endorsing Marhsal Dichio's actions regarding my EEO complaint. Former Assistant Chief Durette has since transferred from this office/Agency.

c) Detective Joseph Cummings/ Brockton Police Department Brockton, Ma. Detective Cummings is a former member of our HIDTA Task Force. Detective Cummings can attest to the fact that shortly after my transfer back to Boston, he was approached by Marhsal Dichio in the

Page ___30___ of _34_ Pages                                    Affiant's Initials: _C__

# AFFIDAVIT

basement/garage of our building. Marshal Dichio first questioned Detective Cummings about Supervisory Deputy Marshal Bohn's performance as a Supervisor. Marshal Dichio then engaged in conversation regarding my EEO complaint. Marshal Dichio made derogatory comments about my character and threatened that he has me exactly where he wants me, that I am going no where as long as he is here, and that I am going to get exactly what I deserve. Detective Cummings can also attest to the fact that Marshal Dichio and Chief Dimmitt met with the Brockton Chief of Police and Detective Cummings' Captain, after Detective Cummings quit the task force due to Marshal Dichio's actions. During this meeting Marshal Dichio explained to the Brockton Officials why he (Marshal Dichio) had made changes in leadership. Specifically, Marshal Dichio's reason was that Supervisory Deputy Marshall Bohn's girlfriend had filed an EEO complaint against him. Detective Cummings can not only attest to these retaliatory comments, but also to the ongoing retaliation Supervisory Deputy Marshal Bohn suffered from Marshal Dichio due to my complaint.

Page __31__ of __34__ Pages

Affiant's Initials: ᘓ

## AFFIDAVIT

d) Supervisory Deputy Marshall Jeffrey Bohn, Boston USMS (617) 748-2660, can attest to the fact that Marshal Dichio was fully aware of the relationship between myself and Supervisory Deputy Marshal Bohn. During Supervisory Deputy Marshal Bohn's initial one on ones with Dichio, Supervisory Deputy Marshal Bohn discussed important operational issues.  During these conversations Marshal Dichio was more interested in telling Supervisory Deputy Marshal Bohn about his intentions to move me to the Worcester office.  Supervisory Deputy Marshal Bohn recommended myself or Deputy Marshal Williams to fill the Worcester warrant position.  Marshal Dichio told  Supervisory Deputy Marshal Bohn that  there would be a conflict of interest if I filled the Worcester warrant position.  Supervisory Deputy Marshal Bohn was made aware of Marhsal Dichio's intentions to fill the Worcester warrant position with a Deputy Marshal, who at the time was the junior Deputy Marshal in the District.  Supervisory Deputy Marshal Bohn advised Marshal Dichio that this Deputy Marshal lacked the skills to fill this position and was the junior Deputy Marshal of the office.  Detective Cummings told Supervisory Deputy Marshal Bohn

Affiant's Initials:  CJ

## AFFIDAVIT

and three other task force agents about the comments regarding my character, and his future retaliatory actions. On this same day, Detective Cummings told Supervisory Deputy Marshal Bohn that Detective Cummings was disgusted by Marshal Dichio's actions regarding the removal of Supervisory Deputy Marshal Bohn from the HIDTA Task Force and comments made about myself. Detective Cummings told Supervisory Deputy Marshal Bohn that he would be resigning from the task force based on Marshal Dichio's actions. Supervisory Deputy Marshal Bohn also believes he was treated differently after I filed my complaint. Supervisory Deputy Marshal Bohn can attest to the fact that after I filed my complaint, Marshal Dichio began to leave him out of management decisions and meetings regarding the Task Force he was Supervising. Supervisory Deputy Marshal Bohn also believes he is a victim of Marshal Dichio's retaliation regarding my complaint.

e) Timothy Bane/Former CDUSM/ currently at USMS HQ/ 202-307-9106

Former Chief Bane can attest to the fact that I served as the Acting Supervisor for the Worcester sub-office and received a Superior

Affiant's Initials: CQ

## AFFIDAVIT

accomplishment award for my actions.  Former Chief Bane can also attest to the fact that I returned to Boston by choice after my tenure as Acting Supervisor.  Former Chief Bane can further attest that I have never brought to management's attention pressure on me as a single parent and never requested to be transferred closer to my home because of my parental status.  Former Chief Bane can confirm that the idea of transferring me to Worcester was Marshal Dichio's, not mine, and that Marshal Dichio was fixated on this issue.  Former Chief Bane can confirm that until Marshal Dichio's arrival I was in a leadership position in the Warrant Unit, and was continuing on the career ladder without any problems.

f) Boston Police Detective Steven Ridge.  (617) 593-1050.  Detective Ridge can attest to the conversation of May 9, 2003, described above.


   I have read the above statement, consisting of *34* pages, and swear or affirm that it is true and complete to the best of my knowledge, information and belief.

*Cynthia A. DeCaire*

**Cynthia A. DeCaire, Affiant**

Page __34__ of __34__ Pages                    Affiant's Initials: *CD*

# AFFIDAVIT

**Sworn to or affirmed before me
on this 17TH day of June, 2003**

_Kimberly M. Maxmo_
**Notary Public**   MY COMMISSION
EXPIRES 2/12/10

Page  35  of 34 Pages

Affiant's Initials: