# AFFIDAVIT

STATE: MASSACHUSETTS
PLACE: BOSTON

DATE: June 2004

## PRIVACY ACT INFORMATION

The Privacy Act of 1974 (PL 93-579) requires Federal Agencies to give individuals who are asked to furnish personal information about themselves, the following facts.

AUTHORITY: The Equal Employment Opportunity Commissions' Federal Sector Equal Employment Opportunity Rules and Regulations authorizes Investigators to administer oaths, and take written statements under the penalty of perjury: 29 CFR 1614.108.

PRINCIPAL PURPOSES: Affidavits are used to provide necessary information for the resolution and/or adjudication of discrimination complaints by federal employees or applicants for employment.

ROUTINE USES: This affidavit will be used by the Justice Department and possibly other federal agencies and/or the Federal Judiciary. It may also be used to execute statutory requirements of the Freedom of Information Act.

VOLUNTARY DISCLOSURE: The personal information you provide is entirely voluntary, therefore you may decline without penalty to provide the information being requested.

### NO CONFIDENTIALITY

I understand that the statement I am giving is not to be confidential and that it may be shown to the interested parties.

My name is Susan J. Williams. I am employed by the U.S. Department of Justice, United States Marshals Service, and assigned to the District of Massachusetts, Boston office, Boston, MA. My job title and position grade is Criminal Investigator Deputy United States Marshal (DUSM), GS-1811-12, and my immediate supervisor's name is Alison Hodgkins, Supervisory Deputy United States Marshal (SDUSM). My race, national origin, and sex are Caucasian American female.

Note: The issues accepted for investigation are: Whether the Complainant (Susan J. Williams) was subjected to sex (female), and reprisal discrimination (prior EEO activity) when: **(1)** on October 14, 2003, she was reassigned from the District of Massachusetts Worcester Office to the Boston Office.

Whether the Complainant (Susan J. Williams) was subjected to reprisal discrimination (prior EEO activity) when:

Page _1_ of ___ Pages

Affiant's Initials:



# AFFIDAVIT

**(2)** On January 12, 2004, she learned that the Administrative Officer on November 25, 2003, submitted a response to her CA-2 claim that slandered her reputation.

**(3)** On February 27, 2004, her supervisor spoke to her in a demeaning and unprofessional manner.

**(4)** On March 8, 2004, she was advised, by the Chief Deputy U.S. Marshal that she was being reassigned to the Cellblock as punishment for questioning her supervisor regarding her decisions and assignments.

**(5)** On March 24, 2004, she received a Letter of Instruction from her supervisor for disrespectful and uncooperative behavior. Also, she was advised to contract her supervisor on her Nextel phone when requesting sick leave, while other deputies are not requested to do so.

**(6)** On March 29, 2004, her supervisor questioned her about her time sheet (USM-7) and its location; however, she does not scrutinize other employees' time.

Note: I have not been privy to anyone's affidavit. I am responding to the questions posed by the EEO Investigator.

Question-1:   What is the name of each U.S. Marshals Service official or officials that you believe discriminated against you?  On what basis, e.g., sex, and/or reprisal?

Answer: USM Anthony Dichio (reprisal/gender), CDUSM William Fallon (reprisal/gender), ACDUSM David Taylor (reprisal/gender), SDUSM Thomas Bezanson (reprisal/gender), SDUSM Alison Hodgkins (reprisal) and AO William Ryan (reprisal).

Question-2:  You have alleged that on October 14, 2003, you were reassigned from the District of Massachusetts Worcester Office to the Boston Office. (A) Who reassigned you? (B) Explain why you should not have been reassigned? (C) What did your supervisor tell you with regards to why you were selected for reassignment?  (D) Had you been reassigned to Boston before?  If so, when and under what circumstances?

Page _2_ of ___ Pages

Affiant's Initials:



# AFFIDAVIT

Answer:

(A) SDUSM Bezanson informed me that I was transferred to Boston, pack all of my belongings and report to Boston by 12:00 that same day.

(B) This transfer was the result of sexual discrimination, replacing a female for a female, ignoring the men in the office. Additionally these actions are the result of retaliation against CIDUSM Cynthia DeCaire and myself. This is relevant since I am a friend with DeCaire who had previously filed an EEO complaint against the District of MA management. I had also filed an EEO complaint and grievance against the D/MA management, and am a witness in DeCaire's pending investigation. It is apparent that management has treated me differently than my male counterparts in the office especially since January 2003, when DeCaire and myself were ordered to work in the Boston office on a weekly swap exempting the males in the office. This lasted approximately two rotations. We both filed complaints, and subsequently DeCaire was permanently transferred to Boston to replace a female 082 DUSM.

Secondly, I am senior to all three male DUSM's (Wahl, Weddeke, and Lewis) working in the Worcester office. (Utilizing USMS Dichio and AO Ryan's method of seniority).

Third, this transfer is discriminatory and punitive in nature. It is the practice of management to announce transfers, promotions, retirements, etc. I was ordered to

Page _3_ of ___ Pages                                        Affiant's Initials:

# AFFIDAVIT

Third, this transfer is discriminatory and punitive in nature. It is the practice of management to announce transfers, promotions, retirements, etc. I was ordered to "report to Boston to replace Cyndy" forthwith. I had a little over two hours to rearrange my life, childcare issues, pack all my items and drive over an hour into Boston. No other instructions. No manager has acknowledged me, welcomed me nor explained to me the parameters of the transfer, as would be standard practice.

Fourth, this transfer places an enormous burden on me being the only single mother in the district, and the fact (known to management) that I am in the process of building a new house which makes my commute a minimum of four hours daily. Approximately one year ago, the CDUSM had directed CIDUSM Wahl be transferred to the Boston office. Wahl called USM Dichio directly and explained that he lives far from Boston and had a wife and son at home. Dichio excused him from this transfer. Dichio clearly did a "favor" for ACDUSM Taylor's friend Wahl and obviously is treating me differently than the males in the office.

(C) The first statement Bezanson said was "Did Cyndy and SDUSM Jeff Bohn get married this weekend?" I replied "Possibly." The next statement was "Did you go to the wedding?" Again, I replied "Possibly." He then stated the Chief (CDUSM Fallon) knows they got married and Cyndy is being transferred to Worcester and I am to replace her

Page __4__ of ___ Pages

Affiant's Initials: _____

## AFFIDAVIT

same day. I inquired why I was being transferred and not CIDUSM Wahl or DUSM

Weddeke, an 082 who was originally hired to work in the Boston office. Bezanson

stated an 1811 was replacing another 1811, but made no further statement why myself

and not Wahl was being transferred. I am senior to the two 1811s, Wahl and Lewis

who are assigned to the Worcester office. I asked what the difference between today

10/14/03 and the last week when Bohn and DeCaire were living together in a common

law marriage for the past two years, a fact known by management. He again stated the

Chief said that I was to replace DeCaire. I questioned Bezanson, How did

management expect the only single mother in the district to contend with a four mile, 15

minute commute to now a 50 mile, one and one-half hour one way commute. He did

not reply to that question.

(D) No, I was never reassigned to Boston. In November 1993, I was selected under a

voluntary transfer from the District of Rhode Island to the District of Massachusetts. I

worked in the Boston office until March 1996, at which time I was again selected under a

voluntary transfer to the Worcester sub-office. During times of crisis, I worked along with

the other 1811 DUSMs in the Boston office. (ex., Logan Airport-following 9/11/2001) Also,

prior to management under USMS Dichio, I had worked in other offices, including Boston,

with other 1811 DUSMs from the Worcester sub-office. With the exception of the two-

Page _5_ of ___ Pages

Affiant's Initials:

## AFFIDAVIT

week rotation, it was only on a rare occasion when I was directed to work in the Boston

and/or Springfield office.

Question-3:  Were you permanently assigned to the Boston office as of October 14, 2003,

or were you required to report to the Boston or other offices as needed?

Answer: Bezanson told me that I was transferred to Boston.  I have never received any

official documentation stating the transfer or change of duty station, i.e. SF-50 Personnel

action.

Question-4:  What USMS policy, procedure or practice is at issue with regards to your

reassignment?

Answer:  USMS policy suggests that employees not be supervised by their spouses.   At

that time, DUSM DeCaire was not being supervised by her spouse, and there were several

other supervisors in the Boston office who could easily assumed supervision over her.

This excuse from management stating DeCaire couldn't work in the Boston office along

with her spouse, was just a lame excuse to transfer DeCaire and myself.  To emphasize

this point, DeCaire has worked in the Boston office for at least 80% of her workweek since

January 2004.  There is a long-standing policy and practice within the USMS not to move

or retaliate against married or romantically involved employees because of their

relationship.  I am only aware of two prior forced reassignments within the District of

Page __6__ of ___ Pages                                    Affiant's Initials:

# AFFIDAVIT

Massachusetts Marshal Service.  Those were for two other DUSMs (Rosette, Leo and McKearney, Stephen) applied as punishment.  There are other districts within the USMS that do not force deputies to move once they become romantically involved or get married.

(Three examples are N/IL, D/RI and S/FL)

Question-5:  You have alleged that on January 12, 2004, you learned that the Administrative Officer on November 25, 2003, submitted a response to your CA-2 claim that slandered your reputation.   (A) What is the name of the administrative officer?  (B) Specifically, what was said in the CA-2, response that slandered your reputation?  (C) Did you complain about the administrative officer's response, if so, to whom, and when, and what response did you receive to your complaint?

Answer:

(A) William Ryan

(B) Specifically, Ryan states the Marshal Service was unaware of my symptoms (stress), inferring my statement is a lie.  That is a false statement by Ryan.  First, USMS management knew that I was attending EAP counseling.  Secondly, during my departure from the Worcester office I was visibly upset, and spoke to Bezanson about the stress and hardship this transfer would cause me, to which his response was, "It's the Chief (Fallon), pack your stuff."  When I arrived at Boston that same day, I was still noticeably upset and

Page _7_ of ___ Pages

Affiant's Initials:



# AFFIDAVIT

spoke with my new supervisor Paul Dunne who advised me "to take a walk to calm down."

Third, Ryan compares my attendance record for the past several years to 30 days working

in Boston is an attempt to mislead Worker's Compensation in a false direction. He fails to

include in his comparison information surrounding a prior on-the-job injury (neck and heel

injury).   Fourth, he stated that I not only volunteered for a special assignment (night-

Boston), but that I "aggressively pursued that assignment" that took me away from my son.

He fails to note that the assignment was the only way that permitted me the opportunity to

pick up my son from school at special events that week. And I did not "aggressive pursue"

this detail. Again, misleading Worker's Compensation towards the conclusion that I lied in

my statement to them (Dept of Labor).  He further stated that I had volunteered for a

conference, which I would be away from my child.  I put in for this conference months in

advance; therefore I was afforded plenty of time to arrange for childcare concerns. Fifth,

Ryan states that district management feels my then 15 year old son and 16 year old

daughter do not qualify for child care concerns, as I stated in my CA-2 claim.  These two

children are my minor children, and are my responsibility.   Ryan's statements are not

within his purview as an Administrative Officer.  They are beyond the scope of a

professional inquiry, and it was inappropriate for Ryan to categorize my children.  There

are other parents within the district, including members of management, who are divorced,

Page _8_ of ___ Pages

Affiant's Initials:



## AFFIDAVIT

with children and their roles as parents are not categorized or demeaned by the age of the children. It was also unprofessional for Ryan to address the issue of my children's prior childcare. My mother had assisted me with childcare. She passed away last year after a long illness (fact known to management) and my elderly father cannot assist in these child care matters. Sixth, Ryan summary in the counterclaim is without expertise and his accusations of fraud against my Doctor and me are unfounded and slanderous. He fails to mention two Doctors and one nurse practitioner all concurred with the medical analysis and findings. Seventh, Ryan statement and attempt to classify my previous EEO complaint as frivolous is not true and deliberately derogatory. I withdrew my complaint at the suggestion of district management because my complaints were resolved. Eighth, in another attempt to tarnish my reputation, Ryan mentions adverse actions directed towards me from district management. Ryan mentions that my Nextel phone was taken away from me because my phone was the highest usage in the district while I was not working due to a climbing injury. Again in an attempt to mislead the Dept of Labor and to try to discredit my statement and me, Ryan fails to disclose that I was out injured due to a training exercise at the USMS SOG Training Academy. He tries to diminish this injury by deliberately leaving out information that it occurred during the course of USMS training, nonetheless the phone is still assigned while you are out injured. I made personal as well

Page  9  of ___ Pages

Affiant's Initials:



## AFFIDAVIT

as professional calls to obtain required statements and information from instructors and witnesses to my injuries, which were extensive. Ryan also mentions that on a prior occasion Bezanson stated he sent me home because I was wearing inappropriate attire. Bezanson stated to me that he could see my ankles and my pants were too short. In fact I was wearing an upscale professional business suit that was and still is in style. I found this very disturbing that Bezanson was looking at my ankles and found them to be inappropriate for the courtroom. This statement had nothing to do with my counter claim of my CA-2, but just another statement from Ryan trying to discredit me by attempting to make me appear to be a difficult and troubled employee. Ryan's personal opinion again stated, in the CA-2, that my claim is frivolous, fraudulent and brought because I was "basically looking for an extended period of time off without having to use any of my sick or annual leave" is again unfounded and slanderous in nature.

(c) I submitted a complaint to Yvonne Bonner, USMS Internal Affairs, Joann Grady, Chief, Complaints Processing EEO and copies of those to my attorney, Gary Goldberg.

Question-6: Why do you believe the administrative officer's CA-2, response was an act of reprisal? Had you worked for her or had any positive or negative dealings with her prior to her response, etc.?

Answer:

Page _10_ of ___ Pages

Affiant's Initials:

## AFFIDAVIT

(A) Yes, without a doubt this is an act of reprisal. Since my transfer to the Boston

office, neither Ryan along with top management has acknowledged me, welcomed me

or explained the parameters of the transfer. Prior to the transfer, I spoke with Ryan on

frequent occasions discussing both professional and personal topics. The statements

in this letter made by Ryan has intentionally slandered my reputation by calling into

question my veracity and integrity for filing a CA-2. His conduct is unprofessional and

beyond the scope of my CA-2 claim. The CA-2 contraversion was filed in response to

continued retaliation and harassment against me by district management for previously

filing an EEO claim and failure to comply with a demand by Massachusetts State

Trooper Darlene DeCaire that I side with her in an on-going dispute with other USMS

personnel.

Question-7:  You have alleged that on February 27, 2004, your supervisor spoke to you in

a demeaning and unprofessional manner.  (A) Who spoke to you in a demeaning and

unprofessional manner? (B) Specifically, what was said to you and what was the context

of the conversation?   (C) Did you complain about what was said to you in this

conversation, if so, to whom, and when, and what was the response to your complaint?

Answer:

   (A) Supervisory Deputy US Marshal Alison Hodgkins

Page __11__ of ___ Pages                                    Affiant's Initials:

# AFFIDAVIT

(B) She directed me to research a policy (regarding lunch breaks) and I advised her that I could not locate this policy. While in the USMS Boston squad room with other 1811 and 082 DUSMs present, she said sarcastically, "Aren't you an 1811?" I replied yes, and asked her not to speak to me in that manner. Later that same day, in the squad room, she condescendingly asked, "When have *you* hired the Marshals Service to work for you?" I told her I did not know what she was talking about, and again asked her not to speak to me in that manner. She never clarified nor apologized to me for her statements.

(C) I advised CDUSM Fallon that SDUSM Hodgkins has always been unprofessional towards me. She addresses me, alone and in front of other USMS employees, in a demeaning manner. He stated that it has never been brought to his attention, and I advised him that I was addressing the issue with him at that time. He stated that he did not want to discuss the matter then, and that I was to email my concerns to ACDUSM Taylor. An email was sent to Taylor requesting a meeting to address Hodgkin's inappropriate behavior and her mismanagement. I along with other 1811 and 082 DUSMs (Lawlor, Olivera, DeCaire, Wickham, over 50% of the deputies in the operations unit) met with Taylor and Hodgkins and discussed her inability to supervise and specifically to address the manner in which she speaks

Page __12__ of ___ Pages

Affiant's Initials:

# AFFIDAVIT

speaks with me.

**Question-8:**  Why was reprisal a factor in the way you were spoken to?

**Answer:** Seeing how the district of management treats me, she has continued and joined in with this harassment and singling me out and treating me differently.

**Question-9:**  You have alleged that on March 8, 2004, you were advised by the Chief Deputy U.S. Marshal, that you were being reassigned to the Cellblock as punishment for questioning your supervisor regarding her decisions and assignments.  (A) Where were you when you and the Chief Deputy had this conversation?  (B) Specifically, what was said between the two of you and what was the context of the conversation?  (C) Did you complain about the cellblock assignment, if so, to whom, and when, and what was the response to your complaint?  (D) What was the duration of this cellblock assignment?

**Answer:**

(A) I was called into CDUSM Fallon's office by SDUSM Hodgkins, she stated the Chief wanted to speak with us in his office.

(B) CDUSM Fallon stated that it was brought to his attention that on various occasions I have been questioning SDUSM Hodgkins regarding her decisions and assignments.  Therefore, I was being reassigned to the cellblock as punishment.  He further threatened, "Consider this a verbal warning and the

Page __13__ of ___ Pages

Affiant's Initials:



# AFFIDAVIT

next time you will be written up and receive a harsher punishment.  I replied to CDUSM Fallon that I wanted to understand him correctly; I was being punished to the cellblock because I questioned my supervisor, which he affirmed.  I also attempted to inform Fallon that it is well within my right and responsibility to question any assignment which I may neither understand nor believe is appropriate.  Hodgkins witnessed this exchange.

(C) It was useless to bring this to the attention of management, since they were the ones instilling the punishment.  I filed a complaint with EEO and a grievance.

(D) My punishment lasted two weeks and one day into the third week.

Question-10: Was this the first time you had been assigned to work the cellblock? What did this assignment entail, i.e., describe your duties relative to this assignment? Were other deputies assigned to work the cellblock either before or after you?

Answer:

(A) This was the first time I was assigned to work the cellblock for a period of time lasting over 5 hours.  I have on two to three separate occasions worked in the cellblock to become familiar with the operation.  My duties included the monitoring of prisoners, movements of prisoners to and from court and attorney interview rooms. Since my transfer, (and prior upon hiring Detention Enforcement Officers) there has never been

Affiant's Initials:

# AFFIDAVIT

an 1811 DUSM assigned to the cellblock.

Question-11: Why was reprisal a factor in your assignment to work the cellblock?

Answer: CDUSM stated I am "punished to the cellblock" for questioning my supervisor. He further stated the next time I question Hodgkins I will receive a "harsher punishment". I also inquired, as to why this date 3/23/04 I was assigned to the cellblock, again, when my two week "punishment" was completed. She stated, "You don't know where your authority ends and mine begins." Therefore, this is more "punishment", which is completely irrational and she is still my supervisor in the cellblock. She uses the cellblock as "punishment". I asked her how long I was being punished this time and she stated for one week. I asked her why I was being "punished" again and she stated because of my alleged attitude towards her on 3/10/04. I then asked why I was receiving the Letter and she stated that, "I assigned you to the cellblock, and I don't have to explain anything to you." I asked her if this was a continuation of my "punishment" imposed earlier by her and CDUSM Fallon and she replied that she was now trying to save the USMS money. Hodgkins stated that this was no longer "punishment", but my assignment. I advised her that policy states that if she issues a Letter of Instruction, she cannot attach a punishment also. CDUSM Fallon gave me a verbal reprimand and attached a punishment, which was inappropriate. She agreed and stated that she "knew it was wrong", and that she spoke with CDUSM Fallon

Page  15  of ___ Pages

Affiant's Initials:

# AFFIDAVIT

regarding his verbal reprimand and the "punishment", but she stated that she assumed that CDUSM Fallon was aware of what was going on because he was on the USMS Disciplinary Panel at one time. She further stated that she could not discuss the conversation between her and Fallon any further.

Question-12: You have alleged that on March 24, 2004, you received a Letter of Instruction from your supervisor for disrespectful and uncooperative behavior. Also, you were advised to contract your supervisor on her Nextel phone when requesting sick leave, while other deputies are not requested to do so. (A) What supervisor gave you the Letter of Instruction and told you to contact them by their Nextel when requesting sick leave? (B) Specifically, what was said to you about the sick leave telephone contact issue, and what was the context of the conversation? (C) Did you complain about being required to telephone the supervisor when requesting leave, if so, to whom, and when, and what was the response to your complaint? (D) Were you disrespectful and uncooperative as indicated in the Letter of Instruction? Describe your demeanor, when and where did the alleged conduct take place? Specifically, what was said between you and your supervisor that led to the letter?

Answer:

(A) Supervisory DUSM Alison Hodgkins gave me the Letter of Instruction on March 23,

Affiant's Initials:

# AFFIDAVIT

2004

(B) She read the Letter of Instruction to me and stated that she had a number of things to speak about to me. She then ordered me to program her Nextel phone number and direct connect into my Nextel phone. She further stated that if I were to ever call in sick, I need to contact her directly only on her Nextel and not call into the USMS operations desk, where all other operations DUSMs call during business hours which are 07:30 – 5:00pm. She stated that this special arrangement for me was due to the fact that on 3/17/04, at 07:40 am I called in an emergency childcare leave request. When I asked to speak with SDUSM Hodgkins she was not there because she was late for work and did not arrive until 08:30 am, though she was assigned to be the "early supervisor" and supposed to arrive by 07:30 am. I left a message with the Senior DUSM who answered the phone. The Senior DUSM then transferred me to SDUSM Hodgkin's telephone and I left another message stating the emergency information and if she needed to contact me, I provided a telephone number. SDUSM Hodgkins again stated that I needed to contact her personally and that I am to speak to no other supervisors because she stated she "has a lack of communication between the other supervisors".

(C) No I did not complain directly to Hodgkins, since I was "punished" to the cellblock

Page __17__ of ___ Pages

Affiant's Initials:

# AFFIDAVIT

for two weeks. I did not want additional time added on to that punishment. I filed another amendment to my EEO complaint and a grievance.

(D) SDUSM Hodgkins called me into her office on 3/10/04 wherein she handed me my request for sick leave and questioned me as to whether I really needed eight hours leave as stated on my OPM 71 requesting time off on 3/22/04. I replied that I wrote eight hours because that is the time I am requesting. Again, she asked why I needed eight hours and I replied that it would take 8 hours for my sick leave. She then asked me what I was going to do in the eight hours and did I have a doctor's appointment that would take all day. She stated that my "pattern" for taking sick leave was for three to four hours at a time. I stated that I needed the eight hours because my appointment was midday and that I could not come to the Boston office in the morning or the afternoon due to the long commute from the Boston office to the doctor's office. She then handed me the leave slips stating that I needed to provide a comment in the "remarks" section. On that slip, the box adjacent to the illness/incapacitation/injury of the employee was previously checked. When I pointed this out to her she again demanded that I write a comment in the "remarks' section. I wrote, "See above". She then stated, "You are not making this easier on yourself", and that I needed to get more specific. I then circled the word "illness" and asked it that was good enough. She then

Affiant's Initials:



## AFFIDAVIT

said, "Get back in the cellblock." This conversation in Hodgkin's office lasted for

approximately four to six minutes. I was not disrespectful to Hodgkins and completed

the task she requested (making the notations on my leave slip) and then departed the

office.

Question-13: (A) Was this the first time you had been told to telephone your supervisor

when you were going to be absent? If not, what were you told previously, when, and by

which supervisor? (B) If such instructions were previously given, did you adhere to them?

(C) Have you known other deputies not to be required to telephone their supervisor if they

were going to be absent? If so, whom, when, and describe the situation or circumstances.

Answer:

(A) The first time I was directed to call Hodgkins directly on her cellphone was March

24, 2004. It was during this three-hour time frame that Hodgkins ordered me to

program her cellphone numbers into my phone and to contact her directly whenever

I am going to be absent from work. (See question 12)

(B) USMS policy requires you to call in and speak with whomever is designated by

management up to one half hour after the commencement of the work day. D/MA

operations practice/policy is to call into the Operations desk. A policy, which I

followed.

Page _19_ of ___ Pages                                Affiant's Initials:

# AFFIDAVIT

(C) No other Deputies within this district, or any others that I know of are required to personally contact their supervisor via cellphone to notify them of their absence.

Question-14: (A) Was this the first time you had been told that you were being disrespectful and uncooperative?  (B) Have you known other deputies to demonstrate similar conduct and not be discipline, if so whom, when, and describe the situation or circumstances of their conduct?

Answer:

(A) Other then CDUSM Fallon stating that I was being punished for questioning Hodgkins on her assignments, I have never been spoken to regarding my conduct.

(B) Deputies (082 &1811) constantly question Hodgkins on occasions.  Hodgkins is a new Supervisor and does not know how to lead, manage or supervise personnel. This is clearly evident when five of the six deputies that she supervises along with two others requested a meeting with ACDUSM Taylor for her inability to supervise or manage personnel and the court operations unit.  One specific occasion, DUSM A. Lawlor questioned Hodgkins on a "policy" that she implemented.  This policy violated USMS policy.  Lawlor brought this up to Hodgkins but Lawlor was not disciplined regarding her behavior.

Question-15: Why was reprisal a factor in your being issued the Letter of Instruction and

Page _20_ of ___ Pages

Affiant's Initials:

## AFFIDAVIT

being told to telephone your supervisor when requesting sick leave?

Answer:

(A) No other Deputy is required to call in specifically to their supervisor's cellular phone. This is not USMS or district policy. Just a requirement made of myself by Hodgkins. This is another example of management treating me differently than others.


When given the Letter of Instruction, I respectfully asked why I was receiving this Letter when it is not a requirement of the USMS to write a comment in the "remarks" section of the OPM71. I further stated that since I have been an employee of the USMS since 1990, I have never been required to write a comment in that area. She stated that I have done so in the past. I told her that I have documented a FIT injury for documentation for the Department of Labor because it was an on the job injury. SDUSM Hodgkins stated that CDUSM Dimmitz (temporary assignment to Boston) informed her in April 2003 that he wanted all DUSMs to make a comment in the "remarks" section in the OPM 71. She was not a supervisor at this time, and this policy was not communicated to me, or to my knowledge, anyone else in the D/MA. I advised her that I could provide her with years of sick leave request without any comments in the remarks section. She stated, "I must have overlooked those." It should be noted

Page _21_ of ___ Pages

Affiant's Initials:

## AFFIDAVIT

ement (which she is a

ne because, in her

. She was

ote. I have done

and therefore, I had to

hen Hodgkins was a

r complaint against

ought were false and I

ort her views either.  I

r, and that she holds

es.

ervisor questioned you

es not scrutinize other

? (B) Explain why you

between the two of you

t? (D) Explain what you

you saying that your

?

sued a new district policy on 3/11/04 stating that he requires a

'1 for a sick leave request.  Again, I told her that this is an

nagement treating me differently than other DUSMs.

performance and attitude by comparing herself with me.  She

she worked under a supervisor who "Gave me a difficult time."

she had "a bad attitude from experiences with prior district

me that she "went through hell" when she filed her EEO

body was there to help me". She was inferring that I should

at she is punishing me because I did not help her.  Given her

asked her why she would in fact harass and demean employees

These actions caused me to file an EEO complaint. Initially,

ie knew nothing of my EEO complaints or of me being a witness

) complaint; or my forced relocation from Worcester to Boston,

and unfair treatment by management. I know that she was aware

t was common knowledge within the district.  She stated that

ents" or "off-hand remarks from the district's management USM

ASDUSM Taylor", but that she would just "cover my ears and

s three hour counseling session, Hodgkins stated repeatedly

Affiant's Initials:

Affiant's Initials:

**AFFIDAVIT**

(D) Hodgkins routinely submits my USM-7 to the time-keeper late or last. On numerous occasions Ms. Croke inquired of me the whereabouts of my USM-7. I stated Hodgkins still hasn't signed it yet. She asked why she scrutinizes my timesheet over other employees. It is evident to other USMS employees that SDUSM is continuing the harassment of me in order to please other management.

Question-17:      (A) Was this the first time you had been asked the location of your time sheet? If so, what was unusual about the location of your time sheet as opposed to other occasions? (B) What deputies, are you alleging, were treated differently by this supervisor? (C) Describe the situation or circumstances of their time sheets, and when the situation occurred?

Answer:

(A) No

(B) All others that she supervised

(C) Unable to respond

Question-18: Why was reprisal a factor in this time sheet issue?

Answer: She scrutinizes mine, requested the printout of access cards, and not doing the same with others.

Page _25_ of ___ Pages                                    Affiant's Initials:

**AFFIDAVIT**

Question-19: When were you hired by the U.S. Marshals Service and what was your

position at the time of your hire, and where was your duty station? (B) How long have you

been assigned to the District of Massachusetts? (C) Where is your permanent duty station

in the District?

Answer:

   (A) I was hired by the USMS in October 1990, as a Deputy US Marshal in the District of

        Rhode Island. My calculated government service began in September 9. 1985.

   (B) I have been assigned to the District of Massachusetts since November 1993.

   (C) Since October 14, 2003 I have been assigned to court operations in Boston,

        MA. In March 1996, I was permanently assigned to the Worcester sub-office.

Question-20:        What remedies are you seeking in order to resolve this complaint?

Answer:

Reassigned back to the Worcester office, restoration of all leave time taken, no further

retaliation, emotional distress damages, attorney's fees and costs incurred and personnel

record expunged of relevant documents.

Question-21: Do you have any witnesses that you recommend be interviewed?  If so,

please give me their names, work location, and a brief overview of what germane facts

they can be expected to attest.

Page _26_ of ___ Pages                                   Affiant's Initials:

**AFFIDAVIT**

Answer:    Cynthia DeCaire and Jeff Bohn have knowledge of the underlying reprisal and EEO claim along with facts relating to policy and practice associated with assignment and reassignment of married or romantically involved employees.  Annette Lawlor, Gary Oliveira and John Wickham have knowledge of court operations and the treatment that I received from Hodgkins, etc.

Question-22: Is there anything else that you would like to add to this statement?

Answer:

I have read the above statement, consisting of 27 pages, and swear or affirm that it is true and complete to the best of my knowledge, information and belief.


Susan J. Williams, Affiant

Sworn to or affirmed before me
this 17 day of June, 2004


NOTARY
J. Luhhfn
Expires  7/30/04


Page  27  of ___ Pages

Affiant's Initials: