# AFFIDAVIT

STATE: MASSACHUSETTS  
PLACE: BOSTON

DATE: June 24, 2004

## PRIVACY ACT INFORMATION

The Privacy Act of 1974 (PL 93-579) requires Federal Agencies to give individuals who are asked to furnish personal information about themselves, the following facts.
AUTHORITY: The Equal Employment Opportunity Commissions' Federal Sector Equal Employment Opportunity Rules and Regulations authorizes Investigators to administer oaths, and take written statements under the penalty of perjury: 29 CFR 1614.108.
PRINCIPAL PURPOSES: Affidavits are used to provide necessary information for the resolution and/or adjudication of discrimination complaints by federal employees or applicants for employment.
ROUTINE USES: This affidavit will be used by the Justice Department and possibly other federal agencies and/or the Federal Judiciary. It may also be used to execute statutory requirements of the Freedom of Information Act.
VOLUNTARY DISCLOSURE: The personal information you provide is entirely voluntary, therefore you may decline without penalty to provide the information being requested.

## NO CONFIDENTIALITY

I understand that the statement I am giving is not to be confidential and that it may be shown to the interested parties.

My name is Anthony Dichio. I am employed by the U.S. Department of Justice, United States Marshals Service, and I am assigned to the District of Massachusetts, One Courthouse Way, Suite 500, Boston, MA. My job title and position grade is United States Marshal (USM), Presidential Appointee and my immediate supervisor's name is Donald A Gambatesa, Deputy Director USMS. My race, national origin, and sex is Caucasian American male.

Note: The issues accepted for investigation are: Whether the Complainant (Susan J. Williams) was subjected to sex (female), and reprisal discrimination (prior EEO activity) when: **(1)** on October 14, 2003, she was reassigned from the District of Massachusetts Worcester Office to the Boston Office.
Whether the Complainant (Susan J. Williams) was subjected to reprisal discrimination (prior EEO activity) when:

Page 1 of 8 Pages                                   Affiant's Initials: A.D



# AFFIDAVIT

(2) on January 12, 2004, she learned that the Administrative Officer on November 25, 2003, submitted a response to her CA-2 claim that slandered her reputation.
(3) On February 27, 2004, her supervisor spoke to her in a demeaning and unprofessional manner.
(4) On March 8, 2004, she was advised by the Chief Deputy U.S. Marshal that she was being reassigned to the Cellblock as punishment for questioning her supervisor regarding her decisions and assignments.
(5) On March 24, 2004, she received a Letter of Instruction from her supervisor for disrespectful and uncooperative behavior. Also, she was advised to contract her supervisor on her Nextel phone when requesting sick leave, while other deputies are not requested to do so.
(6) On March 29, 2004, her supervisor questioned her about her time sheet (USM-7) and its location; however, she does not scrutinize other employees' time.

Note: I have not been privy to anyone's affidavit. I am responding to the questions posed by the EEO Investigator.

Question-1: Ms. Williams alleges that on October 14, 2003, she was reassigned from the District of Massachusetts Worcester Office to the Boston Office. (A) Explain the reason that Ms. Williams was selected for the reassignment as opposed to other deputies assigned to the Worcester office? (B)) Who requested and approved her reassignment or transfer?

Answer: DUSM Sue Williams was the most junior 1811 deputy assigned to Worcester Court Operations and filled a vacancy in Boston. DUSM Mark Lewis is assigned to the Worcester HIDTA Task Force, a unit separate from the Court Operations. (C) Chief Fallon and I approved of the reassignment and transfer.

Question-2: Was Ms. Williams permanently assigned to the Boston office as of October 14, 2003, or was she required to report to the Boston or other offices as needed?

Page 2 of 8 Pages                                            Affiant's Initials: A.D

# AFFIDAVIT

Answer: Yes, DUSM Williams was permanently assigned to the Boston Office.

Question-3: Prior to Ms. Williams' reassignment or transfer to Boston, was the Worcester office her duty station? If so, how long had she been assigned to the Worcester office?

Answer: Yes, check with the AO Bill Ryan, as to how long she was assigned.

Question-4: What USMS policy, procedure or practice is relevant to Ms. Williams' reassignment?

Answer: This is a standard practice throughout the country where district offices are within 50 miles or less of each other and there is no change in salary.

Question-5: Ms. Williams alleges that on January 12, 2004, she learned that Administrative Officer, William Ryan on November 25, 2003, submitted a response to her CA-2 claim that slandered her reputation. (A) Did you instruct Mr. Ryan to respond to Office of Workers Compensation claim and not to certify it? (B) Did Ms. Williams complain about the administrative officer's response, if so, to whom, and when, and what response did she receive to her complaint?

Answer: (A) Chief Fallon had conversation with AO Ryan. (B) No, not to me.

Question-6: Ms. Williams alleges that on February 27, 2004, her supervisor, SDUSM Hodgkins, spoke to her in a demeaning and unprofessional manner, by saying: "Aren't you an 1811?" And later saying to her: "When have you hired the Marshal Service to work for you?" (A) Did you instruct Ms. Williams' supervisor to speak to her in "a demeaning and

Page 3 of 8 Pages                                        Affiant's Initials: AD

## AFFIDAVIT

unprofessional manner?" (B) Did Ms. Williams complain about what was said to her in this conversation, if so, what did she tell you, when, and what was your response to her complaint?

Answer: (A) No   (B) No

Question-7: Ms. Williams alleges that on March 8, 2004, she were advised by the Chief Deputy U.S. Marshal Fallon that she was being reassigned to the Cellblock as punishment for questioning her supervisor, SDUSM Hodgkins regarding her [the supervisor's] decisions and assignments. (A) Did you direct CDUSM Fallon to reassign DUSM Williams to the cellblock as punishment, if so why? (B) What did Chief Fallon tell you as to the reason for DUSM Williams' assignment to the cellblock? (C) Did Ms. Williams complain about the cellblock assignment, if so, to whom, and when, and what was the response to her complaint? (D) What was the duration of this cellblock assignment?

Answer: (A) No    (B) Disrespectful and Uncooperative behavior towards SDUSM Hodgkins infront of other deputies. (C) No, not to me, but she did file a formal grievance with the USMS regarding this issue, but it was denied.   (D) Approx. 2-3 weeks

Question-8: Was this the first time Ms. Williams had been assigned to work the cellblock? (B) What did this assignment entail, i.e., describe your duties relative to this assignment? (C) Were other deputies assigned to work the cellblock either before or after DUSM Williams? (D) Were those deputies 1811s or 082s?

Page _4_ of _8_ Pages                                          Affiant's Initials: _A.D_

# AFFIDAVIT

Answer: No, I don't believe so. Check with her SDUSM Hodgkins and prior supervisors for further information.

Question-9: Was reprisal a factor in Ms. Williams' assignment to work the cellblock?

Answer: No

Question-10: Ms. Williams alleges that on March 24, 2004, she received a Letter of Instruction from her supervisor for being disrespectful and uncooperative behavior. She was also advised to contact Ms. Hodgkins' [the supervisor's] Nextel phone when requesting sick leave, while other deputies were not required to do so. (A) Did you instruct SDUSM Hodgkins to give DUSM Williams the Letter of Instruction and to contact the supervisor by their Nextel when requesting sick leave? Explain. (B) Did Ms. Williams appeal the Letter of Instruction to you, if so, what was the outcome of that appeal? (C) Did Ms. Williams complain to you about being required to telephone the supervisor when requesting leave, if so, when, and what was your response to her complaint? (D) Did you consider DUSM Williams to have been disrespectful and uncooperative as indicated in the Letter of Instruction? Explain.

Answer: (A) No (B) No (C) No (D) Yes, Chief Fallon advised me of the situation.

Question-11: (A) Was this the first time DUSM Williams had been told to telephone her supervisor when she was going to be absent? If not, who gave her that instruction prior to this one, when, what was she told, and why? (B) If such instructions were previously

Page 5 of 8 Pages                                         Affiant's Initials: A.D

## AFFIDAVIT

given, did Ms. Williams adhere to them?

Answer: (A) I don't know

Question-12: (A) Was this the first time a deputy had been told that they were being disrespectful and uncooperative? (B) If not, who were the other deputies that demonstrated similar conduct? (C) Were these deputies disciplined, if so provide a copy of the discipline, i.e., Letter of Instruction.

Answer: (A) I don't know

Question-13: Was reprisal a factor in Ms. Williams being issued the Letter of Instruction and being told to telephone her supervisor when requesting sick leave?

Answer: No

Question-14: Ms. Williams alleges that on March 29, 2004, her supervisor questioned her about her time sheet (USM-7) and its location, that DUSM Williams states had been taken off her desk by the time keeper without the supervisor having approved it; however, she [the supervisor] does not scrutinize other employees' time. (A) Did you instruct the supervisor to question Ms. Williams about her time sheet, if so, why? (B) Did Ms. Williams complain to you about this matter, if so, when, and what was your response to her complaint?

Answer: (A) No, but it's the supervisors job to question all deputies. (B) No

Question-15: When were you hired by the U.S. Marshals Service. How long have

Page 6 of 8 Pages                                          Affiant's Initials: A.D.

# AFFIDAVIT

you been assigned to the District of Massachusetts and what was your position at the time of your hire?

Answer: August 6, 2002, 1 year and 10 months, U.S. Marshal

Question-16: Do you have any witnesses that you recommend be interviewed? If so, please give me their names, work location, and a brief overview of what germane facts they can be expected to attest.

Answer: Chief Fallon, Asst. Chief Taylor, SDUSM Hodgkins, SDUSM Bezanson

Question-17: Is there anything else that you would like to add to this statement?

Answer: 'As the U.S. Marshal of the District of Massachusetts, it is my responsibility to use all resources to the best of my ability to accomplish the mission in an equitable manner. To that end, all my decisions are based on seniority, job performance and locality. As always, deputies in this district will be treated with professionalism and equity.

I have read the above statement, consisting of 8 pages, and swear or affirm that it is true and complete to the best of my knowledge, information and belief.

_____
Anthony Dichio, Affiant

Sworn to or affirmed before me
on this 24th day of June, 2004

Page 7 of 8 Pages                              Affiant's Initials: A.D

AFFIDAVIT

*Eugene Clark* (signature)
Eugene Clark, EEO Contract Investigator

Page 8 of 8 Pages                                                                 Affiant's Initials: A.D