# AFFIDAVIT

STATE: MASSACHUSETTS
PLACE: BOSTON

DATE: June 2004

## PRIVACY ACT INFORMATION

The Privacy Act of 1974 (PL 93-579) requires Federal Agencies to give individuals who are asked to furnish personal information about themselves, the following facts.
<u>AUTHORITY</u>: The Equal Employment Opportunity Commissions' Federal Sector Equal Employment Opportunity Rules and Regulations authorizes Investigators to administer oaths, and take written statements under the penalty of perjury: 29 CFR 1614.108.
<u>PRINCIPAL PURPOSES</u>: Affidavits are used to provide necessary information for the resolution and/or adjudication of discrimination complaints by federal employees or applicants for employment.
<u>ROUTINE USES</u>: This affidavit will be used by the Justice Department and possibly other federal agencies and/or the Federal Judiciary. It may also be used to execute statutory requirements of the Freedom of Information Act.
<u>VOLUNTARY DISCLOSURE</u>: The personal information you provide is entirely voluntary, therefore you may decline without penalty to provide the information being requested.

### NO CONFIDENTIALITY

I understand that the statement I am giving is not to be confidential and that it may be shown to the interested parties.

My name is William Fallon. I am employed by the U.S. Department of Justice, United States Marshals Service, and I am assigned to the District of Massachusetts, One Courthouse Way, Suite 500, Boston, MA. My job title and position grade is Chief Deputy United States Marshal (CDUSM), GS-1811-15, and my immediate supervisor's name is Anthony Dichio. My race, national origin, and sex is Caucasian American male.

Note: The issues accepted for investigation are: Whether the Complainant (Susan J. Williams) was subjected to sex (female), and reprisal discrimination (prior EEO activity) when: **(1)** on October 14, 2003, she was reassigned from the District of Massachusetts Worcester Office to the Boston Office.
Whether the Complainant (Susan J. Williams) was subjected to reprisal discrimination (prior EEO activity) when:
**(2)** on January 12, 2004, she learned that the Administrative Officer on November 25, 2003, submitted a response to her CA-2 claim that slandered her reputation.

Page 1 of 7 Pages

Affiant's Initials: _____



EXHIBIT 18

# AFFIDAVIT

(3) On February 27, 2004, her supervisor spoke to her in a demeaning and unprofessional manner.

(4) On March 8, 2004, she was advised by the Chief Deputy U.S. Marshal that she was being reassigned to the Cellblock as punishment for questioning her supervisor regarding her decisions and assignments.

(5) On March 24, 2004, she received a Letter of Instruction from her supervisor for disrespectful and uncooperative behavior. Also, she was advised to contract her supervisor on her Nextel phone when requesting sick leave, while other deputies are not requested to do so.

(6) On March 29, 2004, her supervisor questioned her about her time sheet (USM-7) and its location; however, she does not scrutinize other employees' time.

Note: I have not been privy to anyone's affidavit. I am responding to the questions posed by the EEO Investigator.

Question-1: Ms. Williams alleges that on October 14, 2003, she was reassigned from the District of Massachusetts Worcester Office to the Boston Office. (A) Explain the reason that Ms. Williams was selected for the reassignment as opposed to other deputies assigned to the Worcester office? (B)) Who requested and approved her reassignment or transfer?

There were a total of four DUSMs in our Worcester office. One was assigned to a High Intensity Drug Trafficking Area (HIDTA) TF and was not considered. One was a GS 082 DUSM who was not considered. Of the remaining two, DUSM Kevin Wahl was hired by the USMS earlier than DUSM Williams.

Question-2: Was Ms. Williams permanently assigned to the Boston office as of October 14, 2003, or was she required to report to the Boston or other offices as needed?

Page 2 of 9 Pages                                    Affiant's Initials: [initials]

# AFFIDAVIT

Answer:    DUSM Williams was and is permanently assigned to the Boston office.

Question-3:   Prior to Ms. Williams' reassignment or transfer to Boston, was the Worcester office her duty station? If so, how long had she been assigned to the Worcester office?

Answer: Her duty station is the District of Massachusetts and yes she was assigned to the Worcester office. Administrative Officer William Ryan can answer the second question.

Question-4:   What USMS policy, procedure or practice is relevant to Ms. Williams' reassignment?

Answer:  The District of Massachusetts, along with other USMS districts from around the country, have the ability to transfer DUSMs to offices within the district and within the local commuting area (less than 50 miles). This has been standard practice in this district since the opening of the Worcester office, and to my knowledge is standard practice in other districts where offices are within 50 miles of each other and there is no change in salary.

Question-5:  Ms. Williams alleges that on January 12, 2004, she learned that Administrative Officer, William Ryan on November 25, 2003, submitted a response to her CA-2 claim that slandered her reputation.  (A) Did you instruct Mr. Ryan to respond to Office of Workers Compensation claim and not to certify it? (B) Did Ms. Williams complain about the administrative officer's response, if so, to whom, and when, and what response did she receive to her complaint?

Page _3_ of _9_ Pages                                                     Affiant's Initials: _____

# AFFIDAVIT

Answer: A. Yes. B. Unknown

Question-6: Ms. Williams alleges that on February 27, 2004, her supervisor, SDUSM Hodgkins, spoke to her in a demeaning and unprofessional manner, by saying: "Aren't you an 1811?" And later saying to her: "When have you hired the Marshal Service to work for you?" (A) Did you instruct Ms. Williams' supervisor to speak to her in "a demeaning and unprofessional manner?" (B) Did Ms. Williams complain about what was said to her in this conversation, if so, what did she tell you, when, and what was your response to her complaint?

Answer: A. No  B. Yes, DUSM Williams complained about SDUSM Hodgkins while we (SDUSM Hodgkins and I) were discussing DUSM Williams inappropriate behavior with DUSM Williams. I felt this was an effort to deflect discussing DUSM William's unprofessional actions, which is addressed in detail in the answer to question 7. I instructed DUSM Williams to write a memo with her allegations and present it to ACDUSM David Taylor who is SDUSM Hodgkins' supervisor. To my knowledge DUSM Williams never completed this request.

Question-7: Ms. Williams alleges that on March 8, 2004, she were advised by you, the Chief Deputy U.S. Marshal that she was being reassigned to the Cellblock as punishment for questioning her supervisor, SDUSM Hodgkins regarding her [the supervisor's] decisions and assignments. (A) Did you reassign DUSM Williams to the cellblock as punishment,

Page __4__ of __7__ Pages                                                        Affiant's Initials: ___

## AFFIDAVIT

if so why? (B) What did you tell DUSM Williams as to the reason for her assignment to the cellblock (put what you said to her in context)? ©) Did Ms. Williams complain about the cellblock assignment, if so, to whom, and when, and what was the response to her complaint? (D) What was the duration of this cellblock assignment?

Answer: A. DUSM Williams was assigned to the cellblock. It came to my attention that DUSM Williams had violated the standards of conduct by acting in an unprofessional manner by her SDUSM, Alison Hodgkins. I asked SDUSM Hodgkins to address the issue in a manner she (Hodgkins) saw fit. SDUSM Hodgkins gave DUSM Williams a verbal reprimand which is not an official disciplinary action. During a meeting with SDUSM Hodgkins I was informed of a negative attitude being displayed by DUSM Williams and was concerned over the effect it would have on other, junior DUSMs in the squad room area. Based on the violation of the standards of conduct and SDUSM Hodgkins input, I instructed SDUSM Hodgkins to assign DUSM Williams to the cellblock. DUSM Williams asked if that was punishment and I replied "yes". Being assigned to the cellblock is not a formal disciplinary action in the USMS. There is no difference in pay and any assignment of DUSMs in any area of our functions is at the discretion of management. DUSM Williams at that time was causing an unnecessary negative atmosphere in our Boston squad room and I felt it was best to assign her to a different section for a short period of time. The assignment was only for 2 weeks and was later followed by a rotation of other GS 1811

Page _5_ of _9_ Pages                                                                 Affiant's Initials: ___

## AFFIDAVIT

DUSMs to that position. The Boston office GS 1811 DUSMs were unfamiliar with cellblock operation and were all going to be assigned, sooner or later, to the cellblock in order to learn the procedures. I believe DUSM Williams filed a formal grievance with the USMS on this issue which was denied. There was no violation of policy. This decision was solely based on DUSM Williams unprofessional actions.

Question-8: Was this the first time Ms. Williams had been assigned to work the cellblock? (B) What did this assignment entail, i.e., describe your duties relative to this assignment? (C) Were other deputies assigned to work the cellblock either before or after DUSM Williams? (D) Were those deputies 1811s or 082s?

Answer: I believe DUSM Williams had been previously assigned to the cellblock. SDUSM Hodgkins can better answer that question as well as the other questions. Also see answer to question 7.

Question-9: Was reprisal a factor in Ms. Williams' assignment to work the cellblock?

Answer: No

Question-10: Ms. Williams alleges that on March 24, 2004, she received a Letter of Instruction from her supervisor for being disrespectful and uncooperative behavior. She was also advised to contact Ms. Hodgkins' [the supervisor's] Nextel phone when requesting sick leave, while other deputies were not required to do so. (A) Did you instruct SDUSM Hodgkins to give DUSM Williams the Letter of Instruction and to contact the supervisor by

Page 6 of 7 Pages                                                    Affiant's Initials: ____

# AFFIDAVIT

their Nextel when requesting sick leave? Explain. (B) Did Ms. Williams appeal the Letter of Instruction to you, if so, what was the outcome of that appeal? ©) Did Ms. Williams complain to you about being required to telephone the supervisor when requesting leave, if so, when, and what was your response to her complaint? (D) Did you consider DUSM Williams to have been disrespectful and uncooperative as indicated in the Letter of Instruction? Explain.

Answer: A. No   B. No   C. No.   D. Based on information I was made aware of, yes.

Question-11:    (A) Was this the first time DUSM Williams had been told to telephone her supervisor when she was going to be absent? If not, who gave her that instruction prior to this one, when, what was she told, and why? (B) If such instructions were previously given, did Ms. Williams adhere to them?

Answer: I don't know.

Question-12:    (A) Was this the first time a deputy had been told that they were being disrespectful and uncooperative?  (B) If not, who were the other deputies that demonstrated similar conduct? ©) Were these deputies disciplined, if so provide a copy of the discipline, i.e., Letter of Instruction.

Answer:  I have no other knowledge of this type of behavior, prior to this incident, in this district since my arrival in July, 2003.

Question-13:    Was reprisal a factor in Ms. Williams being issued the Letter of

Page _7_ of _9_ Pages                                                            Affiant's Initials: [initials]

# AFFIDAVIT

Instruction and being told to telephone SDUSM Hodgkins when requesting sick leave?

Answer: No

Question-14: Ms. Williams alleges that on March 29, 2004, her supervisor, SDUSM Hodgkins, questioned her about her time sheet (USM-7) and its location, which DUSM Williams states had been taken off her desk by the time keeper without the supervisor having approved it; however, she [the supervisor] does not scrutinize other employees' time. (A) Did you instruct the supervisor to question Ms. Williams about her time sheet, if so, why? (B) Did Ms. Williams complain to you about this matter, if so, when, and what was your response to her complaint?

Answer: A. No   B. No

Question-15: When were you hired by the U.S. Marshals Service. How long have you been assigned to the District of Massachusetts and what was your position at the time of your hire?

Answer: My EOD date with the USMS is June 1, 1988. I was originally hired in the District of Massachusetts and worked here as a DUSM until May, 1993. I returned as Chief Deputy US Marshal in July of 2003.

Question-16: Do you have any witnesses that you recommend be interviewed? If so, please give me their names, work location, and a brief overview of what germane facts they can be expected to attest.

Page 8 of 9 Pages                                   Affiant's Initials: [signature]

# AFFIDAVIT

Answer:    No

Question-17:    Is there anything else that you would like to add to this statement?

Answer:    No.

I have read the above statement, consisting of _9_ pages, and swear or affirm that it is true and complete to the best of my knowledge, information and belief.

_William Fallon, Affiant_

Sworn to or affirmed before me
on this 23rd day of June, 2004

_Eugene Clark, EEO Contract Investigator_

Page _9_ of _9_ Pages                                                      Affiant's Initials: ___