# AFFIDAVIT

STATE: MASSACHUSETTS
PLACE: BOSTON

DATE: June 25, 2004

## PRIVACY ACT INFORMATION

The Privacy Act of 1974 (PL 93-579) requires Federal Agencies to give individuals who are asked to furnish personal information about themselves, the following facts.
AUTHORITY: The Equal Employment Opportunity Commissions' Federal Sector Equal Employment Opportunity Rules and Regulations authorizes Investigators to administer oaths, and take written statements under the penalty of perjury: 29 CFR 1614.108.
PRINCIPAL PURPOSES: Affidavits are used to provide necessary information for the resolution and/or adjudication of discrimination complaints by federal employees or applicants for employment.
ROUTINE USES: This affidavit will be used by the Justice Department and possibly other federal agencies and/or the Federal Judiciary. It may also be used to execute statutory requirements of the Freedom of Information Act.
VOLUNTARY DISCLOSURE: The personal information you provide is entirely voluntary, therefore you may decline without penalty to provide the information being requested.

## NO CONFIDENTIALITY

I understand that the statement I am giving is not to be confidential and that it may be shown to the interested parties.

My name is David B. Taylor. I am employed by the U.S. Department of Justice, United States Marshals Service, and I am assigned to the District of Massachusetts, One Courthouse Way, Suite 500, Boston, MA. My job title and position grade is Assistant Chief Deputy United States Marshal (ACDUSM), GS-1811-14, and my immediate supervisor's name is William Fallon. My race, national origin, and sex is Caucasian American male.

Note: The issues accepted for investigation are: Whether the Complainant (Susan J. Williams) was subjected to sex (female), and reprisal discrimination (prior EEO activity) when: (1) on October 14, 2003, she was reassigned from the District of Massachusetts Worcester Office to the Boston Office.
Whether the Complainant (Susan J. Williams) was subjected to reprisal discrimination

Page 1 of 6 Pages

Affiant's Initials: 


EXHIBIT 19

# AFFIDAVIT

(prior EEO activity) when:

(2) on January 12, 2004, she learned that the Administrative Officer on November 25, 2003, submitted a response to her CA-2 claim that slandered her reputation.

(3) On February 27, 2004, her supervisor spoke to her in a demeaning and unprofessional manner.

(4) On March 8, 2004, she was advised by the Chief Deputy U.S. Marshal that she was being reassigned to the Cellblock as punishment for questioning her supervisor regarding her decisions and assignments.

(5) On March 24, 2004, she received a Letter of Instruction from her supervisor for disrespectful and uncooperative behavior. Also, she was advised to contract her supervisor on her Nextel phone when requesting sick leave, while other deputies are not requested to do so.

(6) On March 29, 2004, her supervisor questioned her about her time sheet (USM-7) and its location; however, she does not scrutinize other employees' time.

Note: I have not been privy to anyone's affidavit. I am responding to the questions posed by the EEO Investigator.

Question-1: Ms. Williams alleges that on October 14, 2003, she was reassigned from the District of Massachusetts Worcester Office to the Boston Office. (A) Explain the reason that Ms. Williams was selected for the reassignment as opposed to other deputies assigned to the Worcester office? (B)) Who requested and approved her reassignment or transfer?

Answer: Ms. Williams was selected because she was the junior 1811 assigned to the Worcester Office. Her reassignment was approved by the Marshal and the Chief.

Question-2: Ms. Williams alleges that on January 12, 2004, she learned that Administrative Officer, William Ryan on November 25, 2003, submitted a response to her CA-2 claim that slandered her reputation. (A) Did you instruct Mr. Ryan to respond to

Page 2 of 6 Pages                                    Affiant's Initials:

# AFFIDAVIT

Office of Workers Compensation claim and not to certify it? (B) Did Ms. Williams complain about the administrative officer's response, if so, to whom, and when, and what response did she receive to her complaint?

Answer:   No, I did not instruct Mr. Ryan to respond to her workers compensation claim and not certify it.

No, Ms. Williams did not complain to me about this matter.

Question-3:  Ms. Williams alleges that on February 27, 2004, her supervisor, SDUSM Hodgkins, spoke to her in a demeaning and unprofessional manner, by saying: "Aren't you an 1811?" And later saying to her: "When have you hired the Marshal Service to work for you?" (A) Did you instruct Ms. Williams' supervisor to speak to her in "a demeaning and unprofessional manner?" (B) Did Ms. Williams complain about what was said to her in this conversation, if so, what did she tell you, when, and what was your response to her complaint?

Answer:   I did not instruct SDUSM Hodgkins on whether or how to respond to Deputy Williams.

I recall Sue and Alison coming to my office on one occasion and my counseling Sue that she had to be respectful. I don't believe that this is the issue that brought them to my office.

Page 3 of 6 Pages                                                                                   Affiant's Initials:

# AFFIDAVIT

Question-4: Ms. Williams alleges that on March 24, 2004, she received a Letter of Instruction from her supervisor for being disrespectful and uncooperative behavior. She was also advised to contact Ms. Hodgkins' [the supervisor's] Nextel phone when requesting sick leave, while other deputies were not required to do so. (A) Did you instruct SDUSM Hodgkins to give DUSM Williams the Letter of Instruction and to contact the supervisor by their Nextel when requesting sick leave? Explain. (B) Did Ms. Williams appeal the Letter of Instruction to you, if so, what was the outcome of that appeal? (C) Did Ms. Williams complain to you about being required to telephone the supervisor when requesting leave, if so, when, and what was your response to her complaint? (D) Did you consider DUSM Williams to have been disrespectful and uncooperative as indicated in the Letter of Instruction? Explain.

Answer: I counseled Supervisor Hodgkins on how to handle Sue in particular, and other deputies in general, relative to employees who were disrespectful and mouthing off to her in the Squad Room. I told Alison to take Sue into her office and counsel her about mouthing off in front of other deputies in the Squad Room. I also told Alison that if this did not work to write her up. In addition, I advised Alison to talk to the Chief about the matter. Deputy Williams did not appeal the Letter of Instruction to me.

Question-4: Ms. Williams alleges that on March 29, 2004, her supervisor questioned her

Page 4 of 6 Pages                                    Affiant's Initials: ___

# AFFIDAVIT

about her time sheet (USM-7) and its location, that DUSM Williams states had been taken off her desk by the time keeper without the supervisor having approved it; however, she [the supervisor] does not scrutinize other employees' time. (A) Did you instruct the supervisor to question Ms. Williams about her time sheet, if so, why? (B) Did Ms. Williams complain to you about this matter, if so, when, and what was your response to her complaint?

Answer: I have instructed all of the supervisors to ask questions and to review time sheets. I have told them to ask deputies about any thing they note on the time sheet that may not be accurate before they sign it. This is a standard operating procedure. I did not receive a complaint from Sue about this issue. Additionally, I was not aware of the supervisor's instruction to her to call her by Nextel to notify her of her intent to be absent.

Question-5: When were you hired by the U.S. Marshals Service. How long have you been assigned to the District of Massachusetts and what was your position at the time of your hire?

Answer: January 1985, and I have been assigned to the District of Massachusetts since 1989. I was promoted to A/ACDUSM in April 2003, and I became the permanent ACDUSM in January 2004.

Question-6: Is there anything else that you would like to add to this statement?

Page _5_ of _6_ Pages                                           Affiant's Initials: ___

## AFFIDAVIT

Answer:   No.

I have read the above statement, consisting of  6  pages, and swear or affirm that it is true and complete to the best of my knowledge, information and belief.

_____
David B. Taylor, Affiant

Subscribed and Sworn to or affirmed
before me this __25th__ day of June, 2004

_____
Eugene Clark, EEO Contract Investigator

Page _6_ of _6_ Pages                                                                                          Affiant's Initials: ____