# AFFIDAVIT

STATE: MASSACHUSETTS
PLACE: WORCESTER

DATE: June 24, 2004

## PRIVACY ACT INFORMATION

The Privacy Act of 1974 (PL 93-579) requires Federal Agencies to give individuals who are asked to furnish personal information about themselves, the following facts.
**AUTHORITY**: The Equal Employment Opportunity Commissions' Federal Sector Equal Employment Opportunity Rules and Regulations authorizes Investigators to administer oaths, and take written statements under the penalty of perjury: 29 CFR 1614.108.
**PRINCIPAL PURPOSES**: Affidavits are used to provide necessary information for the resolution and/or adjudication of discrimination complaints by federal employees or applicants for employment.
**ROUTINE USES**: This affidavit will be used by the Justice Department and possibly other federal agencies and/or the Federal Judiciary. It may also be used to execute statutory requirements of the Freedom of Information Act.
**VOLUNTARY DISCLOSURE**: The personal information you provide is entirely voluntary, therefore you may decline without penalty to provide the information being requested.

## NO CONFIDENTIALITY

I understand that the statement I am giving is not to be confidential and that it may be shown to the interested parties.

My name is Thomas W. Bezanson. I am employed by the U.S. Department of Justice, United States Marshals Service, and I am assigned to the District of Massachusetts, 595 Main Street, Worcester, MA. My job title and position grade is Supervisory Deputy United States Marshal (SDUSM), GS-1811-13, and my immediate supervisor's name is David Taylor. My race, national origin, and sex is Caucasian American male.

Note: The issues accepted for investigation are: Whether the Complainant (Susan J. Williams) was subjected to sex (female), and reprisal discrimination (prior EEO activity) when: **(1)** on October 14, 2003, she was reassigned from the District of Massachusetts Worcester Office to the Boston Office.
Whether the Complainant (Susan J. Williams) was subjected to reprisal discrimination (prior EEO activity) when:
**(2)** on January 12, 2004, she learned that the Administrative Officer on November 25,

Page _1_ of _5_ Pages

Affiant's Initials: _____

20

## AFFIDAVIT

2003, submitted a response to her CA-2 claim that slandered her reputation.

**(3)** On February 27, 2004, her supervisor spoke to her in a demeaning and unprofessional manner.

**(4)** On March 8, 2004, she was advised by the Chief Deputy U.S. Marshal that she was being reassigned to the Cellblock as punishment for questioning her supervisor regarding her decisions and assignments.

**(5)** On March 24, 2004, she received a Letter of Instruction from her supervisor for disrespectful and uncooperative behavior. Also, she was advised to contract her supervisor on her Nextel phone when requesting sick leave, while other deputies are not requested to do so.

**(6)** On March 29, 2004, her supervisor questioned her about her time sheet (USM-7) and its location; however, she does not scrutinize other employees' time.

Note: I have not been privy to anyone's affidavit. I am responding to the questions posed by the EEO Investigator.

Question-1: Ms. Williams alleges that on October 14, 2003, she was reassigned from the District of Massachusetts Worcester Office to the Boston Office. (A) Explain the reason that Ms. Williams was selected for the reassignment as opposed to other deputies assigned to the Worcester office? (B) Who requested and approved her reassignment or transfer?

Answer: It was not my decision regarding which deputy was selected. Either the Marshal or the Chief made that decision. I was told by the Chief that it was a swap: an 1811 (series) for an 1811.

Question-2: Was Ms. Williams permanently assigned to the Boston office as of October 14, 2003, or was she required to report to the Boston or other offices as needed?

Answer: She was permanently assigned to Boston.

Page _2_ of _5_ Pages                                  Affiant's Initials: 

# AFFIDAVIT

Question-3: Prior to Ms. Williams' reassignment or transfer to Boston, was the Worcester office her duty station? If so, how long had she been assigned to the Worcester office?

Answer: Worcester was her permanent duty station prior to being assigned to Boston. She was assigned here around

Question-4: What USMS policy, procedure or practice is relevant to Ms. Williams' reassignment?

Answer: I believe the policy that applies is: as needed within a 50 mile radius.

Question-5: Ms. Williams alleges that on January 12, 2004, she learned that Administrative Officer, William Ryan on November 25, 2003, submitted a response to her CA-2 claim that slandered her reputation. (A) Did you instruct Mr. Ryan to respond to her Office of Workers Compensation claim and not to certify it? Explain you input into this matter. (B) Did Ms. Williams complain about the administrative officer's response, if so, to whom, and when, and what response did she receive to her complaint?

Answer: Ms. Williams was in Boston at that time. I was not her supervisor, and did not receive the form for supervisory input. I know that she filed the CA-2.

Question-6: Had DUSM Williams had been assigned to work the cellblock while assigned to Worcester? (B) If so, what did the cellblock assignment entail, i.e., describe her duties relative to this assignment? (C) Were other deputies assigned to work the cellblock either before or after DUSM Williams, if so name them? (D) Were these deputies 1811s or

Page _3_ of _5_ Pages                                           Affiant's Initials: _____

# AFFIDAVIT

082s?

Answer: There is no real assignment to a cellblock here. We use monitors. The deputies are able to watch the prisoners from the squad room where the monitors are located.

Question-7: Did Ms. Williams complain to you about being assignment to work the cellblock? If so, explain the nature of her complaint(s).

Answer: See previous response.

Question-8: When DUSM Williams was assigned to Worcester, did you instruct her to telephone you or her supervisor, when she was going to be absent, as opposed to leaving a message? If such an instruction was given, why did you give it, when, what was she told, and why? (B) If such instructions were previously given, did Ms. Williams adhere to them?

Answer: I sent an email out on January 23, 2003 titled: Leave Notification. In that email I instructed all Worcester staff to telephone me directly either on my cell telephone or at my home phone when requesting unscheduled leave. The email was put out to eliminate confusion about the Marshal's order to rotate DUSMs in Boston and Springfield for manpower purposes. I am attaching a copy of that email.

I also counseled Deputy Williams about her Nextel telephone bill. She used 1456 minutes while she was not working and on COP. As a result, on June 20, 2003, I took her

Page __4__ of __5__ Pages                                                    Affiant's Initials

# AFFIDAVIT

phone from her until she returned to work.

Question-9: While DUSM Williams was assigned to Worcester, did you have occasion to counsel her that she was being disrespectful and uncooperative? Explain.

Answer:   No.

Question-10:   When were you hired by the U.S. Marshals Service. How long have you been assigned to the District of Massachusetts and how long have you been in your current position?

Answer:   January 13, 1985, I started in the Southern District of Florida. I left in 1991 to go and work for the Inspector General's Office of the DOT. I came back to the Marshals Service in 1995 and was assigned to the District of Massachusetts.

Question-11:   Is there anything else that you would like to add to this statement?

Answer:   No.

I have read the above statement, consisting of _5_ pages, and swear or affirm that it is true and complete to the best of my knowledge, information and belief.

_____
Thomas W. Bezanson, Affiant

Subscribed and Sworn to or affirmed before me this __24th__ day of __June__, 2004

_____
Eugene Clark, EEO Contract Investigator

Page _5_ of _5_ Pages

Affiant's Initials: ___

10/09/03: In AM assigned Sue to serve process at FMC DEVENS. Rec'd a call from Darren Brown, SIA @ DEVENS. He advised a female DUSM just came in and identified herself as a DUSM and she has papers to serve on someone at the facility. When one of my staff from SIA came out to meet her. she said "consider yourself served." She handed the papers to the agent and left. Mr. Brown was very upset the way the DUSM addressed his staff member and the process was not even addressed to him. This was not a proper service. I advised Mr. Brown that I would have the DUSM return and execute a proper service. Then I received a call from Ann Zgrodnik, Legal Staff Atty w/DEVENS. She was very upset at the way the DUSM attempted service and wanted a meeting with USMS management on the proper way to serve process. I contacted DUSM Williams and told her to immediately return to DEVENS and serve the papers properly, which she did. Williams claimed that they didn't tell her there was a problem. The meeting with Zgrodnik took place 10/22/03 with me and Dave Taylor.

06/20/03 - Reviewed the NEXTEL phone bill for Sue Williams. A total of 1456min for May 11-June 10, 2003. Sue was on COP and not even working.

At 3:30pm this date Sue came into my office per my request. I informed her of the management meeting on June 9, 2003. Because of budget cuts, management needed to review all incoming bills. Her phone bill was #1 in the district.

I showed her a copy of the bill and asked her to explain it. Her reply was "SO WHAT", these are all business calls. "What about everyone else?" I informed her that this is not about everyone else, it was about her phone bill. She stated; are you telling me that I can't make personal phone calls, because everyone else does. I informed her that this was about 1456 mins that she used while she was not even working.

Sue offered no apology or explanation other than to accuse everyone else does it. I asked her for her phone, and advised that when she returns to work I would give it back to her after an evaluation about limited usage.

Sue advised that she had no idea about how many minutes she used and believed it was about the same every month. I advised her that the limit was 500 for each DUSM which I had already informed all DUSMs in the squad room. She said she never heard me say that.

Sue went out to her car and returned with her phone. She was talking to someone on the phone and yelling "I'll just buy my own phone now and go ahead and chirp me all you want". Then she placed it on my desk.

Sue's other cell mins: 03/11-4/10/03 = 987, 04/11-5/10/03 = 969.


07/16/03: Advised Sue that her attire for court was unacceptable with short pants just below the knee. She became mad and advised that all her clothes are from Ann Taylor not like Kevin's clothes from K-Mart. I advised her that this was not about anyone else. Also, it does not matter how expense the clothes are but have you ever seen a lawyer in court with those pants?? Sue said "NO," then went on to correct herself and say "well yeah in business suits"....

Sue said what do you want me to do take leave and go home and change? I said you do not have to take leave, but you need to change. Sue stated "IS THAT IT," Sue then left the office, went home and changed within 1 hour.