# Commonwealth of Massachusetts

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA A. DECAIRE,<br>  Plaintiff<br><br>VS.<br><br>JOHN D. ASHCROFT, in his official<br>position as Attorney General<br>of the United States,<br>  Defendant | VOLUME II<br><br>Exhibits 7-15<br><br>Docket No.<br>04-10593WGY |

CONTINUED DEPOSITION of **ANTHONY DICHIO**, a Witness called by Counsel on behalf of the **Plaintiff**, pursuant to the Federal Rules of Civil Procedure, before Leanne L. Murphy, a Certified Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the United States District Court, One Courthouse Way, Boston, Massachusetts, on Tuesday, December 14, 2004, commencing at 10:32 a.m.

Accurate Reporting Services
36 West Street
Whitman, MA 02382
(781) 447-9520

1  your decision to request an acting chief?
2  A   No. The EEO complaint?
3  Q   Yes.
4  A   No.
5  Q   Did Paul Durette telling you on February --
6      whatever date that was -- about the EEO complaint
7      have anything to do with your request for an acting
8      chief?
9  A   No.
10 Q   What steps did you take to investigate or find out
11     anything about this EEO complaint after you learned
12     about it from Paul Durette?
13 A   Zero.
14 Q   Did you notify headquarters?
15 A   No. They'll notify me.
16          MS. TALWANI: Can we mark this as the
17     next exhibit.
18          (Whereupon, the below-described
19          handwritten notes were marked
20          Exhibit No. 7.)
21 Q   I'm showing a document the court reporter has
22     marked as Exhibit 7. Do you recognize this?
23 A   Right.
24 Q   Yes, you recognize it?

1   A   Yes.
2   Q   Is that your handwriting?
3   A   Yes.
4   Q   Is that from your date book from 2002?
5   A   Right.
6   Q   Could you read for the court reporter -- and don't
7       elaborate -- just read what that says, please.
8   A   Approximately 1500 contacted deputy director re
9       Assistant Chief Durette regarding EEO complaints,
10      advised will contact Art Roderick, re temporary
11      chief 120 days until I get my permanent chief.
12  Q   Can you do that one more time slowly.
13  A   Approximately 1500 hours contacted deputy director
14      re Assistant Chief Durette and EEO complaints,
15      deputy director advised will contact Art Roderick
16      re temporary chief for 120 days until I get my
17      permanent chief.
18  Q   Can you tell me what that note relates to?
19  A   Once Paul Durette -- I don't know when the
20      conversations were. It might've been that specific
21      day. That's the day I found out about the EEO
22      complaints, and Paul and I had a conversation that
23      basically I didn't trust him and here is why, this
24      is what you continue to do. As assistant chief,

Page 43

```
 1        you're supposed to do your job.  I don't know when
 2        he found out about the EEO complaints and he didn't
 3        advise me regarding all this, so then I called
 4        Washington.
 5   Q    You called Washington because Paul Durette had
 6        continued to do this.  What's this?
 7   A    Paul Durette, as assistant chief, never
 8        acknowledged me, never filled me in on information,
 9        would only tell me what he had to tell me and that
10        was it.  He never informed me or anything.  So,
11        when I had called Washington of all the problems
12        that had been going on here, I needed somebody here
13        as an assistant chief that I could trust.  I did
14        not trust Paul Durette.
15   Q    The relationship between the EEO complaint and Paul
16        Durette is what?
17   A    As far as the relationship with it?
18   Q    Why you're calling him about Paul Durette and the
19        EEO complaint.
20   A    I called about Paul Durette and the EEO as just one
21        more thing that Paul Durette had not told me.
22   Q    It's your testimony that the reason you were
23        calling headquarters was to relay that Paul Durette
24        had not told you in a timely way about the EEO
```

Page 44

1     complaint?
2 A  No, there were many factors there.
3 Q  But that was one of them?
4 A  That was one more thing that Paul Durette has done.
5 Q  The one more thing that your testimony is that Paul Durette did is that he failed to tell you about the EEO complaint?
8 A  Just one more thing that he didn't tell me, right.
9 Q  It wasn't having to do with his refusing to corroborate your testimony?
11 A  No.
12 Q  Do you understand that Paul Durette has filed a complaint against you?
14 A  No, I haven't received anything that Paul Durette's filed a complaint against me.
16 Q  Have you ever seen an April 9, 2003 memo from Paul Durette to Ronnie Boyd, human resources division labor relations grievance branch?
19 A  No.
20 Q  Did you confer with Paul Durette about the decision to transfer Cindy from the Worcester office to the Boston office to fill Jamie Viator's position?
23 A  Tim Bane was gone at the time, I think. The date was what?

Page 177

## CERTIFICATE

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

I, LEANNE L. MURPHY, a Certified Court Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify:

That ANTHONY DICHIO, the Witness whose testimony is hereinbefore set forth, was duly sworn by me; that his/her testimony thereupon given was recorded by me and transcribed by me; and that such deposition is a true record of the testimony given by said Witness, to the best of my knowledge, skill and ability.

IN WITNESS WHEREOF, I hereunto set my hand and notarial seal this day 14th of January 2005.

Leanne L. Murphy, CVR
Notary Public

My Commission Expires
May 12, 2011