UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

CYNTHIA A. DECAIRE,

          Plaintiff

          vs.

JOHN D. ASHCROFT, in his official position as
Attorney General of the United States.

          Defendant
_____

C.A. No. 04-10593WGY

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This action pursuant to section 717 of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e-16, seeks to redress discrimination and retaliation against Plaintiff Cynthia A. DeCaire by the United States Marshals Service and Anthony Dichio, the United States Marshal for the District of Massachusetts.[1] Plaintiff now opposes Defendant's motion for summary judgment.

Defendant argues first that certain issues raised in Plaintiff Cynthia DeCaire's

---

[1] Plaintiff seeks a trial by jury in this matter. See Complaint and Demand for Jury Trial, filed March 26, 2004 ("Complaint"); First Amended Complaint and Demand for Jury Trial, filed July 7, 2004 ("Amended Complaint"). Defendant's counsel asserted during a recent discovery conference that Plaintiff was not entitled to a jury trial, but Defendant has not moved to strike the jury trial demand. The law is clear that a federal employee is entitled to a jury trial under Title VII. See 42 U.S.C. § 1981a(c) ("[i]f a complaining party seeks compensatory . . . damages under this section . . . any party may demand a trial by jury. . . ."); West v. Gibson, 527 U.S. 212, 214, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999) (in 1972 Congress extended Title VII so that it applied to employment in the Federal Government, and that in 1991 Congress again amended Title VII to permit victims of discrimination (whether within the private sector or the Federal Government) to recover compensatory damages).

original and amended EEO complaint are foreclosed by her purported failure to exhaust her administrative remedies. As set out in detail in the Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment and the Statement of Material Facts As To Which Plaintiff Contends That There Is No Genuine Issue For Trial In Support Of Plaintiff's Cross-Motion For Partial Summary Judgment, Defendant has waived this defense, and in any event, the undisputed material facts demonstrate that Plaintiff has met her exhaustion requirements.

The thrust of the remainder of Defendant's summary judgment argument appears to be that Deputy Marshal DeCaire has not suffered any adverse employment action. Despite the First Circuit's directive that the question of whether an action is materially adverse requires a case-by-case inquiry, Defendant has offered little evidence as to the specific nature of the actions at issue. As demonstrated below, the case-by-case inquiry forecloses Defendant's argument, as the evidence supports Deputy Marshal DeCaire's contention that the Defendant's actions here have materially disadvantaged her.

Interwoven in Defendant's adverse action argument is the contention that Defendant's purported "philosophy of fairness" somehow precludes Plaintiff's action. This contention, not surprisingly, rests on highly disputed facts, as is implicitly conceded by the absence of this evidence in the Statement of Material Facts as to which Defendant Contends There is No Genuine Issue for Trial ("Defendant's Statement of Material Facts'). Defendant's argument that it lacked discriminatory or retaliatory motive is deficient on its face, and as demonstrated below, is opposed by a myriad of facts supporting Plaintiff's claims of discrimination and retaliation.

## II.     BRIEF SUMMARY OF THE STATEMENT OF FACTS[2]

Plaintiff Cynthia A. DeCaire, a female Deputy United States Marshal with fourteen years tenure in the District of Massachusetts, had a successful career with the Marshals Service prior to the events at issue here, progressing to the position of senior investigator and Team Leader in the Investigations (or Warrants) unit in Boston, while receiving numerous commendations and awards.  In August 2002, following his appointment as United States Marshal for the District of Massachusetts, Anthony Dichio began a course of discriminating against Deputy Marshal DeCaire on the basis of her gender.  After Deputy Marshal DeCaire protested the discrimination and Marshal Dichio learned that she had filed an Equal Employment Opportunity ("EEO") charge naming him, Marshal Dichio informed another law enforcement officer that Deputy Marshal DeCaire "would get what is coming to her, that he would get her, and that as long as he was here she was going nowhere."

While Deputy Marshal DeCaire attempted to resolve this matter internally through the Marshals Service's EEO office, the retaliation continued.   In the two years since the EEO charge was submitted, Deputy Marshal DeCaire has been transferred back and forth between the Worcester sub-office and the non-investigative unit in Boston (Court Operations) countless times.  During her pregnancy, she was also assigned to work, without adequate breaks, in the overly heated Control Room in the federal courthouse in Boston.   Finally, consistent with the threat that she is "going nowhere" as long as Marshal Dichio is here, Deputy Marshal DeCaire has been denied all

---

[2] The material facts are set forth in greater detail and with citations in Plaintiff's Statement Of Material Facts As To Which Plaintiff Contends There Exists A Genuine Issue To Be Tried and Response To Defendant's Statement Of Facts ("Plaintiff's Statement of Disputed Facts").

opportunities to improve her merit promotion package, including being denied Acting Supervisor positions and Warrant Coordinator positions, and for over two years, has not been permitted to return to the Investigations unit. As a result, Deputy DeCaire's career has been stopped in its tracks and she has been denied all promotional opportunities.

### III.  STANDARD OF REVIEW

On a motion for summary judgment, the court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party. Stepanischen v. Merchants Despatch Transport. Corp., 722 F.2d 922, 929 (1st Cir. 1983). The court must never "weigh the evidence and determine the truth of the matter." Lipsett v. University of P.R., 864 F.2d 881, 895 (1st Cir. 1988). Special care is required, moreover, in cases where the state of mind of one of the parties is crucial to the outcome of the case. "Under such circumstances, jury judgments about credibility are typically thought to be of special importance. Thus courts are particularly cautious about granting summary judgment in such cases." Lipsett, 864 F.2d at 895 (citing Stepanischen, 722 F.2d at 928).

### IV.  PLAINTIFF HAS SUFFERED A SERIES OF MATERIALLY ADVERSE EMPLOYMENT ACTIONS

Defendant contends that Plaintiff suffered no adverse employment action. In its argument, Defendant focuses primarily on its purported explanations and motivations for the actions. These alleged motives are relevant to the ultimate disputed question of whether Defendant acted in a discriminatory or retaliatory manner, and are discussed in detail in the next section. For purposes of the legal issue presented by the summary judgment motion – namely whether Deputy DeCaire suffered a materially adverse employment action -- Defendant's motive is irrelevant.

Determining whether an action is materially adverse necessarily requires instead a case-by-case inquiry of the specific employment action at issue. Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996); Welsh v. Derwinski, 14 F.3d 85,86 (1st Cir. 1994). The courts have attempted, however, to offer some degree of generalization.

> Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, . . . or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service.

Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996) (citing Henson v. King & Spaulding, 416 U.S. 69, 75-76, 104 S.Ct. 2229, 2233-34, 81 L.Ed.2d 59 (1984), Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir.), cert. denied, 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991) and Crady v. Liberty Nat. Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)); see also Petitti v. New England Telephone and Telegraph Co., 909 F.2d 28,32 (1st Cir. 1990) (an adverse action is made out where an employment action "disadvantages" persons engaging in protected activity). Moreover, "under certain circumstances an employer's inaction can operate to deprive an employee of a privilege of employment that an employee had reason to anticipate he would receive; in those situations, the deprivation constitutes an adverse employment action." Blackie v. State of Maine, 75 F.3d at 726.

Thus the First Circuit has explained that adverse material changes include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations and toleration of harassment by other employees." Gu v. Boston Police Department, 312 F.3d 6, 14 (1st Cir. 2002) (quoting Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)). The actions at issue here

fall easily within this standard.

    A.    <u>Defendant's Actions in Denying Plaintiff the Acting Supervisor Positions in April and August 2003</u>

Defendant acknowledges that Plaintiff expressed her interest in being considered for the position of Acting Supervisory of Boston Court Operations on April 21, 2003, and again 120 days later, on August 21, 2003, and that she was not given the assignment at either juncture. Defendant's Statement of Facts, ¶¶ 15, 17, 19; Defendant's Memorandum, at 14. Defendant nevertheless contends, with little explanation, that the denial of the acting supervisory positions was not a materially adverse employment action. Defendant is wrong.

Defendant notes somewhat ambiguously that after the District learned that the supervisory position that had been vacated would not be replaced, the deputy assigned to the acting supervisory position "agreed to stay in the position . . . without additional pay." Defendant's Memorandum at 14. A monetary impact, however, is not necessary for an action to be materially adverse. <u>Gu v. Boston Police Department</u>, 312 F.3d 6, 14 (1st Cir. 2002) (<u>citing</u> <u>Marrero v. Goya of P.R.</u>, 304 F.3d 7, 23-24 (1st Cir.2002)).

The Acting Supervisory position is undisputably an advantageous position, as it offers experience that is very valuable in the merit promotion procedure. Plaintiff's Statement of Disputed Facts, ¶ 15.02. Indeed, Defendant itself describes that position as "an opportunity to gain supervisory experience" and even contends that the individual originally selected for the position stayed in the position beyond the initial 120 day assignment "for the experience." <u>See</u> Defendant's Mem. at 17. The value of the position is borne out by the facts here, where Deputy Alison Hodgkins was <u>not</u> promoted to Supervisory Deputy position she applied for in 2002, but was promoted in 2003 after

- 6 -

she was given this opportunity. Plaintiff's Statement of Disputed Facts, ¶¶ 15.05, 17. Plaintiff, in contrast, had made the list of top five candidates for an earlier promotion but, after being denied the opportunity as Acting Supervisor, was not the selected for the permanent promotion and remains seriously compromised in the as yet unannounced selection for a Judicial Security Inspector position in the Judicial Security Division - Court Security Program in Boston, Massachusetts. Plaintiff's Statement of Disputed Material Facts, ¶¶ 1.01, 23.01, 31. Had she been assigned the Acting Supervisory position or the Warrants Coordinator position, her merit promotion package for the position awarded to Alison Hodgkins, as well as for the Judicial Security Division position, would have been more competitive. Plaintiff's Statement of Disputed Facts, ¶¶ 15.02, 23.01. At this point, Plaintiff's current merit promotion application – for which she has no new experience in two years that she can list -- has been completely damaged.[3]

Given the clear showing that the position was advantageous, there can be no question that the denial of the position was a materially adverse employment action.

    B.    <u>Defendant's Actions in Denying Plaintiff the Warrant Coordinator Positions in April 2003 and October 2003</u>

Defendant also acknowledges that Plaintiff expressed her interest in being considered for the position of Warrant Coordinator position in April 2003, and that a Warrant Coordinator position was given thereafter to two other deputies, one in April 2003, and one in October 2003. Defendant's Statement of Material Facts, ¶¶ 16-17, 21.

---

[3] Plaintiff seeks as a remedy here, <u>inter alia</u>, back pay and front pay for the difference in the compensation between the Court Operations Supervisor position and the position Plaintiff held from April 2003 until Plaintiff is promoted. First Amended Complaint, Requests for Relief.

Again, Defendant contends, with little explanation except as to motive, that the denial of the Warrant Coordinator positions was not a materially adverse employment action.

Like the Acting Supervisory position, the Warrant Coordinator position offers experience that is very valuable in the merit promotion procedure. Plaintiff's Statement of Disputed Facts, ¶ 16.02. For that reason, there can be no question that the denial of the position was a materially adverse employment action.

> C. <u>Defendant's Actions in Denying Plaintiff the Opportunity to Perform the Work of Her Position By: (1) Transferring Her in February 2003 to a Position Held by an 082 Deputy Marshal, (2) Continuing Her in that Position in March 2003 Despite the Arrival of New 082s in the District, (3) Transferring a Deputy Marshal With Less Seniority to the Warrants Investigations Unit in March 2003, (4) Transferring a Deputy Marshal with Less Seniority to the Warrants Investigations Unit in October 2003, and (5) Assigning Plaintiff to the Control Room in November 2003</u>

Defendant argues that various actions complained of by Plaintiff were "lateral transfers" that do not rise to the level of an adverse employment action. This argument ignores the nature of the position that Deputy DeCaire was promoted into in 1996, and the nature of the assignments that she has been given since she filed her EEO complaint. Review of those positions demonstrates that Plaintiff has been subjected to clearly disadvantageous transfers and has been denied advantageous transfers.

In 1996, Deputy DeCaire was promoted to the position of a grade 12 Criminal Investigator. Plaintiff's Statement of Disputed Facts, ¶ 1.01. According to the job description for that position, the primary purpose of the senior Criminal Investigator position is "to apply investigative knowledge, skills, and abilities to plan, conduct, and coordinate a variety of difficult and complex criminal investigations[] concerning violation of laws, rules, and regulations enforced by the U.S. Marshals Service." Plaintiff's Statement of Disputed Facts, ¶ 1.04. The job description notes further that

"[t]he incumbent spends the majority of time on investigative activities . . . ." Id. The incumbent "[f]ormulates and recommends policies, programs, and procedures . . . and advises U.S. Marshals on operational matters," "[m]akes evaluative analysis of all aspects of the assigned operational program within the District," "initiates, plans, and conducts criminal and civil investigations . . ." and similar tasks. As a secondary task, the incumbent "may led, coordinate and provide guidance to lower level investigators in performance of . . . complex law enforcement activities." Id.

Deputy DeCaire was assigned to the FBI violent fugitive task force in 1996 and to the Warrant Investigations unit in 1999. Plaintiff's Statement of Disputed Facts, ¶ 1.01. In September 2001, she became a Team Leader in the Warrants Investigations unit. Id. In each of these positions, Deputy DeCaire performed the functions of her 1811, grade 12, position. Id. ¶¶ 1.01, 1.04.

On February 3, 2003, Deputy Marshal DeCaire was assigned to replace an 082 deputy and she remained in that position for more than nine months, despite the assignment of three new 082 Deputies to the District of Massachusetts in March 2003 and the opening of a position in Warrants Investigations in March, 2003, and again in October 2003. Plaintiff's Statement of Disputed Facts, ¶¶ 12, 14.04, 14.05, 21, 21.02.

Defendant suggests, without any reference to the record, that the assignment replacing the 082 represents at most a longer commute and insignificant alterations in her job responsibilities. The disadvantageous nature of the assignment is far greater. The 082 position is the entry-level Deputy United States Marshal position. Plaintiff's Statement of Disputed Facts, ¶ 1.02; see also Plaintiff's Statement of Disputed Facts, ¶ 1.01 (Deputy DeCaire began her career with the Marshals Service in 1991 as an 082). As

set forth in the in the job description, the position "serves as a trainee Deputy United States Marshal." Plaintiff's Statement of Disputed Facts, ¶ 1.02. The job description notes further that "[t]he incumbent works under the close supervision of a higher graded United States Marshals Service law enforcement employee." Id. The position includes no investigations, and focuses instead on security of the courts, prisoners, detainess and juries, including performing pat-down searches, in-custody searches, and strip searches of prisoners. Id. Prior to Deputy DeCaire's assignment to the Control Room in November 2003, monitoring the Control Room was also a function performed by 082s. Id..

By reassigning Deputy Marshal DeCaire to the 082 position (and maintaining her in this position after new 082 deputies arrived in the District and after positions opened in the Warrants Investigations unit, and by reassigning to her the 082 tasks in the Control Room in November 2003) the Marshal divested Deputy DeCaire of both significant responsibilities and the prestige of the higher graded position to which she had been promoted in 1996 and thus caused her to suffer an adverse employment action. See Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996); Gu v. Boston Police Department, 312 F.3d 6, 14 (1st Cir. 2002) ; Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998); see also Forsyth v. City of Dallas, Tex., 91 F.3d 769, 774 (5th Cir. 1996), cert. denied 522 U.S. 816, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997) (finding adverse action in § 1983 case alleging retaliatory transfer from Intelligence Unit to night patrol where former position "were more prestigious, had better working hours, and were more interesting . . ." and where "few officers voluntarily transferred from the Intelligence Unit to night patrol and other officers had been transferred as punishment"); Click v. Copeland, 970 F.2d 106, 110 (5th Cir. 1992)

(finding adverse action in § 1983 case alleging retaliatory transfer from law enforcement section to jail where "jobs in the jail are not as interesting or prestigious as jobs in the law enforcement section," and "'everybody views a transfer from detention to law enforcement as a promotion'"); Sharp v. City of Houseton, 164 F.3d 923, 933 (5th Cir. 1999) (jury could have considered transfer to be equivalent to a demotion "if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement"); Lulac Council 4433 & 4436 v. City of Galveston, 979 F.Supp. 514, 518- 19 (S.D.Tex.1997) (plaintiffs were transferred to less prestigious positions, which were clearly seen as demotions; other officers typically seek to be transferred out of, rather than into, the department to which plaintiffs were transferred); Torre v. Casio, Inc., 42 F.3d 825, 831 (3d Cir.1994) (A transfer to a dead-end job can constitute an adverse employment action).[4]

---

[4] The cases cited by Defendant where no adverse action was found do not involve such a significant difference in job responsibilities as those differences at issue here and for that reason are distinguishable. See e.g. Craven v. Texas Department of Criminal Justice-Institutional division, 151 F.Supp.2d 757, 765 (N.D.Tx. 2001) (no evidence of any difference between the night shift and morning shift in pay, benefits, responsibilities or other terms, conditions, and privileges of employment, case involved only a change in working hours); Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998) (change in commute time from between five and seven minutes to between thirty and forty minutes with insignificant alterations in job responsibilities not adverse action); Kindred v. Northome/Indus. School Dist. No. 363, 154 F.3d 801, 804 (8th Cir. 1998) (denial of premium pay is not adverse action where route involved was shorter than the route for which premium pay was granted); Harlston v. McDonnell Douglas Corp., 37 F.3d 379 (8th Cir. 1994) (change of job responsibilities (such as "fewer secretarial duties" and increased duties "listen[ing] for fax") causing no materially significant disadvantage); see also Doe v. Dekalb County School District, 145 F.3d 1441, 1454 (11th Cir. 1998) (remanding to district court for further proceedings to determine whether a reasonably person in plaintiff's position would have viewed as adverse a transfer from a classroom of children with severe behavioral disorders to an "interrelated" class at another school). Finally, a district court case cited by Defendant holding that a lateral transfer is actionable only if it amounts to a constructive discharge, Joiner v. Ohio Dep't of Transportation, 949 F.Supp. 562, 567 (S.D. Ohio 1996)) does not reflect the law of the

In sum, Defendant has failed to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on the issue of whether the assignment to replace an 082 in Court Operations and her continued assignment to that position after new 082s arrived in the District and after a position became open in the Warrants Investigations unit were adverse employment actions.

D. <u>Defendant's Actions in Denying Plaintiff the Right to a Permanent Duty Station by Assigning Her: (1) to a Rotational Assignment in January 2003, (2) an Assignment in Boston in February 2003, (3) an Assignment in Worcester in October 2003, (4) a Rotational Assignment in November 2003, (5) an Assignment in Boston in January 2004</u>

The customary practice in the Marshals Service is to assign deputies to a particular location on a "permanent basis." Plaintiff's Statement of Disputed Material Facts, ¶ 1.05. An SF50 form and an announcement to all staff typically accompanies any transfers, and deputies have a single direct supervisor to whom they report. When transfers occur, they are either as a result of employee requests or as a disciplinary matter. Plaintiff's Statement of Disputed Facts, ¶ 1.06. Where operational needs change necessitating transfers, seniority is taken into account. Finally, deputy marshals are given advance notice of the transfers. <u>See</u> <u>e.g.</u> Plaintiff's Statement of Disputed Facts, ¶¶ 9.09, 10.01. A permanent assignment is thus "part and parcel" of the employment relationship. <u>Paquin v. MBNA Marketing Sys., Inc</u>. 233 F.Supp.2d 58, 67 (D.Me. 2002); <u>see</u> <u>also</u> <u>Hishon v. King & Spaulding</u>, 467 U.S. 67, 75, 104 S.Ct. 2229, 81 L.Ed.2d (1984). By the Marshals' actions, Plaintiff was deprived of a permanent assignment.

The first irregular change in job location occurred in September 2002 (<u>see</u> Plaintiff's Statement of Disputed Material Facts, ¶ 10; Defendant's Statement of Material

---

First Circuit. <u>See</u> <u>e.g.</u> <u>See</u> <u>Ruffino v. State St. Bank & Trust Co.</u>, 908 F.Supp. 1019, 1046 (D.Mass. 1995) (plaintiff need not reach for a constructive discharge theory to make out her prima facie case).

Facts, ¶ 10), concededly outside of the 45 day period for federal EEO claims, but clearly relevant for background information. Plaintiff's transfer was not accompanied by any SF50 form, and thus months later, despite the undisputed fact that her job location did change, Assistant Chief Dimmitt determined that Plaintiff's official duty station remained Boston. Plaintiff's Statement of Disputed Facts, ¶ 10.02.

The weekly rotation ordered in January 2003 (see Defendant's Statement of Material Fact, ¶ 11; Plaintiff's Statement of Disputed Material Facts, ¶ 11) also was not accompanied by any SF50 form, and left Deputy Marshal DeCaire without a clear supervisor. Plaintiff's Statement of Disputed Material Facts, ¶ 11.05. Thus, after she had called in to Boston rather than Worcester when she was unable to work in Boston due to her daughter's convalescence from surgery, Supervisory Deputy Marshal Bezanson took the position that she had failed to properly notify supervisor.

Defendant argues as to this assignment that Deputy DeCaire did not actually work the Boston portion of the rotation before the order was changed,[5] and that she therefore did not suffer a materially adverse employment action  That Defendant ultimately instituted an even more adverse action does not negate the initial adverse rotational assignment, and the fact, that for this period of time, Plaintiff's assignment differed from that of all other deputies in the District (other than Deputy Sue Williams), in not including a single job location and supervisor.

---

[5] It is true that Plaintiff did not work in Boston during the rotation, and that the first day of the assignment she had to call in sick (due to her daughter's surgery the day before). Plaintiff's Statement of Disputed Facts, ¶ 11.06. During the next week, Plaintiff was out on a pre-approved leave. Defendant's Statement of Material Facts, ¶ 11. After Plaintiff initiated the EEO charge, Defendant sent Plaintiff a last-minute directive to report to Worcester on what would have been Plaintiff's next day in Boston. Plaintiff's Statement of Disputed Facts, ¶ 11.15.

Eleven days later, Plaintiff was again transferred, without a SF50, this time to Court Operations.  Plaintiff's Statement of Disputed Facts, ¶ 12.  Although deputies are normally given some time when they are transferred, Deputy Marshal DeCaire was told to leave her Government car in Worcester, and make her own way in and report to Boston the next morning.  Id. ¶ 12.03.  Moreover, when Deputy Marshal DeCaire contacted her new supervisor, he expressed surprise as he had not been told of the new assignment.  Id. ¶ 12.04.

Nine months later, Plaintiff was transferred again, this time being directed to report within hours back to the Worcester office.  Plaintiff's Statement of Disputed Material Facts, ¶ 22.02.  No notice went out to the other staff, and when she inquired of her Worcester supervisor if the transfer was permanent, she was told that it was "what she made of it."  Id. ¶¶ 22.02, 26.02.

A month and a half later, she was given a new assignment – reporting to Boston three days a week, and Worcester two days a week.  Plaintiff's Statement of Disputed Material Facts, ¶ 24.  Unlike other deputies, she had two supervisors, one in Boston, and one in Worcester.  Id. ¶ 25.06.  Although she was ostensibly a Worcester deputy for some purposes (such as when she made a request concerning an accommodation for the last few weeks), she was not given the benefit afforded other deputies from the Worcester who given accommodations in arriving and leaving because of their added driving time.  Id. ¶ 16.01.  Moreover, after her Worcester Supervisor became annoyed at her for responding directly to an inquiry from the Chief without including him in the communication, the assignment changed again to a full Boston assignment (but still, with two supervisors).  Id., ¶ 26.02.

A chart created by Administrative Officer Ryan graphically illustrates the discrepancy in Deputy DeCaire's assignments. Plaintiff's Exhibit 31, table showing Deputy United States Marshals with Locations Assigned and Dates for these Assignments, Exhibit 20 to the Deposition of William Ryan. No other deputy suffered the number of transfers that she did (and the only other deputy who comes close, is the female deputy – Susan Williams -- who joined Deputy DeCaire in filing an EEO complaint in January 2003). Plaintiff's Statement of Disputed Facts, ¶ 30.

## V.     THERE ARE DISPUTED MATERIAL FACTS REGARDING DEFENDANT'S DISCRIMINATORY AND RETALIATORY MOTIVE

Defendant argues that its purported "philosophy of fairness" somehow precludes Plaintiff's action. There is, however, significant evidence, both direct and indirect, on which a jury could find that Defendant's actions were discriminatory and retaliatory.

### A.     PLAINTIFF HAS PROFFERED DIRECT EVIDENCE OF MARSHAL DICHIO'S RETALIATORY MOTIVE.

Defendant asserts, without citation, that this case involves "no direct evidence of discrimination." Defendant's Memorandum, at 7. The record is to the contrary.

During the week of February 24, 2003, Marshal Dichio had a conversation with Detective Joe Cummings of the Brockton Police Department in the basement of the federal courthouse. Plaintiff's Statement of Disputed Facts, ¶ 14.01. Marshal Dichio does not deny that he may have spoken with Detective Cummings at that time and location. Id. According to Detective Cummings, Marshal Dichio asked first about the performance of Supervisory Deputy Bohn (who Marshal Dichio knew was having a personal relationship with Deputy Marshal DeCaire) as the supervisor of the HIDTA task force. Id, Detective Cummings has stated further, under oath, that Marshal Dichio then spoke about Deputy Marshal DeCaire during this conversation, and stated that she "is

vicious, that she would get what is coming to her, that he would get her, and that as long as he was here she was going nowhere." Id.

The First Circuit has explained that "[c]omments which, fairly read, demonstrate that a decisionmaker made, or intended to make, employment decisions based on forbidden criteria constitute direct evidence of discrimination." Febres v. Challenger Carribbean Corp., 214 F.3d 57, 61 (1st Cir. 2000) (citations omitted); see also Vesprini v. Shaw Contract Florring Services, Inc., 315 F.3d 37, 41 (1st cir. 2002) (citing Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 35 (1st cir. 2001) (direct evidence "normally contemplates . . . those statements by a decision maker that directly reflect the alleged animus and bear squarely on the contested employment action).

Here, Marshal Dichio is the ultimate decision-maker on each of the employment decisions at issue in this case. His statement to Detective Cummings shows both animus and an intention to make employment decisions based on his retaliatory motive. Moreover, the timing of the remark – just weeks after Plaintiff filed her EEO complaint – and just weeks prior to the decisions denying Plaintiff relief from her assignment replacing an 082 despite new 082's in the district (March 2003) and an opening in Warrants Investigation unit (March 2003), as well as the denial of an Acting Supervisory position (April 2003) and the Warrant Coordinator position (April 2003) tightly link the statement with the retaliatory actions.

### B. PLAINTIFF HAS ALSO PROFFERED INDIRECT EVIDENCE OF DISCRIMINATION AND RETALIATION

Plaintiff also has sufficient circumstantial evidence on which a jury to draw may draw inference of discrimination retaliation.

#### 1. Prima Facie Case of Discrimination

- 16 -

Plaintiff can easily establish a prima facie case of discrimination as to a number of the materially adverse employment actions described above. There is, of course, no question that, as a female employee, she is a member of a protected class. Plaintiff was qualified for each of the positions that she sought. See Plaintiff's Statement of Disputed Facts, ¶ 1.01. A similarly situated male was treated differently in connection with the following adverse employment actions: (1) the January 2003 rotational assignment given to Deputy Marshal DeCaire and Deputy Marshal Susan Williams and not to the two male deputies in the office; (2) the February 2003 assignment replacing an 082 deputy given to Deputy Marshal DeCaire and not to a male deputy; (3) the assignment of a male 082 deputy, Sean Weddecke, to the Worcester office in March 2003 upon his arrival in the District, (4) the assignment of a male deputy with less seniority to the Warrants Investigations unit in March 2003, (5) the assignment of a male deputy to the Warrants Coordinator position in April 2003, and (6) the assignment of a male deputy with less seniority to the Warrants Investigations unit, and to the Warrant Coordinator position, in October 2003.

      2.    <u>Prima Facie Case of Retaliation</u>

Plaintiff can also easily establish a prima facie case of retaliation as to each of the adverse employment actions that occurred after Plaintiff initiated her EEO complaint on January 23, 2003. There is no dispute that Plaintiff filed an EEO charge, that Marshal Dichio was promptly advised of the charge, and that he had this knowledge before he directed that Plaintiff be transferred to Boston. Moreover, not only does Plaintiff have direct evidence of retaliation through Marshal Dichio's statement to Detective Cummings (see above), but the tight time line in which the retaliation began is further evidence of a

causal relationship.  See Ruffino v. State St. Bank & Trust Co., 908 F.Supp. 1019, 1046 (D.Mass. 1995) ("where direct evidence is missing, temporal proximity may provide the necessary nexus" for a retaliation claim).

### 3. Ultimate Evidence of Discrimination and Retaliation

Assuming, arguendo, that Defendant can rebut the inference of discrimination and retaliation by articulating some legitimate, non-discriminatory and non-retaliatory reason for the adverse employment action, the evidence as a whole creates a triable issue as to both discriminatory and retaliatory animus.

#### a. Actions by Management Officials Other than Marshal Dichio

Defendant's contention that certain actions are neither discriminatory nor retaliatory because the Marshal's Chief or Assistant Chief recommended the action rests on the assumption – unsupported by any evidence -- that these management officials were not acting in support of the Marshal's retaliatory actions.[6]  The evidence is to the contrary, as set forth in greater detail in the Statement of Disputed Facts.

The premise is also strange.  The evidence strongly suggests that Assistant Chief Dave Taylor has been involved in the adverse employment actions from the outset – long before he was even in the chain of command.   See Plaintiff's Statement of Disputed

---

[6] Defendant points to Deputy Marshal DeCaire's deposition testimony in which she stated that she did not believe that management officials other than Marshal Dichio discriminated against her.  Deputy Marshal DeCaire was not asked, however, about retaliatory actions, and she has made it abundantly clear in her previous testimony that it is her belief that "various subordinates of Marshal Dichio, including Chief Deputy Marshal William Fallon, Assistant Chief Deputy David Taylor, Supervisory Deputy Thomas Bezanson and Supervisory Deputy Alison Hodgkins, may also have engaged in reprisal activity at Marshal Dichio's direction."  Plaintiff's Exhibit 46, Affidavit of Deputy DeCaire, June 18, 2004, Answer to Question 1; see also Plaintiff's Exhibit 56, Affidavit of Deputy DeCaire, June 2003, p. 19, Answer to Question 33.

Facts, ¶ 13.02.  Both Acting Chief Dave Dimmitt and Chief Fallon arrived in the District <u>after</u> Deputy Marshal DeCaire had filed her complaint.  They also were both well-aware of the "loyalty" insisted upon by this Marshal, and if they were not, the fate of Assistant Chief Paul Durette after he made clear that he would answer any EEO inquiry truthfully would have advised them of the price of taking any role other than helping the Marshal fight Deputy Marshal DeCaire's lawsuit.

              b.       The Stated Reaons for the Adverse Employment Actions Are Pretextual

The purported reasons for each of the job actions are not credible because of the constantly shifting rationales, and the absence of any objective evidence, to justify whatever action is being taken against Deputy DeCaire.

Defendant asserts, for example, that the rotational assignment in January 2003 was based on a "manpower shortage."  The evidence shows instead that there was no new manpower problem and that the decision was made without consideration of staffing issues.  <u>See</u> Plaintiff's Statement of Disputed Facts, ¶¶ 9.01, 11, 11.06, 11.08, 11.09, 11.12, 11.13.

Defendant argues that the decision to place Deputy Marshal DeCaire in the position held by the 082 was based on the work that needed to be performed, seniority and the proximity of the deputies in the Worcester office to the Boston office.  But each subsequent assignment of personnel by management through the next nine months demonstrates the implausibility of this excuse.  <u>See</u> Plaintiff's Statement of Disputed Facts, ¶¶ 12.07, 14.03, 21, 21.02.

Defendant argues that the Acting Supervisory position and the Warrant Coordinator positions were given to others to provide an "equal opportunity" for all.  The

- 19 -

evidence shows instead, that management orchestrated these assignments not to provide opportunity but in an attempt to create a defense to Plaintiff's discrimination and retaliation claim.  For example, only the two women who Marshal Dichio believed had <u>not</u> filed EEO claims, and no men, were for the Acting Supervisor position, and one of these women had submitted no promotional package and had no interest in the position. Moreover, the explanations for the assignments to the Warrant Coordinator – such as a purported requirement that the deputy be already assigned to the Warrant unit – demonstrates that different standards were applied to Deputy DeCaire.

Finally, the claim that Deputy Marshal DeCaire cannot work in the same office as her husband by the absence of any written policy setting forth such a broad rule and is belied by Defendant's own actions every time management viewed it preferable to enforce a different rule.

## VI.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be denied.

Respectfully submitted,

**CYNTHIA A. DeCAIRE**,

By her attorney,

_____/s/_____
Indira Talwani
**SEGAL, ROITMAN & COLEMAN**
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

Dated:  April 18, 2005