## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————

CYNTHIA A. DECAIRE,

        Plaintiff

        vs.

JOHN D. ASHCROFT, in his official position as
Attorney General of the United States.

        Defendant

———————————————————————

C.A. No. 04-10593WGY

## STATEMENT OF MATERIAL FACTS AS TO WHICH PLAINTIFF CONTENDS THAT THERE EXISTS A GENUINE ISSUE TO BE TRIED AND PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

       Pursuant to Local Rule 56.1, Plaintiff Cynthia A. DeCaire ("Deputy Marshal DeCaire" or "DUSM DeCaire") contends that there exists a genuine issue to be tried as to the disputed material facts set forth below, and responds to the Statement of Material Facts as to Which Defendant Contends there is No Genuine Issue for Trial ("Defendant's Statement of Facts") as follows:

### Background Material Facts

       1.     At all times relevant to this action Plaintiff, Cynthia A. DeCaire, was employed by United States Marshals Service as a Deputy United States Marshal (DUSM) for the District of Massachusetts.  On June 3, 2001, Plaintiff became an Acting Supervisory Criminal Investigator in the Worcester sub-office on a temporary assignment not to exceed 120 days.  Plaintiff held that position until September 23, 2001.   Defendant's Statement of Facts, ¶ 1.

       1.01    Additional disputed material facts raised by Plaintiff:  Throughout her tenure at the United States Marshals Service, Deputy Marshal DeCaire has pursued assignments to

advance her career and, from the start of her career in 1991 until the events at issue here, had a successful career with the United States Marshals Service.  Plaintiff's Exhibit 66, Job Description for Deputy United States Marshal 082 position (setting forth job description for entry-level position); Plaintiff's Exhibit 59, Request for Personnel Action, December 13, 1993 (promoting Deputy Marshal DeCaire from Deputy United States Marshal 082 position, grade 09, to a Deputy United States Marshal Criminal Investigator 1811 position, grade 11); Plaintiff's Exhibit 60, Notification of Personnel Action, December 22, 1996 (promoting Deputy Marshal DeCaire to Deputy United States Marshal Senior Criminal Investigator position, grade 12 and describing job duties of the position); Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 1 (in 1995 Deputy Marshal DeCaire was assigned to the FBI violent fugitive task force; she was then promoted to a senior investigator; in 1999, she was assigned to the Warrant Investigations unit; in 2001, she accepted an assignment as Acting Supervisor in Worcester; upon her return, she became a Team Leader in the Warrant Investigations unit); Plaintiff's Exhibit 12, Excerpts of Deposition of Cynthia A. DeCaire, March 16, 2005, at 24 (Plaintiff placed within the top five candidates for a promotional position in the Electronic Surveillance unit in late 2002 or early 2003); Plaintiff's Exhibit 22,  E-mail from Deputy Marshal DeCaire to Assistant Chief Paul Durette, September 6, 2002 (listing Deputy Marshal DeCaire's accomplishments); Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 14 (Deputy Marshal DeCaire performed "extraordinarily well" as Acting Supervisor in the Worcester substation), 32 (agreeing with Deputy Marshal DeCaire's e-mail summary of her work experience); First Amended Answer, ¶ 12 (Plaintiff received a Superior Accomplishment Award for her work as Acting Supervisor in the Worcester substation).

1.02    Additional disputed material facts raised by Plaintiff:  The 082 Deputy Marshal position is an entry-level position.  See Plaintiff's Exhibit 66, GS-082-05 Position Description, marked as Exhibit 2 to the Deposition of Anthony Dichio (the position "serves as a trainee Deputy United States Marshal"; "[t]he incumbent works under the close supervision of a higher graded United States Marshals Service law enforcement employee"; the position includes no investigations, and focuses instead on security of the courts, prisoners, detainees and juries, including performing pat-down searches, in-custody searches, and strip searches of prisoners) see also Plaintiff's Exhibit 58, Excerpts from the Transcript of the Deposition of Anthony Dichio, Volume I, October 26, 2004, at 26-27 (acknowledging the 082 job description); see also infra ¶ 1.01 (Deputy DeCaire began her career with the Marshals Service in 1991 as an 082).

1.03    Additional disputed material facts raised by Plaintiff:  Prior to Deputy DeCaire's assignment to the Control Room in November 2003, monitoring the Control Room was also a function performed by 082s.  Plaintiff's Exhibit 80, Excerpts from the Transcript of the Deposition of Alison Hodgkins, Volume 2, March 24, 2005, at 137, 142.

1.04    Additional disputed material facts raised by Plaintiff:  The senior Criminal Investigator position to which Deputy Marshal DeCaire was promoted in 1996 is a jourenyman-level position.  See Plaintiff's Exhibit 60, Notification of Personnel Action, December 22, 1996, with attached job description (the primary purpose of the senior Criminal Investigator position is "to apply investigative knowledge, skills, and abilities to plan, conduct, and coordinate a variety of difficult and complex criminal investigations[] concerning violation of laws, rules, and regulations enforced by the U.S. Marshals Service";  "[t]he incumbent spends the majority of time on investigative activities . . . ." the incumbent "[f]ormulates and recommends policies, programs, and procedures . . . and advises U.S. Marshals on operational matters,"  "[m]akes evaluative analysis of all aspects of the assigned operational program within the District,"

"initiates, plans, and conducts criminal and civil investigations . . ."; as a secondary task, the incumbent "may led, coordinate and provide guidance to lower level investigators in performance of  . . . complex law enforcement activities").

      1.05   Additional disputed material facts raised by Plaintiff:  Normally, deputies have a permanent assignment to a particular office.  Plaintiff's Exhibit 29, Excerpts from the Transcript of Deposition of William Ryan, March 22, 2005, at 82 (each deputy has an assigned location).

      1.06   Additional disputed material facts raised by Plaintiff:  Historically, non-supervisory Deputy United States Marshal positions in the Worcester sub-office were assigned by employee request, or as discipline.  Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 41 (Deputy McKearney was moved out to Worcester for disciplinary reasons); Plaintiff's Exhibit 29, Excerpts from the Transcript of Deposition of William Ryan, March 22, 2005, at 84-85 (Administrative Officer William Ryan's understanding was that Leo Rosetti had been moved to Worcester for disciplinary reasons for threatening another deputy and that Steve McKearney had also been moved out to Worcester for disciplinary reasons)

      1.07   Additional disputed material facts raised by Plaintiff:  After 1995, Deputy Marshal DeCaire did not request to work as a non-supervisory Deputy United States Marshal in the Worcester sub-office because of the limited nature of that Court Operations assignment. Plaintiff's Exhibit 12, Excerpts of Deposition of Cynthia A. DeCaire, March 16, 2005, at 32 (Deputy Marshal DeCaire requested to transfer to Worcester in 1994 or 1995, before she became an Senior Criminal Investigator 1811, grade 12), 34 (Deputy Marshal DeCaire viewed the work in Worcester as boring), 36 (Assistant Chief Durette asked Deputy Marshal DeCaire why she had never come to him to request a transfer to Worcester, and she explained that she did not want to go to Worcester).

1.08    Additional disputed material facts raised by Plaintiff:  Except for one assignment

to the Worcester sub-office as a Acting Supervisory Deputy United States Marshal, Deputy

Marshal DeCaire's duty station from her June 1991 date of hire until September 2002 was

Boston.  Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 1.

**Disputed Facts Regarding Exhaustion of Administrative Remedies**

2.    Fact asserted by Defendant (Defendant's Statement of Material Fact, ¶ 2) which

Plaintiff disputes:

> On January 23, 2003, Plaintiff, who had been assigned as a team leader in Boston,
> submitted a grievance to the Human Resources Division, U.S. Marshals Service,
> alleging, *inter alia*, that the District of Massachusetts management engaged in
> retaliatory actions with respect her assigned duties, relocation from Boston to the
> Worcester office, and relocation back to the Boston office, to a position not
> involving criminal investigation.

Undisputed that Plaintiff had been assigned as a team leader in the Investigative/Warrants

unit in Boston and that she submitted a memorandum together with Deputy United States

Marshal Susan Williams complaining about events that had occurred prior to that date, including

the directive, given on January 21, 2003, that DUSM DeCaire and DUSM Williams would be

rotating to the Boston office for a week at a time.   Disputed that the memorandum was a

grievance under a negotiated grievance procedure.   Deputy United States Marshals assigned to

the Operations Division are excluded from coverage under collective bargaining agreements

between the Department of Justice and any labor organizations.  Plaintiff's Exhibit 30, 1996

Master Agreement Between the United States Marshals Service and the American Federation of

Government Employees, AFL-CIO, International Council of U.S. Marshals Service Locals, C-

210, Article 1, § 3; see also Plaintiff's Request for Judicial Notice, Exhibits 1 and 2 (Executive

Order 12632, 53 FR 9852, 1988 WL 1099334 (Pres.), amending Executive Order 12171, 44 FR

66565, 1979 211464 (Pres.)).

4. Fact asserted by Defendant (Defendant's Statement of Material Fact, ¶ 4) which Plaintiff disputes:

Defendant's Material Fact 4:

On April 1, 2003, Plaintiff was advised by letter from the Grievance Office designated to investigate the grievance filed on January 23, 2003, that the grievance was denied, as "[m]anagement has shown that the reassignments had no retaliatory intent and were based on legitimate exercises of management's responsibility to accomplish work."

Undisputed that on April 1, 2003, a memorandum was issued from an individual identified as a "Designated Grievance Officer" stating that the purported "grievance" was denied, and including the quoted language as part of the explanation for the denial of the grievance. Otherwise disputed as Defendant has provided no competent evidence regarding the purported "designation" of the memorandum as a "grievance," as the author of the memorandum as a grievance officer, or the truth of the matters asserted in the memorandum.

**Material Facts Concerning Discrimination and Retaliation Claims**

9. Anthony Dichio was sworn in as United States Marshal for the District of Massachusetts (USM) on August 6, 2002. Defendant's Statement of Facts, ¶ 9.

9.01 Additional disputed material facts raised by Plaintiff: At the time Marshal Dichio assumed office, there was a "manpower shortage" in the District, and in particular, in Courts Operations. Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 23-24, 30, 33, 44 (during Paul Durette's tenure in the District of Massachusetts from 1999 – 2003, the Marshals Service was consistently short-staffed; there was a shortage in Court Operations in August 2002; Assistant Chief Durette, Supervisory Deputy Bohn and Supervisory Deputy Visalli agreed in September 2002 that the Worcester HIDTA position should not be filled because of the short staffing); Plaintiff's Exhibit 23 (Exhibit 5 to the Deposition of Paul Durette), E-mail from Assistant Chief Paul Durette to Chief Timothy Bane,

September 16, 2002 (Supervisory Deputy Jeffrey Bohn, Supervisory Deputy Anthony Visalli and

Assistant Chief Paul Durette recommended in September 2002 that the Worcester HIDTA

position not be filled until the District received new 082's because of staffing levels); Plaintiff's

Exhibit 58, Transcript of the Deposition of Anthony Dichio, Volume 1, October 26, 2004, at 84

("There's a manpower shortage since day one").

  9.02 Additional disputed material facts raised by Plaintiff:  Historically, the

"manpower shortage" in the Courts Operations was covered on an as-needed basis primarily by

the Warrants Investigations Unit.  Plaintiff's Exhibit 20, Excerpts of the Transcript of the

Deposition of Paul Durette, January 28, 2005, at 28; see also Plaintiff's Exhibit 21 (Exhibit 3 to

the Deposition of Paul Durette, January 28, 2005), E-Mail from Paul Durette to Chief Timothy

Bane, August 16, 2002 (concerning daily coordination for back-filling Court Operations from the

Warrants Investigation Unit); see also Plaintiff's Exhibit 32, E-mail from Supervisory Deputy

Anthony Visalli to Supervisory Deputy Walter Doherty, August 16, 2002 (same).

  9.03 Additional disputed material facts raised by Plaintiff:  When United States

Marshal Dichio assumed office, he took no steps to determine the qualifications, skills or

experience of Deputy Marshal DeCaire.   Plaintiff's Exhibit 58, Transcript of the Deposition of

Anthony Dichio, Volume 1, October 26, 2004, at pp. 41–44.

  9.04 Additional disputed material facts raised by Plaintiff:  In a one-on-one interview

with Deputy Marshal DeCaire, United States Marshal Dichio inquired about her marital status,

child support payments, and commute distance from her daughter, and he insisted that she should

work in Worcester in order to be closer to her daughter, despite her protests that the position was

not equal to the Team Leader position in the Warrants Investigations Unit that she held.

Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 3 (in a one-on-one

interview with Deputy Marshal DeCaire, Marshal Dichio asked questions about Deputy Marshal

DeCaire's personal life, and in particular, about her marital and parental status, and after learning that Deputy Marshal DeCaire was divorced and had one child, Marshal Dichio asked her a series of personal questions, including whether she received assistance from her ex-husband, where her ex-husband lived, who took care of her daughter when she was working, and why she did not want to work in Worcester and be closer to her daughter; Deputy Marshal DeCaire explained to Marshal Dichio that she had worked hard to attain her position in Investigations; Marshal Dichio questioned her interests, and advised her that her first priority should be being close to home in case her daughter needed her, and that it should not matter to her if she worked Court Operations or Warrants Investigations; throughout the interview, Marshal Dichio asked Deputy Marshal DeCaire no questions about her professional experience and accomplishments); ¶ 4 (Deputy Marshal DeCaire repeatedly stated to Marshal Dichio that she did not want to exchange positions with Deputy Marshal Steve McKearney in the Worcester sub-office).

9.05    Additional disputed material facts raised by Plaintiff:  In his one-on-one interview with Supervisory Deputy Jeff Bohn, Marshal Dichio spoke to Supervisory Deputy Bohn about the reasons Marshal Dichio felt that Deputy Marshal DeCaire should move to Worcester. Plaintiff's Exhibit 8, Affidavit of Jeffrey Bohn in Opposition to Motion for Summary Judgment, ¶ 2.

9.06    Additional disputed material facts raised by Plaintiff:  Marshal Dichio asked similar, personal questions of another female Deputy United States Marshal, Susan Williams. Plaintiff's Exhibit 7, Affidavit of Susan J. Williams in Opposition to Motion for Summary Judgment, ¶ 3 (Marshal Dichio's one-on-one interview with Deputy United States Marshal Williams was much shorter than that of male deputies in the Worcester office; Marshal Dichio did not allow Deputy Marshal Williams to speak about her career with the Marhsals Service, but instead asked her if she received any child support for her children).

8

9.07    <u>Additional disputed material facts raised by Plaintiff</u>:    In September 2002, when a position with the High Intensity Drug Trafficking Area ("HIDTA") Task Force opened up in the Worcester office, both Deputy Marshal DeCaire and Deputy Marshal Susan Williams expressed interest in the position.  Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 6 (Deputy Marshal DeCaire e-mailed her qualifications for the position to Marshal Dichio); First Amended Answer, ¶ 18 (admitting that Deputy Marshal Williams requested to be considered for the investigative position in Worcester),

9.08    <u>Additional disputed material facts raised by Plaintiff</u>:    Marshal Dichio assigned a junior and less qualified male Deputy United States Marshal, Mark Lewis, to the position, rather than either Deputy Marshal Williams or Deputy Marshal DeCaire, even though both women had greater seniority and were more qualified than the male candidate.  First Amended Answer, ¶ 20 (admitting that both Deputy Marshal DeCaire and Deputy Marshal William were senior investigators and were more experienced than Deputy Marshal Lewis who was not a senior investigator, and that prior to the assignment, Deputy Marshal DeCaire was Deputy Marshal Lewis' Team Leader); <u>see</u> <u>also</u> Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 34-36 (Assistant Chief Deputy Paul Durette was not involved in the decision to select Deputy Lewis for the HIDTA position, and his opinion was not solicited; Assistant Chief Deputy Durette's view was that Deputy Lewis lacked experience to be assigned to the detail because the position interacts with, and is required to train, state and local officers); <u>see</u> <u>also</u> Plaintiff's Exhibit 33, E-mail from Deputy Marshal Mark Lewis to Marshal Dichio, September 6, 2002 (seeking the HIDTA position while conceding that Deputy Marshal DeCaire has seniority and the capability for the position); Plaintiff's Exhibit 58, Transcript of the Deposition of Anthony Dichio, Volume 1, October 26, 2004, at 91-92 (Marshal Dichio did not consider Deputy Williams for the Worcester HIDTA position).

9.09    <u>Additional disputed material facts raised by Plaintiff:</u>  Deputy Marshal Lewis was given three work days from the time of the announcement of his transfer to Worcester before the assignment began).  Plaintiff's Exhibit 34, E-mail from Chief Timothy Bane to all hands, September 17, 2002.

9.10    <u>Additional disputed material facts raised by Plaintiff:</u>   Management received numerous complaints about the assignment of Mark Lewis to the HIDTA position.  First Amended Answer, ¶ 22 (admitting that on September 3, 2003, Deputy Marshal DeCaire sent an e-mail to her then-Supervisor, Former Chief Deputy U.S. Marshal Timothy Bane, with a copy to Marshal Dichio, in which she asserted that the office was taking a "sexist" view in refusing to permit her to take the investigative position in Worcester); Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 36-37, 40 (Assistant Chief Durette received numerous complaints from individuals in the warrants investigation unit who thought it was not the right thing to assign a junior deputy rather than a senior deputy to fill the position); Plaintiff's Exhibit 58, Transcript of the Deposition of Anthony Dichio, Volume 1, October 26, 2004, at 92 (the Marshal received e-mails after the transfer of Mark Lewis; a lot of people in the officer were upset); Plaintiff's Exhibit 8, Affidavit of Jeffrey L. Bohn in Opposition to Motion for Summary Judgment, ¶ 3.

9.11    <u>Additional disputed material facts raised by Plaintiff:</u>  Marshal Dichio informed Deputy Marshal DeCaire that he blamed her for the office discontent with his decision to assign Deputy Lewis to that position, and that he had decided to go ahead and reassign her to the Worcester office.   Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 8 (in the meeting with Deputy Marshal DeCaire, after Marshal Dichio expressed anger that others in the office were questioning his decision to transfer Deputy Marshal Lewis and blamed Deputy Marshal DeCaire for this opposition in the office, he stated that he was going to go ahead with

his original decision and transfer Deputy Marshal DeCaire to the non-investigative position in

Worcester held by Deputy Marshal McKearney; Deputy Marshal DeCaire stated that she wished

to remain where she was; Marshal Dichio insisted it was in her best interest due to the fact that

she was a single parent and should be close to her daughter and family, and he stated that she

would make him look like a fool if she did not go); see also Plaintiff's Exhibit 12, Excerpts of

Deposition of Cynthia A. DeCaire, March 16, 2005, at 34 (describing conversation with Marshal

Dichio).

      10.    On September 30, 2002, Plaintiff was reassigned to the Worcester Office.

Defendant's Statement of Facts, ¶ 10.

      10.01   Additional disputed material facts raised by Plaintiff:  At the same time, Deputy

Steve McKearney was transferred to Plaintiffs position in the Warrants Investigations unit.

Plaintiff's Exhibit 35, E-mail from Chief Timothy Bane to all hands, September 25, 2002

(Plaintiff replacing Deputy McKearney).

      10.02   Additional disputed material facts raised by Plaintiff:  No form SF 50 (the official

transfer form) issued for either McKearney or DeCaire for this September 2002 transfer.  See

Defendant's Memorandum in Support of Motion for Summary Judgment, at 10 (maintaining that

"Plaintiff's official duty station remained the Boston Office while she was assigned to

Worcester"); Plaintiff's Exhibit 76, Excerpts of the Deposition of David Dimmitt, at 24 (after

Acting Chief Dimmitt's arrival in February 2003, months later, Assistant Chief Dimmitt

determined that Plaintiff's official duty station remained Boston); see also Plaintiff's Exhibit 31,

table showing deputy marshals with locations assigned and dates for those assignments, Exhibit

20 to the Deposition of William Ryan (stating incorrectly that Deputy McKearney's transfer had

occurred in March 2003).

10.03    Additional disputed material facts raised by Plaintiff:  Deputies Marshal DeCaire and McKearney were given three work days notice before the assignments began.  Plaintiff's Exhibit 35, E-mail from Chief Timothy Bane to all hands, September 25, 2002.

10.04    Additional disputed material facts raised by Plaintiff:   In January 2003, Marshal Dichio continued to view Deputy Marshal as responsible for the ongoing discontent about the assignment of Deputy Lewis to the HIDTA position.  Plaintiff's Exhibit 8, Affidavit of Jeffrey Bohn in Opposition to Motion for Summary Judgment, ¶ 3 (Supervisory Deputy Bohn spoke to Marshal Dichio in early January 2003 and learned that Marshal Dichio was still blaming Deputy DeCaire for discontent in the office regarding Mark Lewis' assignment to the HIDTA Position); see also Defendant's Exhibit I, E-Mail from Supervisory Deputy Tom Bezanson, bate-stamped 13S (blaming Deputy Marshal DeCaire for Deputy Williams relations with Deputy Lewis).

10.05    Additional disputed material facts raised by Plaintiff:  In January 2003, as Marshal Dichio was making his decision to rotation Deputy Marshal Williams and Deputy Marshal DeCaire to Boston, he did not involve Assistant Chief Deputy Marshal Durette in this decision-making process.  Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 45, 52.

11.    Fact asserted by Defendant (Defendant's Statement of Material Fact, ¶ 11) which Plaintiff disputes:

> In January 2003, the USM ordered rotation of DUSMs in Boston and Springfield for manpower purposes on an "as needed" basis.  On January 22, 2003, Plaintiff and DUSM Susan Williams were assigned from Worcester to Court Operations in Boston on a weekly rotation.  Plaintiff was to report to Boston on January 23, 2003, followed by DUSM Williams on the following Friday.  DUSM Wahl was not included in the Boston rotation, but was designated to assist Springfield, as needed (Exhibit B, Exhibit G).  Plaintiff called in sick on January 23, 2003, took pre-approved sick leave on January 24, 2003, and 40 hours of annual leave from January 27-31, 2003.  As a result of her sick and annual leave, Plaintiff never participated in the rotation to Boston.

Plaintiff's Response:  Disputed.  On January 21, 2003, at Marshal Dichio's direction, Supervisory Deputy United States Marshal Tom Bezanson ordered DUSM Williams and DUSM DeCaire to rotate to Boston on a weekly basis, not on an "as needed basis."  See infra, ¶ 11.09. On the afternoon of January 24, 2003, Assistant Chief Paul Durette modified Supervisory Deputy Bezanson's directive, instructing him that assignments to Boston are to be made only as needed.  See infra, ¶ 11.12.   Although it is undisputed that Defendant claimed that the directive was driven by a manpower shortage in Court Operations in Boston, Defendant has offered no evidence to support that claim, and the claim is suspect in light of the fact that the manpower issue predated the assignment of Deputy Marshal Lewis to Worcester in September, 2002 (see supra, ¶ 9.01) and that Defendant has identified no additional manpower concerns that arose in January (see infra, ¶ 11.08).  Deputy Marshal DeCaire was assigned to rotate to Boston on January 23, 2003, but was unable to work that day due to her daughter's operation the day before.  See infra, ¶ 11.06.  On January 30, Supervisor Deputy Bezanson then told her to report to Worcester instead of Boston on February 3, 2003, and for that reason she did not work in Boston on that day.  See infra, ¶ 11.13.

11.01   Additional disputed material facts raised by Plaintiff:   At the time that Marshal Dichio exempted Deputy Marshal Mark Lewis from the rotation to Boston, Deputy Marshal Mark Lewis was the junior deputy in the Worcester substation, his permanent duty station was still Boston, and there was no reason why there could not be a temporary absence from the HIDTA position in Worcester.  First Amended Answer, ¶ 26 (admitting that Deputy Marshal Lewis' duty station was Boston); See Plaintiff's Exhibit 57, Seniority Table; see also Plaintiff's Exhibit 23 (Exhibit 5 to the Deposition of Paul Durette), E-mail from Assistant Chief Paul Durette to Chief Timothy Bane, September 16, 2002 (recommending that the Worcester HIDTA position not be filled because of staffing needs).

11.02   Additional disputed material facts raised by Plaintiff:  At the time that Marshal Dichio exempted Deputy Marshal Kevin Wahl from the rotation to Boston, Springfield was not down man-power, and no rotation to Springfield was needed during this time period.  See Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, at p. 23.

11.03   Additional disputed material facts raised by Plaintiff:  Supervisory Deputy Tom Bezanson, who informed Deputy Marshal Williams and Deputy Marshal DeCaire about the Marshal's directive, also advised Deputy Marshal Williams the same day that he also had once angered management and was transferred to another office, and that she should just keep quiet. Plaintiff's Exhibit 9, Affidavit of Susan Williams, June 2003.

11.04   Additional disputed material facts raised by Plaintiff:  Deputy Marshal DeCaire was given notice at approximately 4:00 p.m. on January 22, 2003 that she would have to report to Boston the next morning.  Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, at p. 24

11.05   Additional disputed material facts raised by Plaintiff:  The weekly rotation ordered in January 2003 was not accompanied by any SF50 form, and left Deputy Marshal without a clear supervisor.   See Defendant's Memorandum in Support of Motion for Summary Judgment, at 10 (maintaining that "Plaintiff's official duty station remained the Boston Office while she was assigned to Worcester"); Plaintiff's Exhibit 76, Excerpts of the Deposition of David Dimmitt, at 24 (after Acting Chief Dimmitt's arrival in February 2003, months later, Assistant Chief Dimmitt determined that Plaintiff's official duty station remained Boston).

11.06   Additional disputed material facts raised by Plaintiff:  Deputy Marshal DeCaire was assigned to rotate to Boston on January 23, 2003, but was unable to work that day due to her daughter's operation the day before.  Plaintiff's Exhibit 56, Affidavit of Cynthia DeCaire, June 2003, at p. 8, ¶ 11.

11.07    <u>Additional disputed material facts raised by Plaintiff:</u>  After she had called in to Boston rather than Worcester when she was unable to work in Boston due to her daughter's convalescence from surgery, Supervisory Deputy Marshal Bezanson took the position that she had failed to properly notify supervisor.

11.08    <u>Additional disputed material facts raised by Plaintiff:</u>  Although Marshal Dichio blamed a "manpower shortage" for his January 21, 2003, order directing Deputy Marshal Williams and Deputy Marshal DeCaire to alternate weeks between Court Operations in Boston and Worcester, there had been no change in the manpower situation at this time.  <u>See</u> Plaintiff's Exhibit 10, Request for Production of Documents (seeking manpower documents); Plaintiff's Exhibit 11, Letter from Attorney Barbara Cottrell (no documents from that time period); Plaintiff's Exhibit 29, Excerpts from the Transcript of Deposition of William Ryan, March 22, 2005, at 47 (no such documents located);  <u>see also</u> Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 23-24, 44 (the staffing in January 2003 was not unusually different from other times).

11.09    <u>Additional disputed material facts raised by Plaintiff:</u>  The rotational assignment originally was a weekly rotation, with any missed days to be made up in the assigned location, not an "as needed" assignment.   Plaintiff's Exhibit 56, Affidavit of Cynthia A. Decaire, at 8, ¶ 11; <u>see also</u> Defendant's Exhibit G, E-mail from Tom Bezanson to Paul Dunne, January 22, 2003, bate-stamp 8S (describing assignment of Deputy Wahl to Springfield as an "as needed" assignment, but the assignment of Deputy DeCaire and Deputy Williams to Boston as one that would need to be made up in Boston if those dates were missed);  Defendant's Exhibit G, E-mail from Tom Bezanson to staff, January 23, 2003, bate-stamped 9S (SDUSM Bezanson's additional directive to staff that any DUSM calling in for sick leave on a "scheduled day" would make up that day in the assigned office).

11.10    Additional disputed material facts raised by Plaintiff:    Marshal Dichio learned on Friday, January 24, 2003, that Deputy Marshal Williams and Deputy Marshal DeCaire had initiated a complaint against him.  Plaintiff's Exhibit 9, Affidavit of Susan Williams, June 2003, ¶ 13 (on her first scheduled day in Boston, January 24, 2003, Deputy Marshal William informed Assistant Chief Deputy United States Marshal Paul Durette that she and Deputy Marshal DeCaire were filing a grievance and an EEO complaint); Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 20 (on February 4, 2003, Assistant Chief Durette informed Deputy Marshal DeCaire that he had informed Marshal Dichio of Deputy Marshal DeCaire's EEO complaint on January 24, 2004).

11.11    Additional disputed material facts raised by Plaintiff:    After Marshal Dichio learned from Assistant Chief Marshal Durette on January 24, 2003, that Deputy Marshal Williams and Deputy Marshal DeCaire were filing an EEO complaint against him, he attempted to resolve the issues regarding Deputy Marshal Williams.  Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 46, 49-50 (Assistant Chief Durette spoke with Marshal Dichio about Deputy Williams request to attend a training, and in that conversation, advised Marshal Dichio that an EEO complaint were filing an EEO complaint about the rotations, and advising Marshal Dichio that denying the training would "make matters worse" regarding the EEO complaint; Marshal Dichio told Assistant Chief Durette to tell Deputy Williams that the training had been approved; before Assistant Chief Durette had a chance to tell Deputy Williams, she had already learned of the approval from Marshal Dichio); Plaintiff's Exhibit 9, Affidavit of Susan Williams, June 2003, ¶ 13 (on January 24, 2003, Marshal Dichio called Deputy Marshal Williams into his office, and informed her that he had approved the leave she had requested and he assured her that her rotation would cease as soon as the manpower increased).

11.12    Additional disputed material facts raised by Plaintiff:    The rotational assignments were changed from mandatory assignments to "as needed" assignments by Assistant Chief Durette after management in the Marshals Service learned of Deputy Williams and Deputy Marshal DeCaire's complaint.  See Plaintiff's Exhibit 24 (Exhibit 8 to the Deposition of Paul Durette), E-mail from Paul Durette to Supervisory Deputy Tom Bezanson and Supervisory Deputy Walter Doherty, January 24, 2003 (directing the supervisors that the rotation from Worcester to Boston is to be on an as needed basis only).

11.13    Additional disputed material facts raised by Plaintiff:    After Marshal Dichio learned Deputy Marshal DeCaire was filing an EEO Complaint against him, he decided to transfer her permanently to Court Operations in Boston.  See supra, ¶ 11.10 (Marshal Dichio learned of the complaints on January 24, 2003); Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 18 (Supervisory Deputy Marshal Tom Bezanson informed Deputy Marshal DeCaire that Marshal Dichio and Deputy Marshal Dave Taylor had met with Supervisory Deputy Marshal Tom Bezanson in Worcester on January 28, 2003, and informed him of the decision on her transfer); Plaintiff's Exhibit 7, Affidavit of Susan J. Williams in Opposition to Motion for Summary Judgment (by the time of this meeting, it was common knowledge amongst Deputy Marshals and Court Security Officers and the Springfield office (Deputy Marshal Wahl, Court Security Officer Landry, Retired Supervisory Deputy Marshal Paul Desmond), that Deputy Marshal DeCaire and Deputy Marshal Williams had filed an EEO complaint).

11.14    Additional disputed material facts raised by Plaintiff:    Assistant Chief Durette was not involved in the decision to have Deputy Marshal DeCaire fill a position vacated by an 082 deputy in Court Operations in Boston, and he would not have recommended putting a productive 13-year veteran in a position of a deputy with two years on the job but instead would have

recommended other junior deputies in the warrants investigations unit to back fill the position. Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 53-54, 56.

11.15    Additional disputed material facts raised by Plaintiff:  On January 30, Supervisor Deputy Bezanson then told her to report to Worcester instead of Boston on February 3, 2003, and for that reason she did not work in Boston on that day.  Plaintiff's Exhibit 56, Affidavit of Cynthia DeCaire, June 2003, ¶ 14.

12.    On February 4, 2003, Plaintiff was reassigned to Boston to fill a position in Court Operations.  Defendant's Statement of Material Fact, ¶ 12.

12.01    Additional disputed material facts raised by Plaintiff:  At the time of this reassignment, there were deputies with less seniority than Deputy Marshal DeCaire assigned to the Worcester office (Deputy Lewis (see supra, ¶ 14)), and to Court Operations in Boston. Plaintiff's Exhibit 61, Defendant's Amended Response to Plaintiff's First Request for Admissions, Response to Request 5.

12.02    Additional disputed material facts raised by Plaintiff:  No SF50 issued for this reassignment.  See Defendant's Memorandum in Support of Motion for Summary Judgment, at 10 (maintaining that "Plaintiff's official duty station remained the Boston Office while she was assigned to Worcester"); Plaintiff's Exhibit 76, Excerpts of the Deposition of David Dimmitt, at 24 (after Acting Chief Dimmitt's arrival in February 2003, months later, Assistant Chief Dimmitt determined that Plaintiff's official duty station remained Boston).

12.03    Additional disputed material facts raised by Plaintiff:  Deputy Marshal DeCaire was forced to leave her government vehicle in Worcester and make her on way home on February 3 and her own way to Boston on February 4.  Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 41.

12.04    Additional disputed material facts raised by Plaintiff:  When Deputy Marshal DeCaire contacted her new Boston supervisor, Supervisory Deputy Marshal Walter Doherty, on February 3, 2003, he was unaware of the transfer.  Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 41.

12.05    Additional disputed material facts raised by Plaintiff:  On February 3, 2003, the staff in the District was informed that Deputy DeCaire was reassigned to fill a position vacated by a junior deputy in a lower position.  Defendant's Exhibit H, E-Mail from Assistant Chief Paul Durette, February 3, 2003 (announcing Deputy Marshal DeCaire's reassignment replacing an 082 in the Court Operations section); Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 56 (Assistant Chief Durette was directed by Marshal Dichio to send the e-mail announcing the reassignment).

12.06    Additional disputed material facts raised by Plaintiff:  Assigning Deputy Marshal DeCaire to a position held by an 082 humiliated Deputy Marshal DeCaire.  Plaintiff's Exhibit 12, Excerpts of Deposition of Cynthia A. DeCaire, March 16, 2005, at 6 (Deputy Marshal DeCaire was assigned to Court Operations when she began her employment with the United States Marshals Service in June 1991); Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶ 20 (the e-mail caused Deputy Marshal DeCaire humiliation, undue questioning, and sympathy amongst her peers).

12.07    Additional disputed material facts raised by Plaintiff:  That the reassignment of Deputy Marshal DeCaire to Court Operations was punitive is demonstrated by management's decision to keep her even after the District received three new 082's non-criminal investigators from the Academy, and even after a position opened up in Warrant Investigations.  See infra, par. 14.03.

12.08   Additional disputed material facts raised by Plaintiff:  On February 5, 2003, the morning after Assistant Chief Durette spoke to Deputy Marshal DeCaire about her EEO complaint, Marshal Dichio questioned Assistant Chief Durette about his conversation with Deputy Marshal DeCaire, about his loyalty to Marshal Dichio and whether he could count on Assistant Chief Durette to back Marshal Dichio in connection with the EEO complaint, and Assistant Chief Durette responded that he would tell the truth.  Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 57-59 (the Marshal said if Assistant Chief Durette was questioned about the EEO Complaint, the Marshal expected that Durette support the Marshal; Assistant Chief Durette stated that he would tell the truth and that if asked by investigators would have to tell them that he was not consulted on the transfer decisions).

12.09   Additional disputed material facts raised by Plaintiff:  After Durette said would tell the truth, Marshal requested from headquarters, and was given, a new Acting Chief, who was "loyal" to the position held by the Marshal.  See Plaintiff's Exhibit 37, Marshal Dichio's notes from February 5, 2003 ("contacted Deputy Director re: Asst. Chief Durette and EEO complaint. [Deputy Director] adv. Will contact Art Roderick re: Temp. Chief for 120 days until I get my permanent Chief"); Marshal's deposition, [add cite]; Dimmit's deposition.; Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003 (at a meeting after Acting Chief Dimmit arrived in Boston, he stated that he was "loyal" to the Marshal's "chair," no matter who sat in it).

13.     Fact asserted by Defendant (Defendant's Statement of Material Fact, ¶ 13 ) which Plaintiff disputes:

> On February 5, 2003, at 10:17 am, Plaintiff's supervisor, SDUSM Thomas Bezanson forwarded to the USM an EEO complaint filed by Plaintiff.  Plaintiff complained of disparate treatment in the rotational assignments and her non-selection for the Worcester HIDTA position.

Plaintiff's Response:  Disputed.   On February 5, 2003, at 10:17 a.m., Plaintiff's supervisor, SDUSM Thomas Bezanson, forwarded to USM Dichio a document prepared by an EEO counselor purportedly summarizing DUSM DeCaire's EEO complaint.  See Defendant's Exhibit I, E-mail from Thomas Bezanson, February 5, 2003, and attachment, bate-stamped 10S-11S.

13.01   Additional disputed material facts raised by Plaintiff:  USM Dichio was aware of DUSM DeCaire's complaint prior to receiving this e-mail from SDUSM Bezanson.  See Defendant's Exhibit B, April 1, 2003, Memorandum from Lydia K. Blakey at 3 ("[m]anagement was aware that you had filed a written complaint prior to notifying you that you were reassigned back to Boston Court Operations duties"); see also supra at par. 11.10.

13.02   Additional disputed material facts raised by Plaintiff:  Supervisory Deputy Marshal Bezanson also forwarded information concerning Plaintiff's EEO complaint to other employees, including Dave Taylor, who at the time, was not in the chain of command and had no reason to know of the complaint.  See Defendant's Exhibit I, E-mail from Supervisory Deputy Tom Bezanson to Marshal Dichio regarding Deputy Marshal DeCaire's EEO complaint, February 5, 2003, with copies to Paul Dunne and Dave Taylor, bate-stamped 12S, and E-mail from Supervisory Deputy Tom Bezanson to Marshal Dichio regarding Deputy Marshal DeCaire's EEO complaint, February 6, 2003, with copy to Dave Taylor; see also Plaintiff's Exhibit 77, Excerpts from Transcript of David B. Taylor, volume I, February 15, 2005, at 27 (not part of management at this time).

14.   On February 17, 2003, Chief Deputy U.S. Marshal David Dimmitt, Northern District of New York, became the Acting Chief Deputy Marshal for the District of Massachusetts.  Defendant's Statement of Facts, ¶ 14.

14.01    Additional disputed material facts raised by Plaintiff:  During the week of February 24, 2003, Marshal Dichio had a conversation with Detective Joe Cummings of the Brockton Police Department in the basement of the federal courthouse in which he asked about the performance of Supervisory Deputy Bohn (who Marshal Dichio knew was having a personal relationship with Deputy Marshal DeCaire) as the supervisor of the HIDTA task force and in which he stated his retaliatory intent towards Deputy Marshal DeCaire.   Plaintiff's Exhibit 13, Affidavit of Joseph Cummings, June 27, 2003 (testifying that Marshal Dichio asked about Supervisory Deputy Bohn's performance on the task force and that Marshal Dichio spoke about Deputy Marshal DeCaire during this conversation, and stated that she "is vicious, that she would get what is coming to her, that he would get her, and that as long as he was here she was going nowhere"); Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003 (Deputy Marshal DeCaire had conversations with Marshal Dichio from which Marshal Dichio would have been aware that she had a personal relationship with Supervisory Deputy Bohn);  Plaintiff's Exhibit 8, Affidavit of Jeffrey Bohn in Opposition to Motion for Summary Judgment (Supervisory Deputy Bohn had conversations with Marshal Dichio from which Marshal Dichio would have been aware that he had a personal relationship with Deputy Marshal DeCaire).

14.02    Additional disputed material facts raised by Plaintiff:  On March 11, 2003, Supervisory Deputy Bohn was removed from his position as head of the HIDTA Task Force as retaliation for Deputy Marshal DeCaire's continuing to pursue her EEO Complaint.  See Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 39 (Supervisory Deputy Bohn had a very good relationship with state and local officers, and during his tenure as acting supervisory for HIDTA, it had been acknowledged as the best-run HIDTA task force of all the New England HIDTA task forces by the executive director of New England HIDTA); see also Plaintiff's Exhibit 15, Affidavit of Stephen Ridge (after it became

obvious that Supervisory Deputy Marshal Bohn was being excluded from critical task force matters, and that his position on the task force was in jeopardy, Task Force member Boston Patrolman Ridge went to talk to Acting Chief Dimmitt but was told by Marshal Dichio that it was his call that Supervisory Deputy Bohn was removed from the task force).

14.03   Additional disputed material facts raised by Plaintiff:  On March 12, 2003, the District received three new 082s from the Academy, but Deputy Marshal DeCaire continued to be assigned to the 082 position in Court Operations.  Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, par, 23.

14.04   Additional disputed material facts raised by Plaintiff:  Deputy Marshal DeCaire and other deputies were warned by Acting Chief Dimmit not to take on the Marshal Service. Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003 (Deputy Marshal DeCaire attended a meeting Acting Chief Dimmit held with the Court Operations unit in Boston and the new 082's who had arrived from Boston during which he advised the deputies not to take on the Marshals Service, and during which he stated that he was looking for a few individuals in the group to change their attitude"); Plaintiff's Exhibit 75, Affidavit of Kevin Donahue, June 5, 2003, Answer to Question 3 (Deputy Marshal Donahue attended the meeting Acting Chief Dimmitt held with the Court Operations unit in Boston and the new 082s; it seemed to Deputy Marshal Donahue that the meeting was a "problem employee meeting"; Acting Chief Dimmitt said that some people have bad attitudes and they need to think of the Marshals Service first).

14.05   Additional disputed material facts raised by Plaintiff:  On March 17, 2003, Deputy Marshal Scott Kimball, who had less seniority than Deputy Marshal DeCaire, was transferred from Court Operations to Warrants Investigations unit.  First Amended Answer, ¶ 40 (admitting that Deputy Marshal Kimball was transferred to Warrants Investigations unit);

Plaintiff's Exhibit 61, Defendant's Amended Response to Plaintiff's First Request for Admissions, April 7, 2005, Answer to Request 7.

14.06   Additional disputed material facts raised by Plaintiff:  In March, at Marshal Dichio's direction, Acting Chief Dimmit removed Assistant Chief Durette from his office into a cubicle in the administrative section of the office.   Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 72-73 (Acting Chief Dimmitt told Assistant Chief Durette that the Marshal had not told him why he was moving Assistant Chief Durette, but had said that it was his decision to do so); Plaintiff's Exhibit 38, Marshal Dichio's notes from March 31, 2003 ("CDUS Dimmit adv. ACDUSM Durrette that his office will be relocated to Adm. Area [illegible] cubicle across from AO Ryan & that his Ford Exped. Will be reassigned to Warrants DUSM Hodgkins & you will take her Chevy Lumina").

14.07   Additional disputed material facts raised by Plaintiff   In April 2003, an Acting Supervisory Deputy United States Marshal position became open when the Walter Doherty left his position as Supervisory Deputy United States Marshal.  First Amended Answer.  The Acting Supervisory Deputy United States Marshal position was not announced for competitive selection.

15.     On April 21, 2003, Plaintiff expressed her interest in being considered for a position as an Acting Supervisor in Court Operations to Chief Dimmitt.  Defendant's Statement of Facts, ¶ 15.

15.01   Additional disputed material facts raised by Plaintiff:  On April 21, 2003, Plaintiff also expressed her interest in being considered for a position as an Acting Supervisor in Court Operations to USM Dichio.  Defendant's Exhibit K, E-Mail from DUSM DeCaire, April 21, 2003, bate-stamped 14S.

15.02    <u>Additional disputed material facts raised by Plaintiff</u>:  Acting Supervisory Deputy Marshal positions are very valuable in the merit promotion procedure.   Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 12-14.

15.03    <u>Additional disputed material facts raised by Plaintiff</u>:  By April 21, 2003, Assistant Chief Durette had left the service of the United States Marshals Service.   <u>See</u> Plaintiff's Exhibit 39, Marshal Dichio's notes from April 18, 2003 ("ACDUSM Durette last day").

15.04    <u>Additional disputed material facts raised by Plaintiff</u>:  In April 2003, in order to support and hide Marshal Dichio's retaliatory actions against Deputy Marshal DeCaire, Acting Chief Dimmit sought out a female deputy Marshal for Acting Supervisory Deputy Position in Court Operations sought by Deputy Marshal DeCaire.  Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶¶ 27-28 (Deputy Marshal DeCaire expressed her interest in the position via e-mail on April 21, 2003 to Acting Chief Dimmit and Marshal Dichio; she received no response to her e-mail; the position was given to Deputy Hodgkins one week later); First Amended Answer, ¶ 42 (admitting that neither Marshal Dichio nor Chief Deputy Dimmitt responded to Deputy Marshal DeCaire's e-mail).

15.05    <u>Additional disputed material facts raised by Plaintiff</u>:  Alison Hodgkins had previously had the opportunity to gain experience in the Operations Desk position and in the Warrant Coordinator position, and she was not qualified for the Acting Supervisor position.  <u>See e.g.</u>  Plaintiff's Exhibit 67, Affidavit of Paul Durette, October 29, 2002, Answer to question 6 ("From August 1999 to February 2000, DUSM Hodgkins served as Assistant Supervisor assignment to the Operations Desk"; "since her assignment in 1999/2000, DUSM Hodgkins has frequently filled in at the Operations Desk on a intermittent basis during the absence of the Assistant Supervisor."), Answer to Question 8 ("[i]n May 2000, DUSM Hodgkins failed to pick-

up Justice Breyer at Logan Airport and then provided several incomplete and inaccurate statements to CDUSM Bane regarding the failed pick-up; "DUSM Hodgkins never notified district management of the failed pick-up and did not contact Justice Breyer's residence to confirm that he had arrived safely"; "Following Alternative Dispute Resolution proceedings, DUSM Hodgkins was issued a Letter of Reprimand for Careless Workmanship"); Plaintiff's Exhibit 19, Affidavit of Dave Dimmit, June 2003, Answer to Question 13 (the operations desk is a leadership assignment, and to be effective, the assignee must demonstrate above average skill levels in perception, interpersonal relations, judgement [sic], decision making, leadership, organizing and planning as well as oral communication"); Plaintiff's Exhibit 36, E-mail string between Deputy Alison Hodgkins and Supervisory Deputy Paul Dunne, November 5, 2002 (assigning Deputy Hodgkins as the Deputy in Charge of the Operations Desk, and noting her abundance of experience in that position); see also Plaintiff's Exhibit 10, Request for Production of Documents 17 (seeking all documents relating to the qualifications of the person selected for the Acting Court Supervisor position); Plaintiff's Exhibit 11, Letter from Attorney Barbara Cottrell (no responsive documents); Plaintiff's Exhibit 29, Excerpts from the Transcript of the Deposition of William Ryan, March 22, 2005, at 54, 58 (no such documents).

16.    On April 23, 2003, Plaintiff expressed her interest in being considered for a position as Warrant Coordinator to Chief Dimmitt.  Defendant's Statement of Facts, ¶ 16.

16.01    Additional disputed material facts raised by Plaintiff:  On April 23, 2003, Plaintiff also expressed her interest in being considered for a position as Warrant Coordinator to USM Dichio.  Defendant's Exhibit K, E-mail from DUSM DeCaire, April 23, 2003, bate-stamped 15S.

16.02    Additional disputed material facts raised by Plaintiff:  Other leadership positions, such as the Warrant Coordinator position, are also very valuable in the merit promotion package. See Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January

28, 2005, at 28-29 (acting as a Team Leader was necessary experience for a senior deputy's promotional package).

16.03   Additional disputed material facts raised by Plaintiff:  In order to support and hide Marshal Dichio's retaliatory actions against Deputy Marshal DeCaire, Acting Chief Dimmit sought out a Deputy Marshal for the Warrant Coordinator position sought by Deputy Marshal DeCaire, and claimed as a pretext that only persons then-assigned to the Warrant Investigations could be considered for the position.  Plaintiff's Exhibit 56, Affidavit of Cynthia A. DeCaire, June 2003, ¶¶ 29, 44 (Deputy Marshal DeCaire expressed her interest in the Warrant Coordinatory position via e-mail on April 23, 2003 to Acting Chief Dimmit and Marshal Dichio; she received no response to her e-mail; the position was given to Deputy Marshal Sugrue one week later); Plaintiff's Exhibit 14, Affidavit of Paul Sugrue in Support of Plaintiff's Opposition for Summary Judgment (Chief Dimmit informed Deputy Sugrue that he was being assigned to the position and Deputy Marshal Sugrue informed Chief Dimmitt that he did not want the position).

17.    On April 28, 2003, DUSM Alison Hodgkins was selected to fill the position as Acting Supervisor for Court Operations.  DUSM Paul Sugrue was assigned to the position as Warrant Coordinator.  SDUSM David Taylor was designated Acting Assistant Chief Deputy Marshal.  Defendant's Statement of Facts, ¶ 17; Undisputed.[1]

18.    On July 15, 2003, William Fallon became Chief Deputy U.S. Marshal for the District of Massachusetts.  Defendant's Statement of Facts, ¶ 18.

---

[1]  Defendant has not offered competent evidence as to the actual date on which Alison Hodgkins was <u>selected</u> to fill the Acting Supervisor position, rather than the date the selection was announced.  See Defendant's Exhibit K, E-Mail from David Dimmit, bate-stamped 66. Although Plaintiff disputes that the selection process occurred on April 28, 2003, this distinction is not material to the instant motion.

19.    On August 21, 2003, Plaintiff asked to be considered for the position of Supervisor in Court Operation.  Acting Assistant Chief Deputy Taylor forwarded the request to Chief Fallon.  Defendant's Statement of Facts, ¶ 19.

19.01    Additional disputed material facts raised by Plaintiff:  Plaintiff's request to be considered for the position noted that it had been 120 days since her prior request.  Defendant's Exhibit M, E-mail from Deputy Marshal DeCaire to Assistant Chief Taylor, August 21, 2003, bate-stamped 23S.

19.02    Additional disputed material facts raised by Plaintiff:  Acting Supervisory Deputy Marshal positions that are not announced for competitive selection may not exceed 120 days.  Plaintiff's Exhibit 20, Excerpts of the Transcript of the Deposition of Paul Durette, January 28, 2005, at 11-12, 84 (by regulation, if the position extends beyond 120 days, it must be announced competitively); Plaintiff's Exhibit 58, Transcript of the Deposition of Anthony Dichio, Volume 1, October 26, 2004, at 35 (a person may be in an acting position for up to 120 days).

19.03    Additional disputed material facts raised by Plaintiff:  Deputy Marshal Hodgkins was permitted to remain in the Acting Supervisory position for more than 120 days, and received "quality increase" pay in lieu of acting promotion pay.  See supra at 17 (position started on April 28, 2003).

19.04    Additional disputed material facts raised by Plaintiff:  In September 2003, order to support and hide Marshal Dichio's retaliatory actions against Deputy Marshal DeCaire, Acting Assistant Chief Taylor sought out a female deputy Marshal for Acting Supervisory Deputy Position in Court Operations sought by Deputy Marshal DeCaire, and when the female deputy marshal, Annette Lawlor, informed Acting Assistant Chief Taylor that she was not interested in the position, Alison Hodgkins was continued in the position until it was eliminated.  First

Amended Answer, ¶ 46 (admitting that Acting Assistant Chief Taylor approached another female deputy about the position after Deputy Marshal DeCaire requested consideration).

20.    On September 12, 2003, Chief Fallon announced his intention to develop a rotation schedule for all warrant/task force assignments.  That rotation policy was issued in writing January 20,2004.  Defendant's Statement of Facts, ¶ 20.

21.    On October 3, 2003, DUSMs Paul Dunne and Jeff Bohn were assigned as Court Operations Supervisors.  DUSM Kevin Donahue assumed the Warrant Coordinator position.  Defendant's Statement of Facts, ¶ 21.

21.01   Additional disputed material facts raised by Plaintiff:  These assignments not effective until October 14, 2003.  Defendant's Exhibit M, E-mail from Chief Fallon to all hands, October 3, 2003, bate-stamped 89.

21.02   Additional disputed material facts raised by Plaintiff:   At the time of his appointment, Kevin Donahue, who had less seniority than Plaintiff, had been assigned to Court Operations.   Plaintiff's Exhibit 61, Defendant's Amended Response to Plaintiff's First Request for Admissions, Answer to Request 9.

21.03   Additional disputed material facts raised by Plaintiff:  At the time the new assignments were announced, management had been aware for several years that Deputy Marshal DeCaire and Supervisory Deputy Marshal Bohn had a personal relationship.  Plaintiff's Exhibit 6, Affidavit of Cynthia A. DeCaire in Support of Motion for Summary Judgment.

21.04   Additional disputed material facts raised by Plaintiff:   On October 3, 2003, by assigning Supervisory Deputy Jeff Bohn to a Court Operations Supervisor position, management created a situation where Supervisory Deputy Bohn would be supervising Deputy Marshal DeCaire.  Management chose not to resolve the problem by moving Deputy Marshal DeCaire rather than Deputy Marshal Donahue into the Warrant Investigations unit.  See supra 21.02.

29

22.    On or about October 11, 2003, Plaintiff married SDUSM Jeff Bohn.   Defendant's Statement of Facts, ¶ 22.

22.01    Additional disputed material facts raised by Plaintiff:   On the morning of October 14, 2003, Deputy Marshal DeCaire was transfer to Worcester.  Plaintiff's Exhibit 46, Affidavit of Cynthia A. DeCaire, June 18, 2004, at pp. 3-4.

22.02    Additional disputed material facts raised by Plaintiff:   Deputy Marshal DeCaire was required to report to the Worcester office by noon of the same day, and no general e-mail was sent to other staff announcing the move.  Plaintiff's Exhibit 46, Affidavit of Cynthia A. DeCaire, June 18, 2004, at pp. 3-4.

22.03    Additional disputed material facts raised by Plaintiff:   Management's claim that the reason for the transfer was because of Deputy Marshal DeCaire and Supervisory Deputy Bohn's marriage is pretextual, since: (1) management had been aware for several years that Deputy Marshal DeCaire and Supervisory Deputy Bohn resided together and had a personal relationship (supra at 21.03); (2) Supervisory Deputy Bohn's assignment to supervised Court Operations (including Deputy Marshal DeCaire) had been decided just a week earlier, with an effective date of October 14, 2003 (supra at 21.01); and (3) management could have avoided the entire problem by assigning Deputy Marshal DeCaire, rather than Deputy Kevin Donahue from Court Operations to the Warrant Coordinator position at that same time.  See supra 21.02, 21.04.

22.04    Additional disputed material facts raised by Plaintiff:   Management's claim about the reason for the transfer is also suspect in light of the concurrent discriminatory treatment of Deputy Marshal Susan Williams, in that she was assigned to replace Deputy Marshal DeCaire, who in turn had originally replaced an 082 in Court Operations, even though Deputy Williams was not the most junior deputy in Worcester.  Plaintiff's Exhibit 31, tables showing Deputy United States Marshals with Locations Assigned and Dates for these Assignments (Deputy Sean

Weddeke was junior to Deputy Williams); Plaintiff's Exhibit 57, seniority table (Deputy Lewis was junior to Deputy Williams).

22.05   Additional disputed material facts raised by Plaintiff:   In response to her inquiry as to whether the transfer to Worcester was permanent, Supervisory Deputy Bezanson stated that it was "what [she] made of it."  Plaintiff's Exhibit 46, Affidavit of Cynthia A. DeCaire, June 18, 2004, at p. 3.

23.     On October 28, 2003, Plaintiff's supervisor, SDUSM Thomas Bezanson advised Chief Fallon that Plaintiff had advised him that she was 4 months pregnant and was requesting light duty status.  Defendant's Statement of Facts, ¶ 23.

23.01   Additional disputed material facts raised by Plaintiff:   Between October 21, 2003, and November 12, 2003, Deputy Marshal DeCaire responded to merit promotion announcement #03-136, for a Supervisory Deputy Marshal position in the District of Massachusetts.  Plaintiff's Exhibit 6, Affidavit of Cynthia A. DeCaire in Support of Motion for Summary Judgment.  Had she been assigned the Acting Supervisory position or the Warrants Coordinator position, her merit promotion package would have been more competitive than Deputy Hodgkins who was awarded the promotion.  In the absence of further discrimination or retaliation by the Marshal, Deputy Marshal DeCaire would have been selected for the position.  See Plaintiff's Exhibit 58, Transcript of the Deposition of Anthony Dichio, October 26, 2004, at 29-30 (explaining that the Marshal is given a top five (or sometimes a slightly larger) list which he then may rank).

23.02   Additional disputed material facts raised by Plaintiff:   Between October 28, 2003, and November 13, 2003, Deputy Marshal DeCaire continued to performed work in the Worcester sub-station, including serving process, warrant investigation work and administrative work.  Supervisory Deputy Bezanson kept saying that he would try to find work for her in Worcester so that she would not end up in the Boston control room.  Plaintiff's Exhibit 6,

Affidavit of Cynthia A. DeCaire in Support of Motion for Summary Judgment; Plaintiff's

Exhibit 46, Affidavit of Cynthia A. DeCaire, June 18, 2004, at p. 6.

24.     Fact asserted by Defendant (Defendant's Statement of Material Fact, ¶ 24) which

Plaintiff disputes:

> On November 13, 2003, Plaintiff signed a limited light duty letter, in which she
> was assigned to the Worcester Office on Mondays and Fridays, Boston on
> Tuesdays and Thursdays, and Springfield on Wednesdays).  Plaintiff received and
> read the letter on 20, 2003.

> Plaintiff's Response:  Disputed.  On November 14, 2003, Deputy Marshal DeCaire was

advised that her assignments while on light duty were in the Worcester office on Mondays and

Fridays, the Control Room in Boston on Tuesdays and Thursdays, and Springfield on

Wednesdays.  When Deputy Marshal DeCaire objected to the assignment, Chief Fallon

threatened her that she would have to use her sick leave for her pregnancy and that she would be

assigned full time to the Boston control room.  Plaintiff went out on sick leave for a number of

days, and then reported on November 20, 2004, to the Boston Control Room.  When she arrived

in Boston, she was told by Supervisory Deputy Paul Dunne that the Springfield assignment had

been eliminated, and she was to work in Boston Tuesdays, Wednesdays and Thursdays.  She

signed the limited duty letter on November 20, 2003.  Plaintiff's Exhibit 46, Affidavit of Cynthia

A. DeCaire, June 18, 2004, at p. 5-6.

25.     On November 24, 2003, the limited duty letter was modified to exclude work in

the Springfield Office.  Plaintiff was assigned to Boston on Tuesdays, Wednesdays and

Thursdays.  It was contemplated that while in Boston, Plaintiff would be assigned to the Control

Room.  Plaintiff raised the issue of "possible side effects the electronical equipment may have on

a developing baby."  Upon inquiry, the District was advised that no health hazard would be

presented.  Defendant's Statement of Facts, ¶ 25.

25.01    Additional disputed material facts raised by Plaintiff: The District did not pass the information regarding the alleged lack of health hazards on to Deputy Marshal DeCaire. Plaintiff's Exhibit 46, Affidavit of Cynthia A. DeCaire, June 18, 2004, at p. 6.

25.02    Additional disputed material facts raised by Plaintiff:  At the time of this assignment, the Control Room, which is also known as the Command Center was supervised by Supervisory Deputy Bohn.  See Plaintiff's Exhibit 40, E-mail from Assistant Chief Taylor to management, October 15, 2003 (assigning Supervisory Deputy Bohn responsibility for the Command Center); Plaintiff's Exhibit 41, E-mail from Assistant Chief Taylor to Supervisory Deputy Bohn, December 1, 2003 (Assistant Chief Taylor giving Supervisory Deputy Bohn directions regarding assignment of Deputy Marshal DeCaire to the control room).

25.03    Additional disputed material facts raised by Plaintiff:  Supervisory Deputy Bohn was the Supervisor in charge of the Control Room when Deputy Marshal DeCaire was initially assigned to the Control Room.   Plaintiff's Exhibit 40, E-mail from Assistant Chief Taylor to management, October 15, 2003.

25.04    Additional disputed material facts raised by Plaintiff:  The Control Room had hazardous conditions including excessive noise and heat, that were addressed months later, after Deputy Marshal DeCaire was no longer assigned to the Control Room.  Plaintiff's Exhibit 53, Memorandum from Dave Barnes to Maureen Pan, April 7, 2004 (reporting that several hazards were identified by the USMS Office of Occupational Safety & Health coordinated with the General Services Administration, that recommendations had been made to abate the hazards, including installing a cooling unit and installing sound attenuation panels); Plaintiff's Exhibit 54, E-mail from Joe Buonocore to Marshal Dichio and others, July 1, 2004 (reporting that modifications and installation of the HVAC unit for the Control Room should be completed within two weeks).

25.05   Additional disputed material facts raised by Plaintiff:  Supervisory Deputy Bohn was removed from that assignment when management learned that he had filed an OSHA complaint concerning the control room.  Plaintiff's Exhibit 42, Memorandum from Supervisory Deputy Bohn to Joe Buonocore, Central Courthouse Management, December 11, 2003, bate stamped 133 (informing Joe Buonocore that Supervisory Deputy Bohn had filed a complaint with regional OSHA office regarding the excessive heat, noise and air quality issues (relating to a leaky air conditioning unit); Plaintiff's Exhibit 43, E-mail from Acting Assistant Chief David Taylor to Chief William Fallon, with copy to Marshal Dichio, December 12, 2003 (at 10:27 a.m., Acting Assistant Chief Taylor e-mailed Chief Fallon regarding his conversation with Supervisory Deputy Bohn in which he told Bohn that he had put the District in an embarrassing situation by way of the OSHA complaint);  Plaintiff's Exhibit 44, E-mail from Acting Assistant Chief Davit Taylor to Supervisory Deputy Bohn and Supervisory Deputy Dunne, December 12, 2003 (at 2:46 the same day, informing Supervisory Deputy Bohn and Supervisory Deputy Dunne that "due to potential conflict regarding personnel issues," Supervisory Deputy Dunne would assume supervisory responsibilities for the Control Room until further notice).

25.06   Additional disputed material facts raised by Plaintiff:  Supervisory Deputy Marshal Dunne asked Deputy Marshal DeCaire what other tasks she could do, and she explained the functions she had performed when she was on limited duty during her first pregnancy. Supervisory Deputy Marshal Dunne stated that he would try to get her out of the control room by serving business process, but she was not permitted to perform these additional functions in either Boston or Worcester.   Plaintiff's Exhibit 46, Affidavit of Cynthia A. DeCaire, June 18, 2004, at p. 6-7.

26.      On January 12, 2004 SDUSM David Taylor was selected as the permanent Assistant Chief Deputy Marshal and DUSM Alison Hodgkins, promoted to permanent

supervisory status, was assigned to Court Operations.  SDUSM Paul Dunne was assigned to the

Warrants SDUSM position.  Defendant's Statement of Facts, ¶ 26.[2]

26.01   Additional disputed material facts raised by Plaintiff:  Although Deputy Marshal

DeCaire was ostensibly a Worcester deputy for some purposes (such as when she made a request

concerning an accommodation for the last few weeks), she was not given the benefit afforded

other deputies from the Worcester who given accommodations in arriving and leaving because of

their added driving time.

26.02   Additional disputed material facts raised by Plaintiff:  Moreover, after her

Worcester Supervisor became annoyed at her for responding directly to an inquiry from the

Chief without including him in the communication, the assignment changed again to a full

Boston assignment (but still, with two supervisors).

27.     Fact asserted by Defendant (Defendant's Statement of Material Fact, ¶ 27) which

Plaintiff disputes:

> On January 21, 2004, SDUSM Bezanson advised Plaintiff that due to workload,
> she would be working in the Boston office until further notice.

Plaintiff's Response:  Disputed:  On January 21, 2004, Supervisory Deputy Bezanson

called Deputy Marshal DeCaire demanding to know why she had e-mailed Chief Fallon and had

not copied him on the e-mail, and directing her that, because of the e-mail, she would now be

assigned to the Boston office until further notice.   Plaintiff's Exhibit 46, Affidavit of Cynthia A.

DeCaire, June 18, 2004, p. 6; see also Plaintiff's Exhibit 47, E-mail from Deputy Marshal

DeCaire to Assistant Chief Taylor, January 22, 2004 (raising incident with Assistant Chief

---

[2] Defendant has not offered competent evidence as to the actual date on which Dave Taylor was
selected to fill the permanent Assistant Chief Deputy Marshal position, rather than the date the
selection was announced.  See Defendant's Exhibit 0, E-Mail from William Fallon, bate-stamped
242.  Although Plaintiff disputes that the selection was made on January 12, 2004, this
distinction is not material to the instant motion.

Taylor); see also Plaintiff's Exhibit 48, E-mail from Supervisory Deputy Bezanson to Chief

Fallon, January 28, 2004 (attempting to have Deputy Marshal DeCaire removed from her AED

training assignment immediately following this same incident, opining that "a DUSM who is

currently on light duty and will be 7 months pregnant should not be conducting this training");

Plaintiff's Exhibit 49, E-mail from Supervisory Deputy Bezanson to Chief Fallon, January 29,

2004 (noting that "[t]his past year the Worcester office and the district has [sic] been involved

with many personnel issues that involve a few employees" and proposing that the 1811 position

previous filled first by Deputy Williams and then by Deputy Marshal DeCaire be reassigned

permanently to Boston); Plaintiff's Exhibit 52, E-mail string between Supervisory Deputy

Bezanson and Supervisory Deputy Hodgkins (Supervisory Deputy Bezanson recommending to

Supervisory Deputy Hodgkins that she "rule with an IRON FIST, it's the only way").

    28.    Fact asserted by Defendant (Defendant's Statement of Material Fact, ¶ 27) which

Plaintiff disputes:

> On January 27, 2004, Plaintiff submitted for consideration a request for
> participation in the Department of Justice Worklife program, requesting to
> telecommute from the Worcester Office during the remainder of her pregnancy.
> After being staffed through management, the request was denied on February 24,
> 2004, due to a lack of light duty assignments in the Worcester Office.

    Plaintiff does not dispute that she submitted for consideration a request for participation

in the worklife program in which she requested to work from the Worcester office for the

remainder of her pregnancy.  Plaintiff Disputes that the reason the request was denied was

because there was no light duty available in the Worcester office, and notes that Defendant has

offered no competent evidence as to the reason for the denial of the request.

    29.    Additional disputed material facts raised by Plaintiff:  Between December 9,

2004, and December 30, 2004, Deputy Marshal DeCaire responded to merit promotion

announcement #04-135, for a Judicial Security Inspector position in the Judicial Security

Division - Court Security Program – Boston, Massachusetts.  Plaintiff's Exhibit 6, Affidavit of Cynthia A. DeCaire in Support of Motion for Summary Judgment.  Had she been assigned the Acting Supervisory position or the Warrants Coordinator position, her merit promotion package for this position, which has not yet been awarded, would have been more competitive.

30.    Additional disputed material facts raised by Plaintiff Throughout this ordeal, Deputy Marshal DeCaire is the only deputy whose work location has moved so many times. Plaintiff's Exhibit 31, tables showing Deputy United States Marshals with Locations Assigned and Dates for these Assignments.

31.    Additional disputed material facts raised by Plaintiff:  Deputy Marshal DeCaire has responded to two merit promotion announcements for a Judicial Security Inspector position. Plaintiff's Exhibit 6, Affidavit of Cynthia A. DeCaire in Support of Motion for Summary Judgment.  Had she been assigned the Acting Supervisory position or the Warrants Coordinator position, her merit promotion package would have been more competitive.

32.    Additional disputed material facts raised by Plaintiff:  The January 20, 2004, rotation policy was amended on July 20, 2004, and although both the original and amended policy specify that assignments, including the Worcester HIDTA assignment, will be evaluated in six months with the possibility of a rotation at that time, Deputy Lewis has remained in the Worcester HIDTA position from September 2002 through the present, and Paul Sugrue has remained the Warrant Coordinator.  Defendant's Exhibit M, United States Marshals Service, District of Massachusetts, Policy number 04-01, January 20, 2004, bate-stamped 248-249; Plaintiff's Exhibit 55, United States Marshals Service, District of Massachusetts, Number 04-01, July 20, 2004

33.    Additional disputed material facts raised by Plaintiff   Rather than embrace a "philosophy of fairness," management in the Marshal has permitted Supervisors to ridicule and

harass Deputy Marshal DeCaire because she has sought to enforce her Title VII rights.  See e.g. Plaintiff's Exhibit 45, E-mail from Supervisory Deputy Bezanson to Assistant Chief Taylor and Supervisory Deputy Dunne, December 12, 2003 (responding to e-mail concerning reassignment of supervisory responsibilities for the Control Room, stating "Enough already!!!  Send both of them home.  NO more light duty."); Plaintiff's Exhibit 50-A, E-mail from Supervisory Deputy Bezanson to Chief Fallon and Acting Chief Taylor, with copy to Supervisory Deputy Dan Spellesi, forwarding Plaintiff's Exhibit 50-B, February 5, 2004 (stating "[t]his is a classic and I know you guys will get a laugh . . ."); Plaintiff's Exhibit 50-B, E-mail string between Supervisory Deputy Alison Hodgkin and Supervisory Deputy Tom Bezanson, February 5, 2004 (Supervisory Deputy Hodgkin ridiculing other female deputies; Supervisory Bezanson noting that he "can't stop laughing" and that "no names [are] needed"); Plaintiff's Exhibit 51, E-mail from Supervisory Deputy Hodgkins to Assistant Chief Taylor, February 6, 2004 (complaining about "Bohnbadiers"); Plaintiff's Exhibit 26, E-mail from Tom Bezanson to Senior Inspector of Electronics Surveillance Brian Murphy, Senior Inspector of Electronics Surveillane Tony Visalli, Administrative Officer William Ryan, and Supervisory Deputy Dan Spellesi, March 5, 2004 (forwarding Supervisory Deputy Bohn's work life request concerning Deputy Marshal DeCaire's pregnancy, and commenting that "THIS is ridiculous" and that "[i]t never ends, why is this guy still here?"); Plaintiff's Exhibit 27, Excerpts from the Transcript of Deposition of Thomas W. Bezanson, February 15, 2005, at 9-13 (identifying recipients of Exhibit 26).

<div style="margin-left:50%">

Respectfully submitted,

**CYNTHIA A. DeCAIRE**,

By her attorney,

</div>

_____/s/_ Indira Talwani_____
Indira Talwani
**SEGAL, ROITMAN & COLEMAN**
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

Dated:  April18, 2005