### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____

CYNTHIA A. DECAIRE,

        Plaintiff

        vs.

ALBERTO R. GONZALES, in his official position as
Attorney General of the United States.

        Defendant

_____

C.A. No. 04-10593WGY

### JOINT PRE-TRIAL STATEMENT

Pursuant to this Court's Procedural Order re: Final Pretrial Conference, Plaintiff and Defendant jointly submit the following pre-trial statement[1]:

**1.**     <u>A summary of the evidence that will be offered by each party</u>:

    A.     <u>By Plaintiff</u>:

        (1)     <u>Exhaustion of Administrative Remedies</u>

In the event that the Court does not grant Plaintiff's cross-motion for partial summary judgment regarding exhaustion of administrative remedies, Plaintiff will offer the following evidence establishing that she has exhausted her administrative remedies: (a) Plaintiff's own testimony regarding her EEO counseling and her filing of the written complaints; (b) the February 14, 2003 Notice of Right to File a Discrimination Complaint; (c) Plaintiff's February 27, 2003 Complaint of Discrimination; (d) Counsel's May 16, 2003, Letter to Lisa M. Dickinson; (e) Letter from EEO Officer Lisa M. Dickinson, May 30, 2003; (f) the December 15, 2003

_____

[1] Plaintiff and Defendant respectfully request leave to make amendments to the Joint Pre-Trial Statement as necessary.

Notice of Right to File a Discrimination Complaint; (g) Plaintiff's January 5, 2004 Complaint of Discrimination; and (h) Defendant's First Amended Answer.

(2)    <u>Liability</u>

<u>Testimony of Cynthia DeCaire</u>.    Throughout her tenure at the United States Marshals Service, Deputy DeCaire has pursued assignments to advance her career.  She began her career with the Marshals Service in 1991 as an "082" Deputy Marshal, and worked her way through several promotions to an 1811, grade 12, Senior Criminal Investigator position.  At the time that Marshal Dichio assumed office, Deputy DeCaire had been in the Warrants Investigations unit for several years, and was a Team Leader there.

When Marshal Dichio assumed office, he took no steps to determine the qualifications, skills or experience of Deputy Marshal DeCaire.   Instead, in a one-on-one interview, he insisted that Deputy DeCaire should move to the Worcester office to be closer to her daughter.

Early the following month, when a position with the High Intensity Drug Trafficking Area ("HIDTA") Task Force opened up in the Worcester office, Deputy Marshal DeCaire expressed interest in the position.   Marshal Dichio assigned a junior and less qualified male Deputy United States Marshal, Mark Lewis, to the position, rather than Deputy Marshal DeCaire.   Shortly thereafter, Marshal Dichio informed Deputy Marshal DeCaire that he blamed her for the office discontent with his decision to assign Deputy Lewis to the HIDTA position, and that he had decided to go ahead and reassign her to the Worcester office.  Marshal Dichio thus removed her from her Team Leader position, and from the Warrant Investigations unit.

In January 2003, Marshal Dichio changed Deputy DeCaire's assignment, along with the other female Deputy Marshal in Worcester, Sue Williams, to rotate weekly between Boston and

Worcester Court operations.   Only the two women, and not the males in the office, were included in this rotation.

Deputy DeCaire and Deputy Williams filed a discrimination complaint about the rotational assignment.  Within days, and without discussing the move with the Supervisory Deputy in charge of Boston Court Operations,  Marshal Dichio assigned Deputy DeCaire to Boston Court Operations to take the position vacated by an 082 deputy.

Since February 2003, all efforts by Deputy DeCaire for advancement or even simply to assume some of the criminal investigation responsibilities for which she has been extensively trained have been thwarted.   Despite the arrival of three new 082's in March 2003, she remained in her position in Court Operations.   An opening occurred in March 2003 in the Warrants Investigations unit, but a more junior male deputy was moved to that position.  She sought an Acting Supervisor in Court Operations position in April and August 2003, and did not even receive a response.   She sought a position as a Warrant Coordinator in April 2003, and again received no response.   A Warrant Coordinator position was filled again in October 2003, this time from Court Operations where she was assigned (by a more junior male deputy), and again Deputy DeCaire was not given the position.   When Deputy DeCaire became pregnant, the only work made available to her other than some minor administrative tasks was an assignment to the control room, a position held previously and subsequently by 082s and guards.

Throughout this period, Deputy DeCaire has also been subjected to repeated transfers with no notice.   Deputy DeCaire was ordered to rotate to Boston the morning after receiving the new assignment.  She was transferred to Boston, again effective the morning after receiving the new assignment.  When she was transferred back to Court Operations in Worcester, allegedly because of her ongoing relationship with Supervisory Deputy Bohn, she was required to report

within hours.  She was given a rotating assignment again when she was on light duty, with her report station often changing on a daily basis.  In contrast, throughout this same period, the vast majority of male deputies have had no changes at all in their duty stations, and the few who have had to make a single change have been given notice.

Testimony of Joe Cummings.

During the week of February 24, 2003, Marshal Dichio had a conversation with Detective Joe Cummings of the Brockton Police Department in the basement of the federal courthouse in which Marshal Dichio asked about the performance of Supervisory Deputy Bohn (who Marshal Dichio knew was having a personal relationship with Deputy Marshal DeCaire) as the supervisor of the HIDTA task force and in which he stated that Deputy Marshal DeCaire "is vicious, that she would get what is coming to her, that he would get her, and that as long as he was here she was going nowhere."

Testimony of Paul Durette

Former Assistant Chief Durette has served at Marshals Services Headquarters in positions making his familiar with the promotional process for becoming a supervisory deputy United States Marshal.  In his experience, acting supervisor positions, as well as other positions such as the team leader in warrants, are useful for promotional packages.

Assistant Chief Durette was positively impressed with Deputy DeCaire's work performance.  Assistant Chief Durette was not consulted, however, by the Marshal in connection with his decisions to assign Mark Lewis to the HIDTA position in Worcester, to transfer Deputy DeCaire to Worcester, to rotate Deputy Williams and Deputy DeCaire between Worcester and Boston, or to assign Deputy DeCaire to Court Operations in Boston.

Chief Durette discussed Deputy DeCaire and Deputy Williams' EEO Complaint with Marshal Dichio on January 24, 2003. He also modified the rotational assignment to an "as needed" assignment at that time.

On February 4, 2003, Assistant Chief Durette spoke to Deputy Marshal DeCaire about her EEO complaint. The following morning, Marshal Dichio questioned Assistant Chief Durette about his conversation with Deputy Marshal DeCaire, about his loyalty to Marshal Dichio and whether he could count on Assistant Chief Durette to back Marshal Dichio in connection with the EEO complaint. Assistant Chief Durette responded that he would tell the truth. After Assistant Chief Durette said he would tell the truth, Marshal Dichio removed him from the chain of command.

In March, Assistant Chief Durette was also removed from his office to a cubicle in the administrative section of the office. At the time, Acting Chief Dimmitt informed Chief Durette that it was the Marshal's decision to removed Assistant Chief Durette from his office.

<u>Testimony of Jeff Bohn</u>

During Marshal Dichio's one-on-one interview with Supervisory Deputy Jeff Bohn, Marshal Dichio insisted that Deputy DeCaire should transfer to the Worcester office in order to be closer to her daughter.

In January 2003, Marshal Dichio informed Supervisory Deputy Bohn that he viewed Deputy DeCaire and Deputy Williams responsible for ongoing discontent with his assignment of Mark Lewis to the Worcester office.

In March 2003, after Deputy DeCaire filed her EEO complaint, Supervisory Deputy Bohn was removed from the HIDTA task force supervisor position and given a position where he was not supervising anyone.

In October 2003, Supervisory Deputy Bohn was assigned to supervise court operations, including the control room.  After he was given this assignment, Deputy DeCaire was transferred to Worcester.

On December 1, 2003, Supervisory Deputy Bohn was instructed to use Deputy DeCaire to man the control room.

On December 10, 2003, Supervisory Deputy Bohn filed an OSHA complaint regarding the conditions in the control room.  Within hours, he was removed from the control room assignment.

In March 2004, Supervisory Deputy Bohn filed a work-life request seeking to work from Worcester during the last few weeks of Deputy DeCaire's pregnancy.  The request not only was denied, but management permitted another Supervisory Deputy Tom Bezanson to ridicule his request.

<u>Testimony of Nancy McGillivray</u>   Former Marshal McGillivray is aware of the difficulties facing a woman working in United States Marshals Service.   She will attest to Deputy DeCaire's skill and experience in working in that environment.

Former Marshal McGillivray attempted to assist Marshal Dichio in his transition to the District, but was rebuffed.  Marshal Dichio was hostile to Nancy McGillivray in their subsequent interactions.

Former Marshal McGillivray also has knowledge, based on her own experience and her experience with Deputy DeCaire's first pregnancy, on the range tasks that can be undertaken by a pregnancy deputy.

Former Marshal McGillivray also has knowledge of the poor employment record of Alison Hodgkins, the deputy who was assigned to the Acting Supervisory position and who ultimately was promoted to the Supervisory Deputy position.

<u>Testimony of Timothy Bane</u>   Former Chief Tim Bane supervised Deputy DeCaire and recommended her for a superior accomplishment award for her work as an Acting Supervisory Deputy.   Former Chief Tim Bane also supervised Alison Hodgkins, and found her unable to handle supervisory responsibilities.

Historically, the Marshals Service has used transfers as a disciplinary tool.

Marshal Dichio disregarded Chief Bane's recommendations on a large number of matters, including the filling of the Worcester HIDTA position by Mark Lewis.

<u>Testimony of Susan Williams</u>

Susan Williams was the other female deputy assigned to the Worcester office.   She too had had inappropriate questions asked at her one-on-one interview by Marshal Dichio and she

too had sought to be considered for the Worcester HIDTA position.  She was the other deputy included in the January rotation and joined Deputy DeCaire in filing the EEO complaint.

At the time of the rotational assignment, Supervisory Deputy Tom Bezanson advised Deputy Marshal Williams that he also had once angered management and was transferred to another office, and that she should just keep quiet.

Deputy Williams informed Assistant Chief Durette of the EEO complaint on January 24, 2003.  After a training conference she had requested was granted, she dropped her EEO complaint.

When Deputy DeCaire was transferred back to Worcester, Deputy Williams, again the only other female deputy in the Worcester office, was transferred to Deputy DeCaire's position in Court Operations.  At the time, there were two male deputies in the Worcester office who were junior to Deputy Williams.

Testimony of Stephen Ridge

Task Force member Boston Patrolman Ridge went to talk to Acting Chief Dimmitt about Supervisory Deputy Bohn's removal from the HIDTA Task Force.  Marshal Dichio told him that it was Marshal Dichio's call that Supervisory Deputy Bohn was removed from the task force.

Testimony of Paul Sugrue

Deputy Marshal Sugrue was approached by Chief Dimmit regarding the Warrant Coordinator position sought by Deputy DeCaire.  Deputy Marshal Sugrue stated that he did not want the position, and Chief Dimmit informed him that he was being assigned to the position.

(3)     Damages

Testimony of Cynthia DeCaire

Deputy DeCaire has applied for three promotional opportunities since being removed from the Warrants Investigations unit.  Her promotional package, however, has become significantly less competitive because of the assignments and lack of opportunities under Marshal Dichio.  As to one of these positions, the Supervisory Deputy Marshal position awarded in January 2004, she lost out to a less qualified Deputy Marshal, Alison Hodgkins.

Deputy DeCaire has also suffered emotional distress from the humiliation of the assignments given to her, from the repeated transfers, and from the loss of any prospect of advancement in her career.

<u>Testimony of Jeff Bohn</u>.  Supervisory Deputy Marshal Bohn will testify to his wife's emotional distress.  He will also testify as to the difference in pay scales for the GS 12 and GS 13 positions.

        B.    <u>Defendant</u>

At trial, Defendant will establish that it had a legitimate reason for the promotions and assignments complained of by Plaintiff, that Plaintiff was not the target of discriminatory or retaliatory acts, nor has she suffered any adverse action at the hands of Defendant.  Evidence will be offered through the testimony of members of the Management Staff in place at the time of the complained of activity.

Defendant will establish that due to a lack of manpower in the Boston Office, Plaintiff and DUSM Williams were scheduled to temporarily rotate from the Worcester Office to Boston.  Plaintiff's transfer back to the Boston Office to fill the vacant position in Court Operations was neither discriminatory nor retaliatory, and did not constitute an adverse employment action.  The decision to place Plaintiff in that position was based on the work to be performed, seniority

(Plaintiff was the junior deputy in Court Operations in the Worcester Office), and the proximity of their residences to the Boston Office.

In April 2003, DUSM Alison Hodgkins was selected to fill the position as Acting Supervisor for Court Operations, notwithstanding the fact that Plaintiff expressed interest in the position. Plaintiff also expressed interest in the Warrant Coordinator position, but was not selected. Plaintiff was not recommended to the USM by Management Staff to fill either position. Both positions were filled by other DUSMs to afford them the same supervisory experience already afforded to Plaintiff.

In August 2003, Plaintiff asked to be considered for a supervisory position in Court Operations. Plaintiff's soon-to-be husband was one of two DUSMs selected to fill supervisory Court Operations positions. His assignment raised concern that Plaintiff was in a position to be under his supervision, and Plaintiff was thereafter transferred to Worcester to foreclose any appearance of favoritism or impropriety. Plaintiff thereafter announced her pregnancy and request for light duty status. Management determined that there was insufficient light duty work to keep her occupied in Worcester, and modified her assignment to afford her sufficient work under her light duty restrictions. Part of that modification involved assignment to the Boston Control Room, which afforded the District significant cost savings as fewer contract guards would be required.

Should Plaintiff be allowed to amend the Complaint to include allegations that Plaintiff was discriminated against through the Merit Promotion process, Defendant will establish that Plaintiff was not more qualified than DUSM Hodgkins for the Merit Promotion Court Operations position, and that she her advancement within the Merit Promotion process has not been adversely affected by the USM.

**2.**    <u>A statement of undisputed facts:  See attached Agreed Upon Statement of Facts</u>.

**3.**    <u>Contested issues of fact</u>:

A.    Whether Deputy DeCaire's successful career with the Marshals Service has continued since Marshal Dichio has assumed office.

B.    The nature of the one-on-one conversation between Marshal Dichio and Deputy DeCaire in August 2002.

C.    The nature of the conversation between Marshal Dichio and Deputy DeCaire in September 2002 regarding the transfer of Deputy DeCaire from the Warrant Investigations unit to the Worcester office.

D.    Whether the "manpower shortage" was the true or pretextual reason for the rotational assignment in January 2003.

E.    Whether Marshal Dichio learned that Deputy DeCaire had initiated an EEO complaint before or after he made the decision to transfer her to Court Operations in Boston.

F.    The nature of the conversation, if any, between Marshal Dichio and Assistant Chief Durette on January 24, 2003, regarding Deputy Williams' request to attend a conference.

G.    The nature of the conversation between Assistant Chief Durette and Marshal Dichio on February 5, 2005, regarding Deputy DeCaire's EEO Complaint.

H.    Whether, on Tuesday, January 28, 2003, Marshal Dichio and Deputy U.S. Marshal David Taylor traveled to the Worcester sub-office and had a meeting with Supervisory Deputy U.S. Marshal Bezanson, and if so, the nature of the conversation.

I.    Whether Marshal Dichio followed customary practices in filling the position in Court Operations vacated by an 082.

J.    Was lack of seniority the true or pretextual reason for Deputy DeCaire's assignment to Court Operations?

K.    The nature of the conversation, if any, between Marshal Dichio and Brockton Police Detective Joseph Cummings during the week of February 24, 2003.

L.    The reason that Deputy U.S. Marshal Scott Kimball, rather than Deputy DeCaire, was reassigned from Court Operations to Warrants.

M.    The nature of the March 17, 2003, meeting that Chief Deputy U.S. Marshal Dimmitt held with the Court Operation Unit.

N.    Whether providing an equal opportunity was the true or pretextual reason for assigning Alison Hodgkins to the Acting Supervisory Deputy Marshal position in April 2003.

O.    Whether the assignment of Paul Sugrue to the Warrant Coordinator position in April 2003 position was based on legitimate or discriminatory or retaliatory reasons.

P.    Whether Deputy Marshal Sugrue was assigned to the Warrant Coordinator position over his objections.

Q.    Whether Assistant Chief Taylor approached Deputy Annette Lawler (rather than Deputy DeCaire) about the Acting Supervisory position in September 2003 for legitimate or discriminatory or retaliatory reasons.

R.      Whether Kevin Donahue, rather than Deputy DeCaire, was appointed Warrant Coordinator in September 2003 for legitimate or discriminatory or retaliatory reasons.

S.      Whether the transfer of Plaintiff to Worcester on October 14, 2003, was for legitimate or discriminatory or retaliatory reasons.

T.      Whether the light duty assignment given to Plaintiff was for legitimate or discriminatory or retaliatory reasons.

**4.**     <u>Any jurisdictional questions</u>:

None.

**5.**     <u>Any question raised by pending motions</u>:

A.      Has Plaintiff exhausted her administrative remedies with regard to the March 2003 transfer of DUSM Scott Kimball?  <u>See</u> Defendant's Motion for Summary Judgment, Plaintiff's Cross-Motion for Partial Summary Judgment.

B.      Has Plaintiff proffered sufficient evidence to establish of a *prima facie* case of gender discrimination to survive summary judgment?  If so, has Defendant established, through undisputed facts, a legitimate, non-discriminatory, non-pretextual reason for its actions?  <u>See</u> Defendant's Motion for Summary Judgment, Plaintiff's Opposition to Defendant's Motion

C.      Has Plaintiff proffered sufficient evidence to establish of a *prima facie* case of retaliation to survive summary judgment?  If so, has Defendant established, through undisputed facts, a legitimate, non-discriminatory, non-pretextual reason for its

actions?  <u>See</u> Defendant's Motion for Summary Judgment, Plaintiff's Opposition to
Defendant's Motion

**6.**    <u>Issues of law, including evidentiary questions, together with supporting authority</u>

    A.    <u>Raised by Plaintiff</u>

       1.    Should Defendant be precluded from offering any evidence
regarding Alison Hodgkin's qualifications for the Acting Supervisor position
based on Defendant's position, following an order to compel, that no documents
concerning these qualifications exist.

       2.    Should Defendant be precluded from offering any evidence
regarding the rejection of Plaintiff for the promotional positions based on
Defendant's failure, following an order to compel, to produce documents relating
to both Plaintiff and the promotional position.

    B.    <u>Raised by Defendant</u>

       1.    Whether Plaintiff has constructively amended the Complaint to add
allegations that she has been discriminated against within the Merit Selection
process;

       2.    Whether the testimony of former USM Nancy McGillivray is
relevant to the discriminatory actions alleged in the Complaint;

       3.    Whether the testimony of DUSMs Susan Williams and Jeffrey
Bohn as to their own allegations of discrimination should be precluded as
irrelevant.

**7.**    <u>Any requested amendments to the pleadings</u>

If the Court views Plaintiff's pleadings as insufficient to raise the issue of whether Plaintiff's damages from the alleged retaliatory action include the loss of the promotion to the position of Supervisory Deputy United States Attorney, Plaintiff requests leave to amend her complaint.

**8.**    Any additional matters to aid in the disposition of the action:

A.    Plaintiff still seeks judicial admissions from Defendant as to its compliance with the Court's discovery order.

B.    Plaintiff also seeks production of the records from Supervisory Deputy Bohn's EEO complaint.  At the time of the Court's earlier order regarding the EEO records, the Marshals Service had not completed its investigation, but now the required time for the investigation (including a 60 day extension of time) has passed.

C.    Plaintiff will raise all issues regarding injunctive relief to the Court following the jury trial.

**9.**    The probable length of trial, and whether jury or nonjury:

The parties estimate a three week trial.  The trial is by jury.

**10.**    List of names and address of witnesses who will testify at trial and the purpose of the testimony:

Each of the witnesses who will testify at trial will be called upon to provide factual testimony.

A.    Timothy Bane, 33 Broad Street, Suite 405, Boston, MA 02109;

B.    Thomas Bezanson, c/o United States Marshals Service, District of Massachusetts, Boston, MA

C.      Jeffrey L. Bohn, c/o United States Marshals Service, District of

Massachusetts, Boston, MA;

D.      William Conlon, c/o Brockton Police Department, Brockton, MA

E.      Joseph Cummings, c/o Brockton Police Department, Brockton, MA;

F.      Cynthia DeCaire, c/o Indira Talwani, Segal, Roitman & Coleman, 11

Beacon Street, Suite 500, Boston, MA 02108

G.      Anthony Dichio, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

H.      David Dimmitt, c/o United States Marshals Service, Northern District of

New York, Albany, MA

I.      Walter Doherty, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

J.      Kevin Donahue, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

K.      Paul Dunne, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

L.      Paul Durette, 1800 F Street , NW, Washington, DC 20405

M.      William Fallon, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

N.      Don Freeman, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

O.      Alison Hodgkins, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

P.    Annette Lawlor, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

Q.    Nancy McGillivary, 33 Broad Street, Suite 405, Boston, MA 02109

R.    Steven Ridge, c/o Boston Police Department, Boston, MA

S.    Kevin Roche, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

T.    Paul Studenski, c/o Brockton Police Department, Brockton, MA

U.    Paul Sugrue, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

V.    Dave Taylor, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

W.    Anthony Visalli,  c/o United States Marshals Service, District of

Massachusetts, Boston, MA

X.    John Wickam, c/o United States Marshals Service, District of

Massachusetts, Boston, MA

Y.    Susan Williams, c/o United States Marshals Service, District of

Massachusetts, Worcester, MA

**11.**    <u>A list of proposed exhibits:</u>

1.    Notification of Personnel Action, December 22, 1996, with attached job

description

2.    Marshal Dichio's notes of August 26, 2002, meeting with Deputy DeCaire

3.    E-mail from Chief Timothy Bane to Deputy DeCaire, August 30, 2002

4.    E-mail from Deputy DeCaire to Chief Bane, September 3, 2002

- 17 -

A.    E-mail from Deputy Hodgkins to Supervisory Deputy Doherty, September 4, 2002

B.    E-mail from Deputy Marshal Mark Lewis to Marshal Dichio, September 6, 2002

5.    E-mail from Deputy DeCaire to Assistant Chief Paul Durette, September 6, 2002

6.    E-mail from Marshal Dichio to Deputy DeCaire, September 9, 2002

7.    E-mail from Assistant Chief Paul Durette to Chief Timothy Bane, September 16, 2002

8.    E-mail from Chief Timothy Bane to all hands, September 17, 2002

9.    E-mail from Deputy DeCaire to Chief Bane, September 17, 2002

C.    E-mail from Supervisory Deputy Bohn to Assistant Chief Durette, September 17, 2002

D.    E-mail from Deputy Williams to Chief Bane, September 17, 2002

E.    E-mail from Supervisory Deputy Sugrue to Marshal Dichio, September 18, 2002

10.    E-mail from Chief Timothy Bane to all hands, September 25, 2002

11.    E-mail string between Deputy Alison Hodgkins and Supervisory Deputy Paul Dunne, November 5, 2002

12.    E-mail from Supervisory Deputy Bezanson to Supervisory Deputy Dunne, January 22, 2003

13.    E-mail from Supervisory Deputy Bezanson to staff, January 23, 2003

14.     E-mail from Assistant Chief Durette to Supervisory Deputy Tom Bezanson and Supervisory Deputy Walter Doherty, January 24, 2003

15.     E-mail from Assistant Chief Durette to all hands, February 3, 2003

16.     E-mail from Supervisory Deputy Bezanson to Marshal Dichio, February 5, 2003, with attachment

17.     Marshal Dichio's notes from February 5, 2003

18.     E-mail from Supervisory Deputy Bezanson to Marshal Dichio, February 6, 2003

F.     Marshal Dichio's notes from February 6, 2003

19.     Letter from Marshal Dichio to Chief Studenski, February 25, 2003

20.     Marshal Dichio's notes from March 31, 2003

21.     E-mail from Deputy DeCaire to Acting Chief Dimmitt, April 21, 2003

22.     E-mail from Deputy DeCaire to Acting Chief Dimmitt, April 23, 2003

23.     Marshal Dichio's notes from April 28, 2003

24.     E-mail from Chief Dimmitt to all hands, April 28, 2003

25.     Marshal Dichio's notes from June 5, 2003

26.     Marshal Dichio's notes from June 13, 2003

G.     E-mail from Chief Fallon to USMS HQ, July 25, 2003

H.     E-mail from Chief Fallon to USMS HQ, July 31, 2003

27.     E-mail from Deputy DeCaire to Acting Assistant Chief Taylor, August 21, 2003

28.     E-mail from Acting Assistant Chief Taylor to Deputy DeCaire, August 21, 2003

29.    E-mail from Chief Fallon to all hands, September 12, 2003

I.    E-mail string between Chief Fallon and Assistant Chief Taylor, September 15, 16, 2003

30.    E-mail from Chief Fallon to all hands, October 3, 2003

31.    E-mail from Assistant Chief Taylor to management, October 15, 2003

32.    E-mail from Supervisory Deputy Bezanson to Chief Fallon, October 28, 2003

J.    E-mail from Assistant Chief Taylor to Chief Fallon, October 28, 2003

33.    E-mail string between Supervisory Deputy Bezanson to Chief Fallon, October 28, 2003

K.    E-mail from Chief Fallon to Assistant Chief Taylor, October 28, 2003

34.    E-mail from Administrative Officer Ryan to Chief Fallon, October 30, 2003

L.    E-mail string between Supervisory Deputy Bezanson and Chief Fallon, November 3, 2003

35.    E-mail from Chief Fallon to Superviosry Deputy Dunne, and Supervisory Deputy Spellesi, November 13, 2003

36.    November 13, 2003 Limited Duty Letter

M.    E-mail from Chief Fallon to Supervisory Deputy Bezanson, November 24, 2003

37.    November 24, 2003 Limited Duty Follow-Up Letter

38.    E-mail from Deputy DeCaire to Supervisory Deputy Dunne, November 24, 2003

39.    E-mail from Assistant Chief Taylor to Chief Fallon, November 24, 2003

40.    E-mail from Assistant Chief Taylor to Supervisory Deputy Bohn, December 1, 2003

N.    E-mail string between William Palk, Dave Hubbuch and Micke Brumbaugh, December 1, 2003

41.    E-mail from Steve Donaher to Assistant Chief Taylor, December 10, 2003

42.    Memorandum from Supervisory Deputy Bohn to Joe Buonocore, Central Courthouse Management, December 11, 2003

43.    E-mail from Assistant Chief Taylor to Marshal Dichio, Chief Fallon, December 11, 2003

44.    E-mail from Acting Assistant Chief David Taylor to Chief William Fallon, with copy to Marshal Dichio, December 12, 2003

45.    E-mail from Acting Assistant Chief David Taylor to Supervisory Deputy Bohn and Supervisory Deputy Dunne, December 12, 2003

46.    E-mail string between Supervisory Deputy Bezanson and Assistant Chief Taylor, December 12, 2003

47.    E-mail from Chief Fallon to All Hands, January 12, 2004

48.    E-mail string between Supervisory Deputy Bezanson and Chief Fallon, Deputy DeCaire, January 20, 2004

49.    January 20, 2004 policy notice

O.    E-mail from Deputy DeCaire to Assistant Chief Taylor, January 22, 2004

P.      E-mail from Chief Fallon to Sue Gibson, January 22, 2004

Q.      E-mail from Supervisory Deputy Bezanson to Assistant Chief Taylor,
January 22, 2004

R.      E-mail from Assistant Chief Taylor to Chief Fallon, January 23, 2004

50.     Memo from Deputy DeCaire to Supervisory Deputy Hogkins, January 27,
2004

51.     E-mail string between Supervisory Deputy Hodgkins and Assistant Chief
Taylor, January 28, 2004

S.      E-mail from Supervisory Deputy Hodgkins to Supervisory Deputy
Hodgkins, January 28, 2004

52.     E-mail from Supervisory Deputy Bezanson to Chief Fallon, January 28,
2004

53.     E-mail from Supervisory Deputy Bezanson to Chief Fallon, January 29,
2004, regarding 1811 reassignment

54.     E-mail from Dave Taylor to Marshal Dichio and Chief Fallon, January 29,
2004

55.     E-mail string between Supervisory Deputy Alison Hodgkin and
Supervisory Deputy Tom Bezanson, February 5, 2004

56.     E-mail from Supervisory Deputy Bezanson to Chief Fallon and Acting
Chief Taylor, with copy to Supervisory Deputy Dan Spellesi, February 5, 2004

57.     Second E-mail string between Supervisory Deputy Alison Hodgkin and
Supervisory Deputy Tom Bezanson, February 5, 2004

58.    E-mail from Supervisory Deputy Hodgkins to Assistant Chief Taylor, February 6, 2004

59.    E-mail from Supervisory Deputy Hodgkins to Deputy DeCaire, February 6, 2004

60.    E-mail from Supervisory Deputy Hodgkins to CBC/Cellbrlock staff, February 10, 2004

T.    E-mail string between Supervisory Deputy Hodgkins and Supervisory Deputy Bezanson, February 12, 2004

U.    E-mail from Supervisory Deputy Bezanson to Deputy DeCaire, February 12, 2004

V.    E-mail from Supervisory Deputy Bezanson to Deputy DeCaire, February 18, 2004

61.    E-mail string between Supervisory Deputy Bezanson and Supervisory Deputy Hodgkins, February 19, 2004

62.    Memo from Supervisory Deputy Bezanson to Deputy DeCaire, February 24, 2004

W.    E-mail from Supervisory Deputy Hodgkins to Supervisory Deputy Bezanson, March 3, 2004

X.    E-mail from Supervisory Deputy Bezanson to Deputy DeCaire, March 3, 2004

63.    E-mail from Tom Bezanson to Senior Inspector of Electronics Surveillance Brian Murphy, Senior Inspector of Electronics Surveillance Tony Visalli,

Administrative Officer William Ryan, and Supervisory Deputy Dan Spellesi, March 5, 2004, with attachment

      64.     E-mail from Assistant Chief Taylor to Chief Fallon and Marshal Dichio, March 11, 2004

      65.     Second E-mail from Assistant Chief Taylor to Chief Fallon and Marshal Dichio, March 11, 2004

      66.     Third E-mail from Assistant Chief Taylor to Chief Fallon and Marshal Dichio, March 11, 2004

      67.     E-mail from Supervisory Deputy Bezanson to Deputy DeCaire, March 11, 2004

      68.     E- mail from Supervisory Deputy Bezanson to Deputy DeCaire, March 17, 2004

      69.     E-mail from Chief Fallon to Marshal Dichio, April 1, 2004

      70.     E-mail string between Supervisory Deputy Bezanson and Assistant Chief Taylor, April 5, 2004

      71.     United States Marshals Service, District of Massachusetts, Number 04-01, July 20, 2004

      72.     GS-082-05 Position Description

      73.     Defendant's Response to Plaintiff's First Set of Interrogatories, February 4, 2005

      74.     Defendant's Response to Plaintiff's First Request for Admissions [incorrectly captioned "PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS"], March 10, 2005

75.    Defendant's Amended Response to Plaintiff's First Request for

Admissions, April 7, 2005.

**CYNTHIA A. DeCAIRE**,

By her attorney,

____/s/ Indira Talwani_____
Indira Talwani
BBO # 645577
**SEGAL, ROITMAN & COLEMAN**
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

**ALBERTO R. GONZALES, in his official position as Attorney General of the United States**

By his attorney,

Glenn T. Suddaby
United States Attorney

____/s/ Barbara D. Cottrell_____
Barbara D. Cottrell
Assistant U.S. Attorney
Bar Roll No. 101411(NDNY)
218 James T. Foley U.S. Courthouse
445 Broadway
Albany, New York
(518) 431-0247

Dated:  May 12, 2005