# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

CYNTHIA A. DECAIRE,

                Plaintiff

                vs.

ALBERTO R. GONZALES, in his official position as
Attorney General of the United States.

                Defendant

---

C.A. No. 04-10593WGY

## PLAINTIFF AND DEFENDANT'S AMENDED
## AGREED-UPON STATEMENT OF FACTS

### Background Facts About the United States Marshals Service

1.     The entry-level Deputy United States Marshal position is the "082" position. Trial Exhibit 1 is the job description for that position.

2.     The Criminal Investigator Deputy United States Marshal position, also known as the 1811, grade 11, is a more advanced position than the 082 position.

3.     The Criminal Investigator Deputy United States Marshal position, the 1811, grade 12, position, is a promotional position, more advanced than the 1811, grade 11 position.  Trial Exhibit 2 is the Notification of Personnel Action for Plaintiff's promotion to that position and the attached job description for the position.

4.      In the United States Marshals Service, Deputies are assigned a permanent duty station within the District to which they are assigned.   Changes in permanent duty stations should be accompanied by a Form SF 50 in the records of the USMS.

5.      Trial Exhibit 3 is a chart setting forth agreed upon facts regarding Deputies assigned to the District of Massachusetts since August 2002.  Column 1 sets forth the employees name, listing first the current Criminal Investigator Deputy United States Marshals (position 1811) in alphabetical order, then the current Deputy United States Marshals (position 082) in alphabetical order, then Criminal Investigator Deputy United States Marshals (position 1811) who have left the District of Massachusetts since August 2002, in alphabetical order, and finally Deputy United States Marshals (position 082) who have left the District of Massachusetts since August 2002.  Column 2 sets forth each Deputy's most recent job title.  Column 3 sets forth for each Deputy  the date of entry on duty with the USMS, Column 4 sets forth for each Deputy the duty stations to which the Deputy has been assigned since the later of August 2002 of the Deputy's arrival in the District of Massachusetts.  Column 5 sets forth the dates for each assignment listed in column 4.  Column 5 sets forth the date of the Form SF50 in the records of the USMS for each transfer, where such Form SF50 exists, and notes "no" for each transfer for which no Form SF 50 was created.

6.      Deputies may be temporarily detailed to other duty stations inside and outside of the district.

**Facts About Plaintiff Cynthia A. DeCaire's Career With the Marshals Service Prior to the Events at Issue:**

7.      Plaintiff Cynthia A. DeCaire began her employment with the United States Marshals' Service in June 1991, as a Deputy United States Marshal (DUSM), position 082, in the District of Massachusetts.

- 2 -

8.      Throughout her tenure at the United States Marshals' Service, Deputy Marshal DeCaire has pursued assignments to advance her career.  It is undisputed that, from the start of her career in 1991 until the events at issue here, she had a successful career with the United States Marshals' Service.

9.      In December 1993, Deputy Marshal DeCaire was promoted to Criminal Investigator Deputy United States Marshal, position 1811, grade 11.

10.     In 1995, Deputy Marshal DeCaire was assigned to the FBI violent fugitive task force.

11.     In December 1996, Deputy Marshal DeCaire was promoted to Senior Criminal Investigator Deputy United States Marshal, position 1811, grade 12.

12.     In 1999, Deputy Marshal DeCaire was assigned to the Warrant Investigations unit.

13.     On June 3, 2001, Deputy Marshal DeCaire became an Acting Supervisory Criminal Investigator in the Worcester sub-office on a temporary assignment not to exceed 120 days.  Plaintiff held that position until September 23, 2001.

14.     Deputy Marshal DeCaire received a Superior Accomplishment Award for her work as Acting Supervisor in the Worcester substation.

15.     Following her position as Acting Supervisory Criminal Investigator in the Worcester sub-office, Plaintiff returned to the Boston office, where she was assigned the position of Team Leader, Warrants Investigations.

16.     In late 2002 or early 2003, Deputy DeCaire made the certification list for a promotional position in the Electronic Surveillance unit.

17.     Except for the one assignment to the Worcester sub-office as an Acting
Supervisory Deputy United States Marshal, Deputy Marshal DeCaire's duty station between
June 1991 and August 2002 was Boston.

**Facts Relating to the Events at Issue In this Case**

18.     Anthony Dichio was sworn in as United States Marshal ("USM") for the District
of Massachusetts on August 6, 2002.

19.     At the time Marshal Dichio assumed office, there was a "manpower shortage" in
the District, and in particular, in Court Operations.

20.     Typically, the "manpower shortage" in the Courts Operations was covered on an
as-needed basis primarily by the Warrants Investigations Unit or by hiring guards.

21.     In September 2002, when a position with the High Intensity Drug Trafficking
Area ("HIDTA") Task Force opened up in the Worcester office, Deputies DeCaire, Susan
Williams and Mark Lewis expressed interest in the position.  Marshal Dichio assigned the junior
and less experienced male Deputy, Mark Lewis, to the position. Deputy Marshal Lewis was
given three work days from the time of the announcement of his transfer to Worcester before the
assignment began, and a notice of the transfer was given to all staff.

22.     Management received complaints about the assignment of Mark Lewis to the
HIDTA position.

23.     On September 30, 2002, Deputy Marshal DeCaire was reassigned to the
Worcester Office.

24.     At the same time, Deputy Marshal Steve McKearney – who had originally been
transferred to Worcester for disciplinary reasons prior to Marshal Dichio's arrival in the District -
- was transferred to Deputy Marshal DeCaire's position in the Warrants Investigations unit.

- 4 -

25.     No Form SF50 (the official transfer form) was issued at the time of this transfer for either Deputy McKearney or Deputy DeCaire.

26.     Deputies DeCaire and McKearney were given three work days notice before the assignments began, and a notice of the transfer was issued to all staff.

27.     In January 2003, Marshal Dichio rotated Deputies Williams and DeCaire to Boston.   Marshal Dichio did not involve Assistant Chief Deputy Marshal Durette in the decision to rotate these deputies.

28.     At the time the rotation was ordered, Deputy Marshal Mark Lewis was the junior deputy in the Worcester substation and his permanent duty station was still Boston.

29.     Supervisory Deputy Tom Bezanson notified Deputy Marshal Williams and Deputy Marshal DeCaire of the Boston rotation on January 22, 2003 at approximately 4:00 p.m. Deputy DeCaire was directed to report to Boston the next day (January 23, 2003), followed by DUSM Williams on the following day (January 24, 2003).   DUSM Wahl was not included in the Boston rotation, but was designated to assist Springfield, as needed.

30.     Supervisory Deputy Bezanson notified Supervisory Deputy Paul Dunne of the rotation after notifying Deputies DeCaire and Williams.

31.     Deputy DeCaire called in sick on January 23, 2003.

32.     On January 23, 2003, Deputy DeCaire initiated EEO counseling.

33.     On the afternoon of January 24, 2003, Assistant Chief Paul Durette modified Supervisory Deputy Bezanson's directive, instructing him that assignments to Boston were to be made only as needed.

34.     Deputy DeCaire was on pre-approved leave and not scheduled to work in Boston from January 27-31, 2003.

35.     On January 30, Supervisor Deputy Bezanson told Deputy DeCaire to report to Worcester instead of Boston on February 3, 2003, and for that reason she did not work in Boston on that day.

36.     For the duration of the Boston rotation, no Deputy was assigned on an "as needed" basis to Springfield.

37.     The weekly rotation ordered in January 2003 was not accompanied by a Form SF 50.

38.     Marshal Dichio subsequently decided to have Deputy Marshal DeCaire fill the position vacated by an 082 deputy in Court Operations in Boston.  Marshal Dichio did not discuss this assignment with Assistant Chief Durette in advance of making the decision.

39.     Effective February 4, 2003, Plaintiff was reassigned to Boston to fill a position in Court Operations.

40.     At the time of this reassignment, there were deputies with less seniority than Deputy Marshal DeCaire assigned to the Worcester office, and to Warrant Investigations Unit in Boston.

41.     No SF50 issued for this reassignment.

42.     Upon reassignment Deputy Marshal DeCaire was required to leave her government vehicle in Worcester.

43.     On February 3, 2003, the staff in the District were informed that Deputy DeCaire was reassigned to fill the position vacated by the 082.

44.     On February 5, 2003, at 10:17 a.m., Plaintiff's supervisor, SDUSM Thomas Bezanson, forwarded to USM Dichio a document prepared by an EEO counselor purportedly summarizing DUSM DeCaire's EEO complaint.

45.     Supervisory Deputy Marshal Bezanson also forwarded information concerning Plaintiff's EEO complaint to Dave Taylor, who, at the time, was not in the chain of command, and to Plaintiff's new supervisor, Paul Dunne.

46.     On February 14, 2003, Deputy DeCaire was issued a Notice of Right to File a Discrimination Complaint.

47.     On February 17, 2003, Chief Deputy U.S. Marshal David Dimmitt, Northern District of New York, became the Acting Chief Deputy Marshal for the District of Massachusetts.

48.     On February 19, 2003, the EEO Counseling report was submitted.

49.     On March 11, 2003, Supervisory Deputy Bohn was removed from his position as head of the HIDTA Task Force.

50.      On March 12, 2003, the District received three new 082s from the Academy, but Deputy Marshal DeCaire continued to be assigned to Court Operations.

51.     On March 17, 2003, Deputy Marshal Scott Kimball, who had less seniority than Deputy Marshal DeCaire, was transferred from Court Operations to the Warrant Investigations unit.

52.     In March 2003, at Marshal Dichio's direction, Acting Chief Dimmit removed Assistant Chief Durette from his office into a cubicle in the administrative section of the office.

53.     In April 2003, an Acting Supervisory Deputy United States Marshal position became open when Walter Doherty left his position as Supervisory Deputy United States Marshal.  The Acting Supervisory Deputy United States Marshal position was not announced for competitive selection.

54.     On April 21, 2003, Plaintiff expressed her interest in being considered for a position as an Acting Supervisor in Court Operations to Chief Dimmitt and USM Dichio.

55.     By April 21, 2003, Assistant Chief Durette had left the service of the United States Marshals Service.

56.     In April 2003, Acting Chief Dimmitt sought out a female deputy Marshal for the Acting Supervisory Deputy Position in Court Operations sought by Deputy Marshal DeCaire.

57.     On April 23, 2003, Plaintiff expressed her interest in being considered for a position as Warrant Coordinator to Chief Dimmitt and USM Dichio.

58.     Effective April 28, 2003, DUSM Alison Hodgkins was assigned to fill the position as Acting Supervisor for Court Operations.  DUSM Paul Sugrue was assigned to the position as Warrant Coordinator.  SDUSM David Taylor was designated Acting Assistant Chief Deputy Marshal.

59.     On July 15, 2003, William Fallon became Chief Deputy U.S. Marshal for the District of Massachusetts.

60.     On August 21, 2003, Plaintiff asked to be considered for the position of Supervisor in Court Operation.  Acting Assistant Chief Deputy Taylor forwarded the request to Chief Fallon.

61.     Plaintiff's request to be considered for the position noted that it had been 120 days since her prior request.

62.     Acting Supervisory Deputy Marshal positions that are not announced for competitive selection are designated not to exceed 120 days.

63.     Deputy Marshal Hodgkins was permitted to remain in the Acting Supervisory position for more than 120 days.

64.     In September 2003, Acting Assistant Chief Taylor sought out a female Deputy Marshal for Acting Supervisory Deputy Position in Court Operations sought by Deputy Marshal DeCaire.  The female Deputy Marshal, Annette Lawlor, informed Acting Assistant Chief Taylor that she was not interested in the position.  Alison Hodgkins was continued in the position until it was eliminated.

65.     On September 12, 2003, Chief Fallon announced his intention to develop a rotation schedule for all warrant/task force assignments.  That rotation policy was issued in writing January 20, 2004.

66.     On October 3, 2003, DUSMs Paul Dunne and Jeff Bohn were assigned as Court Operations Supervisors.  DUSM Kevin Donahue was assigned to the Warrant Coordinator position.   These assignments were effective October 14, 2003.

67.     At the time of his appointment, Kevin Donahue, who had less seniority than Plaintiff, had been assigned to Court Operations.

68.     On October 10, 2003, Plaintiff married SDUSM Jeff Bohn.

69.     On the morning of October 14, 2003, Deputy Marshal DeCaire transferred to Worcester.

70.     At the time of this transfer, there were deputies assigned to the Warrant Investigations Unit who had less seniority than Deputy DeCaire.

71.     In October 2003 and continuing to May 31, 2005, Supervisory Deputy Jeffrey Bohn has not served as the supervisor of the Warrant Investigations Unit.

72.     Deputy Marshal DeCaire was required to report to the Worcester office by noon of the same day. No general e-mail was sent to other staff announcing the move.

73.     In response to her inquiry as to whether the transfer to Worcester was permanent, Supervisory Deputy Bezanson stated that it was "what [she] made of it."

74.     On October 28, 2003, Plaintiff's supervisor, SDUSM Thomas Bezanson advised Chief Fallon that Plaintiff had advised him that she was 4 months pregnant and was requesting light duty status.

75.     Between October 21, 2003, and November 12, 2003, Deputy Marshal DeCaire responded to merit promotion announcement #03-136, for a Supervisory Deputy Marshal position in the District of Massachusetts.

76.     Between October 28, 2003, and November 13, 2003, Deputy Marshal DeCaire continued to perform work in the Worcester sub-station, including serving process, warrant investigation work and administrative work.   Supervisory Deputy Bezanson stated that he would try to find work for her in Worcester so that she would not end up in the Boston control room.

77.     On November 14, 2003, Deputy Marshal DeCaire was advised that her assignments while on light duty were in the Worcester office on Mondays and Fridays, the Control Room in Boston on Tuesdays and Thursdays, and Springfield on Wednesdays.   When Deputy Marshal DeCaire objected to the assignment, Chief Fallon stated that she would have to use her sick leave for her pregnancy.   Plaintiff went out on sick leave for a number of days, and then reported on November 20, 2004, to the Boston Control Room.   When she arrived in Boston, she was told by Supervisory Deputy Paul Dunne that the Springfield assignment had been eliminated, and she was to work in Boston Tuesdays, Wednesdays and Thursdays.   She signed the limited duty letter on November 20, 2003.

78.     On November 24, 2003, the limited duty letter was modified to exclude work in the Springfield Office.  Plaintiff was assigned to Boston on Tuesdays, Wednesdays and

Thursdays.  It was contemplated that while in Boston, Plaintiff would be assigned to the Control

Room.  Plaintiff raised the issue of "possible side effects the electronical equipment may have on

a developing baby."

79.    At the time of this assignment, the Control Room, which is also known as the

Command Center was supervised by Supervisory Deputy Bohn.

80.    Command Center Supervisory Deputy Bohn filed an OSHA complaint concerning

the control room.

81.    The same day, he was removed from supervising the control room.

82.    Supervisory Deputy Marshal Dunne asked Deputy Marshal DeCaire what other

tasks she could do, and she explained the functions she had performed when she was on limited

duty during her first pregnancy.  Supervisory Deputy Marshal Dunne stated that he would try to

get her out of the control room by serving business process.  She was not permitted to perform

these additional functions in either Boston or Worcester.

83.    Effective January 12, 2004 SDUSM David Taylor was selected as the permanent

Assistant Chief Deputy Marshal and DUSM Alison Hodgkins, promoted to permanent

supervisory status, was assigned to Court Operations.  SDUSM Paul Dunne was assigned to the

Warrants SDUSM position.

84.    On January 21, 2004, SDUSM Bezanson advised Plaintiff that she would be

working in the Boston office until further notice.

85.    On January 27, 2004, Plaintiff submitted for consideration a request for

participation in the Department of Justice Worklife program, requesting to work from the

Worcester Office during the remainder of her pregnancy.  The request was denied on February

24, 2004.

86.     Since August 2002, Deputy Marshal DeCaire is the only deputy whose assigned duty station has moved so many times.

87.     The January 20, 2004, rotation policy was amended on July 20, 2004.  Both the original and amended policy specify that assignments, including the Worcester HIDTA assignment, will be evaluated in six months with the possibility of a rotation at that time.

88.     Deputy Lewis has remained in the Worcester HIDTA position from September 2002 through the present.

89.     Paul Sugrue has remained the Warrant Coordinator since being selected for that position in April 2003.

| | |
|---|---|
| **CYNTHIA A. DeCAIRE**, | **JOHN D. ASHCROFT, in his official position as Attorney General of the United States** |
| By her attorney, | |
| | By his attorney, |
| _____/s/ Indira Talwani_____ | |
| Indira Talwani | Glenn T. Suddaby |
| BBO # 645577 | United States Attorney |
| **SEGAL, ROITMAN & COLEMAN** | |
| 11 Beacon Street | _____/s/ Barbara D. Cottrell_____ |
| Suite #500 | Barbara D. Cottrell |
| Boston, MA  02108 | Assistant U.S. Attorney |
| (617) 742-0208 | Bar Roll No. 101411(NDNY) |
| | 218 James T. Foley U.S. Courthouse |
| | 445 Broadway |
| | Albany, New York |
| | (518) 431-0247 |

Dated:  June 1, 2005