1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
_____

**CYNTHIA A. DeCAIRE,**
                              **Plaintiff,**
         **v.**                                                    **Civ. Action No. 04-10593WGY**

**ALBERTO R. GONZALES, in his official**
**position as Attorney General of the**
**United States,**
                              **Defendant.**


-------------------------------------------------------

## DEFENDANT'S TRIAL MEMORANDUM

I.     <u>**INTRODUCTION**</u>

        This matter involves an amended complaint filed by Cynthia DeCaire, a Deputy United

States Marshal (DUSM) with the United States Marshals Service (USMS), District of

Massachusetts, alleging employment discrimination under Title VII of the Civil Rights Act of

1964 based on her gender (female), and retaliation.  Plaintiff specifically alleges that she was

discriminated against when USMS management assigned her to weekly rotations in Worcester

and Boston in or around January 2003 (Count I), and was further discriminated against (Count I)

and retaliated against after she pursued EEO action (Count II), in that USMS management

transferred her to Court Operations in Boston in or around February 2003, kept her in Court

Operations in Boston after additional employees were added to the unit, failed to move her to the

Boston Warrants unit when an opening occurred there in or around March, 2003, refused to

assign her to the Warrant Coordinator position in or around April 2003, denied her an

appointment to the Acting Court Operations Supervisor position in or around September 2003,

refused to assign her to the Warrant Coordinator position in or around September 2003, transferred her to Worcester in October 2003, assigned her multiple duty stations in November 2003, and assigned her to the control room in the Federal Courthouse in Boston in November 2003, requiring her to work with limited or no breaks.

Plaintiff seeks injunctive relief, back pay, front pay, compensatory damages[1], interest, attorney's fees and costs, and any other relief deemed appropriate by the Court.

II.    **PROPOSED FINDINGS OF FACT**

In addition to the stipulated facts contained within "Plaintiff's and Defendant's Agreed Upon Statements of Facts" filed on June 1, 2005, the Defendant respectfully submits the following proposed findings of fact, reserving the right to submit additions and modifications to said findings as warranted by the evidence presented at trial:

1. On August 26, 2002, USM Dichio had a meeting with Plaintiff during which Plaintiff expressed her desire to be transferred to the Worcester office to be closer to her family.

2. Shortly thereafter, Plaintiff was among those considered for assignment to a High Intensity Drug Trafficking Area (HIDTA) position in Worcester.  Plaintiff was not selected for the position because of her relationship with DUSM Jeffrey Bohn, the Boston HIDTA Coordinator, who would be responsible to supervise the Worcester HIDTA position.

3. On September 30, 2002, Plaintiff was reassigned to a Court Operations position in the Worcester office in accordance with her stated preference to work in Worcester.  DUSM Stephen

---

[1]  The maximum amount of compensatory damages that can be awarded for discrimination in the instant lawsuit is $300,000.00.  *See* 42 U.S.C. § 1981a(b)(3)(D). This cap applies to the action as a whole, and not to each individual claim alleged by Plaintiff.  *Hudson v. Reno*, 130 F.3d 1193, 1201 (6th Cir. 1997).

McKearney was reassigned to the Boston Warrants position vacated by Plaintiff.

4.  In January 2003, Plaintiff and DUSM Susan Williams were scheduled for a temporary rotation from Court Operations in the Worcester Office to Court Operations in Boston due to the pending departure of a DUSM from Boston Court Operations.

5.  Plaintiff never participated in the rotation.  Plaintiff took sick and annual leave during the period from January 21, 2003, until February 4, 2003.

6.  The additional scheduling required to arrange coverage for DUSMs rotating from Worcester to Boston when they were in leave status caused USM Dichio to reconsider the method of staffing the Court Operations vacancy.

7.  Court Operations functions may be performed by DUSMs in either 082 or 1811 status.

8.  The USM reassigned Plaintiff to Boston to fill the Court Operations position on a permanent basis to better ensure continuous coverage of the position.

9.  Plaintiff was then the junior deputy assigned to Court Operations in the Worcester office.

10.  Plaintiff's residence was closer to Boston than those of the non-supervisory Worcester DUSMs.

11.  The decision to reassign Plaintiff to Court Operations in January 2003 was based on the work to be performed, seniority within Court Operations, and the proximity of the residences of the DUSMs considered for reassignment to the Boston office.  The decision to retain Plaintiff in Boston Court Operations after the assignment of additional DUSMs to the District was based upon valid operational considerations.

12.  On April 21, 2003, Plaintiff expressed her interest in being considered for the position

4

of Acting Supervisor of Boston Court Operations to Acting Chief Deputy U.S. Marshal David Dimmitt.

13.  On April 23, 2003, Plaintiff expressed interest in being considered for a position as Boston Warrant Coordinator to CDUSM Dimmitt.

14.  DUSMs Alison Hodgkins and Paul Sugrue also expressed interest in being considered for a supervisory position to CDUSM Dimmitt.

15.  On April 28, 2003, DUSM Alison Hodgkins was selected to fill the position as Acting Supervisor of Boston Court Operations. DUSM Paul Sugrue was assigned to the Warrant Coordinator position.

16.  Acting Assistant Chief Deputy David Taylor was involved in discussions regarding the filling of both positions.  Assistant Chief Taylor considered, but did not recommend Plaintiff, and instead nominated DUSMs Annette Lawlor and Alison Hodgkins.  Assistant Chief Taylor offered his opinion to USM Dichio and Chief Dimmitt that Plaintiff had already had an acting supervisory position in Worcester, and in fairness to other senior deputies, another DUSM should be given the same opportunity.  Assistant Chief Taylor recommended DUSM Paul Sugrue to fill the warrant coordinator position for the same reason.

17.  Chief Dimmitt also considered Plaintiff for the warrant coordinator position, but  did not recommend her to USM Dichio, instead recommending Paul Sugrue.

18.  USM Dichio considered Plaintiff for the Acting Supervisory Court Operations position, and endorsed the recommendations of Chief Dimmitt and Assistant Chief Taylor that it was most fair to offer the position to someone who had not yet had such an opportunity.

19.  USM Dichio did not consider Plaintiff for the acting warrant coordinator position

5

because he wanted the acting warrant coordinator to come from the warrant squad, and Plaintiff was not part of the warrant squad at the time. The Marshal endorsed Chief Dimmitt's recommendation to fill the position with DUSM Sugrue.

20. After DUSM Alison Hodgkins assumed her duties as Acting Supervisor of Court Operations in Boston, the District learned that the underlying permanent GS-13 position would not be replaced. The Acting Supervisor's position became an uncompensated position at the end of the 120 day assignment. DUSM Hodgkins continued to perform the duties of this position without additional pay until October 3, 2003.

21. DUSM Bohn's October 3, 2003 assignment as a Court Operations supervisor raised operational concerns within management due to his involvement with Plaintiff, who was still assigned to Court Operations. Bohn and Plaintiff in fact, married on October 10, 2003. On advice of counsel, Plaintiff was transferred to Worcester on October 14, 2003, in order to forestall any potential conflict or appearance of impropriety.

22. After learning of Plaintiff's pregnancy and request for light duty status on October 28, 2003, USMS management determined that there was insufficient light duty work to keep Plaintiff occupied in Worcester, and undertook efforts to find sufficient work for Plaintiff to perform under light duty restrictions to retain her in duty status.

23. On November 13, 2003, Plaintiff was presented with a limited duty letter, assigning her to the Worcester office on Mondays and Fridays, Boston on Tuesdays and Thursdays, and Springfield on Wednesdays. On November 24, 2003, the limited duty letter was modified to exclude work in the Springfield office. Plaintiff was assigned to Boston on Tuesdays, Wednesdays and Thursdays.

24.  Management contemplated that while in Boston, Plaintiff would be assigned to the Control Room, which would provide a significant cost savings to the District, in that they would not be required to hire as many guards.  Plaintiff would also be responsible to train Court Security Officers (CSOs) for assignment to the Control Room.  SDUSM Bohn's responsibilities were changed so as not to include supervision of the Control Room.

25.  The District inquired into Plaintiff's concern about the effect the environment in the Control Room might have on a developing baby, and was advised that no health hazard would be presented.

26.  Plaintiff was covered for breaks during her control room duties in the same manner as anyone else assigned to the Control Room.

27.  Plaintiff remained assigned to the Boston office due to the workload of that office and because limited duty assignments were available there.  Plaintiff's January 27, 2004 request to telecommute from the Worcester office for the remainder of her pregnancy was denied for the same reasons.

28.  From the commencement of her career in 1991 to the present time, Plaintiff has had a successful career with the United States Marshals Service.

## III.   PROPOSED CONCLUSIONS OF LAW

1.  Where there is no direct evidence of discrimination, Title VII cases are analyzed under the burden-shifting framework established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).  The *McDonnell Douglas* framework requires that plaintiff adduce evidence to support a *prima facie* case of discrimination based on either gender or retaliation. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

2.  In a gender discrimination case, a *prima facie* case is demonstrated by showing that 1) plaintiff is a member of a protected class; 2) an adverse employment decision was made against her; 3) she was otherwise qualified; and 4) a similarly situated male was treated differently. *Jacklyn v. Schering-Plough Healthcare Products*, 176 F.3d 921, 928 (6th Cir. 1999).

3.  Plaintiff has failed to establish a *prima facie* case in that since August 2002, she has not been deprived by the USMS of something of consequence, i.e., she has not been demoted, divested of any significant responsibilities, nor has she suffered a reduction in salary; although local supervisory positions have been awarded to other DUSMs, Defendant has considered Plaintiff for local supervisory positions in accordance with its customary practices.  In short, Plaintiff has not suffered any "adverse action" by Defendant.

4. [If necessary]  Once plaintiff establishes a prima facie case, the presumption arises that the employer unlawfully discriminated against the plaintiff. *Che v. Mass. Bay Transp. Auth.,* 342 F.3d 31, 39 (1st Cir.2003);  *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 478 (1st Cir.1993).  The burden of production, not persuasion, then shifts to the defendant who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action.  *Feliciano de la Cruz v. El Conquistador Resort,* 218 F.3d 1, 5 (1st Cir.2000).  If the employer meets this burden, the inference of unlawful discrimination is waived, and the burden shifts back to the plaintiff to show that the employer's alleged justification is a mere pretext for discrimination.  *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. 1817.

5.  The credible evidence leads to the conclusion that Plaintiff's September 2002 assignment from Boston to Worcester resulted from her own request for reassignment and accordingly, did not constitute an adverse action.

5a [if needed].  Plaintiff's September 2002 assignment from Boston to Worcester resulted from her own request for reassignment and not from any gender or retaliatory animus directed toward Plaintiff.

6.  While Plaintiff's scheduled rotation from Worcester to Boston may have been inconvenient, it did not significantly alter Plaintiff's job responsibilities and did not constitute an adverse action, particularly as Plaintiff never participated in the rotation.

6a [if needed].  There is no credible evidence that Plaintiff's scheduled rotation from Worcester to Boston was gender based or retaliatory in nature.  There is credible evidence that the temporary rotation was legitimately intended to address staffing shortages in Boston Court Operations.

7.  Plaintiff's 2003 transfer back to the Boston office to fill a vacant position in Court Operations did not constitute an adverse employment action.  Plaintiff returned to the duty station to which she had been assigned prior to USM Dichio's arrival in the District.  A transfer that involves no significant changes in an employee's conditions of employment, even though the employee views the transfers either positively or negatively does not of itself render the denial or receipt of the transfer an adverse employment action.  Title VII discrimination claims should be limited to a materially adverse change in the terms and conditions of employment which must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.  *See*, *Craven v. Texas Department of Criminal Justice Division, et. al.*, 151

9

F.Supp.2d 757, 767-68 (N.D. Tex. 2001); *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 n.6 (10th Cir. 1998)(longer commute and insignificant alteration in job responsibilities); *see also Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th Cir. 1998)(Americans with Disabilities Act case); *Kindred v. Northome/Indus. Sch. Dist. No. 363*, 154 F.3d 801, 802-04 (8th Cir. 1998)(assigning bus driver to longer school bus route without increase in pay), *cert. denied*, 525 U.S. 1109 (1999); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)(different duties and more stressful job, but no reduction in title, salary, or benefits; "[c]hanges in duties or working conditions that cause no materially significant disadvantage, such as Harlston's reassignment, are insufficient to establish the adverse conduct required to make a *prima facie* case;"); *Smith v. Schering-Plough Health Care Products, Inc.*, 6 F.Supp. 2d 631, 734 (W.D. Tenn. 1997) (plaintiff conceded that transfer was not a demotion, and that he suffered no emotional injuries, serious stress, or ruined reputation); *Joiner v. Ohio Dep't of Transp.*, 949 F.Supp. 562, 567 (S.D. Ohio 1996)(no "loss of prestige or an objectively demeaning change of working conditions"; new title and "the loss of opportunity for overtime and the loss of supervisory responsibility" insufficient to constitute adverse employment action). Here, Plaintiff was assigned to perform duties that are characteristically performed by either 082 or 1811 DUSMs. Plaintiff's perception that she was being slighted simply because her predecessor in the position had been an 082 is simply not sufficient grounds to support a finding that assignment to the position constituted an adverse action. Similarly, the record does not support Plaintiff's claim that Defendant was obligated to move her out of Court Operations to Warrants or to any other position as soon as other DUSMs arrived in the District. It is clear from the record that the greatest staffing need continued to be in Court Operations. Retaining Plaintiff

in a position for which she is trained and which falls within the duties commonly performed by 1811 series DUSMs can in no way be considered an adverse action.

7a [if needed].  There is no credible evidence that Plaintiff's reassignment to a Boston Court Operations position or her retention in Court Operations after the assignment of additional DUSMs to the District were either gender based or retaliatory actions.  The evidence shows that Plaintiff's assignment and retention within Boston Court Operations were legitimately designed to alleviate staff shortages within that section.

8.  Plaintiff did not suffer an adverse impact as a result of the selection of DUSM Hodgkins and DUSM Sugrue for acting supervisory positions for which Plaintiff had applied in April 2003.  Plaintiff was considered for both positions but already had an acting supervisory position in Worcester to her credit.  The fact that Plaintiff had already held such a position legitimately factored into the Marshal's determination to accept the recommendations of his management staff, intended to ensure equal opportunity for development and advancement to all DUSMs who desired supervisory experience.  Plaintiff suffered no more by her non-selection than any other DUSM considered but not selected for a temporary promotion.

8a [if needed].   There is no credible evidence that the recommendations of Chief Dimmitt and Assistant Chief Taylor to appoint DUSM  Hodgkins as acting supervisor of Court Operations and DUSM Sugrue as acting supervisor of Warrants and the acceptance of those recommendations by USM Dichio, involved Plaintiff's protected status as a female or were based upon any retaliatory animus.  The credible evidence indicates that the appointments were legitimately intended to maximize supervisory opportunities by spreading them out among DUSMs who had not yet had supervisory experience.

11

9.  Plaintiff alleges that she suffered an adverse action in being denied appointment to the acting Court Operations supervisory position after DUSM Hodgkins' 120 day assignment was complete.  As noted above, however, because the underlying GS-13 position was not being replaced, this supervisory position was no longer a paid position.  DUSM Hodgkins continued to perform the duties of this position in unpaid status from on or about August 28, 2003 until on or about October 3, 2003, approximately one month later, when two newly promoted GS-13 supervisory deputies assumed those duties.  Plaintiff has not established that she suffered adversely from Management's decision not to fill a short term position at the end of DUSM Hodgkin's 120 day assignment.

9a [if needed].  There is no credible evidence that the continuation of DUSM Hodgkins as acting supervisor of Court Operations after her 120 day compensated assignment ended was intended as gender based discrimination against Plaintiff or as retaliation against Plaintiff.

10.  Although Plaintiff has alleged that the actions taken by USMS management, and USM Dichio in particular, were gender based and retaliatory, Plaintiff's transfer from Boston to Worcester in October 2003 was necessitated by her husband's promotion to supervisory status, and was a reasonable measure, taken by other districts, to ensure that SDUSM Bohn would not be placed in the position of supervising his spouse.  Again, this change in duty location cannot be considered an "adverse action" for the reasons set forth in paragraph 7, above.

10a [if needed].  Plaintiff's reassignment to Worcester after her spouse's promotion to supervise Court Operations, where Plaintiff was then assigned, was a legitimate, non-discriminatory action taken by management to address Plaintiff's then-existing situation while executing its primary responsibility to performance of the agency mission, and was neither

gender based nor retaliatory.

11. Defendant attempted to accommodate Plaintiff by securing enough light duty assignments to keep Plaintiff in a duty status through her pregnancy. In signing the limited duty letter, Plaintiff recognized that she would be required to travel to the location where those limited duty assignments were available. The initial light duty plan was modified over time, diminishing from a three city rotation, to the Boston-Worcester rotation, and ultimately to Boston, as that was where limited duty most beneficial to the District and its mission could be performed. Plaintiff's assignment to the Boston Control Room was intended to provide Plaintiff a limited duty assignment while providing the District an operational cost savings. Plaintiff was assigned duties commonly performed by DUSMs in 1811 status, and her assignment to the Boston Control Room does not constitute an adverse action.

11a [if needed]. Plaintiff's assignment to the Boston Control Room was a reasonable accommodation to Plaintiff, and was a legitimate, non-discriminatory management determination.

12. Plaintiff has not suffered an adverse action at any time since August 2002.

13. Defendant has not engaged in gender based or retaliatory actions against Plaintiff at any time since August 2002.

## IV. <u>EVIDENTIARY ISSUES</u>

Defendant raised three evidentiary issues in the joint pre-trial statement: whether Plaintiff has impermissibly expanded the Complaint to add allegations that she has been discriminated against through the Merit Selection process; whether the testimony of former USM Nancy McGillvray is relevant to the discriminatory actions alleged in the Complaint; and whether

13

testimony of DUSMs Susan Williams and Jeffrey Bohn as to their own allegations of

discrimination should be precluded as irrelevant. Defendant requested leave to call additional

witnesses in the event the Merit Selection process was deemed relevant to the issues raised in

Plaintiff's Complaint. As these issues has yet to be decided, Defendant has provided Plaintiff

certain redacted information pertaining to the Merit Selection process in order not to cause undue

delay. Defendant objects to the use of this information at trial, as, assuming *arguendo* that the

information has any relevance to the specific issues raised by Plaintiff in her Complaint, the

information is relevant only to damages, and not to liability.

Plaintiff alleged specific actions taken by USM Dichio between August 2002 and the date

of the Amended Complaint as the basis of her claims of gender discrimination and retaliation.

Nowhere in the Complaint does Plaintiff claim that she has been discriminated against based

upon gender or retaliatory motive within the Merit Selection process. Plaintiff further attempts

to bootstrap matters occurring after the date of the filing of the Amended Complaint in this

matter, never having presented these matters for administrative review within the EEO process.

If Plaintiff now claims that she has been discriminated against within the Merit Selection

process, it is the Defendant's position that this constitutes a constructive amendment to the

Amended Complaint and should not be permitted. To the extent that Plaintiff now claims that

but for the discriminatory and retaliatory actions taken by Defendant, she would have been

promoted within the Merit Selection process, something not claimed in the Amended Complaint,

this allegation speaks to damages, not to liability; evidence pertaining to the Merit Selection

process should be reserved to the damages phase of the instant proceedings, and Defendant

should be allowed to call additional witnesses to specifically address the Merit Selection process.

14

Defendant understands that former USM Nancy McGillvray will be called to testify as to the general environment of the USMS as it pertains to female deputies and to Plaintiff's record during her tenure.  Defendant respectfully submits that this testimony is irrelevant, as the parties agree that Plaintiff has had a successful career with the USMS,  Defendant contends that Plaintiff continues in that status, and Plaintiff has the ability to speak to her own documented record. USM McGillvray is not competent to testify as to the environment of the Marshals Office since her departure, nor is she qualified to testify to Plaintiff's experiences within the office since her departure.  Respectfully, USM McGillvray's characterization of her own experiences with the USMS are irrelevant to the specific issues raised in the Amended Complaint, which speak directly to decisions made by USMS management in the assignment of DUSMs within the District after August 2002.

Finally, any testimony of DUSMs Susan Williams and Jeffrey Bohn regarding their own disputes with the USMS should be precluded as irrelevant to the specific managerial decisions raised by the Amended Complaint in this matter and Plaintiff's claim that she has personally been adversely affected by those managerial decisions.

With regard to the Exhibits Plaintiff intends to introduce at trial, Defendant objects to the introduction of exhibits regarding the Merit Promotion selection process on relevance and foundation grounds.  The Defendant also objects to the introduction of email traffic that is simply cumulative to the testimony of the witnesses at trial.  Defendant objects to the introduction of email traffic among and between individuals not shown at trial to have directly participated in the decision making process regarding the specific actions alleged by Plaintiff in Counts I and II of the Amended Complaint on relevance grounds.  Finally, Defendant objects to the introduction

15

at trial of excerpts from the deposition testimony of USM Dichio.  USM Dichio will testify

during the course of the trial and will be available to Plaintiff for cross-examination.

Defendant's decision whether to seek introduction at trial of any exhibits identified in the

joint pre-trial memorandum will best be determined by evaluation of the testimony provided in

Plaintiff's direct case.  Accordingly, it is Defendant's current intention to seek the introduction of

any document included in the list of exhibits identified in the joint pre-trial memorandum,

although unnecessary or irrelevant exhibits will be identified and removed from Defendant's

exhibit list throughout the course of the trial.

Respectfully submitted

GLENN T. SUDDABY
UNITED STATES ATTORNEY
NORTHERN DISTRICT OF NEW YORK

BY:  _____/s/_____

BARBARA D. COTTRELL
Assistant U.S. Attorney
Bar Roll No. 101411

218 James T. Foley U.S Courthouse
445 Broadway
Albany, New York 12207
(518)431-0247

Dated: June 1, 2005

<u>CERTIFICATION</u>

I hereby certify that a true copy of the above document was served upon Plaintiff's
attorney of record, Indira Talwani, Esq., Segal, Roitman & Coleman, 11 Beacon Street, Suite
500, Boston, Massachusetts 02108, by ECF filing, on June 1, 2005.

_____/s/_____
BARBARA D. COTTRELL
Assistant U.S. Attorney

16

Bar Roll # 101411 (NDNY)