I am the EEO Counselor assigned to an EEO complaint, which has been filed by DUSM Cynthia DeCaire. In the complaint, DUSM DeCaire has indicated that she feels she has been discriminated against due to being a female and a single parent (parental status). She also has indicated that she feel that she has been retaliated against due to being a female.

This complaint is at the Informal Counseling Stage. To assist in processing the complaint, please respond to the following allegations/questions:

1. DUSM DeCaire has alleged that another female DUSM (Susan Williams), and her are being discriminated against by virtue of being directed, on 1/21/03 by their supervisor Tom Bezanson, to rotate to the Boston office on a weekly basis due to the lack of manpower. DUSM DeCaire stated that neither of the two male deputies (DUSMs Kevin Wahl and Mark Lewis) in the Worcester suboffice office had to participate in this rotation, and that one of them, DUSM Wahl, was advised that he would have to rotate to the Springfield Office when needed. She further stated that on 2/3/03, she was advised that she was being transferred back to the Boston Office.

   A. Please take this opportunity to comment of the allegations of the disparate rotational assignments, particularly why the male deputies are not being subjected to this rotation.

      Currently, twelve vacancies exist, creating a significant manpower shortage. At this time, no rotational assignment exists. To address the manpower shortage, I have reassigned personnel based on the proximity of their residence to the respective offices. As of 02/04/03 DUSM DeCaire, junior deputy of Court Operations Worcester, who also lives the closest to the Boston Office, was reassigned to the Boston Court Operations. DUSM DeCaire replaces DUSM Viator who returned to California. DUSM Lewis is assigned to the HIDTA Task Force, a unit separate from Court Operations. DUSM Wahl is assigned to the Worcester Court Operations with the stipulation that DUSM Wahl would cover Springfield Court in the event that Springfield was shorthanded (of the staff in Worcester, DUSM Wahl lives in closest proximity to the Springfield Office). Regarding DUSM DeCaire and DUSM Williams, both were both assigned Boston Court rotation due to locality. In my judgment, after much deliberation, this solution was the most equitable way to address the shortage of manpower.

2. Additionally, DUSM DeCaire has alleged that when she first met with you, in approximately September 2002, after your appointment to the district, in a one-on-one meeting, you appeared to be more concerned with whether she was receiving assistance from her ex-husband and where other family members resided rather than her professional development.

   A. Please take this opportunity to respond to this allegation.

      I first met DUSM DeCaire on August 26, 2002. During that meeting, DUSM DeCaire stated that she faced additional pressures due to the fact that she is a

"single mother". Also, she indicated that she felt that she had been treated unfairly in the past. I indicated that the purpose of these meetings was to establish an open dialogue with all DUSMs. Ultimately, I hoped to ensure a fair and rewarding work environment. At that meeting, I indicated that I would do my best to accommodate her requests and that she would be treated fairly. I feel that I displayed an appropriate level of concern regarding the issues DUSM DeCaire raised.

3. DUSM DeCaire has also indicated that during your first meeting with her, you also inquired why she was not interested in going to the Worcester's office, and she stated she advised you that that assignment had long been perceived as punitive. She stated that you advised her that she should be transferred to the Worcester Office since she was a single mother and could be close to her family. DUSM DeCaire stated that she was later directed to report to the Worcester Office but that you changed your mind. She added that about a week later, an investigative position opened up in the Worcester Office, which she applied for due to her investigative background. She stated that she was not approved for the position because you stated that you did not want "two women DeCaires getting hurt on the street." She stated that this reference was in regards to her former aunt, State Trooper (TFA) Darelene DeCaire, whom you previously worked with at the State Patrol prior to becoming the Marshal. DUSM DeCaire further stated that TFA DeCaires is no longer married to her (Cynthia DeCaire) uncle. DUSM DeCaire also alluded to a personality conflict between TFA DeCaire and herself and which she documented in an email to SDUSM Tom Bezanson dated 12/20/02. She added that a male deputy (DUSM Mark Lewis), who was junior to her (Cynthia DeCaire) and less experienced ultimately was selected for the investigative assignment. She concluded by stating that she felt that this information and your personal relationship with TFA DeCaire affected your decision in not allowing her to receive the investigative position.

   A. Please take this opportunity to comment the allegations of the initial interview with DUSM DeCaire.

   According to my contemporaneous notes, during the Monday August 26, 2002 meeting, DUSM DeCaire stated that she "has been trying to get back to the Worcester suboffice for a long time to be closer to her daughter, but CDUSM Bane would not send her". She also stated that "CDUSM Bane and ACDUSM Durette have never been fair". She also stated that "DUSM Williams transferred from Rhode Island to the Boston Office and later DUSM Williams was reassigned to the Worcester Office instead of [her]". I responded that I would do what I could to accommodate her request to be reassigned to the Worcester Office. I suggested that since DUSM McKearney lives closer to Boston, it would make sense to transfer him back to Boston and that she would transfer into Worcester Court Operations, replacing DUSM McKearney. DUSM McKearney would replace her in Investigations in Boston. DUSM DeCaire agreed to this. On Thursday August 29, 2002, I proposed this to CDUSM Bane. On Friday August 30, 2002 at 0845 hrs. CDUSM Bane along with ACDUSM Durette requested a meeting with me regarding the proposed transfer. CDUSM Bane and ACDUSM

Durette both indicated to me, that they had strong concerns about this transfer. I took their concerns under advisement. Later that day, I explained to DUSM DeCaire the concerns that had been raised, to which she stated, "I will never get back there". She appeared distraught, I advised her that I would continue to try to accommodate her request to transfer her to Worcester Court Operations. On September 30, 2002 DUSM DeCaire was reassigned to the Worcester Office, as Court Operations.

B. Please take this opportunity to comment on the alleged comments concerning TFA Darlene DeCaire.

Prior to becoming U.S. Marshal, I had no occasion to meet Sergeant DeCaire. In fact, the only context in which Sergeant DeCaire's name was raised was during a conversation with CDUSM Bane. CDUSM Bane advised me that it would not be appropriate to accommodate this request for the following reasons. First, DUSM DeCaire is related to one Sergeant DeCaire of the Mass. State Police who was assigned to the HIDTA Task Force. CDUSM Bane stated that this created a problem with the request to transfer to the HIDTA Task Force. Second, CDUSM Bane stated that DUSM DeCaire is "romantically involved" with HIDTA Task Force SDUSM Bohn. Accordingly, CDUSM Bane stated that it would violate policy to transfer DUSM DeCaire into a unit where the person with whom she is "romantically involved" would be in a supervisory position directly above DUSM DeCaire. Consequently, I relayed these concerns to DUSM DeCaire. At which time, she confirmed an ongoing "romantic involvement" and cohabitation with SDUSM Bohn. Regarding Sergeant DeCaire, she advised me that they are no longer related; her uncle has since divorced her.

C. Please take this opportunity to comment on the selection of DUSM Mark Lewis for the investigative assignment in Worcester.

On September 20, 2002, I reassigned DUSM Lewis to the Worcester HIDTA Task Force because, in my judgment, this was the most equitable and efficient use of personnel. DUSM DeCaire expressed displeasure that DUSM Lewis was assigned to the HIDTA Task Force. Again, I explained the aforementioned reasons why it was inappropriate to transfer her into the HIDTA Task Force. Ultimately, I restated my commitment to accommodate her request to transfer to Worcester. I offered DUSM DeCaire the option of transferring to Worcester Court Operations or remaining in Investigations in Boston. She accepted the transfer to Worcester Court Operations just so she could be closer to home. If I were to go by seniority for the Worcester HIDTA Task Force it would have been DUSM Wahl not DUSM DeCaire.

In all EEO complaints, claimants are asked what remedy they are seeking to resolve the complaint. DUSM DeCaire has requested that she be treated equally, particularly in the assignments that are made and the opportunity to work in a hostile-free work environment.

A. Please take this opportunity to respond to the resolution being sought by DUSM DeCaire.

On September 30, 2002 DUSM DeCaire was reassigned, as she requested, to the Worcester Office as Court Operations. After due deliberation, and considerable consultation with CDUSM Bane, I concluded that DUSM DeCaire's other request to transfer to HIDTA Task Force was not only inadvisable, but in direct contradiction to United States Marshals Service Policy. I remain committed to creating a fair and equitable work environment for all United States Marshals Service Deputies and administrative personnel. I remain committed to the policy I instituted of having an open door and ongoing dialogue with the entire district. I have never heard one complaint from DUSM DeCaire since her reassignment.

As the U. S. Marshal in this district, it is my responsibility to use all resources to the best of my ability to accomplish the mission in an equitable manner. To that end, all my decisions are based on seniority, job performance and locality. As always, deputies in this district will be treated with professionalism and equity.

It would be appreciated if you would respond to this inquiry no later than the close of business, Tuesday, February 11, 2003. Additionally, you can feel free to forward any relevant documentation to me to my private fax at 816/374-6124. In the interim, feel free to call me at 816/467-1970 if you have any questions.