UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

CYNTHIA BOHN,

        Plaintiff

        vs.

MICHAEL MUKASEY, in his official position as Attorney General of the United States.

        Defendant

C.A. No. 04-10593 EFH

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

On June 24, 2008, more than five years after Plaintiff Cynthia Bohn first sought redress for retaliation she suffered for initiating an internal EEO complaint, the jury found in her favor, awarding her $150,000 for the emotional pain she suffered from January 2003 until August 26, 2005, proximately caused by the Defendant's conduct. The path to that award was difficult, as plaintiff and her counsel wended their way through a required administrative process, discovery from a recalcitrant employer, a summary judgment motion, a first trial resulting in a defense verdict, a successful appeal to the First Circuit, and a second trial on remand. Through this five year process, Segal, Roitman, LLP (and its predecessor, Segal, Roitman, and Coleman) expended over 1513.5 hours of lawyer and law clerk time to vindicate Plaintiff's rights. Plaintiff now seeks her reasonable attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d), 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 2000e-16(d) in the amounts of $412,495.00 and $16,165.81 respectively.

I.   **PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEY'S FEES AND COSTS AS A PREVAILING PLAINTIFF**

Under section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k), the court "may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fees . . . as part of the costs . . . ." and "the United States shall be liable for costs the same as a private party."  Moreover, federal employees are entitled to their reasonable attorney's fees as part of the costs, just like private-sector employees.  42 U.S.C. § 2000e-16(d) (the provisions of section 2000e-5(k) apply to civil actions brought by federal employees).   Although Title VII leaves the award of attorney's fees to judicial discretion, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)[1]; see also N.Y.Gaslight Club, Inc. v. Carey, 447 U.S. 54, 68 (1980) (citing Newman v. Piggie Park Enters, Inc., 390 U.S. 400, 402 (1968)) (civil rights plaintiff acts as a "private attorney general" and is thus normally entitled to fees if statutorily authorized).

In order to qualify as the prevailing party, a civil rights plaintiff must succeed, on any significant issue in the litigation, to obtain some of the benefits sought in bringing the claim.  Farrar v. Hobby, 506 U.S. 103, 109 (1992).  This includes prevailing on an important matter in the course of litigation, regardless of whether the plaintiff does not prevail on all of the issues.  S.Rep. No. 94-1011, at 5 (1976); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgmoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).  The Farrar court pointed to an alteration of the legal relationship

---

[1] Although Hensley was brought under 42 U.S.C. § 1988, the Court explained that the standards set forth in that opinion "are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party."  Id. at 433, n.7.

between the parties to show that one party had prevailed against the other. 507 U.S. at 111. An altered legal relationship may be shown by an enforceable judgment against the defendant from whom the fees are sought, thus modifying the defendant's behavior in a way that directly benefits the plaintiff. Id.

Here, judgment was rendered in Deputy Bohn's favor on the retaliation claim following a jury verdict awarding her damages in the amount of $150,000. Accordingly, Plaintiff is the prevailing party for purposes of the fee statute.

## II.     THE FEES SOUGHT BY PLAINTIFF ARE REASONABLE

In Hensley, the Supreme Court adopted the "lodestar figure," concluding that the best way to determine an initial starting attorney's fee was to multiply the number of hours reasonably expended on litigation by a reasonable hourly rate. 461 U.S. at 433; see also Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997) (announcing lodestar is preferred method by which courts should determine reasonable attorney's fees). After the "lodestar figure" is obtained, a court may consider other factors which may make appropriate further enhancement or diminution of the sum. 461 U.S. at 434. Plaintiff here seeks the lodestar figure, without further enhancement or diminution.

### A.     The Rates Sought By Plaintiff's Attorneys Are Reasonable

"A reasonable attorney's fee . . . is one calculated on the basis of rates and practices prevailing in the relevant market, i.e., 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation' . . . ." Missouri v. Jenkins by Agyei, 491 U.S. 274, 286 (1989), quoting Blum v. Stenson, 465 U.S. 886, 896, n. 11. The reasonable attorney's fee must also

"grant[] the successful civil rights plaintiff a 'fully compensatory fee.'"  Missouri, 491 U.S. 286, quoting Hensley, 461 U.S. at 435.  That rate is thus "comparable to what 'is traditional with attorneys compensated by a fee-paying client.'"  Missouri, 491 U.S. at 286, quoting S.Rep. No. **2471 94-1011, p. 6 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913.

In Blum, the Court looked to the legislative intent behind the fee statute and declared that fees in civil rights cases were to be awarded in the same way they were in anti-trust cases, regardless of the non-pecuniary nature of the claim, because the litigation was equally long and arduous.  465 U.S. at 893.  The Court further noted that in assessing reasonable attorney's fees, the judge should not consider whether the plaintiff's counsel was private or part of a nonprofit legal services organization.  Id. at 894.  The Court acknowledged the inherent difficulty in ascertaining an appropriate market rate for attorneys because of the discrepancies in rates charged within the public and private sector, various private firms, and between attorneys in one firm.  See id. at 896, n.11.  Nonetheless, the fee petition should focus on the rates charged for similar services by lawyers of "reasonably comparable skill, experience and reputation."  Id. at 896, n.11.

        1.        The Skill, Experience and Reputation of Plaintiff's Attorneys

Here, Segal, Roitman LLP is a Boston firm specializing in labor and employment law.  Declaration of Paul Kelly, ¶ __.  Indira Talwani, a partner with the firm, served as lead counsel in the litigation, and took the primary role throughout the administrative process, discovery and pretrial motions, and on appeal.  Ms. Talwani has specialized in labor and employment matters, at both the trial and appellate level, since 1989, first with the firm Altshuler, Berzon in San Francisco, where she became a partner in 1996, and

then with Segal, Roitman in Boston, where she began as of counsel in 1999, and became a partner in 2003.  Declaration of Indira Talwani, ¶ __.  Prior to her work at Altshuler, Berzon, Ms. Talwani clerked for the Honorable Stanley A. Weigel, of the United States District Court for the Northern District of California.  Id. ¶ __.  She is a 1988 graduate of Boalt Hall School of Law, Berkeley, California, where she was articles editor of the Industrial Relations Law Journal and a member of the Order of the Coif, and a 1982 graduate, cum laude, of Harvard/Radcliffe College.  Ms. Talwani has litigated numerous employment cases in the federal courts, and is the Senior Editor of the American Bar Association and Bureau of National Affairs Treatise on the Family and Medical Leave Act.  Id. ¶ ___.

Paul Kelly, also a partner at Segal, Roitman, shared responsibilities for the case during each of the two trials.  Mr. Kelly joined Segal, Roitman in 1977 and has practiced labor and employment law since then.  Since 1996 he has also taught Massachusetts Practice as an Adjunct Professor of Law at Suffolk Law School.  Mr. Kelly received an B.A. from the College of the Holy Cross in 1970 and a J.D. *cum laude* from Suffolk Law School in 1975.  He served as law clerk for the Honorable Andrew A. Caffrey, Chief Judge of the United States District Court for the District of Massachusetts in 1976-1977 prior to joining Segal, Roitman in September, 1977.  Mr. Kelly has tried labor, employment and personal injury cases to judges and juries in the courts of the Commonwealth and the District of Massachusetts.

Mary Sullivan is also a partner with the law firm of Segal Roitman, LLP.  She joined the firm in 1983, and has practiced labor and employment law since that time.  She received a B.A., summa cum laude, Phi Beta Kappa, from the University of

Massachusetts, Amherst in 1975. She received my J.D. from Northeastern Law School in 1981. She is admitted to the bar of the State of New Hampshire in 1982, the bar of the Supreme Judicial Court of Massachusetts, the bar of the United States District Court for the District of Massachusetts, the United States District Court for the District of New Hampshire, and the United States Court of Appeals for the First Circuit in 1983, and the United States Court of Appeals for the Federal Circuit in 1987. Ms. Sullivan served as law clerk for the Honorable Shane Devine, Chief Judge of the United States District Court for the District of New Hampshire from 1981-1983.

The background of other attorneys at the firm who worked on this case are detailed in the Declaration of Paul Kelly.

Segal, Roitman and its attorneys are highly regarded in their field. See Declaration of Nancy Shilepsky, ¶ 3 (the firm "is very highly regarded for its expertise in labor and employment law. Its background and experience are among the strongest in Massachusetts, and would rank in anyone's list of the best labor and employment lawyers in the state"; Attorney Shilepsky is familiar with the work of Indira Talwani and Mary Sullivan);[2] Declaration of Robert M. Hale, ¶ 5 (the firm "is skilled and well respected in labor and employment litigation"; Mr. Hale is familiar with the work of Mary Sullivan and Indira Talwani);[3] Declaration of Robert Joy, ¶ ___ (Mr. Joy and members of his firm are familiar with the work of Paul Kelly and Indira Talwani); Declaration of Monica Halas, ¶ (the firm "is very highly regarded for its expertise in labor and employment law . . . I consider this firm to be one of the top firms in the state in terms of 1) its ability to do

---

[2] Ms. Shilepsky is a partner at Shilepsky O'Connell LLP and has practiced employment law since the mid-1980s. Since 2000, she has been a Fellow of the College of Labor and Employment Lawyers.
[3] Mr. Hale is a partner in Goodwin Proctor LLP's Labor & Employment Practice, and is also a Fellow of the College of Labor and Employment Lawyers.

[cases for low wage workers], 2) willingness to do these cases, and 3) the sensitivity to and appreciation of the struggles faced by [legal service] clients"; Ms. Halas is familiar with the work of Indira Talwani).[4]

2. The Rates Charged For Similar Services By Attorneys of Comparable Skill, Experience and Reputation

Plaintiff seeks fees at the following rates:

| ATTORNEYS | BAR DATE | HOURLY RATE |
|---|---|---|
| Paul Kelly | 1975 | $ 375.00 |
| Mary Sullivan | 1982 | $ 375.00 |
| Shelley Kroll | 1985 | $ 350.00 |
| Burt Rosenthal | 1977 | $ 350.00 |
| Indira Talwani | 1988 | $ 350.00 |
| Michael Doheny | 1999 | $ 250.00 |
| Stephanie Pratt | 2002 | $ 200.00 |
| Rachel Rosenbloom | 2002 | $ 200.00 |
| James Shaw | 2007 | $ 200.00 |

These rates are at the low end of rates charged for similar services by attorneys of comparable skill, experience and reputation. See Declaration of Nancy Shilepsky, ¶ 4 (the hourly rates are comparable to or lower than the market rates charged by Boston plaintiff-side employment lawyers of equivalent experience, skill, and expertise for comparable work, and defense-side employment lawyers of equivalent experience, skill and expertise typically charge significantly more per hour); Declaration of Robert M. Hale, ¶ 5 (the hourly rates "are at the low end of market rates charged by Boston lawyers of equivalent experience, skill, and expertise for comparable work in representing employers"); Declaration of Robert Joy, ¶ ___ .

---

[4] Ms. Halas has been practicing law for 30 years, and is Lead Attorney in the Employment Unit at Greater Boston Legal Services. Id., ¶ 2.

Indeed, the fees are within the range of the fee schedule requested by Massachusetts Law Reform Institute (MLRI) in its fee applications. See Declaration of Allen G. Rodgers setting forth the basis for that fee schedule.

### B. The Lodestar Figure Should Include All Time Reasonably Expended in Pursuit of the Ultimate Result

The Hensley court made clear that "the appropriate number of hours [in the lodestar calculation] includes all time reasonably expended in pursuit of the ultimate result achieved in the same manner than an attorney traditionally compensated by a fee-paying client for all reasonably expended on a matter." 461 U.S. at 432.

The fact that a particular claim was not successful does not necessarily require a reduction in the number of hours reasonably spent on a case, for "[i]n [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 749 at 435.

Here, Plaintiff brought two separate claims, one for gender discrimination and one for retaliation. Though she did not prevail on the gender discrimination claim, the claims sought and obtained the same relief, namely, emotional pain and suffering for the period from January 2003 through August 26, 2005. The relief was significant – despite no loss of wages or direct promotional opportunities, Plaintiff was awarded $150,000 – and it is not clear that any additional damages could have been awarded even if Plaintiff had prevailed on her alternative theory.

The two claims were also based on a common core of facts.  Indeed, only the initial claim of the rotation included a gender claim alone, and with regard to that incident, Plaintiff still needed to establish her reasonable belief that that initial rotation was based on gender discrimination in order to support her claim that she was retaliated against after she initiated the EEO process.  At the district court, the legal issues on the gender and retaliation were not differentiated, as is evident in the Defendant's motion for summary judgment which challenged Plaintiff's both the gender and retaliation claims in a single argument alleging that Plaintiff had failed to establish an adverse employment action.[5]  For the most part, therefore, no reduction of hours is justified by virtue of the fact that Plaintiff did not ultimately prevail on the gender claim.[6]

The lodestar figure should also include time spent exhausting required administrative remedies.  The words of Section 706(k) "leave little doubt that fee awards are authorized for legal work done in 'proceedings' other than court actions."  N.Y. Gaslight Club, 447 U.S. at 61; see also id. at 62, n.2 (noting that in cases involving federal employees "all the Court of Appeals that have considered the question have upheld fee awards under § 706(k) for work done in federal administrative proceedings that must be exhausted as a condition to filing an action in federal court); Fischer v. Adams, 572 F.2d 406, 409 (1st Cir. 1978).

Similarly, the lodestar figure should also include time prosecuting the appeal, as this time was clearly necessary in order to prevail before the jury.  While Defendant may

---

[5] After the summary judgment motion was denied, the Supreme Court issued its decision in Burlington Northern making clear that a Plaintiff in a retaliation case need not make the same showing of an adverse employment action as in a gender claim.

[6] As detailed below, in an abundance of caution, Plaintiff has reduced hours to the extent such work is separable concerning the factual development regarding the control room assignment, as the jury did not find this assignment retaliatory.  Similarly, on appeal, although Plaintiff successfully argued an error of law regarding the gender issue, a portion of time on the appellate brief has been reduced to account for the jury's ultimate finding on the gender claim.

contend that no fees are appropriate since none were awarded by the Court of Appeals at the time, that argument must be rejected, since even following the successful appeal, Plaintiff was not yet the prevailing party under Title VII.  While fees under Title VII may not have been appropriated at the time of the appeal, such fees should now be awarded.

### C. PLAINTIFF'S COUNSEL REASONABLY EXPENDED THE HOURS SOUGHT IN THE FEE PETITION

Here, Plaintiff's have carefully reduced the total hours expended on this litigation, 1513.5 hours, to 1185.9 in order to eliminate any arguably unreasonable costs.

#### 1. 2003:  Internal Agency EEO Process

Plaintiff's counsel began representation of Plaintiff after she had already initiated EEO counseling with her agency, and had subsequently heard that the Marshal had made threatening statements concerning her career to a Brockton police officer.   The 32.6 hours of Ms. Talwani's time sought in the petition for this first year was expended in connection with the internal EEO process, including filing an amended EEO claim regarding retaliation after learning of the direct evidence of retaliation in the form of the statement from Marshal Dichio to a Brockton Police Officer, attempting to have the agency's internal EEO office investigate this threat, assisting Ms. Bohn in the preparation of her affidavit detailing her claim, and making a substantive request for final agency decision.  During Ms. Talwani's maternity leave, Mary Sullivan spent 2.2 hours on the matter in connection with plaintiff's transfer to Worcester (found by the jury to be unlawful retaliation).

Ms. Talwani also spent .3 hours on an unrelated employment matter for Plaintiff, and this time has been excluded from the petition.  Ms. Sullivan spent  .9 hours in connection with Plaintiff's assignment to the control room.  The .9 hours concerning the

control room assignment have also been excluded as the jury did not find this assignment unlawful.

        2.      <u>January 1, 2004 through July 31, 2004: United States District Court, Drafting of original complaint</u>

In the first half of 2004, Michael Doheny drafted the complaint to be filed in the District Court (21.5 hours), and Ms. Talwani reviewed and finalized the complaint (8.7 hours).

In the meantime, Plaintiff had initiated the internal EEO process regarding her October 2003 transfer to Worcester and the November 2003 assignment to the control room. Mr. Doheny, Ms. Sullivan and Ms. Talwani also spent time (1.8, 1.4 and 7.3 hours respectively) in connection with the agency's processes on the second EEO complaint (concerning the October 2003 transfer to Worcester and the assignment to the control room) and to amend the complaint in District Court to include these allegations. Although Plaintiff prevailed on the claim concerning the transfer (part of the amended complaint), she did not prevail on the claim regarding the control room assignment, and accordingly, only 50% of this time has been included in the fee petition, and the balance has been excluded from the fee petition.

        3.      <u>August 1, 2004 – April 1, 2005:  United States District Court, Discovery</u>

During the discovery period, Ms. Talwani spent a total of 168.2 hours on: Plaintiff's initial disclosures and reviewing Defendant's initial disclosures; written discovery and reviewing Defendant's responses to that discovery; deposition of witnesses (all of whom testified at trial except Supervisory Deputies Walter Doherty and Paul Dunne and Administrative Officer William Ryan); defending Plaintiff's deposition and time spent securing discovery responses from the Defendants and related matters. The

discovery was particularly time consuming because of Defendant's recalcitrance, requiring Ms. Talwani to draft letters to and confer with Defendant's counsel in an attempt to resolve the dispute concerning Defendant's incomplete discovery responses, deposing Defendant pursuant to Rule 30(b)(6) when few documents were produced in response to the discovery requests, bringing motions to compel production of EEO Complaints and Grievances of Other Employees and Investigative Files (docket 10), with a motion for clarification (docket number 17) (granted on December 22, allowing in camera inspection, and eventually, production to the Plaintiff) and motions to compel productions of documents and answers to interrogatories and for fees (docket number 12, amended by docket number 14) (granted on January 5, 2005). With regard to the latter motion, the Court also granted Plaintiff's request for costs, stating, however, that costs were to be assessed at the close of the action. Ms. Sullivan also spent 1.0 hours of time during this discovery phase.

The time sought does not include 17.5 hours spent preparing for the deposition of Allison Hodgkins (which related primarily to matters after Plaintiff was assigned to the control room in November 2003) and traveling to Washington, DC, for the deposition of Paul Durette.

    4. <u>April 5, 2005 – April 18, 2005:  United States District Court, Opposition to Motion for Summary Judgment and Cross-Motion for Partial Summary Adjudication</u>

Following discovery, Defendant moved for summary judgment, asserting that the actions at issue here were not adverse employment actions as a matter of law. Defendant also argued, for the first time, that Plaintiff had failed to exhaust her administrative remedies. Ms. Talwani spent 98.0 hours responding to Defendant's motion for summary judgment, including drafting affidavits, and drafting and briefing a cross-motion for

partial summary adjudication. Following hearing on May 17, 2005, Defendant's motion was denied, and Plaintiff's cross-motion for partial summary adjudication was allowed. Compiling exhibits, cite-checking and other routine matters were done by a law student, but the 16.5 hours of his time has been excluded.

        5.      <u>April 25, 2005 – June 1, 2005:  United States District Court, Pre-trial Preparation and Motions and Final Discovery</u>

From the end of April 2005, through June 1, 2005, Ms. Talwani spent 116.6 hours, Paul Kelly spent 8 hours and Rachel Rosenbloom spent 18.2 hours in final discovery, pre-trial matters and pre-trial preparation, including: preparing pre-trial disclosures; preparing a motion to substitute party; preparing joint pre-trial statement; reviewing Defendant's pre-trial disclosures and preparing a notice of objections to Defendant's proposed exhibits; preparing an Agreed-Upon Statement of Facts with 89 stipulated facts; preparing motions in limine, attending a final pre-trial conference; preparing for and attending hearing on motion for summary judgment and cross-motion for partial summary adjudication; preparing an emergency motion to reopen discovery concerning the inspector general's report on Marshal Dichio (granted in part in that a redacted copy of the inspector general's report was provided to Plaintiff); preparing a stipulation and request for protective order concerning documents still to be produced by Defendant; preparing an emergency motion for sanctions for Defendant's failure to obey the Court's prior discovery order (granted in part on June 2, 2005, with documents in question to be produced by second day of trial); preparing an opposition to Anthony Dichio's motion to intervene, and preparing for opening statement, and for direct examination of witnesses and cross-examination for trial.

Two law students assisted in the pre-trial preparation, including performing administrative tasks and preparing deposition summaries, for a total of 48.2 hours. Their 48.2 hours have been excluded as part of overhead.

### 6. June 2, 2005 – United States District Court, November 14, 2005 Trial and Post-Trial Motions

Trial commenced on June 2, 2005, and continued on seven non-consecutive days over the next few weeks, with closing arguments in July, and proposed findings of fact and conclusions of law submitted in September 2005. Given the complicated facts at issue in the case, the proposed findings of fact and conclusions of law were extensive. Again, additional time was necessitated due to Defendant's recalcitrance, in this case reviewing documents ordered by the Court and produced only after trial had commenced, and presenting documents that had not been produced in discovery towards the end of trial, and after trial had concluded. During this time, Indira Talwani spent 232.2 hours on trial and post-trial related matters, Paul Kelly pent 42.5 hours at trial, Ms. Sullivan spent 2.4 hours on strategy matters when it appeared that Marshal Dichio would not testify, Shelley Kroll spent 2.3 hours on legal research regarding possible injunctive relief, and Stephanie Pratt spent 9.9 hours assisting with legal research and fact cite checking for the proposed findings of fact and conclusions of law. Two law students assisted during and after trial, including legal research. Their 58.4 hours have been excluded as part of overhead.

### 7. 2006 - United States District Court

During 2006, Indira Talwani spent .9 hours filing a status report, conferring with opposing counsel regarding settlement, and conferring with her client while awaiting a decision of the District Court.

        8.    <u>January – March, 2007 - United States District Court</u>

In 2007, Attorney Talwani spent 12.1 hours of time on the case, including filing a successful motion (over Defendant's opposition) to amend the Court's decision (in order to preserve the factual record for appeal), reviewing the Court's decision and filing a notice of appeal. Mary Sullivan also spent 6.0 hours reviewing the Court's decision and strategizing for a possible appeal.

Plaintiff has excluded 3.0 hours of Ms. Talwani's time and .3 hours of Mary Sullivan's time concerning a matter that may be the subject of a supplemental claim but is not part of the instant action. Plaintiff has also excluded 4.2 hours of legal research time by a law student.

        9.    <u>March  2007- January 2008 – United States Court of Appeals,</u>

The fee petition seeks 151.0 hours of Attorney Talwani's time briefing the issues on appeal, attending settlement conferences, and oral argument. The petition also seeks 5.0 hours for Paul Kelly's assistance in preparing for the appeal and 1.8 hours for Mary Sullivan's strategic advice regarding the appeal.

The fee petition excludes 37.7, or 20% of Indira Talwani's time, as a rough estimate of the time spent on the gender claim. The petition also excludes .2 hours of time spent by Associate Nicole Decter because of the de minimus nature of her work on this case. Three law students also spent time on the appeal, including researching legal issues, reviewing the factual record, and cite checking the brief, but these 86.7 hours have been excluded from the fees sought, in recognition of the inclusion of law student time in Segal, Roitman's hourly rates.

       10.    <u>March 13 – June 24, 2008, United States District Court, on remand</u>

Plaintiff seeks 160.5 hours of Ms. Talwani's time and 82 hours of Mr. Kelly's time on remand. Ms. Talwani's time included pretrial matters, including briefing the jury trial question, filing pre-trial documents, attending the final pre-trial conference, preparing for trial (including contacting and preparing trial witnesses), reviewing trial testimony and depositions for cross-examination, preparing proposed jury instructions and reviewing defendant's proposed jury instructions and trying the case. Mr. Kelly's time included pre-trial preparation and trial time, including preparing witnesses examination and opening and closing statements.

During the same time, Plaintiff attempted unsuccessfully to supplement the complaint. The 26.5 hours relating to this motion and drafting of the proposed supplemental complaint have been excluded from the time sought.

### D.    THE LODESTAR SHOULD BE ADOPTED AS THE REASONABLE FEES WITHOUT REDUCTION

The Court in <u>Hensley</u> held that the inquiry into reasonable attorney's fees does not end with the summation of the lodestar figure. 461 U.S. at 434. In the present case, however, further inquiry leads to the conclusion that no further manipulation of the lodestar figure is necessary. Any arguments for adjustments to either increase or decrease the lodestar figure have already been accounted for in its initial calculation.

The Defendant may argue that the lodestar figure should be decreased because the plaintiff did not prevail on all of her claims. The Hensley Court made clear, however, that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit". 461 U.S. at 435.

The argument that the lodestar should be reduced because of the failure to succeed on all claims would only have merit if the gender claim was wholly unrelated to the retaliation claim.  Claims are only considered "unrelated," however, if they are "entirely distinct and separate" from the claims on which the plaintiff prevailed.  Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (citing Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1499 (9th Cir.1995); see also Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 773 (8th Cir. 2000) (where plaintiff prevailed on the claim that was at the "heart of her case," her attorneys deserved to be compensated for all related claims).

As described above, although the plaintiff did not prevail on all of her claims, both her claim for gender discrimination and retaliation were "part and parcel of one matter."  Lamphere v. Brown University, 610 F.2d 46, 47 (1st Cir. 1979).  This makes all of her claims related which disallows the severing of any time spent on losing claims, as well as reduction in the lodestar figure.

Nor is a reduction in fees appropriate because Plaintiff's damages were $150,000.  The court in City of Riverside v. Rivera held that there is no need for proportionality between actual damages received by the plaintiff and attorney's fees.  477 U.S. 561, 574 (1986).  Therefore, the argument that a reduction in the lodestar figure is appropriate because it is a larger monetary amount than the actual award should fail.  The Supreme Court stated that, unlike a private tort action, the public as a whole has an interest in the vindication of a civil right and the plaintiff herself often is seeking social justice over monetary gain.  See id.  Therefore, it would undermine Congress's intention in enacting the statute to allow more attorneys to represent plaintiff's in civil rights actions, to require the fees to be proportional to the damages.  Id. at 576.

Plaintiff also does not seek an enhancement of the lodestar fee. In the case at bar, the fact that the plaintiff ultimately prevailed, in both the appellate and trial court, should be considered in determining her attorney's reasonable hourly rate, rather than as an enhancement of the lodestar fee. Similarly, the novelty and complexity of legal issues presented in a case are not grounds for adjustment, but should be reflected in the lodestar. Id.

## III. THE COSTS SOUGHT BY PLAINTIFF ARE REASONABLE

The prevailing party in any action receiving judgment in federal court may receive costs and litigation expenses. The complexity of civil rights litigation often requires attorneys to pay sizeable costs during the course of litigation and these should be reimbursed by the court. These expenses primarily include the fees of the court clerk and marshal, transcript costs, witness fees, copy costs, docket fees, expenses of court-appointed experts, and interpreter fees. Additionally, federal fee shifting statutes, like 42 U.S.C. § 2000e-5(k), allow reasonable out-of-pocket expenses normally charged to the client to be included in costs. Barbara T. Lindermann and Paul Grossman, Employment Discrimination Law 2924-25 (4th ed. 2007); see also Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983); Wilcox v. Stratton Lumber, Inc., 921 F.Supp. 837 (Me. Dist. Ct. 1996). Costs may include postage, photocopying, long-distance telephone charges, travel costs, computerized legal research, deposition transcripts, and paralegal and law clerk services. Id.; see also O'Rourke v. City of Providence, 235 F.3d 713 (1st Cir. 2001) (awarding costs for first and second trial, as well as deposition transcript costs). Here, Plaintiff seeks only: court filing fees, deposition and trial transcript fees, witness fees (including travel fees under 28 U.S.C. § 1821(c)(1) for an out of town witness), appellate

brief printing costs, and computer research costs. These costs are documented in the Bill of Cost filed separately today.

## IV.     CONCLUSION

For all of the foregoing reasons, the motion for reasonable fees and costs should be granted.

Respectfully submitted,

**CYNTHIA BOHN**,

By her attorney,

_____/s/ Indira Talwani_____
Indira Talwani
**SEGAL ROITMAN, LLC**
111 Devonshire Street
5th Floor
Boston, MA  02109
(617) 742-0208

Dated:  July 8, 2008

### CERTIFICATE PURSUANT TO LOCAL RULES 7.1(A)(2)

I hereby certify that I conferred with Defendant's counsel and attempted in good faith to resolve or narrow the issues and that Defendant opposes this motion.

____/s/ Indira Talwani_____
Indira Talwani