UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CYNTHIA BOHN,

        Plaintiff

        vs.

MICHAEL MUKASEY, in his official position as Attorney General of the United States.

        Defendant

C.A. No. 04-10593-EFH

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS

**I.**    <u>The Court Should Not Further Reduce the Number of Hours Chargeable to Defendant</u>

In her opening brief, Plaintiff acknowledged that she did not prevail on all claims, and explained that the hours she sought reflected a reduction in hours to reflect that portion of the work on the entire case that could be separable from the case as a whole. The Government ignores that proposed reduction, arguing instead that the Court should parse out liability for chargeable attorney hours by counting the number of successful vs. unsuccessful allegations. See Def.'s Response, pg. 4 ("Plaintiff prevailed at best, with regard to 50% of her case (Count II), and at worst, as to 18% (4 of 22 separate allegations)."). The Supreme Court has flatly rejected such an approach, and the Court should not adopt it here. "We agree with the District Court's rejection of a 'mathematical approach comparing the total number of issues in the case with those actually prevailed on. Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435, n.7 (1983).

Plaintiff explained in her opening brief that with regard to the gender claim, only the first incident (the rotation) was alleged to have been gender discrimination only. The Government argues in response that a "plaintiff should not be rewarded for a failed attempt to base liability on conduct that did not result in an actionable wrong to him, even if the conduct closely precedes, or follows close on the heels of, conduct that was wrongful." Def.'s Response, pg. 3, quoting Merriweather v. Family Dollar Stores of Indiana, Inc., 103 F.3d 576, 583 (7th Cir. 1996). However, the Merriweather court supports rather than undermines Plaintiff's claim, explaining that the Merriweather defendant (like the Government here) "misconstrue[d] the district court's rationale in calculating the fee award. The court recognized that proving discrimination was not an element of the retaliation claim and, strictly speaking, did not reward [the plaintiff] for the unsuccessful claim. Rather, the court found that the successful claim for retaliatory discharge could not have been tried effectively without reviewing and analyzing the facts that led to the underlying discrimination charge." Id. at 584. The court further found that the plaintiff, once necessary reductions had been made for severable claims, "would have incurred the same [costs] had she pursued only the successful retaliatory discharge claim." Id. at 583; see also Porter v. Cabral, 2007 WL 602605, *15 (D.Mass. 2007) (no further reduction in fees where Plaintiff had already deducted costs for separable claims). Here, Plaintiff is asking the Court to follow a path similar to that set out by Merriweather—to award fees even though the initial gender allegation was unsuccessful because the retaliation claim could not have been tried without it (particularly since Plaintiff needed to establish her reasonable belief that the initial claim was based on gender discrimination), and to recognize that trial costs, having factored in the deductions Plaintiff has already offered, would have been the same regardless of whether she proceeded on the discrimination claim.

Adams v. Reed, 567 F.2d 1283, 1288 (5th Cir. 1978), cited by the Government, similarly supports the Plaintiff's argument, not the Government's. In Adams, a plaintiff alleged gender discrimination after she did not receive a military promotion. She eventually sued for discrimination and retaliation, winning her retaliation claim, but losing the discrimination claim. The court denied fees to the prevailing plaintiff only because her successful retaliation claim was "ancillary to the core of the complaint." Id. at 1288. Here, in contrast, Plaintiff's primary and critical claim concerned the retaliation she suffered as a result of filing her initial complaint. Whether or not Marshal Dichio intended to discriminate against Plaintiff because of her gender when he ordered the rotation between Worcester and Boston, it was his further and far more egregious actions in retaliating against her for initiating that EEO complaint that compelled the five years of litigation and caused Plaintiff the emotional distress she endured during his tenure.

With regard to the unsuccessful allegations regarding retaliation, Plaintiff has already eliminated the only conceivably separable portion – the time relating to the control room assignment at the end of the time period in question.[1] As to the remaining events, while the jury did not find that every incident was retaliatory, the jury did find retaliatory actions in February, March, April and October 2003, eliminating the possibility of any further reasonable segregation of the evidence.

The Government also seeks to exclude time spent in connection with the presentation of witnesses Nancy McGilvary, the former United States Marshal, Timothy Bane, the former Chief United States Marshal, and Susan Williams, the deputy Marshal who initiated the EEO complaint together with Deputy Bohn, on the ground that the testimony somehow was not relevant. That testimony concerned general operations of the Marshals Service, Cyndy Bohn's

---

[1] Plaintiff excluded the time relating to Allison Hodgkin's deposition in an effort to find some separable time. Even here, however, Ms. Hodgkin's testimony was arguably critical to the jury's finding of retaliation in the selection of Ms. Hodgkins, rather than Ms. Bohn, for the Acting Supervisor position in April 2003.

3

performance, and on the part of Timothy Bane and Susan Williams facts as percipient witnesses concerning Marshal Dichio's actions, the transfers Deputy Bohn was subjected to and similar matters. The Government did not object to their testimony at the time of trial, and the objection now is both untimely and misplaced.

Finally, the Government cites Farrar v. Hobby, 506 U.S. 103, 114 (1992), for the proposition that a plaintiff who fails to obtain substantial recovery on their underlying claims may be entitled to no fee at all. The plaintiff in Farrar won only nominal damages of $1 after initially suing for $17 million. "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Id. at 115 (internal citations and quotations omitted). Here, in contrast, the jury awarded Plaintiff a very substantial award of $150,000.

**II.     The Court Should Determine Attorneys' Hourly Rates Based on Current Market Rates, and Should Not Apply a False Distinction Between "Lead" and "Non-Lead" Counsel**

The Government argues that attorney hourly rates for Plaintiff's counsel should "fall in line with" those awarded in Dixon v. Int'l B'hood of Police Officers, 434 F.Supp.2d 73 (D.Mass. 2006), in part because the two cases' "date of accrual and preparation" are roughly the same. Def.'s Response, pg. 5. However, as Dixon itself recognized, a district court "has the discretion to use current, rather than historic, hourly rates," and this Court should do so as well. Id. at 85 (emphasis added). The Dixon court explained that "compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed." Id., citing Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989).

Furthermore, the Government argues that a separate rate should apply to the lead attorney and those who assisted on the case, but the authority cited by the Government does not support

4

the lead / non-lead distinction. Although the courts in Dixon and Porter v. Cabral, 2007 WL 602605 (D.Mass. 2007), did award lower fees to non-lead counsel, this was because they had less experienced than lead counsel, not because of their status as non-lead counsel. See Dixon at 86-87 ($175/hour for assistant counsel with five years experience, not all of which was in employment litigation); Porter at *13 ($225/hour for assistant counsel attorney with six years experience, but none in civil rights). Therefore, Plaintiff's counsels' depth of experience as employment litigators militate in favor of the rates proposed by Plaintiff, given that the rates proposed by Plaintiff are properly in line with their experience. Similarly, the comparison between the lead attorney in the instant case (with 20 years experience) and the lead attorney in Dixon (with only 10) supports Plaintiff's counsel being awarded a higher rate than counsel in Dixon.

**III.    Defendant Cites No Persuasive Authority for the Proposition that Costs Should be Reduced by 50%**

The Government argues that because both parties prevailed on some claims, the Court should reduce the costs sought by 50%. However, the only authority cited by the Government for this proposition—Allen & O'Hara, Inc. v. Barrett Wrecking, Inc., 898 F.2d 512, 517 (7th Cir. 1990)— provides no analysis nor does it cite any authority to support its conclusion that each party must bear its own costs, noting only that the district court did not abuse its discretion.  Nor is the case factually similarly, as it concerns a complex commercial contract dispute with claims, counterclaims and intervening parties, and no clear prevailing party.  Here, in contrast, a verdict was entered in favor of the Plaintiff against the Defendant Cynthia Bohn in the amount of $150,000.  Plaintiff thus is the prevailing party for purposes of awarding costs.

**IV.**     Title VII Explicitly Allows Plaintiff to Recover Out-of-Pocket Expenses

In arguing that Plaintiff's bill of costs must be reduced, the government correctly notes a prevailing party may recover only specifically enumerated costs absent explicit contrary statutory authorization. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). However, Title VII does provide the explicit statutory authority for this court to award costs beyond those enumerated in 28 U.S.C. § 1920. See 42 U.S.C. § 2000e-5(k). As such, reasonable out-of-pocket expenses normally charged to a client are taxable as costs. See Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983) (out-of-pocket expenses awarded under 42 U.S.C. § 1988, which contains similar fee-shifting provision as Title VII). Therefore, because § 2000e-5(k) allows for the award of out-of-pocket expenses, the Court is not limited to those costs enumerated by § 1920.

With regard to Defendant's specific objections to costs, Plaintiff responds as follows:

| ITEM | AMOUNT | RESPONSE |
| --- | --- | --- |
| Parking for court reporter | $121.00 | Reasonable out of pocket costs normally charged to client |
| Postage/Deliver costs for Transcripts | $182.75 | Reasonable out of pocket costs normally charged to client |
| Expedited Transcript | $33.00 | Request for costs withdrawn |
| Minuscript | $17.75 | Request for costs withdrawn |
| Undocumented witness expenses | $659.40 | Necessary costs, request leave to submit documentation (attached) |
| Next day air cod deposition transcript | $50.00 | Request for costs withdrawn |
| Westlaw charges | $5,431.97 | Reasonable out of pocket costs normally charged to client |
| Massachusetts state tax | $66.65 | Required out of pocket costs normally charged to client |

6

**V.**     Conclusion

For the reasons set forth in Plaintiff's opening brief and herein, the Court should grant Plaintiff's request for fees in the amount of $412,495 and modified request for fees in the amount of $16,065.06.

                Respectfully submitted,
                **CYNTHIA BOHN**,

                By her attorneys,

                /s/ Indira Talwani
                Indira Talwani, Esq., BBO # 462220
                James A.W. Shaw, Esq., BBO # 670993
                **SEGAL ROITMAN, LLP**
                111 Devonshire Street
                5th Floor
                Boston, MA  02109
                (617) 742-020
                italwani@segalroitman.com

Dated:  July 24, 2008

**CERTFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 24, 2008.

                /s/ Indira Talwani
                Indira Talwani

L:\ITalwani\individualclients(A-E)\decaire\2552-08235 DISTRICTCOURT-REMAND\motions\attorneysfees\reply brief attysfees jul24.doc

7

# INVOICE

**MASS CONSTABLE SERVICE**
1004 Pheasant Lane
Middleboro, MA  02346
Phone: (508) 946-6914
Fax: (508) 946-6915
Tax Id# 04-3108801

Inv. # 2008002249
06-25-2008

Indira Talwani, Esq.
Segal Roiman, LLP
111 Devonshire St.
Fifth Foor
Boston, MA 02109

Case Number:  04-10593 EFH

Plaintiff:
**Cynthia Bohn**

Defendant:
**Michael Mukasey**

Completed: 6/23/2008
To be served on: Thomas Bezanson

## ITEMIZED LISTING

| Line Item | Quantity | Price | Amount |
|---|---|---|---|
| Service Fee for the US District Subpoena | 1.00 | 45.00 | 45.00 |
| Copy | 1.00 | 5.00 | 5.00 |
| Travel | 1.00 | 5.00 | 5.00 |
| Car Use | 1.00 | 5.00 | 5.00 |
| Witness Fee & Travel | 1.00 | 62.00 | 62.00 |
| TOTAL CHARGED: | | | $122.00 |
| **BALANCE DUE:** | | | **$122.00** |

"Fast, reliable, and professional full time service"
PLEASE INCLUDE **THE LAST FOUR DIGITS** OF THE INVOICE NUMBER ON YOUR CHECK

2552-08235

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5i

 

Kiosk Check-in

## You're all set!

Thanks for choosing JetBlue. Attached is the booking confirmation for your trip. Please review the confirmation carefully as it includes some important information about flying with us. Although you do not need this document to check in, we recommend that you print it out for your own reference.

You have purchased JetBlue Refundable Fares.

Our Refundable Fares come with unlimited changes and the ability to cancel for a full refund up until the time of departure-simply head over to jetblue.com and Manage your flights. If you are unable to make a change or cancellation before your flight, there's no need to worry. If you no-show, we'll turn the full cost of your reservation into a fully-transferable JetBlue credit which is good for one year.

If you have any questions or would like to change or cancel your flight, please call the Sales Support Team at 1-888-JETBLUE (538-2583), prompt 3. You can also access our Real-Time Flight Tracker to check the arrival or departure status of your trip.

Do-it-yourself check in. Now customers have two new ways to check in for their flights. At the airport, take advantage of our easy-to-use self-service kiosks to check in, select or assignments and print boarding passes. Or, from your home or office, check in using our new Online Flight Check-in tool, which is available up to 24 hours, but no less than 90 minutes, prior to your

1

scheduled departure time.

**Second Bag Fee**
Customers who booked their flight on or after May 1, 2008, will be charged an additional $20 fee for checking a second bag on flights on or after June 1, 2008.

**Treat yourself to Even More Legroom**
For the special introductory price of just $10-$30 more you can stretch out in one of our most spacious seats, with 38" of legroom! Get it now-Even More Legroom seats have limited availability and are now available for purchase at the airport. Click here to change your seat.

**Save up to 30% on hotels! More than 220 locations worldwide!**
Book your summer vacation today to save up to 30% at hotels in popular destinations across the U.S. and around the world-from beach retreats to urban escapes! Book by June 30; travel by September 5, 2008. Let's go!

## Flight Summary

**PAUL DURETTE**
1332 Forty Oaks Drive
Herndon, VA 20170

| | |
|---|---|
| Confirmation Number: | WEYMEA (manage flights) |
| Date Booked: | 13 Jun 08 |
| Modified: | 17 Jun 08 |
| Booked By: | INET |

| | Name | TrueBlue Number | Seats |
|---|---|---|---|
| Welcome Aboard: | PAUL DURETTE | 2041181931 | View |

| Date | Flt | Depart | Arrive | Stops |
|---|---|---|---|---|
| 18 Jun 08 | 1250 | Wash. Dulles 07:00am | Boston, MA 08:30am | 0 |
| 18 Jun 08 | 307 | Boston, MA 2:55pm | Wash. Dulles 4:38pm | 0 |

Total for 1 customer

| | |
|---|---|
| Fare: | 556.28 |
| Tax: | 48.72 |
| Security Fee: | 5.00 |
| Passenger Facility Charge: | 9.00 |
| **Total:** | **$619.00** |
| American Express: | $619.00 |
| Balance Due: | $0.00 |

## Great Hotel Deals*

**Hotel offers in Boston**

 Find a hotel in Boston

*Hotel availability is limited and may not be available at the rates quoted above

Carry-on Baggage Rules:
Customers may now carry through security checkpoints travel-size toiletries (3 ounces or less) that fit comfortably

2

```
            Washington Dulles Int'l Airport

                    44610 Saarinen Circle
                      Dulles, VA 20166
                   Customer Service Number:
                        (703) 572-4580



         Shift/Seq. #:      013/0264
         Entry lane 11:     06/18/08 05:43 am
         Payment lane 22:   06/18/08 06:53 pm


                          PURCHASE


                      Amount: $17.00



         Card:       $17.00 Approved
         American Express ...1007
         Expiration:       **/**
         Authorization: 523209
         LPA:              4217
         Sequence:         48

              Exit Before 06/19/08 06:13 am
              Or Additional Charges May Apply


         Thank You And Have A Nice Day
```